## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                  Debtor. | Case No.: BK-S-06-10725-LBR<br>Case No.: BK-S-06-10726-LBR<br><br>Chapter 11<br><br>**RESPONSE TO TENTH OMNIBUS OBJECTION OF USACM TRUST TO PROOFS OF CLAIM BASED UPON INVESTMENT IN PACER I LOAN**<br><br>Date of Hearing: July 26, 2011<br>Time of Hearing: 1:30 p.m. |

SEGEL, GOLDMAN, MAZZOTTA & SIEGEL, P.C., Counsel for Claimant MORRIS

MASSRY ("Massry") hereby files this response to the USACM Liquidating Trust's (the

"USACM Trust") Tenth Omnibus Objection to Proof of Claim, Claim No. 10725-01898 filed

January 9, 2007 (the "Proof of Claim"), and begs the Court to reject the objection of the USACM

Trust based upon the following facts:

      1.      On or about October 1, 2004 Massry invested $100,000 in the Placer Vineyards

loan. The terms of the investment allowed for accrual of interest at a rate of 12.5% resulting in

interest of $1,527.78 at the time of the filing of the Proof of Claim. Accordingly, Massry is

owed $101,527.78 for his investment in Placer Vineyards (the "Massry Claim").

      2.      The USACM Trust seeks to disallow the claim on the basis that Massry "took a

known risk by investing in a promissory note secured by a lien on real property." USA

Commercial Mortgage Company (the "Company") was a well known company in the brokerage

business. The Company's objection was insufficient to convert the presumption. The Company was properly licensed by the State of Nevada and Massry was unaware of any financial problems with the Company.

3.    As acknowledged in the Debtor's moving papers, the Massry Claim is secured by the Promissory Note Secured by Deed of Trust (the "Note") and a Loan Agreement. A copy of the Note is annexed hereto at **Exhibit "A"** and a copy of the Loan Agreement is annexed hereto at **Exhibit "B"**. Debtors further admit that the Note was further secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing recorded on December 20, 2004 and the personal guarantees of Tom Hantges and Joe Milanowski. A copy of the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing is annexed hereto at **Exhibit "C"**.

4.    Accordingly, the Massry Claim is secured and the Company had a responsibility, pursuant to the Note, to repay the lenders. The Company, however, has made no attempt to do so and now seeks to avoid its responsibility in its entirety.

5.    In conclusion, the Massry Claim is valid and should be paid in priority together with the accrued interest in accordance with the terms of the Note.

Dated: July 11, 2011

SEGEL, GOLDMAN, MAZZOTTA & SIEGEL P.C.

Erika C. Browne, Esq., Of Counsel
Attorneys for Morris Massry
9 Washington Square
Albany, New York 12205
(518)452-0941

To:    John Hinderaker, Esq.
LEWIS & ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
(702)949-8321

# EXHIBIT A

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST



$27,500,000

Las Vegas, Nevada
December 10, 2004

This Promissory Note ("Note"), dated as of December 10, 2004 is made and delivered by Placer County Land Speculators, LLC, a California limited liability company ("Borrower"), in favor of the persons listed on **Exhibit "A"** hereto ("Lender").

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000) (the "Note Amount"), together with interest as provided herein. The Note Amount may be increased to $31,500,000 by future advances.

1.    Interest Rate. Interest shall accrue on the outstanding portion of the Note Amount, from the date Lender initially disburses such funds until the date the Note Amount is paid in full, at the rate of twelve and one half percent (12.5%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. Accrued but unpaid interest shall be compounded monthly.

2.    Payments. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears. For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day. All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.    Maturity Date. If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on or before the date which is eighteen months after the Deed of Trust is recorded (the "Maturity Date").

4.    Application of Payments. All payments on this Note shall, at the option of the Lender hereof, be applied first to the payment of accrued interest then payable.

5.    Prepayment. Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Borrower may prepay this Note in full or in part at any time.

6.    Collateral. This Note is secured by a deed of trust encumbering real property located in Placer County, California.

1

7.    Defaults; Acceleration. The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder. Upon the occurrence of an Event of Default, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately. Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)    Borrower shall fail to pay when due any amount due pursuant to the Note; or

(b)    Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have thirty (30) days after written notice to effect the cure (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c)    any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made; or

(d)    Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)    Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within thirty (30) calendar days after such issue or levy; or

2

(f)    there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion; or

(g)    any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)    all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)    any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(j)    any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

8.    <u>Late Charge</u>. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the Lender hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any

3

accelerated amount. Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    Waivers. Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.    Costs of Collection. Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.    Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

13.    Notices. All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telex, telecopy or telegram or by

4

being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**     Placer County Land Speculators, LLC
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn. Joseph D. Milanowski

**LENDER'S ADDRESS:**     c/o USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn. Thomas Rondeau

14.     <u>Assignment By Lender</u>. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15.     <u>Multiple Parties</u>. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16.     <u>Construction</u>. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

17.     <u>Partial Invalidity</u>. If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

18.     <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)     This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b)     **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE**

LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)     BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

**BORROWER:**     Placer County Land Speculators, LLC
By: USA Investors II, LLC, Manager
By: USA Investment Partners, LLC, its Manager


By: _____
       Joseph D. Milanowski, Manager

6

# EXHIBIT "A"

## LENDERS

| | Names | Amount |
|---|---|---|
| 1. | Premiere Holdings Inc. Defined Benefit Pension Plan & Trust | $50,000 |
| 2. | Wara L.P., a Pennsylvania limited partnership | $100,000 |
| 3. | Arthur V. Adams Trustee of the Arthur V. Adams Trust dated 9/12/97 | $50,000 |
| 4. | Kenneth Addes & Victoria Addes,Co-Trustees of the Addes Trust | $100,000 |
| 5. | Stanley Alexander Trustee of the Stanley Alexander Trust | $100,000 |
| 6. | Alvin L. Allen & Valerie Allen, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 7. | Robert L. And Donna L. Allgeier Trustees of the R.L. Allgeier Family Trust dated 10/4/97 | $50,000 |
| 8. | Arnold Alves & Agnes Alves Trustees of the Alves Family Trust dated 10/27/89 | $100,000 |
| 9. | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $200,000 |
| 10. | First Savings Bank Custodian for Larry H. Anderson IRA | $300,000 |
| 11. | Rita P. Anderson Trustee FBO Rita P. Anderson Trust | $100,000 |
| 12. | Steven K. Anderson Trustee of the Steven K. Anderson Family Trust dated 6/30/94 | $50,000 |
| 13. | Joan M. Arends Trustee of the Arends Family Trust | $50,000 |
| 14. | William P. Austin & Mary Lee Austin, as joint tenants with right of survivorship | $50,000 |
| 15. | Gemini 5 Family Limited Partnership, Darrin Badger General Partner | $500,000 |
| 16. | Stanley J. Baldwin & Patricia A. Baldwin, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 17. | Pedro Luis Barroso & Carol Ann Barroso Trustees for the benefit of Pedro L. & Carol A. Barroso Trust dated 11/29/90 | $50,000 |
| 18. | Teresa Anne Bell Trustee of the Teresa Anne Bell Living Trust | $50,000 |
| 19. | Dorothy Bennett, a single woman & Robert Bennett, a married man dealing with his sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 20. | Virgil L. Birgen & La Donna F. Birgen Trustees of the Birgen Charitable Trust dated 8/1/90 | $50,000 |
| 21. | First Savings Bank Custodian for Albert Blumenthal IRA | $50,000 |
| 22. | James R. Bonfiglio & Donna M. Bonfiglio Trustees of the Bonfiglio Family Limited Partnership | $100,000 |
| 23. | Charles E. Borom & Lanna G. Borom, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 24. | Helena A. Bova, a single woman | $50,000 |
| 25. | Richard L. Bowman Trustee for the benefit of The Bowman 1989 Revocable Trust | $50,000 |
| 26. | Larry R. Brasuell & Susan L. Brasuell Trustees of The Larry R. & Susan L. Brasuell 1996 Living Trust dated 7/22/96 | $50,000 |

7

| 27. | Glen J. Brecht & Janine K. Brecht Trustees of the Glen J. Brecht Trust dated 1/24/86 | $75,000 |
|---|---|---|
| 28. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $100,000 |
| 29. | Hannah Brehmer, an unmarried woman & Marti McAllister, a married woman, as joint tenants with right of survivorship | $100,000 |
| 30. | Roger C. Bruce, a single man | $50,000 |
| 31. | Neil G. Buckwald Trustee of the Buckwald Revocable Trust dated 2/11/92 | $50,000 |
| 32. | Dr. Joselito Tan Burgos, a single man | $50,000 |
| 33. | Evelyn A. Calhoun, an unmarried woman with Transfer on Death to Dale E. Calhoun | $50,000 |
| 34. | William C. Campbell & Lois M. Campbell Trustees of the 2001 Campbell Family Trust dated 10/03/01 | $50,000 |
| 35. | Louis John Canepa Trustee of the Louis John Canepa Revocable Trust dated 6/18/98 | $50,000 |
| 36. | Scott K. Canepa Charitable Supporting Organization | $1,250,000 |
| 37. | John R. Cangelosi & Margaret M. Cangelosi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 38. | James Cardwell & Reba Cardwell Trustees of the Cardwell Family Trust | $600,000 |
| 39. | Don F. Carrier & Sara L. Carrier Trustees of the Carrier Family Trust dated 8/9/91 | $50,000 |
| 40. | Douglas Carson Trustee of the Douglas W. Carson Trust | $100,000 |
| 41. | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 42. | Maurice A. Cauchois & Jacqueline M. Cauchois Trustees of the M & J Cauchois Family Trust dated 2/25/93 | $50,000 |
| 43. | Michael W. Cecil, a married man dealing with his sole & separate property | $55,000 |
| 44. | Frank A. Cerrone & Shari L. Cerrone Trustees of The Cerrone Family Trust dated 1/26/96 | $50,000 |
| 45. | Ray L. Coffin & Toni H. Coffin, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 46. | Shirley M. Collins Trustee as her sole & separate property under the Collins Family Trust dated 1/29/93 | $75,000 |
| 47. | Pamela Conboy, an unmarried woman | $50,000 |
| 48. | June Cook Trustee of the Alvin Broido Marital Trust U/A dated 4/24/72 | $50,000 |
| 49. | Harold Corcoran & Joyce Corcoran, husband & wife, as joint tenants with right of survivorship | $110,000 |
| 50. | James B. Corison Trustee of the James B. Corison Trust dated 12/3/98 | $100,000 |
| 51. | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | $50,000 |
| 52. | Sam Costanza, Trustee of The Costanza 1987 Decedent's Trust | $100,000 |
| 53. | Howard L. Craig & Frankye D. Craig Trustees of the Craig Living Trust dated 08/10/00 | $100,000 |
| 54. | Shelley Wike Cranley Trustee of The S.W. Cranley Revocable Trust dated 2/20/03 | $100,000 |

| | | |
|---|---|---|
| 55. | Richard N. Dahlke, a married man dealing with his sole & separate property | $50,000 |
| 56. | Davis Investments, a Nevada partnership | $50,000 |
| 57. | Donna Lou  Denny Trustee of The Denny 1983 Marital Trust dtd 2/14/83 | $100,000 |
| 58. | James D. Dery & Ann R. Dery, husband & wife | $75,000 |
| 59. | Tamara Dias Trustee for the Helms Grandchildren Educational Trust FBO Jarod Dias dated 7/21/98 | $100,000 |
| 60. | Tamara Dias Trustee of the Separate Property Trust of Tamara Dias dated 12/04/00 | $100,000 |
| 61. | Robert DiBias & Louise G. Sherk Trustees of the Louise G. Sherk, MD, a medical corporation, Employee Benefit Plan Trust | $50,000 |
| 62. | Ronald O. Dixon & Heidi R. Dixon, husband & wife, as joint tenants w th right of survivorship | $50,000 |
| 63. | Pat A. Dolce, a married man dealing with his sole & separate property | $50,000 |
| 64. | D. Joseph Doucet & Louise M. Doucet Trustees of the D. Joseph & Louise M. Doucet 1989 Trust dated 3/30/89 | $55,000 |
| 65. | Mary E. Dunlop Trustee of the Mary E. Dunlop 1992 Trust dated 7/29/03 | $50,000 |
| 66. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 67. | John D. Eichhorn & Jill A. Eichhorn, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 68. | Allan R. Eisenbach & Jayne M. Eisenbach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 69. | Robert Essaff & Cindy H. Essaff Trustees of the Essaff Family Trust dated 6/18/02 | $200,000 |
| 70. | William H. Favro & Carol M. Favro Trustees of the Favro Trust dated 9/14/00 | $75,000 |
| 71. | Paul Fedrizzi & Jane E. Fedrizzi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 72. | Larry Fernandez Trustee of the Fernandez Family Trust dated 6/20/84 | $50,000 |
| 73. | Carol A. Fischer Trustee of the Fischer Trust dated 1/6/92 | $50,000 |
| 74. | Mildred  Fischermann, a single woman &  Stanley Ferraro & Florence Ferraro, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 75. | John R. Fleiner & Karen M. Fleiner, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76. | Donald T. Flood & Betty R. Flood Trustees of the Flood Family Trust dated 12/24/85 | $50,000 |
| 77. | Fraley Limited Partnership, a Nevada limited partnership | $100,000 |
| 78. | Gregory L. Freeman Trustee of the Lillian M. Freeman Trust dated 5/31/85 | $55,000 |
| 79. | Gail A. Freitas Trustee of the Gail A. Freitas Revocable Trust dtd 6/20/03 | $50,000 |
| 80. | David  Fuller & Monica Fuller Trustees of the David R. Fuller & Monica D. Fuller Trust | $60,000 |
| 81. | Jerry L. Gage & Darlene C. Gage Trustees of the Dakota Trust dtd 9/16/96 | $100,000 |

| | | |
|---|---|---|
| 82. | Brian K. Gallagher & Mariateresa Gallagher, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 83. | Anthony V. Gambello & Elizabeth Gambello Trustees of the Gambello Trust | $50,000 |
| 84. | Elmer Eugene Gilbert, Jr., a married man dealing with his sole & separate property | $50,000 |
| 85. | Lynn M. Gillmore & Jimmy D. Gillmore, husband & wife | $50,000 |
| 86. | Gale Gladstone-Katz Trustee of the Gale Gladstone-Katz Revocable Living Trust dated 12/10/03 | $75,000 |
| 87. | Jo M. Gledhill Trustee of the Gledhill Revocable Family Trust | $50,000 |
| 88. | Nancy Golden, a married woman dealing with sole & separate property | $50,000 |
| 89. | Jack Goldenthal & Sylvia Goldenthal, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 90. | Barry J. Goldstein & Patricia B. Goldstein, as joint tenants with right of survivorship | $50,000 |
| 91. | Sylvia M. Good Successor Trustee under the Sylvia M. Good Survivor's Trust established under the Sam Good Family Trust dated 6/25/86, amended & restated 3/14/91 as amended | $50,000 |
| 92. | Nancy L. Gouveia Trustee of the Nancy L. Gouveia Trust dated 10/23/98 | $60,000 |
| 93. | Noel S. Gouveia, a married man dealing with his sole & separate property | $50,000 |
| 94. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $100,000 |
| 95. | First Savings Bank Custodian for Michael H. Greeley IRA | $100,000 |
| 96. | Bernie Gregorio & Corazon S. M. Gregorio, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 97. | Charles T. Hamm & Sandra L. Hamm, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 98. | Darlene Hammond Trustee of the Dar Living Trust dated 2/12/03 | $50,000 |
| 99. | John A. M. Handal, a single man | $50,000 |
| 100. | MLH Family Investment Limited, a Texas company | $300,000 |
| 101. | Waldemar Hanslik & Katharina Hanslik Trustees of the Hanslik Family Trust dated 12/23/91 | $70,000 |
| 102. | Roger N. Havekost, a married man dealing with his sole & separate property | $50,000 |
| 103. | Helms Homes, LLC, a Nevada limited liability company | $200,000 |
| 104. | Terry Helms Trustee of the Terry Helms Living Trust dated 11/11/94 | $200,000 |
| 105. | Jay E. Henman Trustee of the Jay E. Henman Retirement Plan | $100,000 |
| 106. | Patricia A. Herrin & Terry W. Royder, wife & husband, as joint tenants with right of survivorship | $100,000 |
| 107. | Roy H. Hibdon & Oma C. Hibdon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 108. | Michael Hilgenberg & Shellie Hilgenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 109. | Maureen A. Hjelte & G. Craig Hjelte, husband & wife, as joint tenants with right of survivorship | $50,000 |

10

| | | |
|---|---|---|
| 110. | Fred Holland & Marjorie Holland Trustees of the Holland Family Trust dated 1993 | $50,000 |
| 111. | Jason L. Holt & Sally A. Holt, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 112. | Homfeld II, LLC, a Florida limited liability company | $200,000 |
| 113. | Earl Howsley, a married man dealing with his sole & separate property | $50,000 |
| 114. | Jack Humphry & Alice Humphry Trustees of the Humphry 1999 Trust | $75,000 |
| 115. | Leslie Irwin, a single woman | $50,000 |
| 116. | Evelyn A. Ives Trustee of the Mevin J. Ives & Evelyn A. Ives QTIP Trust | $150,000 |
| 117. | First Savings Bank Custodian for Mary Jellison, IRA | $100,000 |
| 118. | Everett H. Johnston Trustee of the Everett H. Johnston Family Trust dated 1/24/90 | $100,000 |
| 119. | Maurice Jones & Marlene Y. Jones Trustees of the Jones Family Trust dated 9/3/98 | $50,000 |
| 120. | William J. Kassel Trustee of the Kassel 1988 Trust | $50,000 |
| 121. | Christina M. Kehl, an unmarried woman | $200,000 |
| 122. | Kehl Development, an Iowa corporation | $500,000 |
| 123. | Kevin A. Kehl, a married man dealing with his sole & separate property | $150,000 |
| 124. | Krystina Kehl, a single woman | $500,000 |
| 125. | Robert J. Kehl & Ruth Ann Kehl, husband & wife, as joint tenants with right of survivorship | $2,000,000 |
| 126. | Carol A. Kelly, a single woman | $50,000 |
| 127. | Marsha Kendall Trustee of the David A. Gean Revocable Trust dtd 4/3/92 | $150,000 |
| 128. | Melvin W. Kerner Trustee of the Kerner Revocable Trust B dated 3/16/81 | $50,000 |
| 129. | Norma M. Kerner Trustee of the Eugene H. & Norma M. Stokes Trust dated 5/16/84 | $50,000 |
| 130. | Mildred P. Kesler Trustee of the Lindsey H. Kesler Family Revocable Trust dated 10/15/80 | $85,000 |
| 131. | Clawiter Associates, LLC, a California limited liability company | $50,000 |
| 132. | Dunham Trust Company Trustee of the Frederick W. Kewell IRA | $75,000 |
| 133. | Frederick W. Kewell Trustee of the Barbara J. Kewell Trust dated 7/18/89 | $50,000 |
| 134. | Frederick W. Kewell, II Trustee of the Kewell Living Trust dated 7/18/89 | $50,000 |
| 135. | Travis L. Killebrew & Lorna F. Killebrew, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 136. | Edward H. Kim, an unmarried man | $50,000 |
| 137. | Walter Klevay & Gail Klevay, husband & wife | $50,000 |
| 138. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $50,000 |
| 139. | Ronald Kreykes & Linda Kreykes, husband & wife, as tenants in common | $200,000 |
| 140. | Jester, LP, a Nevada limited partnership | $50,000 |
| 141. | Jor Law, a single man | $50,000 |
| 142. | James W. Lehr & Julie Anne Lehr, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 143. | Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | $60,000 |

11

| | | |
|---|---|---|
| 144. | Richard Glenn Leiby & Carol K. Leiby, Trustees of the Leiby Family 1992 Trust dated 7/8/92 | $50,000 |
| 145. | Bruce R. LeMar, an unmarried man | $50,000 |
| 146. | William H. Lenhart Trustee of the William H. Lenhart Living Trust | $50,000 |
| 147. | James H. Lidster & Phyllus M. Lidster Trustees of the James H. Lidster Family Trust dated 1/20/92 | $50,000 |
| 148. | Anna Lieblein, an unmarried woman & John Drakoules, an unmarried man | $100,000 |
| 149. | Steve Lindquist Trustee of the Steve Lindquist Charitable Remainder Unit Trust dated 9/9/96 | $60,000 |
| 150. | Edward G. Loughlin, an unmarried man & Thelma E. Guevara, an unmarried woman, as joint tenants with right of survivorship | $100,000 |
| 151. | R. Lance Loughlin, a married man dealing with his sole & separate property | $100,000 |
| 152. | Henri L. Louvigny & Marcelle A. Louvigny Co-Trustees of the Henri L. Louvigny & Marcelle A. Louvigny Family Trust dated 10/18/84 | $50,000 |
| 153. | B. Sue Luthi Trustee of the B. Sue Luthi Trust dated 7/9/97 | $50,000 |
| 154. | B & W Precast Construction, Inc., a California corporation | $200,000 |
| 155. | Edward D. Lynch, a single man | $100,000 |
| 156. | Thomas D. Lynch Trustee of The Thomas D. Lynch 1995 Revocable Living Trust | $100,000 |
| 157. | Terry Markwell Trustee of the Terry Markwell Profit Sharing Plan & Trust | $50,000 |
| 158. | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 159. | JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000 |
| 160. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 161. | James M. McConnell & M. Fay McConnell, husband & wife, as joint tenants with right of survivorship | $120,000 |
| 162. | J. Richard McMichael & Karen L. McMichael Trustees of the McMichael Living Trust dated 12/16/88 | $50,000 |
| 163. | William L. McQuerry Trustee of the McQuerry Family Partnership | $50,000 |
| 164. | Don D. Meyer, an unmarried man & Dennis E. Hein, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 165. | Michaelian Holdings, LLC, a Nevada limited liability company | $50,000 |
| 166. | Gary A. Michelsen, an unmarried man | $100,000 |
| 167. | Patricia A. Middel Trustee of the Middel Separate Property Revocable Living Trust dated 11/7/00 | $50,000 |
| 168. | Robert D. Mierau & Sandra J. Mierau Trustees of the Mierau Living Trust dated 9/14/98 | $100,000 |
| 169. | Cynthia Milanowski Trustee of the Cynthia Milanowski Trust | $50,000 ° |
| 170. | Monighetti, Inc., a Nevada corporation | $150,000 |
| 171. | Wesley L. Monroe & Jeannie M. Monroe, joint tenants with right of survivorship | $100,000 |

| | | |
|---|---|---|
| 172. | Albert Montero Trustee of the Albert Montero Family Trust U/A dated 11/3/94 | $100,000 |
| 173. | William L. Montgomery, Jr., an unmarried man | $50,000 |
| 174. | James Michael Moore & Jody C. Moore, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 175. | Robert J. Moretto & Josephine Moretto Trustees of the Moretto Family Living Trust dated 9/19/94 | $50,000 |
| 176. | Adelaide Moschogianis, an unmarried woman & Christine Moschogianis, an unmarried woman | $50,000 |
| 177. | GSL Investments LLC, a Nevada Company | $50,000 |
| 178. | Elaine Mullin Trustee for the benefit of Elaine P. Mullin Trust dtd 8/6/90 | $50,000 |
| 179. | Denise A. Murphy, a single woman | $50,000 |
| 180. | Marvin Lynn Nicola Trustee of the Marvin Lynn Nicola Faimly Trust dated 6/13/78 | $50,000 |
| 181. | Olga O'Buch Trustee of the Olga O'Buch Trust dated 5/28/98 | $50,000 |
| 182. | Gary J. O'Hara & Janice D. O'Hara Co Trustees of the O'Hara Family Trust dated 2/26/93 | $70,000 |
| 183. | Douglas O'Herron & Nancy O'Herron Trustees of the Douglas & Nancy O'Herron Revocable Trust dated 4/2/02 | $50,000 |
| 184. | William W. Ogren & Betty R. Ogren, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 185. | Jennefer Cole Peele Trustee of the Peele Bypass Trust dated 2/10/87 | $50,000 |
| 186. | Michael Pezzano & Lisa Pezzano, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 187. | Phil L. Pfeiler & Loy E. Pfeiler, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 188. | Michael Eugene Pinney, a single man | $50,000 |
| 189. | Stephen Polacheck Trustee of the Polacheck & Associates, Inc. Profit Sharing Plan dated 2/20/73 | $100,000 |
| 190. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000 |
| 191. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 192. | Helmut O. Przystaw & Erika L. Przystaw, joint tenants with right of survivorship | $50,000 |
| 193. | Dennis Raggi, a married man dealing with his sole & separate property | $100,000 |
| 194. | Rains Properties, LP, a Nevada limited partnership | $350,000 |
| 195. | First Savings Bank FBO Robert E. Ray IRA | $100,000 |
| 196. | Elan Reddell Trustee of the Elan Reddell Revocable Living Trust dated 8/4/03 | $100,000 |
| 197. | Donald E. Redmon & Jaylyle Redmon Trustees of the Donald E. Redmon & Jaylyle Redmon Family Trust dated 10/31/95 | $50,000 |
| 198. | Orban H. Reich Trustee of the Orban H. Reich Trust dated 12/27/00 | $50,000 |
| 199. | Lawrence H. Reynolds & Jayne L. Reynolds, husband & wife, as joint tenants with right of survivorship | $60,000 |

13

| | | |
|---|---|---|
| 200. | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $200,000 |
| 201. | Rachel Riehle, an unmarried woman | $50,000 |
| 202. | Nancy K. Rivard & David L. Olden Trustees of the Nancy Kathryn Rivard & David Lee Olden Trust dated 7/20/83 | $50,000 |
| 203. | Blair E. Roach & Barbara K. Roach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 204. | Robert W. Roberts & Donna R. Roberts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 205. | Alan Robinson & Gail Robinson, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 206. | Saul Roisentul & Ilene Roisentul Trustees of the Roisentul Family Trust | $75,000 |
| 207. | Crosbie B. Ronning, a single woman | $50,000 |
| 208. | Grable B. Ronning, an unmarried woman | $85,000 |
| 209. | Grable B. Ronning Trustee of the Bosworth 1988 Family Trust for the benefit of Eric Ronning dated 11/4/88 | $50,000 |
| 210. | Stuart J. Ross, a married man dealing with his sole & separate property & Heather Goolsby, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $60,000 |
| 211. | Robert J. Rossetter & Jane L. Rossetter, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 212. | Dr. Toya V. Russell, a single woman | $100,000 |
| 213. | Barbara M. Sanchez Trustee of The Barbara M. Sanchez 2002 Revocable Living Trust dated 4/4/02 | $50,000 |
| 214. | First Savings Bank Custodian For Randy Sanchez IRA | $50,000 |
| 215. | Randy M. Sanchez & Sharon Sanchez Trustees of the Sanchez Living Trust dated 10/13/03 | $50,000 |
| 216. | First Savings Bank Custodian for Karen E. Sass IRA | $50,000 |
| 217. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $300,000 |
| 218. | Edward Schreiber & Sally Schreiber Trustees of the Schreiber Family Trust | $55,000 |
| 219. | Alvina Agatha Sedlak Trustee of the Alvina Agatha Sedlak Living Trust dated 6/23/04 | $50,000 |
| 220. | Carey B. Sigmen & Lisa K. Sigmen Trustees of The Carey B. Sigmen & Lisa K. Sigmen Trust dated 3/3/97 | $50,000 |
| 221. | Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 222. | Emery T. Smith & Mary C. Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 223. | Robert D. Smith, an unmarried man & Jane Feld, an unmarried woman, as joint tenants with right of survivorship | $50,000 |
| 224. | Woodrow Smith & Mary Alyce Smith, as joint tenants with right of survivorship | $50,000 |

14

| | | |
|---|---|---|
| 225. | Bruce Sonnenberg & Rosemary Sonnenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 226. | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $80,000 |
| 227. | Clifton H. Spindle & Verna R. Spindle, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 228. | Floyd M. Spindle, an unmarried man with transfer on death to A. Cherryl Sergeant | $100,000 |
| 229. | Stater Family Ltd Partnership | $250,000 |
| 230. | Neal J. Stehly & Kam E. Stehly Trustees of the Neal & Kam Stehly Family Trust dated 1/8/00 | $100,000 |
| 231. | Nicholas A. Steinmetz & Cynthia M. Steinmetz Trustees of the 2001 Steinmetz Family Trust | $50,000 |
| 232. | Nicole Steinmnetz, a single woman | $50,000 |
| 233. | Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpson Family Trust | $50,000 |
| 234. | Jacqueline S. Stroehmann, an unmarried woman | $50,000 |
| 235. | Leland K. Swanson & Lena M. Swanson Trustees of the Swanson Family Trust dated 9/14/94 | $60,000 |
| 236. | Michael Tarr, a single man | $50,000 |
| 237. | Gary N. Taylor Trustee of the Gary N. Taylor PSP | $100,000 |
| 238. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 239. | First Savings Bank Custodian For Louise Teeter IRA Rollover | $50,000 |
| 240. | Norman Teeter, a single man | $100,000 |
| 241. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 242. | John M. Tripp Trustee of the Tripp Family Trust 1997 | $50,000 |
| 243. | Augustine Tuffanelli Trustee of the Augustine Tuffanelli Family Trust dated 7/26/94 | $50,000 |
| 244. | Shirley Jean Tuffanelli Trustee of the Shirley Jean Tuffanelli Trust dated 6/18/91 | $50,000 |
| 245. | Louis H. Turner & Shirley M. Turner Trustees of the Louis H. & Shirley M. Turner Family Trust dated 9/9/97 | $50,000 |
| 246. | Turner Development, LLC, a California limited liability company | $100,000 |
| 247. | Robert W. Ulm, an unmarried man | $50,000 |
| 248. | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $100,000 |
| 249. | USA Commercial Mortgage | $913,000 |
| 250. | First Savings Bank Custodian for Peggy Ann Valley IRA | $90,000 |
| 251. | Jay C. McLaughlin & Peggy Ann Valley Trustees of the McLaughlin-Valley Trust dated 2/24/97 | $100,000 |
| 252. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $100,000 |
| 253. | Kenneth B. Van Woert Trustee of the Sheehan Van Woert Bigotti Architects 401(k) PSP & Trust dated 7/1/98 | $50,000 |

| | | |
|---|---|---|
| 254. | Kip E. Virts & Melissa A. Virts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 255. | Linda C. Vlautin Trustee of the Linda C. Vlautin Trust dated 10/31/01 | $50,000 |
| 256. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust dated 10/4/99 | $125,000 |
| 257. | Robert R. Wade & Shirley E. Wade, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 258. | John H. Warner, Jr. & Linda M. Warner Trustees of The Warner Family Trust dated 3/17/00 | $75,000 |
| 259. | First Trust Company of Onaga C/F Frank Wasko Beneficiary for Stephanie Wasko IRA | $62,000 |
| 260. | Dean Watson, a married man dealing with his sole & separate property | $50,000 |
| 261. | Donna Webb, a single woman | $50,000 |
| 262. | Ardis Weible & Dean F. Weible Co-Trustees of the Weible 1981 Trust dated 6/30/81 | $50,000 |
| 263. | John Austin Werthing, Sr. & Sallie Mae Werthing Trustees of the Werthing Senior Family Trust UAD 10/22/01 | $50,000 |
| 264. | Gerald W. Wickland & Irene F. Wickland Co-Trustees of the Wickland Family Trust dated 2/10/81 | $70,000 |
| 265. | William D. Wickland & Victoria R. Wickland, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 266. | Edna P. Wilson, a married woman & Sloan D. Wilson, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 267. | Albert Winemiller Inc. | $100,000 |
| 268. | Debra Ann Winemiller, a married woman dealing with her sole & separate property | $50,000 |
| 269. | Cynthia A. Winter, a married woman dealing with her sole & separate property | $100,000 |
| 270. | Jerry Woldorsky, a married man dealing with his sole & separate property | $50,000 |
| 271. | Richard Woldorsky, a single man | $50,000 |
| 272. | Richard D. Wood Trustee of the Wood Living Trust dated 10/1/99 | $90,000 |
| 273. | Melvin B. Wright & Susan D. Wright Trustees of the S.B. Wright Family Trust dated 12/28/94 | $50,000 |
| 274. | Kenneth H. Wyatt & Phyllis P. Wyatt Trustees of The Kenneth H. & Phyllis P. Wyatt Family Trust | $50,000 |
| 275. | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $100,000 |
| 276. | Joseph G. Zappulla & Carol A. Zappulla, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 277. | Zawacki, a California LLC | $100,000 |
| 278. | Teresa G. Zeller Trustee of the Teresa G. Zeller Trust | $50,000 |
| 279. | Franz J. Zimmer Trustee of the Franz J. Zimmer Revocable Trust dated 02/05/97 | $75,000 |
| 280. | Raymond J. Zurfluh, Jr. & Shirley J. Zurfluh, husband & wife, as joint tenants with right of survivorship | $65,000 |
| | TOTAL | $27,500,000 |

# EXHIBIT B



# LOAN AGREEMENT

This Loan Agreement, dated as of December 10, 2004, is entered into by and among Placer County Land Speculators, LLC, a California limited liability company ("Borrower"), and those persons listed on **Exhibit "A"** attached hereto ("Lender").

## SECTION 1: <u>DEFINITIONS AND ACCOUNTING TERMS</u>.

1.1    <u>Defined Terms</u>.  As used in this Agreement, the following terms shall have the meanings set forth respectively after each:

**"Agreement"** means this Loan Agreement.

**"Assignment of Permits, Licenses, Franchises and Authorizations"** means the Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower.

**"Assignment of Rents"** means the Assignment of Rents contained in the Deed of Trust.

**"Business Day"** means any Monday, Tuesday, Wednesday, Thursday, or Friday on which banks in the State of Nevada are open for business.

**"Control Account"** means Disbursement Agent's account in which the Control Account Funds shall be held.

**"Control Account Escrow Agreement"** means the Control Account Escrow Agreement and Security Agreement by and between Borrower, Lender and Disbursement Agent of even date herewith.

**"Control Account Funds"** means the portion of the Loan funds held in the Control Account at any time, together with interest accrued thereon, any additions thereto made pursuant to this Agreement, and any and all investments and reinvestments of any such sums now or hereafter made.

**"Debt"** means any indebtedness of the Borrower other than indebtedness owed to trade creditors incurred in the ordinary course of business and payable in 180 days or less.

**"Deed of Trust"** means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith, executed by Borrower in favor of Lender with respect to the Property or portions thereof, either as originally executed or as it may from time to time be supplemented, modified or amended.

**"Default Rate"** shall have the meaning set forth in the Note.

**"Disbursement"** means each of the disbursements by Lender of the Proceeds of the Loan

1

or other funds (including the Control Account Funds) pursuant to this Agreement.

"**Disbursement Agent**" means Project Disbursement Group, Inc., or any other licensed construction control company approved by Lender which may at any time hold any portion of the Control Account Funds pursuant to this Agreement.

"**Disbursement Schedule**" means the schedule for Disbursements attached hereto as **Exhibit "B."**

"**Effective Date**" means the date the Deed of Trust is recorded in the Official Records of Placer County, California.

"**Environmental Indemnity**" means the Environmental and Accessibility Indemnity Agreement executed by Borrower and the Guarantor.

"**Financing Statement**" means financing statement of even date herewith executed by Borrower in favor of Lender with respect to the Personal Property.

"**Governmental Agency**" means any governmental or quasi-governmental agency, authority, board, bureau, commission, department, instrumentality or public body, court, administrative tribunal or public utility.

"**Guarantor**" means, collectively Joseph D. Milanowski and Thomas A. Hantges.

"**Guaranty**" means the Unconditional Guaranty executed by the Guarantor in favor of Lender, either as originally executed or as it may from time to time be supplemented, modified or amended.

"**Improvements**" means any and all improvements now existing or hereafter constructed on the Real Property.

"**Interest Reserve**" means that portion of the Loan Amount allocated to interest reserve pursuant to Section 3.3 below.

"**Laws**" means, collectively, all federal, state and local laws, rules, regulations, ordinances and codes.

"**Lender**" means collectively, those persons and entities listed on **Exhibit "A"** attached hereto and any other persons or entities who may be added to that list pursuant to an amendment to the Note.

"**Loan**" means the loan to be made by Lender to Borrower pursuant to Section 3 hereof.

"**Loan Documents**" means, collectively, this Agreement, the Note, the Security Documents, the Environmental Indemnity, the Guaranty and the Project Assignments, in each case either as

2

originally executed or as the same may from time to time be supplemented, modified or amended, together with any other documents or instruments which may at any time be executed by Borrower in connection with the Loan.

"**Maturity Date**" means the date which is eighteen (18) months after the Deed of Trust is recorded.

"**Note**" means the promissory note of even date herewith, in the original principal amount of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000), executed by Borrower in favor of Lender to evidence the Loan, either as originally executed or as it may from time to time be supplemented, modified or amended.

"**NRS**" means the Nevada Revised Statutes, as amended from time to time.

"**Operation**" means the operation of Borrower's business on the Property, including the operation, sales, leasing, running and maintenance of the Property and the Improvements.

"**Permitted Exceptions**" means the matters identified in **Exhibit "C"** attached hereto and made part hereof.

"**Person**" means any entity, whether an individual, trustee, corporation, partnership, trust, unincorporated organization or otherwise.

"**Personal Property**" means all present and future personal property (including the Project Documents) of Borrower of every kind and nature, whether tangible or intangible, now or hereafter located at, upon or about the Property, or used or to be used in connection with or relating or arising with respect to the Property and/or the Project, including but not limited to the property described in the Deed of Trust.

"**Project**" means the project for the development of, and construction of improvements on, the Property, as such exists at any time.

"**Project Assignments**" means, collectively, the Assignment of Permits, Licenses, Franchises and Authorizations, and such other assignments as Lender shall require.

"**Project Documents**" means, collectively, all agreements, documents, instruments and materials of whatever kind or nature relating to the Project, including but not limited to: (a) the improvement plans and all other plans, specifications and drawings relating to the Project, (b) all approvals, consents, licenses and permits issued, or to be issued, by any Governmental Agency in connection with the Project, (c) the engineer's contract, architect's contract and any and all construction contracts, and all other agreements relating to the Project between Borrower and any contractor, subcontractor, independent project manager or supervisor, architect, engineer, laborer or supplier of materials, and (d) any take-out, refinancing or permanent loan commitment issued to Borrower with respect to the Property.

"**Property**" means, collectively, the Real Property, the Personal Property and any other buildings, structures, or improvements now or hereafter located on all or any portion of the Real Property.

"**Real Property**" means the real property and interests in real property described in **Exhibit "D"**.

"**Request for Disbursement**" means a written request for a Disbursement signed by a designated representative on behalf of Borrower, in the form approved by Lender.

"**Security Agreement**" means the Security Agreement contained herein and in the Deed of Trust.

"**Security Documents**" means the Deed of Trust, the Assignments, the Financing Statements and any other mortgage, deed of trust, assignment of leases, security agreement or assignment executed to secure the Note, either as originally executed or as they may from time to time be supplemented, modified or amended.

"**Title Company**" means Fidelity National Title Insurance Company.

"**Title Policy**" means the Lender's policy of title insurance and endorsements thereto required by this Agreement as a condition of the first Disbursement.

"**USA**" means USA Commercial Mortgage Company, a Nevada corporation, the mortgage company which arranged the Loan.

"**Use**" means ownership, use, development, construction, maintenance, management, operation or occupancy.

1.2     Use of Defined Terms. Any defined term used in the plural shall refer to all members of the relevant class, and any defined term used in the singular shall refer to any number of the members of the relevant class. Any reference to the Loan Documents and other instruments, documents and agreements shall include such Loan Documents and other instruments, documents and agreements as originally executed or as the same may be supplemented, modified or amended.

1.3     Accounting Terms. All accounting terms not specifically defined in this Agreement shall be construed in conformity with, and all financial data required to be submitted by this Agreement shall be prepared in conformity with, generally accepted accounting principles applied on a consistent basis.

1.4     Exhibits. All exhibits to this Agreement, either as now existing or as the same may from time to time be supplemented, modified or amended, are incorporated herein by this reference.

4

## SECTION 2: RECITALS.

Borrower has applied to Lender for a Loan to acquire the Real Property and to pay for certain pre-development costs associated with the Property. Lender is willing to make the Loan to Borrower on the terms and conditions contained in this Agreement and the other Loan Documents.

## SECTION 3: THE LOAN.

3.1 Amount of the Loan. Subject to the terms and conditions set forth in this Agreement, Lender agrees to make a loan ("Loan") to Borrower in a principal amount of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000) (the "Loan Amount"), Lender's disbursement of which is subject to the terms and conditions of the Loan Documents. The Loan Amount shall be disbursed in accordance with Lender's instructions to the Title Company. From and after the date that the Borrower has signed the Loan Documents and the Lender has deposited with the Title Company the amount needed to close the Loan, the Loan Amount shall bear interest at the rate set forth in the Note until fully repaid to Lender.

3.2 Increase in Loan Amount. From the Effective Date through and including December 31, 2005, Lender and USA shall have the exclusive right, but not the obligation, to increase the Loan Amount to an amount not to exceed Thirty-One Million Dollars ($31,000,000). All amounts that Lender may advance after the Effective Date shall increase the Loan Amount and be used for the following purposes: (i) to pay pre-development costs approved by Lender, (ii) to pay the loan fees due with regard to such advance, and (iii) to fund the Interest Reserve (defined below). Upon each increase in the Loan Amount, Borrower shall execute amendments to the Note and the Deed of Trust which shall memorialize the increase in the Loan Amount, the change in the identity of the persons and entities which comprise Lender and their respective undivided interests in the Loan. Upon the recordation of the amendment(s) to the Deed of Trust, the Title Company shall issue to Lender, at Borrower's expense, an endorsement or endorsements to the Title Policy which shall (i) insure the continued priority of the Deed of Trust and that the additional advance is secured thereby, (ii) reflect the increase in the face amount of the policy corresponding to the increase in the Loan Amount, and (iii) set forth the change in the identity of the insured lenders and their respective undivided interests in the Loan. Upon any such additional advance, a portion thereof shall be deposited into the Interest Reserve (defined below) for the Loan. Nothing herein shall constitute a commitment by Lender or USA to fund to Borrower any more than the initial Loan Amount.

3.3 Interest Reserve. A portion of the Loan Amount, to be reasonably determined by Lender, shall be disbursed by the Title Company to the Disbursement Agent to be held as interest reserve for the benefit of Lender (the "Interest Reserve"). Disbursement Agent's only function shall be to hold and disburse the Interest Reserve in accordance with the Control Account Escrow Agreement. As additional advances are made as provided in Section 3.2 above, a portion of such advances, the amount of which to be reasonably determined by Lender, shall be deposited into the Interest Reserve. Interest accrued on the Note Amount shall be paid from a portion of the Interest Reserve upon presentation of a monthly interest statement by Lender, without the necessity of any instruction or request from Borrower. Except as provided in this paragraph, the funds in the Interest Reserve shall never be used for any other purpose without the express written consent of Lender.

Depletion of the Interest Reserve shall not release Borrower from any of Borrower's obligations under the Loan Documents, including but not limited to the obligation to pay interest accruing under the Note. After depletion of the Interest Reserve, or so long as any Event of Default has occurred and is continuing, all interest payments under the Note shall be made by Borrower using its own funds; provided that Lender, at its option and in its sole discretion, may obtain disbursements from the Interest Reserve notwithstanding such Event of Default. Upon the occurrence of an Event of Default, the entire balance of the Interest Reserve shall be paid to Lender upon demand and applied to the then outstanding balance of the Loan.

3.4     Prepayment.    Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date they are paid and will not be subject to refund upon any early payment hereof (whether voluntarily or as a result of default). Subject to the foregoing, Borrower may prepay the Loan, in full or in part, at any time.

3.5     Security.    The indebtedness evidenced by the Note, and all other indebtedness and obligations of Borrower under the Loan Documents, shall be secured by the Security Documents. The Environmental Indemnity and the Guaranty and the respective obligations of any of Borrowers and the Guarantor under each shall be unsecured.

3.6     Yield Protection.    If, after the date of this Agreement, the adoption of any law or any governmental or quasi-governmental rule, regulation, policy, guideline or directive (whether or not having the force of law), or any change therein, or any change in the interpretation or administration thereof, or the compliance of the Lender therewith,

(a)     subjects the Lender to any tax, duty, charge or withholding on or from payments due from Borrower (excluding taxation of the overall net income of the Lender), or changes the basis of taxation of payments to the Lender in respect of its Loans or other amounts due it hereunder; or

(b)     imposes or increases or deems applicable any reserve, assessment, insurance charge, special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by, the Lender; or

(c)     imposes any other condition the result of which is to increase the cost to the Lender of making, funding or maintaining advances or reduces any amount receivable by the Lender in connection with advances, or requires the Lender to make any payment calculated by reference to the amount of advances held or interest received by it, by an amount deemed material by the Lender;

then, within fifteen (15) days of demand by the Lender, the Borrower shall pay the Lender that portion of such increased expense incurred (including, in the case of clause (c), any reduction in the rate of return on capital to an amount below that which it could have achieved but for such law, rule, regulation, policy, guideline or directive and after taking into account the Lender's policies as to capital adequacy) or reduction in an amount received which the Lender determines is attributable to making, funding and maintaining the Loans.

3.7    Junior Encumbrance.  Lender hereby acknowledges that concurrently with the closing of this Loan, Borrower shall record another deed of trust against the Real Property securing a loan in the total amount of $6,500,000.  Lender further agrees that a portion of the interest accruing on that junior loan shall be paid from the proceeds of this Loan as more particularly set out on **Exhibit "B"** attached hereto.

## SECTION 4: <u>CONDITIONS TO DISBURSEMENTS.</u>

4.1    <u>Initial Advance Conditions.</u>  The obligation of Lender to initially close the Loan is subject to the following conditions precedent:

(a)    Borrower shall, at its sole expense, deliver or cause to be delivered to Lender, in form and substance satisfactory to Lender:

       (i)    the original Note;

       (ii)    the original Deed of Trust;

       (iii)    the original Financing Statement;

       (iv)    the original Guaranty;

       (v)    the original Environmental Indemnity;

       (vi)    the original Control Account Escrow Agreement, executed by Borrower, Lender and Disbursement Agent;

       (vii)    the original Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower;

       (viii)    a certificate of consent of Borrower, authorizing the execution, delivery and performance of the Loan Documents to be executed by a specified authorized officer on behalf of Borrower;

       (ix)    an ALTA form of extended coverage of lender's policy of title insurance, or evidence of a commitment therefor, issued by an insurer satisfactory to Lender, together with such endorsements and binders thereto as may be required by Lender pursuant to Section 6.6 hereof, in a policy amount of not less than the face amount of the Note, insuring the Deed of Trust to be a valid lien upon the Property, and showing the Property to be subject only to the Permitted Exceptions;

       (x)    an appraisal of the Real Property certified to Lender, performed by an appraiser acceptable to Lender;

7

(xi)     certified copies of, or certificate evidencing, all insurance policies required to be delivered pursuant to this Agreement;

(xii)    copies of all permits and approvals by Governmental Agencies necessary to construct the Improvements (if available);

(xiii)   current Financial Statements of Borrower and the Guarantor;

(xiv)    evidence, in form and substance acceptable to Lender, of the availability and sufficiency of all utilities to the Project;

(xv)     copies of any proposed, or approved final Covenants, Conditions and Restrictions recorded or to be recorded on the Project;

(xvi)    a Phase I Hazardous Waste Survey, prepared by an entity approved by Lender, in form and substance acceptable to, and approved by, Lender;

(xviii)  such additional agreements, certificates, reports, approvals, instruments, documents, financing statements, consents and opinions as Lender may reasonably request; including, without limitation, a soils report for the Real Property (including, without limitation, all determinations required by Lender with respect to hazardous waste [as such term is defined in the Environmental Indemnities] and water located on the Real Property).

(b)     Lender shall have reviewed and approved the Permitted Exceptions;

(c)     Borrower has acquired fee title to all of the Real Property;

(d)     The Deed of Trust shall have been recorded in the Official Records of the County in which the Property is located as a first priority lien;

(e)     The Financing Statement shall have been filed for record with the California Secretary of State.

4.2     <u>Future Advance Conditions</u>.  The obligation of Lender to make any additional advances pursuant to Section 3.2 above is subject to following conditions:

(a)     The representations and warranties of Borrower contained in all of the Loan Documents shall be correct on and as of the date of the advance as though made on and as of that date and no Event of Default (or event which, with the giving of notice and/or the passage of time, would become an Event of Default) shall have occurred and be continuing;

(b)     Borrower shall, at its sole expense, deliver or cause to be delivered to Lender, in form and substance satisfactory to Lender:

8

(i)     from the title insurer who has issued the Title Policy, such endorsements, binders or modifications thereto as Lender may require; and

(ii)    such additional agreements, certificates, reports, approvals, instruments, documents, consents or opinions as Lender may reasonably request.

## SECTION 5:  REPRESENTATIONS AND WARRANTIES BY BORROWER.

5.1     _Formation, Qualification and Powers of Borrower_.  Borrower is a limited liability company duly formed and validly existing under the laws of the State of Nevada and has all requisite power and authority to conduct its business, to own its properties, and to execute, deliver and perform all of its obligations under the Loan Documents.

5.2     _Authority and Compliance with Instruments and Government Regulations_.  The execution, delivery and performance by Borrower of all of its obligations under each Loan Document have been duly authorized by all necessary action and do not and will not:

(a)     require any consent or approval not heretofore obtained of any Person holding any security or interest or entitled to receive any security or interest in Borrower;

(b)     violate any provision of any organizational document or certificate of Borrower;

(c)     result in or require the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest, claim, charge, right of others or other encumbrance of any nature, other than under the Loan Documents, upon or with respect to any property now owned or leased or hereafter acquired by Borrower;

(d)     violate any provision of any Law, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Borrower or the Property, which violation would have a material, adverse impact thereon;

(e)     result in a breach of or constitute a default under, cause or permit the acceleration of any obligation owed under, or require any consent under, any indenture or loan or credit agreement or any other agreement, lease or instrument to which Borrower is a party or by which Borrower or any property of Borrower, is bound or affected; and Borrower is not in default in any respect that is materially adverse to the interest of Lender or that would have any material adverse effect on the financial condition of Borrower or the conduct of its business under any Law, order, writ, judgment, injunction, decree, determination, award, indenture, agreement, lease or instrument described in Sections 5.2(d) and 5.2(e).

5.3     _Execution of the Guaranty by the Guarantor_.  The execution and delivery of the Guaranty:

(a)     have been duly authorized by all necessary action;

9

maintaining necessary reserves for tax liabilities, if any.

5.9    Compliance with Law.  Borrower and Guarantor are in compliance in all material respects with all Laws and other requirements applicable to their business and have obtained all authorizations, consents, approvals, orders, licenses and exemptions from, and have accomplished all filings, registrations or qualifications with, any Governmental Agency that is necessary for the transaction of their business.

5.10    Compliance with Requirements.  Throughout the term of the Loan, Borrower shall comply with all applicable covenants, conditions and restrictions, Laws and other requirements, and all necessary approvals, consents, licenses and permits of any Governmental Agency have been regularly and finally received with respect thereto, including without limitation each of the following as applicable:

(a)    all zoning, land use and planning requirements;

(b)    subdivision and/or parcel map requirements, including without limitation Requirements of applicable Law regarding subdivisions, parcel maps and the division of land into lots or parcels;

(c)    environmental requirements and preparation and approval of any necessary environmental impact statements or reports;

(d)    all requirements regarding the provision of all necessary utilities to the Real Property including the irrevocable allocation to the Property of sufficient domestic and fire protection water service to the Property;

(e)    all requirements imposed by any public utility in connection with the supply of utilities to the Property; and

(f)    all requirements imposed in connection with any approval, consent, license or permit issued or required by any Governmental Agency in connection with the Project.

5.11    Litigation.  There are no actions, suits or proceedings pending or, to the best of Borrower's or any Guarantor's knowledge, threatened against or affecting Borrower or the Guarantor or any property of Borrower or the Guarantor before any court or Governmental Agency that would have a material adverse affect on the Property, or Borrower's or the Guarantor's ability to perform their respective obligations under the Loan Documents.

5.12    Title to Property.  Borrower has good and merchantable title to all of its property and assets as disclosed in the financial information provided Lender and at the time of the recordation of the Security Documents shall have good and merchantable title to the Property, and there shall be no mortgages, liens, pledges or other encumbrances of any character on the Property, other than the Security Documents and Permitted Exceptions, without prior consent of Lenders.

5.13    ERISA.  The Borrower, Guarantor and each Subsidiary are in compliance in all Material respects with all applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  Neither a Reportable Event nor a Prohibited Transaction has occurred and is continuing with respect to any Plan; no notice of intent to terminate a Plan has been filed, nor has any Plan been terminated; no circumstances exist which constitute grounds entitling the PBGC to institute proceedings to terminate, or appoint a trustee to administer, a Plan, nor has the PBGC instituted any such proceedings; neither the Borrower nor any Commonly Controlled Entity has completely or partially withdrawn from a Multiemployer Plan; the Borrower and each Commonly Controlled Entity have met their minimum funding requirements under ERISA with respect to all of their Plans and the present value of all vested benefits under each Plan exceeds the fair market value of all Plan assets allocable to such benefits, as determined on the most recent valuation date of the Plan and in accordance with the provisions of ERISA; and neither the Borrower nor any Commonly Controlled Entity has incurred any liability to the PBGC under ERISA.

## SECTION 6:  AFFIRMATIVE AND NEGATIVE COVENANTS.

Until payment of the Note in full and performance of all obligations of Borrower under the Loan Documents, unless Lender otherwise consents in writing:

6.1    Compliance with Requirements.  Borrower shall comply with all conditions, covenants, restrictions, leases, easements, reservations, rights and rights-of-way and all applicable Laws and other requirements relating to the Property and the Project, and obtain all necessary approvals, consents, licenses and permits of any Governmental Agency, including without limitation those set forth in Section 5.10.

6.2    Sale or Other Encumbrances.  Borrower specifically agrees that:

(a)    In order to induce Lender to make the Loan, Borrower agrees that if the Property or any part thereof or any interest therein, shall be sold, assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Borrower whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare the Note, including the prepayment fee, if applicable, secured hereby and all other obligations hereunder, to be forthwith due and payable.  Except as shall be otherwise specifically provided herein, (a) a change in the legal or equitable ownership of the Property whether or not of record, or (b) a change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Property; provided, however, that any transfer of the Property or any interest therein to an entity which controls, is controlled by or is under common control with Borrower shall not be considered a transfer hereunder.  In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby.  The transfer of an interest in the Property may materially alter and reduce Lender's security for the indebtedness secured hereby.  Moreover, Lender has agreed to make its loan based upon the presumed value of the Property and the Rents and Profits (as such are defined in the Deed of Trust) thereof.  Therefore, t

will be a diminution of Lender's security if junior financing, except as shall be permitted by Lender, or if other liens or encumbrances should attach to the Property.

(b)    Borrower may request Lender to approve a sale or transfer of the Property to a party who would become the legal and equitable owner of the Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c)    In the event ownership of the Property, or any part thereof, becomes vested in a person or persons other than Borrower, the Lender may deal with such successor or successors in interest with reference to the Note or the Deed of Trust in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of Borrower under the Note, the Deed of Trust or the other Loan Documents. No sale of Borrower's interest in the Property, no forbearance on the part of Lender, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under the Note, the Deed of Trust and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Property or such portion thereof subject to the Deed of Trust. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Property contained in Section 6.2(a).

6.3    Removal of Personalty.    Borrower shall not:

(a)    install in or otherwise use in connection with the Project any materials, equipment or fixtures under any security agreements or similar agreements however denominated whereby the right is reserved or accrues to anyone to remove or repossess any such items or whereby any Person other than Lender reserves or acquires a lien upon such items; or

(b)    remove or permit the removal of any fixtures or personalty located on the Property or used in connection with the Project, except for tools and construction equipment intended for use in connection with the construction of other improvements, unless actually replaced by an article of equal suitability and value, owned by Borrower free and clear of any lien or security interest other than the Security Documents.

6.4    Payment of Taxes, Assessments and Charges.    Borrower shall pay, prior to delinquency, all taxes, assessments, charges and levies imposed by any Governmental Agency which are or may become a lien affecting the Property or any part thereof, including without limitation assessments on any appurtenant water stock; except that Borrower shall not be required to pay and discharge any tax, assessment, charge or levy that is being actively contested in good

13

faith by appropriate proceedings, as long as Borrower has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles and, by reason of nonpayment, none of the property covered by the Security Documents or the lien or security interest of Lender is in danger of being lost or forfeited.

6.5  Insurance.  The Borrower shall at all times maintain the following policies of insurance:

(a)  prior to completion of the Improvements, if any are undertaken, builder's "all risk" insurance ("completed value" form), including "course of construction" coverage, covering the Improvements and any Personal Property;

(b)  from and after completion of the Improvements, property "all risk" insurance covering the Improvements and any Personal Property;

(c)  commercial general liability insurance in favor of the Borrower (and naming the Lender as an additional insured) in an aggregate amount not less than $2,000,000 (or such greater amount as may be specified by the Lender from time to time) combined single limit; and

(d)  such other insurance as may be required by applicable Laws (including worker's compensation and employer's liability insurance) or as the Lender may reasonably require from time to time (including "all risk" insurance with respect to any other improvements now or in the future located on the Real Property and comprehensive form boiler and machinery insurance, if applicable, rental loss insurance and business interruption insurance).

The Borrower shall also cause any contractor and each subcontractor employed on the Property to maintain a policy of commercial general liability insurance and, upon request by the Lender, shall cause the Architect and any engineer engaged in connection with the Project to maintain a policy of professional liability insurance, in each case for such periods and in such amounts as the Lender may reasonably require from time to time.

Each policy of builder's-risk and all-risk insurance required by this Section 6.5 shall be in an amount not less than the full replacement cost of the property covered by such policy, shall contain a "waiver of coinsurance" provision, a "full replacement cost" endorsement, a "Mortgagee Loss Payable" clause, and a "Betterments" or "Building Ordinance" endorsement, and shall insure the Property against flood loss risk to the maximum available policy amount if the Real Property is located in a "Flood Hazard Area" (as determined by the Federal Emergency Management Agency). Each policy of commercial general liability insurance required by this Section shall cover personal injury, property liability, and contractual liability, including coverage for Borrower's indemnity obligations under the Loan Documents, and shall name Lender as an "additional insured". The commercial general liability insurance shall also cover completed operations, and such insurance shall be primary and non-contributing with any other insurance available to the Lender. All insurance policies shall be in form and substance and issued by insurers reasonably satisfactory to the Lender, and shall contain such deductible and such endorsements as the Lender may reasonably require. Each policy shall require thirty (30) day written notice to Lender prior to any

14

cancellation thereof. As a condition to funding the Loan, Borrower shall provide to Lender an ACORD 27 form certificate evidencing such policies. Upon request by the Lender from time to time, the Borrower shall deliver to the Lender originals or copies of all such insurance policies.

6.6     Title Insurance Endorsements. Borrower shall deliver or cause to be delivered to Lender, in form and substance satisfactory to Lender, CLTA endorsement numbers 100, 100.29, and 116 to the Title Policy and such other endorsement and binders as Lender may from time to time reasonably require.

6.7     Books and Records. Borrower shall: (a) maintain full and complete books of account and other records reflecting the results of its operations (in conjunction with any other business as well as specifically with respect to the Project) in accordance with generally accepted accounting principles applied on a consistent basis; and (b) permit Lender and its agents, at any time and from time to time, upon twenty-four (24) hours telephonic notice to Borrower, to inspect and copy all of such books and records, including without limitation any books and records pertaining to the Project or the Project Documents.

6.8     Entry and Inspection. Lender and its agents shall, at all time, upon twenty-four (24) hours telephonic notice to Borrower, have the right of entry and free access to the Project and the right to inspect all work done, labor performed, and materials furnished in and about the Project. If, at any time, Lender determines, in its sole discretion, that regular inspections of the Project are required, the Borrower shall allow free access to such inspector. Such inspection shall be performed at Borrower's expense, with the actual cost thereof, reasonably incurred, to be paid by Borrower upon seventy-two (72) hours notice from Lender.

6.9     Physical Security of Project. Borrower shall take appropriate measures to protect the physical security of the Project and the Property.

6.10    Reporting and Requirements. Borrower shall cause to be delivered to Lender, in form and detail satisfactory to Lender:

(a)     promptly upon Borrower's learning thereof, notice of:

    (i)     any litigation affecting or relating to Borrower, and/or the Guarantor, and the Property or the Project;

    (ii)    any dispute between Borrower and any Governmental Agency relating to the Property or the Project, the adverse determination of which would adversely affect the Property or the Project;

    (iii)   any threat or commencement of proceedings in condemnation or eminent domain relating to the Property;

    (iv)    any Event of Default or event which, with the giving of notice and/or the passage of time, could become and Event of Default; and

15

(v)     any change in the Manager of Borrower, as defined in Borrower's Operating Agreement.

(b)     (Intentionally Omitted)

(c)     as soon as available, and in any event within forty-five (45) calendar days after the close of each fiscal quarter of Borrower and each of the Guarantor, quarterly financial statements applicable to Borrower and each of the Guarantor, all in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis;

(d)     as soon as available, and in any event within ninety (90) calendar days after the close of each fiscal year of Borrower, annual financial statements applicable to Borrower, all in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis;

(e)     as soon as available, and in any event within ninety (90) calendar days after the close of each fiscal year of the Guarantor, annual financial statements applicable to the Guarantor, all in reasonable detail and prepared in accordance with generally accepted accounting principles applied on a consistent basis;

(f)     promptly upon receipt thereof, any audited financial information applicable to Borrower or the Guarantor; and

(g)     such other information relating to Borrower, Guarantor, the Property and/or the Project as Lender may reasonably request from time to time, including without limitation (i) tax returns, to be provided concurrently with the filing thereof with the relevant government authority or (ii) if Borrower or Guarantor receive an extension from the relevant governmental authority for filing a tax return, satisfactory evidence of such extension.

6.11    Surveys.  Borrower agrees to furnish Lender a perimeter survey of the Property (a copy of the Subdivision Map of the Property shall satisfy this requirement).

6.12    Management of Property and Project.  Borrower shall not enter into any agreement providing for the management, leasing or operation of the Property or the Project without the prior written consent of the Lender.

6.13    Defense of Vested Right, Modification of Vested Rights.  Borrower shall at all times, at its own cost and expense take, pursue and assert all such actions and defenses as are necessary to perfect, maintain and protect its vested development rights with respect to the Property.  Should Borrower fail to do so, Lender may do so either in its own name or the name of the Borrower, and all unrecovered fees, costs and expenses incurred by Lender in connection therewith shall be payable by Borrower to Lender on demand, shall bear interest at the Default Rate specified in the Note, and shall be secured by the Deed of Trust.  Borrower shall not modify, amend, cancel, terminate or otherwise alter any development rights or entitlements with respect to the Property without Lender's prior written consent, which consent shall not be unreasonably withheld.

16

6.14    No Gifting. Until this Loan has been fully repaid, Borrower agrees not to transfer more than a total of five percent (5%) of its assets unless receiving full consideration therefore without the written permission of Lender.

6.15    ERISA Reports. As soon as possible, and in any event within thirty (30) days after the Borrower knows or has reason to know that any circumstances exist that constitute grounds entitling the PBGC to institute proceedings to terminate a Plan subject to ERISA with respect to the Borrower or any Commonly Controlled Entity, and promptly but in any event within two (2) Business Days of receipt by the Borrower or any Commonly Controlled Entity of notice that the PBGC intends to terminate a Plan or appoint a trustee to administer the same, and promptly but in any event within five (5) Business Days of the receipt of notice concerning the imposition of withdrawal liability with respect to the Borrower or any Commonly Controlled Entity, the Borrower will deliver to the Lender a certificate of the chief financial officer of the Borrower setting forth all relevant details and the action which the Borrower proposes to take with respect thereto.

6.16    Guaranties, Etc. Borrower shall not assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable, or permit Borrower, Guarantor or any Subsidiary to assume, guaranty, endorse, or otherwise be or become directly or contingently responsible or liable (including, but not limited to, an agreement to purchase any obligation, stock, assets, goods, or services, or to supply or advance any funds, assets, goods, or services, or an agreement to maintain or cause such Person to maintain a minimum working capital or net worth, or otherwise to assure the creditors of any Person against loss) for obligations of any Person, except guaranties by endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business.

## SECTION 7: EVENTS OF DEFAULT AND REMEDIES UPON DEFAULT.

7.1    Events of Default. The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an Event of Default hereunder:

(a)    Borrower shall fail to pay when due any installment of principal or interest on the Note or any other amount owing under this Agreement or the other Loan Documents; or

(b)    Borrower or Guarantor shall fail to perform or observe any term, covenant or agreement contained in any of the Loan Documents on its part to be performed or observed, other than the failure to make a payment covered by Section 7.1(a), and such failure shall continue uncured as of ten (10) calendar days after the occurrence of such failure; provided, however, that if Borrower has commenced to cure the default within said 10-day period and is diligently pursuing such cure, but the default is of such a nature that it cannot be cured within 10 days, then the cure period shall be extended for the number of days necessary to complete the cure, but in no event shall the total cure period be longer than 30 days (the cure period set forth in this Section 7.1(b) shall not apply to any other Events of Default); or

(c)    any representation or warranty in any of the Loan Documents or in any certificate, agreement, instrument or other document made or delivered pursuant to or in connection with any

17

of the Loan Documents proves to have been incorrect in any material respect when made; or

(d)    Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)    Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or a Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property of Borrower or any Guarantor, and is not released, vacated or fully bonded within sixty (60) calendar days after such issue or levy; or

(f)    there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of the Note, as determined by Lender in its reasonable discretion, and Lender reasonably believes that such adverse change shall jeopardize (i) Lender's ability to collect the amounts due under the Note, as they become due, or (ii) Lender's ability to foreclose on the Mortgaged Property; or

(g)    any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)    all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)    any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

18

(j)     any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

7.2     Remedies Upon Default. Upon the occurrence of any Event of Default, Lender may, at its option, do any or all of the following:

(a)     declare the principal of all amounts owing under the Note, this Agreement and the other Loan Documents and other obligations secured by the Security Documents, together with interest thereon, and any other obligations of Borrower to Lender, to be forthwith due and payable, regardless of any other specified maturity or due date, without notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor, or other notices or demands of any kind or character, and without the necessity of prior recourse to any security;

(b)     take possession of the Property and, at Lender's option, let contracts for, or otherwise proceed with finishing the Improvements and paying the cost thereof; and if Lender advances its own funds for such purposes, such funds shall be considered advanced under the Note and shall be secured by the Security Documents, notwithstanding that such advances may cause the total amount advanced under the Note to exceed the face amount of the Note or the amount committed to be advanced pursuant to this Agreement, and Borrower shall immediately upon demand reimburse Lender therefor, together with interest thereon as if such advances were advances under the Note, from the date of such advance until the date of reimbursement (nothing contained in this Section 7.2(b) or elsewhere in this Loan Agreement shall be construed to make Lender a "mortgagee in possession" unless and until Lender actually takes possession of the Property either in person or through an agent or receiver);

(c)     terminate any right of Borrower to receive any additional advance;

(d)     terminate all rights of Borrower and obligations of Lender under the Loan Documents;

(e)     exercise its right and power to sell, or otherwise dispose of, the Personal Property, or any part thereof, and for that purpose may take immediate and exclusive possession of the Personal Property, or any part thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Lender's option Borrower shall assemble the Personal Property and make it available to the Lender at the place and the time designated in the demand; and

(f)     exercise any and all of its rights under the Loan Documents, including but not limited to the right to take possession of and foreclose on any security, and exercise any other rights with respect to any security, whether under the Security Documents or any other agreement or as provided by Law, all in such order and in such manner as Lender in its sole discretion may determine.

19

7.3     Cumulative Remedies; No Waiver. All remedies of Lender provided for herein are cumulative and shall be in addition to any and all other rights and remedies provided in the other Loan Documents or provided by Law from time to time. The exercise of any right or remedy by Lender hereunder shall not in any way constitute a cure or waiver of any default hereunder or under any of the other Loan Documents, nor invalidate any notice of default or any act done pursuant to any such notice, nor prejudice Lender in the exercise of any rights hereunder or under the Loan Documents. No waiver by Lender of any default by Borrower hereunder shall be implied from any omission by Lender to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default expressly made the subject of the waiver. Any such express waiver shall be operative only for the time and to the extent therein stated. Any waiver of any covenant, term or condition contained herein shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by Lender to or of any act by Borrower requiring further consent or approval shall not be deemed to waive or render unnecessary consent or approval to or of any subsequent act.

## SECTION 8: MISCELLANEOUS.

8.1     Performance by Lender. In the event that Borrower shall default in or fail to perform any of its obligations under the Loan documents, Lender shall have the right but not the duty, without limitation upon any of Lender's rights pursuant thereto, to perform the same, and Borrower agrees to pay to Lender, within seventy-two (72) hours after demand therefor, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.2     Actions. Provided Borrower has not promptly so acted, Lender shall have the right to commence, appear in, and defend any action or proceeding purporting to affect the rights or duties of the parties hereunder or the payment of any funds, and in connection therewith Lender may pay necessary expenses, employ counsel, and pay reasonable attorneys' fees. Borrower agrees to pay to Lender within seventy-two (72) hours after demand therefor, all costs and expenses incurred by Lender in connection therewith, including without limitation actual attorneys' fees reasonably incurred, together with interest thereon from the date of expenditure at the Default Rate.

8.3     Advances Obligatory. Anything herein to the contrary notwithstanding, it is specifically understood and agreed that any advances made by Lender pursuant to this Agreement, including but not limited to all funds advanced by Lender, shall be deemed advanced by Lender under an obligation to do so, regardless of the person or entity to whom such advance is made. Advances made in the reasonable exercise of Lender's judgment that such are necessary to complete the Improvements or to protect its security are to be deemed obligatory advances hereunder and are to be secured by the Note and Deed of Trust, and such security shall relate back to the original recording of the Deed of Trust.

8.4     Nonliability of Lender. Borrower acknowledges and agrees that:

(a)     any inspections of the Property or the construction of the Improvements made by or through Lender are for purposes of administration of the Loan only and Borrower is not entitled to

rely upon the same with respect to the quality, adequacy or suitability of materials or workmanship, conformity to the plans therefor, state of completion or otherwise; Borrower shall make its own inspections of such construction to determine that the quality of the Improvements and all other requirements of such construction are being performed in a manner satisfactory to Borrower and in conformity with the Improvement Plans and all applicable Laws; and Borrower shall immediately notify Lender, in writing, should the same not be in conformity with the plans therefor and all applicable laws;

(b)    by accepting or approving anything required to be observed, performed, fulfilled or given to Lender pursuant to the Loan Documents, including any certificate, statement of profit and loss or other financial statement, survey, appraisal, lease or insurance policy, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not constitute a warranty or representation to anyone with respect thereto by Lender;

(c)    Lender neither undertakes nor assumes any responsibility or duty to Borrower to select, review, inspect, supervise, pass judgment upon or inform Borrower of any matter in connection with the Project, including without limitation matters relating to the quality, adequacy or suitability of: (i) any plans or specifications, (ii) architects, contractors, subcontractors and materialmen employed or utilized in connection with the construction of the Improvements, or the workmanship of or the materials used by any of them, or (iii) the progress or course of any construction and its conformity or nonconformity with the plans therefor; and Borrower shall rely entirely upon its own judgment with respect to such matters, and any review, inspection, supervision, exercise of judgment or information supplied to Borrower by Lender in connection with such matters is for the protection of Lender only and neither Borrower nor any third party is entitled to rely thereon;

(d)    Lender owes no duty of care to protect Borrower against negligent, faulty, inadequate or defective building or construction;

(e)    the relationship of Borrower and Lender under the Loan Documents is, and shall at all times remain, solely that of borrower and lender, and Lender neither undertakes nor assumes any responsibility or duty to Borrower or to any other Person with respect to the Property or Loan, except as expressly provided in the Loan Documents; and notwithstanding any other provision of the Loan Documents: (i) Lender is not, and shall not be construed as, a partner, joint venturer, alter-ego, manager, controlling person or an insider or other business associate or participant of any kind of Borrower, and Lender does not intend to ever assume such status; (ii) Lender's activities in connection with the Loan Documents shall not be "outside the scope of the activities of a lender of money" under Nevada law, as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property or Improvements; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower; and

(f)    Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any Person or

21

property arising from any construction on, or occupancy or use of, any of the Property, whether caused by, or arising from: (i) any defect in any building, structure, soil condition, grading, fill, landscaping, or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on any of the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower, any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain any of the Property in a safe condition; and (v) any nuisance made or suffered on any part of the Property.

8.5     No Third Parties Benefitted. This agreement is made for the purpose of defining and setting forth certain obligations, rights and duties of Borrower, Lender and USA in connection with the Loan. It shall be deemed a supplement to the Note and the Security Documents, and shall not be construed as a modification of the Note or the Security Documents, except as provided herein. It is made for the sole protection of Borrower, Lender, and USA and their successors and assigns. No other Person shall have any rights of any nature hereunder of by reason hereof.

8.6     Indemnity. Borrower indemnifies Lender against, and holds Lender harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, cause of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses, including attorneys' fees, which Lender may suffer or incur as a direct or indirect consequence of: (a) Lender's performance of this Agreement or any of the Loan Documents, including, without limitation, Lender's exercise or failure to exercise any rights, remedies or powers in connection with this Agreement or any of the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon the Lender in the normal course of the Lender's business such as taxes and regulatory fees; (b) Borrower's failure to perform any of Borrower's obligations as and when required by this Agreement or any of the other Loan Documents, including without limitation any failure, at any time, of any representation or warranty of Borrower to be true and correct and any failure by Borrower to satisfy any condition; (c) any claim or cause of action of any kind by any Person to the effect that Lender is in any way responsible or liable for any act or omission by Borrower, whether on account of any theory or derivative liability or otherwise, including but not limited to any claim or cause of action for fraud, misrepresentation, tort or willful misconduct; (d) any act or omission by Borrower, any contractor, subcontractor or material supplier, engineer, architect, or any other Person with respect to any of the Property or Improvements; or (e) any claim or cause of action of any kind by any Person which would have the effect of denying Lender the full benefit or protection of any provision of this Agreement or the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon Lender in the normal course of Lender's business such as taxes and regulatory fees. Lender's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Lender's conduct is active, passive or subject to any other classification or that Lender is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Borrower or any other Person. Notwithstanding the foregoing, Borrower shall not be obligated to indemnify Lender with respect to any intentional tort or act of negligence which Lender is personally determined by the judgment or a court of competent jurisdiction (sustained on appeal, if any) to have committed. Borrower shall

22

pay any indebtedness arising under this indemnity to Lender immediately within seventy-two (72) hours after demand therefor by Lender together with interest thereon from the date such indebtedness arises until paid at the Default Rate. Borrower's duty to defend and indemnify Lender shall survive the release and cancellation of the Note and the release and reconveyance or partial release and reconveyance of the Deed of Trust.

8.7    Commissions. Borrower hereby indemnifies Lender from the claim of any Person for a commission or fee in connection with the Loan.

8.8    Lenders' Representative. The persons and entities which comprise Lender hereby collectively appoint USA Commercial Mortgage Company ("USA") to administer the Loan on their behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder.

8.9    Binding Effect; Assignment. This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that, as provided herein, Borrower may not assign its rights or interest or delegate any of its duties under this Agreement or any of the other Loan Documents without prior written consent of Lender.

8.10    Amendments; Consents. No amendment, modification, supplement, termination or waiver of any provision of this Agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, may in any event be effective unless in writing signed by Lender, and then only in the specific instance and for the specific purpose given.

8.11    Costs, Expenses and Taxes. Borrower shall pay to Lender, within seventy-two (72) hours after demand therefor:

(a)    the actual attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Documents and any matter related thereto;

(b)    the actual costs and expenses of Lender in connection with any modification of any Loan Document or in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the actual fees and out-of-pocket expenses, reasonably incurred, of any legal counsel, independent public accountants and other outside experts retained by Lender; and

(c)    all costs, expenses, fees, premiums and other charges relating or arising with respect to the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including without limitation the Disbursement Agent's fee, appraisal fees, inspection fees, cost review fees, recording fees, filing fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums paid or expended by Lender under the terms of this Agreement and the other Loan Documents shall be considered to be a part of the Loan. Except as otherwise specifically stated

23

herein, all such sums shall be secured by the Security Documents, shall bear interest from the date of expenditure as if such sums were advances under the Note, and shall be immediately due and payable by Borrower within seventy-two (72) hours after demand therefor.

8.12    Survival of Representations and Warranties.  All representations and warranties of Borrower and Guarantor contained herein or in any other Loan Document shall survive the making of the Loan and execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender.  For the purpose of the foregoing, all statements contained in any certificate, agreement, financial statement, or other writing delivered by or on behalf of Borrower or Guarantor pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower or Guarantor contained herein or in the other Loan Documents, as the case may be.

8.13    Notices.  All notices to be given pursuant to this Agreement shall be sufficient if given by personal services, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the day after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**        USA Investment Partners, LLC
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn. Joseph D. Milanowski

**LENDER'S ADDRESS:**        USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, Nevada 89121
Attn: Thomas Rondeau

8.14    Further Assurances.  Borrower shall, at its sole expense and without expense to Lender, do such further acts and execute and deliver such further documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest or lien under any Security Document.

8.15    Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)    The laws of the State of Nevada, without regard to its choice of law provisions, shall govern enforcement of the Loan Documents.

24

(b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 8.13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

8.16    Severability of Provisions.  Any provision in any Loan Document that is held to be inoperative, unenforceable or invalid shall be inoperative, unenforceable or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

8.17    Assignment or Sale of Participation by Lender; Advertising.  Lender may, at any time, sell, transfer, assign or grant participation in the Loan and in the Loan Documents and Lender may forward to its Partners or to such participant and prospective participant all documents and information relating to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable.  Lender and USA may also reasonably divulge and advertise the making of the Loan and the amount thereof.

8.18  <u>Headings</u>.  Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

8.19  <u>Time of the Essence</u>.  Time is of the essence with respect to all duties and obligations of Borrower under any Loan Document.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**      Placer County Land Speculators, LLC
By: USA Investors II, LLC, Manager
By: USA Investment Partners, LLC, its Manager

By: _____

Joseph D. Milanowski, Manager

**LENDER:**

By: _____        By: _____

26

## EXHIBIT "A"

### LENDER

| | Names | Amount |
|---|---|---|
| 1. | Premiere Holdings Inc. Defined Benefit Pension Plan & Trust | $50,000 |
| 2. | Wara L.P., a Pennsylvania limited partnership | $100,000 |
| 3. | Arthur V. Adams Trustee of the Arthur V. Adams Trust dated 9/12/97 | $50,000 |
| 4. | Kenneth Addes & Victoria Addes, Co-Trustees of the Addes Trust | $100,000 |
| 5. | Stanley Alexander Trustee of the Stanley Alexander Trust | $100,000 |
| 6. | Alvin L. Allen & Valerie Allen, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 7. | Robert L. And Donna L. Allgeier Trustees of the R.L. Allgeier Family Trust dated 10/4/97 | $50,000 |
| 8. | Arnold Alves & Agnes Alves Trustees of the Alves Family Trust dated 10/27/89 | $100,000 |
| 9. | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $200,000 |
| 10. | First Savings Bank Custodian for Larry H. Anderson IRA | $300,000 |
| 11. | Rita P. Anderson Trustee  FBO Rita P. Anderson Trust | $100,000 |
| 12. | Steven K. Anderson Trustee of the Steven K. Anderson Family Trust dated 6/30/94 | $50,000 |
| 13. | Joan M. Arends Trustee of the Arends Family Trust | $50,000 |
| 14. | William P. Austin & Mary Lee Austin, as joint tenants with right of survivorship | $50,000 |
| 15. | Gemini 5 Family Limited Partnership, Darrin Badger General Partner | $500,000 |
| 16. | Stanley J. Baldwin & Patricia A. Baldwin, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 17. | Pedro Luis Barroso & Carol Ann Barroso Trustees for the benefit of Pedro L. & Carol A. Barroso Trust dated 11/29/90 | $50,000 |
| 18. | Teresa Anne Bell Trustee of the Teresa Anne Bell Living Trust | $50,000 |
| 19. | Dorothy Bennett, a single woman & Robert Bennett, a married man dealing with his sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 20. | Virgil L. Birgen & La Donna F. Birgen Trustees of the Birgen Charitable Trust dated 8/1/90 | $50,000 |
| 21. | First Savings Bank Custodian for Albert Blumenthal IRA | $50,000 |
| 22. | James R. Bonfiglio & Donna M. Bonfiglio Trustees of the Bonfiglio Family Limited Partnership | $100,000 |
| 23. | Charles E. Borom & Lanna G. Borom, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 24. | Helena A. Bova, a single woman | $50,000 |
| 25. | Richard L. Bowman Trustee for the benefit of The Bowman 1989 Revocable Trust | $50,000 |
| 26. | Larry R. Brasuell & Susan L. Brasuell Trustees of The Larry R. & Susan L. Brasuell 1996 Living Trust dated 7/22/96 | $50,000 |

27

| | | |
|---|---|---|
| 27. | Glen J. Brecht & Janine K. Brecht Trustees of the Glen J. Brecht Trust dated 1/24/86 | $75,000 |
| 28. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $100,000 |
| 29. | Hannah Brehmer, an unmarried woman & Marti McAllister, a married woman, as joint tenants with right of survivorship | $100,000 |
| 30. | Roger C. Bruce, a single man | $50,000 |
| 31. | Neil G. Buckwald Trustee of the Buckwald Revocable Trust dated 2/11/92 | $50,000 |
| 32. | Dr. Joselito Tan Burgos, a single man | $50,000 |
| 33. | Evelyn A. Calhoun, an unmarried woman with Transfer on Death to Dale E. Calhoun | $50,000 |
| 34. | William C. Campbell & Lois M. Campbell Trustees of the 2001 Campbell Family Trust dated 10/03/01 | $50,000 |
| 35. | Louis John Canepa Trustee of the Louis John Canepa Revocable Trust dated 6/18/98 | $50,000 |
| 36. | Scott K. Canepa Charitable Supporting Organization | $1,250,000 |
| 37. | John R. Cangelosi & Margaret M. Cangelosi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 38. | James Cardwell & Reba Cardwell Trustees of the Cardwell Family Trust | $600,000 |
| 39. | Don F. Carrier & Sara L. Carrier Trustees of the Carrier Family Trust dated 8/9/91 | $50,000 |
| 40. | Douglas Carson Trustee of the Douglas W. Carson Trust | $100,000 |
| 41. | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 42. | Maurice A. Cauchois & Jacqueline M. Cauchois Trustees of the M & J Cauchois Family Trust dated 2/25/93 | $50,000 |
| 43. | Michael W. Cecil, a married man dealing with his sole & separate property | $55,000 |
| 44. | Frank A. Cerrone & Shari L. Cerrone Trustees of The Cerrone Family Trust dated 1/26/96 | $50,000 |
| 45. | Ray L. Coffin & Toni H. Coffin, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 46. | Shirley M. Collins Trustee as her sole & separate property under the Collins Family Trust dated 1/29/93 | $75,000 |
| 47. | Pamela Conboy, an unmarried woman | $50,000 |
| 48. | June Cook Trustee of the Alvin Broido Marital Trust U/A dated 4/24/72 | $50,000 |
| 49. | Harold Corcoran & Joyce Corcoran, husband & wife, as joint tenants with right of survivorship | $110,000 |
| 50. | James B. Corison Trustee of the James B. Corison Trust dated 12/3/98 | $100,000 |
| 51. | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | $50,000 |
| 52. | Sam Costanza, Trustee of The Costanza 1987 Decedent's Trust | $100,000 |
| 53. | Howard L. Craig & Frankye D. Craig Trustees of the Craig Living Trust dated 08/10/00 | $100,000 |
| 54. | Shelley Wike Cranley Trustee of The S.W. Cranley Revocable Trust dated 2/20/03 | $100,000 |

| | | |
|---|---|---|
| 55. | Richard N. Dahlke, a married man dealing with his sole & separate property | $50,000 |
| 56. | Davis Investments, a Nevada partnership | $50,000 |
| 57. | Donna Lou Denny Trustee of The Denny 1983 Marital Trust dtd 2/14/83 | $100,000 |
| 58. | James D. Dery & Ann R. Dery, husband & wife | $75,000 |
| 59. | Tamara Dias Trustee for the Helms Grandchildren Educational Trust FBO Jarod Dias dated 7/21/98 | $100,000 |
| 60. | Tamara Dias Trustee of the Separate Property Trust of Tamara Dias dated 12/04/00 | $100,000 |
| 61. | Robert DiBias & Louise G. Sherk Trustees of the Louise G. Sherk, MD, a medical corporation, Employee Benefit Plan Trust | $50,000 |
| 62. | Ronald O. Dixon & Heidi R. Dixon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 63. | Pat A. Dolce, a married man dealing with his sole & separate property | $50,000 |
| 64. | D. Joseph Doucet & Louise M. Doucet Trustees of the D. Joseph & Louise M. Doucet 1989 Trust dated 3/30/89 | $55,000 |
| 65. | Mary E. Dunlop Trustee of the Mary E. Dunlop 1992 Trust dated 7/29/03 | $50,000 |
| 66. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 67. | John D. Eichhorn & Jill A. Eichhorn, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 68. | Allan R. Eisenbach & Jayne M. Eisenbach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 69. | Robert Essaff & Cindy H. Essaff Trustees of the Essaff Family Trust dated 6/18/02 | $200,000 |
| 70. | William H. Favro & Carol M. Favro Trustees of the Favro Trust dated 9/14/00 | $75,000 |
| 71. | Paul Fedrizzi & Jane E. Fedrizzi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 72. | Larry Fernandez Trustee of the Fernandez Family Trust dated 6/20/84 | $50,000 |
| 73. | Carol A. Fischer Trustee of the Fischer Trust dated 1/6/92 | $50,000 |
| 74. | Mildred Fischermann, a single woman & Stanley Ferraro & Florence Ferraro, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 75. | John R. Fleiner & Karen M. Fleiner, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76. | Donald T. Flood & Betty R. Flood Trustees of the Flood Family Trust dated 12/24/85 | $50,000 |
| 77. | Fraley Limited Partnership, a Nevada limited partnership | $100,000 |
| 78. | Gregory L. Freeman Trustee of the Lillian M. Freeman Trust dated 5/31/85 | $55,000 |
| 79. | Gail A. Freitas Trustee of the Gail A. Freitas Revocable Trust dtd 6/20/03 | $50,000 |
| 80. | David Fuller & Monica Fuller Trustees of the David R. Fuller & Monica D. Fuller Trust | $60,000 |
| 81. | Jerry L. Gage & Darlene C. Gage Trustees of the Dakota Trust dtd 9/16/96 | $100,000 |

| | | |
|---|---|---|
| 82. | Brian K. Gallagher & Mariateresa Gallagher, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 83. | Anthony V. Gambello & Elizabeth Gambello Trustees of the Gambello Trust | $50,000 |
| 84. | Elmer Eugene Gilbert, Jr., a married man dealing with his sole & separate property | $50,000 |
| 85. | Lynn M. Gillmore & Jimmy D. Gillmore, husband & wife | $50,000 |
| 86. | Gale Gladstone-Katz Trustee of the Gale Gladstone-Katz Revocable Living Trust dated 12/10/03 | $75,000 |
| 87. | Jo M. Gledhill Trustee of the Gledhill Revocable Family Trust | $50,000 |
| 88. | Nancy Golden, a married woman dealing with sole & separate property | $50,000 |
| 89. | Jack Goldenthal & Sylvia Goldenthal, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 90. | Barry J. Goldstein & Patricia B. Goldstein, as joint tenants with right of survivorship | $50,000 |
| 91. | Sylvia M. Good Successor Trustee under the Sylvia M. Good Survivor's Trust established under the Sam Good Family Trust dated 6/25/86, amended & restated 3/14/91 as amended | $50,000 |
| 92. | Nancy L. Gouveia Trustee of the Nancy L. Gouveia Trust dated 10/23/98 | $60,000 |
| 93. | Noel S. Gouveia, a married man dealing with his sole & separate property | $50,000 |
| 94. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $100,000 |
| 95. | First Savings Bank Custodian for Michael H. Greeley IRA | $100,000 |
| 96. | Bernie Gregorio & Corazon S. M. Gregorio, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 97. | Charles T. Hamm & Sandra L. Hamm, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 98. | Darlene Hammond Trustee of the Dar Living Trust dated 2/12/03 | $50,000 |
| 99. | John A. M. Handal, a single man | $50,000 |
| 100. | MLH Family Investment Limited, a Texas company | $300,000 |
| 101. | Waldemar Hanslik & Katharina Hanslik Trustees of the Hanslik Family Trust dated 12/23/91 | $70,000 |
| 102. | Roger N. Havekost, a married man dealing with his sole & separate property | $50,000 |
| 103. | Helms Homes, LLC, a Nevada limited liability company | $200,000 |
| 104. | Terry Helms Trustee of the Terry Helms Living Trust dated 11/11/94 | $200,000 |
| 105. | Jay E. Henman Trustee of the Jay E. Henman Retirement Plan | $100,000 |
| 106. | Patricia A. Herrin & Terry W. Royder, wife & husband, as joint tenants with right of survivorship | $100,000 |
| 107. | Roy H. Hibdon & Oma C. Hibdon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 108. | Michael Hilgenberg & Shellie Hilgenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 109. | Maureen A. Hjelte & G. Craig Hjelte, husband & wife, as joint tenants with right of survivorship | $50,000 |

| | | |
|---|---|---|
| 110. | Fred Holland & Marjorie Holland Trustees of the Holland Family Trust dated 1993 | $50,000 |
| 111. | Jason L. Holt & Sally A. Holt, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 112. | Homfeld II, LLC, a Florida limited liability company | $200,000 |
| 113. | Earl Howsley, a married man dealing with his sole & separate property | $50,000 |
| 114. | Jack Humphry & Alice Humphry Trustees of the Humphry 1999 Trust | $75,000 |
| 115. | Leslie Irwin, a single woman | $50,000 |
| 116. | Evelyn A. Ives Trustee of the Mevin J. Ives & Evelyn A. Ives QTIP Trust | $150,000 |
| 117. | First Savings Bank Custodian for Mary Jellison, IRA | $100,000 |
| 118. | Everett H. Johnston Trustee of the Everett H. Johnston Family Trust dated 1/24/90 | $100,000 |
| 119. | Maurice Jones & Marlene Y. Jones Trustees of the Jones Family Trust dated 9/3/98 | $50,000 |
| 120. | William J. Kassel Trustee of the Kassel 1988 Trust | $50,000 |
| 121. | Christina M. Kehl, an unmarried woman | $200,000 |
| 122. | Kehl Development, an Iowa corporation | $500,000 |
| 123. | Kevin A. Kehl, a married man dealing with his sole & separate property | $150,000 |
| 124. | Krystina Kehl, a single woman | $500,000 |
| 125. | Robert J. Kehl & Ruth Ann Kehl, husband & wife, as joint tenants with right of survivorship | $2,000,000 |
| 126. | Carol A. Kelly, a single woman | $50,000 |
| 127. | Marsha Kendall Trustee of the David A. Gean Revocable Trust dtd 4/3/92 | $150,000 |
| 128. | Melvin W. Kerner Trustee of the Kerner Revocable Trust B dated 3/16/81 | $50,000 |
| 129. | Norma M. Kerner Trustee of the Eugene H. & Norma M. Stokes Trust dated 5/16/84 | $50,000 |
| 130. | Mildred P. Kesler Trustee of the Lindsey H. Kesler Family Revocable Trust dated 10/15/80 | $85,000 |
| 131. | Clawiter Associates, LLC, a California limited liability company | $50,000 |
| 132. | Dunham Trust Company Trustee of the Frederick W. Kewell IRA | $75,000 |
| 133. | Frederick W. Kewell Trustee of the Barbara J. Kewell Trust dated 7/18/89 | $50,000 |
| 134. | Frederick W. Kewell, II Trustee of the Kewell Living Trust dated 7/18/89 | $50,000 |
| 135. | Travis L. Killebrew & Lorna F. Killebrew, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 136. | Edward H. Kim, an unmarried man | $50,000 |
| 137. | Walter Klevay & Gail Klevay, husband & wife | $50,000 |
| 138. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $50,000 |
| 139. | Ronald Kreykes & Linda Kreykes, husband & wife, as tenants in common | $200,000 |
| 140. | Jester, LP, a Nevada limited partnership | $50,000 |
| 141. | Jor Law, a single man | $50,000 |
| 142. | James W. Lehr & Julie Anne Lehr, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 143. | Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | $60,000 |

31

| | | |
|---|---|---|
| 144. | Richard Glenn Leiby & Carol K. Leiby, Trustees of the Leiby Family 1992 Trust dated 7/8/92 | $50,000 |
| 145. | Bruce R. LeMar, an unmarried man | $50,000 |
| 146. | William H. Lenhart Trustee of the William H. Lenhart Living Trust | $50,000 |
| 147. | James H. Lidster & Phyllus M. Lidster Trustees of the James H. Lidster Family Trust dated 1/20/92 | $50,000 |
| 148. | Anna Lieblein, an unmarried woman & John Drakoules, an unmarried man | $100,000 |
| 149. | Steve Lindquist Trustee of the Steve Lindquist Charitable Remainder Unit Trust dated 9/9/96 | $60,000 |
| 150. | Edward G. Loughlin, an unmarried man & Thelma E. Guevara, an unmarried woman, as joint tenants with right of survivorship | $100,000 |
| 151. | R. Lance Loughlin, a married man dealing with his sole & separate property | $100,000 |
| 152. | Henri L. Louvigny & Marcelle A. Louvigny Co-Trustees of the Henry L. Louvigny & Marcelle A. Louvigny Family Trust dated 10/18/84 | $50,000 |
| 153. | B. Sue Luthi Trustee of the B. Sue Luthi Trust dated 7/9/97 | $50,000 |
| 154. | B & W Precast Construction, Inc., a California corporation | $200,000 |
| 155. | Edward D. Lynch, a single man | $100,000 |
| 156. | Thomas D. Lynch Trustee of The Thomas D. Lynch 1995 Revocable Living Trust | $100,000 |
| 157. | Terry Markwell Trustee of the Terry Markwell Profit Sharing Plan & Trust | $50,000 |
| 158. | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 159. | JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000 |
| 160. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 161. | James M. McConnell & M. Fay McConnell, husband & wife, as joint tenants with right of survivorship | $120,000 |
| 162. | J. Richard McMichael & Karen L. McMichael Trustees of the McMichael Living Trust dated 12/16/88 | $50,000 |
| 163. | William L. McQuerry Trustee of the McQuerry Family Partnership | $50,000 |
| 164. | Don D. Meyer, an unmarried man & Dennis E. Hein, an unmarried man as joint tenants with right of survivorship | $50,000 |
| 165. | Michaelian Holdings, LLC, a Nevada limited liability company | $50,000 |
| 166. | Gary A. Michelsen, an unmarried man | $100,000 |
| 167. | Patricia A. Middel Trustee of the Middel Separate Property Revocable Living Trust dated 11/7/00 | $50,000 |
| 168. | Robert D. Mierau & Sandra J. Mierau Trustees of the Mierau Living Trust dated 9/14/98 | $100,000 |
| 169. | Cynthia Milanowski Trustee of the Cynthia Milanowski Trust | $50,000 |
| 170. | Monighetti, Inc., a Nevada corporation | $150,000 |
| 171. | Wesley L. Monroe & Jeannie M. Monroe, joint tenants with right of survivorship | $100,000 |

| | | |
|---|---|---|
| 172. | Albert Montero Trustee of the Albert Montero Family Trust U/A dated 11/3/94 | $100,000 |
| 173. | William L. Montgomery, Jr., an unmarried man | $50,000 |
| 174. | James Michael Moore & Jody C. Moore, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 175. | Robert J. Moretto & Josephine Moretto Trustees of the Moretto Family Living Trust dated 9/19/94 | $50,000 |
| 176. | Adelaide Moschogianis, an unmarried woman & Christine Moschogianis, an unmarried woman | $50,000 |
| 177. | GSL Investments LLC, a Nevada Company | $50,000 |
| 178. | Elaine Mullin Trustee for the benefit of Elaine P. Mullin Trust dtd 8/6/90 | $50,000 |
| 179. | Denise A. Murphy, a single woman | $50,000 |
| 180. | Marvin Lynn Nicola Trustee of the Marvin Lynn Nicola Faimly Trust dated 6/13/78 | $50,000 |
| 181. | Olga O'Buch Trustee of the Olga O'Buch Trust dated 5/28/98 | $50,000 |
| 182. | Gary J. O'Hara & Janice D. O'Hara Co Trustees of the O'Hara Family Trust dated 2/26/93 | $70,000 |
| 183. | Douglas O'Herron & Nancy O'Herron Trustees of the Douglas & Nancy O'Herron Revocable Trust dated 4/2/02 | $50,000 |
| 184. | William W. Ogren & Betty R. Ogren, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 185. | Jennefer Cole Peele Trustee of the Peele Bypass Trust dated 2/10/87 | $50,000 |
| 186. | Michael Pezzano & Lisa Pezzano, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 187. | Phil L. Pfeiler & Loy E. Pfeiler, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 188. | Michael Eugene Pinney, a single man | $50,000 |
| 189. | Stephen Polacheck Trustee of the Polacheck & Associates, Inc. Profit Sharing Plan dated 2/20/73 | $100,000 |
| 190. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000 |
| 191. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 192. | Helmut O. Przystaw & Erika L. Przystaw, joint tenants with right of survivorship | $50,000 |
| 193. | Dennis Raggi, a married man dealing with his sole & separate property | $100,000 |
| 194. | Rains Properties, LP, a Nevada limited partnership | $350,000 |
| 195. | First Savings Bank FBO Robert E. Ray IRA | $100,000 |
| 196. | Elan Reddell Trustee of the Elan Reddell Revocable Living Trust dated 8/4/03 | $100,000 |
| 197. | Donald E. Redmon & Jaylyle Redmon Trustees of the Donald E. Redmon & Jaylyle Redmon Family Trust dated 10/31/95 | $50,000 |
| 198. | Orban H. Reich Trustee of the Orban H. Reich Trust dated 12/27/00 | $50,000 |
| 199. | Lawrence H. Reynolds & Jayne L. Reynolds, husband & wife, as joint tenants with right of survivorship | $60,000 |

33

| 200. | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $200,000 |
| 201. | Rachel Riehle, an unmarried woman | $50,000 |
| 202. | Nancy K. Rivard & David L. Olden Trustees of the Nancy Kathryn Rivard & David Lee Olden Trust dated 7/20/83 | $50,000 |
| 203. | Blair E. Roach & Barbara K. Roach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 204. | Robert W. Roberts & Donna R. Roberts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 205. | Alan Robinson & Gail Robinson, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 206. | Saul Roisentul & Ilene Roisentul Trustees of the Roisentul Family Trust | $75,000 |
| 207. | Crosbie B. Ronning, a single woman | $50,000 |
| 208. | Grable B. Ronning, an unmarried woman | $85,000 |
| 209. | Grable B. Ronning Trustee of the Bosworth 1988 Family Trust for the benefit of Eric Ronning dated 11/4/88 | $50,000 |
| 210. | Stuart J. Ross, a married man dealing with his sole & separate property & Heather Goolsby, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $60,000 |
| 211. | Robert J. Rossetter & Jane L. Rossetter, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 212. | Dr. Toya V. Russell, a single woman | $100,000 |
| 213. | Barbara M. Sanchez Trustee of The Barbara M. Sanchez 2002 Revocable Living Trust dated 4/4/02 | $50,000 |
| 214. | First Savings Bank Custodian For Randy Sanchez IRA | $50,000 |
| 215. | Randy M. Sanchez & Sharon Sanchez Trustees of the Sanchez Living Trust dated 10/13/03 | $50,000 |
| 216. | First Savings Bank Custodian for Karen E. Sass IRA | $50,000 |
| 217. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $300,000 |
| 218. | Edward Schreiber & Sally Schreiber Trustees of the Schreiber Family Trust | $55,000 |
| 219. | Alvina Agatha Sedlak Trustee of the Alvina Agatha Sedlak Living Trust dated 6/23/04 | $50,000 |
| 220. | Carey B. Sigmen & Lisa K. Sigmen Trustees of The Carey B. Sigmen & Lisa K. Sigmen Trust dated 3/3/97 | $50,000 |
| 221. | Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 222. | Emery T. Smith & Mary C. Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 223. | Robert D. Smith, an unmarried man & Jane Feld, an unmarried woman, as joint tenants with right of survivorship | $50,000 |
| 224. | Woodrow Smith & Mary Alyce Smith, as joint tenants with right of survivorship | $50,000 |

34

| | | |
|---|---|---|
| 225. | Bruce Sonnenberg & Rosemary Sonnenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 226. | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $80,000 |
| 227. | Clifton H. Spindle & Verna R. Spindle, husband & wife, as joint tenans with right of survivorship | $50,000 |
| 228. | Floyd M. Spindle, an unmarried man with transfer on death to A. Cherryl Sergeant | $100,000 |
| 229. | Stater Family Ltd Partnership | $250,000 |
| 230. | Neal J. Stehly & Kam E. Stehly Trustees of the Neal & Kam Stehly Family Trust dated 1/8/00 | $100,000 |
| 231. | Nicholas A. Steinmetz & Cynthia M. Steinmetz Trustees of the 2001 Steinmetz Family Trust | $50,000 |
| 232. | Nicole Steinmnetz, a single woman | $50,000 |
| 233. | Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpson Family Trust | $50,000 |
| 234. | Jacqueline S. Stroehmann, an unmarried woman | $50,000 |
| 235. | Leland K. Swanson & Lena M. Swanson Trustees of the Swanson Family Trust dated 9/14/94 | $60,000 |
| 236. | Michael Tarr, a single man | $50,000 |
| 237. | Gary N. Taylor Trustee of the Gary N. Taylor PSP | $100,000 |
| 238. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 239. | First Savings Bank Custodian For Louise Teeter IRA Rollover | $50,000 |
| 240. | Norman Teeter, a single man | $100,000 |
| 241. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 242. | John M. Tripp Trustee of the Tripp Family Trust 1997 | $50,000 |
| 243. | Augustine Tuffanelli Trustee of the Augustine Tuffanelli Family Trust dated 7/26/94 | $50,000 |
| 244. | Shirley Jean Tuffanelli Trustee of the Shirley Jean Tuffanelli Trust dated 6/18/91 | $50,000 |
| 245. | Louis H. Turner & Shirley M. Turner Trustees of the Louis H. & Shirley M. Turner Family Trust dated 9/9/97 | $50,000 |
| 246. | Turner Development, LLC, a California limited liability company | $100,000 |
| 247. | Robert W. Ulm, an unmarried man | $50,000 |
| 248. | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $100,000 |
| 249. | USA Commercial Mortgage | $913,000 |
| 250. | First Savings Bank Custodian for Peggy Ann Valley IRA | $90,000 |
| 251. | Jay C. McLaughlin & Peggy Ann Valley Trustees of the McLaughlin-Valley Trust dated 2/24/97 | $100,000 |
| 252. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $100,000 |
| 253. | Kenneth B. Van Woert Trustee of the Sheehan Van Woert Bigotti Architects 401(k) PSP & Trust dated 7/1/98 | $50,000 |

| | | |
|---|---|---|
| 254. | Kip E. Virts & Melissa A. Virts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 255. | Linda C. Vlautin Trustee of the Linda C. Vlautin Trust dated 10/31/01 | $50,000 |
| 256. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust dated 10/4/99 | $125,000 |
| 257. | Robert R. Wade & Shirley E. Wade, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 258. | John H. Warner, Jr. & Linda M. Warner Trustees of The Warner Family Trust dated 3/17/00 | $75,000 |
| 259. | First Trust Company of Onaga C/F Frank Wasko Beneficiary for Stephanie Wasko IRA | $62,000 |
| 260. | Dean Watson, a married man dealing with his sole & separate property | $50,000 |
| 261. | Donna Webb, a single woman | $50,000 |
| 262. | Ardis Weible & Dean F. Weible Co-Trustees of the Weible 1981 Trust dated 6/30/81 | $50,000 |
| 263. | John Austin Werthing, Sr. & Sallie Mae Werthing Trustees of the Werthing Senior Family Trust UAD 10/22/01 | $50,000 |
| 264. | Gerald W. Wickland & Irene F. Wickland Co-Trustees of the Wickland Family Trust dated 2/10/81 | $70,000 |
| 265. | William D. Wickland & Victoria R. Wickland, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 266. | Edna P. Wilson, a married woman & Sloan D. Wilson, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 267. | Albert Winemiller Inc. | $100,000 |
| 268. | Debra Ann Winemiller, a married woman dealing with her sole & separate property | $50,000 |
| 269. | Cynthia A. Winter, a married woman dealing with her sole & separate property | $100,000 |
| 270. | Jerry Woldorsky, a married man dealing with his sole & separate property | $50,000 |
| 271. | Richard Woldorsky, a single man | $50,000 |
| 272. | Richard D. Wood Trustee of the Wood Living Trust dated 10/1/99 | $90,000 |
| 273. | Melvin B. Wright & Susan D. Wright Trustees of the S.B. Wright Family Trust dated 12/28/94 | $50,000 |
| 274. | Kenneth H. Wyatt & Phyllis P. Wyatt Trustees of The Kenneth H. & Phyllis P. Wyatt Family Trust | $50,000 |
| 275. | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $100,000 |
| 276. | Joseph G. Zappulla & Carol A. Zappulla, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 277. | Zawacki, a California LLC | $100,000 |
| 278. | Teresa G. Zeller Trustee of the Teresa G. Zeller Trust | $50,000 |
| 279. | Franz J. Zimmer Trustee of the Franz J. Zimmer Revocable Trust dated 02/05/97 | $75,000 |
| 280. | Raymond J. Zurfluh, Jr. & Shirley J. Zurfluh, husband & wife, as joint tenants with right of survivorship | $65,000 |
| | TOTAL | $27,500,000 |

## EXHIBIT "B"

### DISBURSEMENT SCHEDULE

All advances after closing shall be made pursuant to Section 3.2 hereof. Month "X" means "X" months after closing. The amount allocated between interest and pre-development costs shall be as mutually agreed to by Borrower and Lender.

| DATE | INTEREST / PRE-DEVELOPMENT COSTS | INTEREST ON JUNIOR LOAN | TOTAL |
|------|------|------|------|
| Closing | $290,114 | $281,863 | $571,978 |
| Month 1 | $293,136 | $0 | $293,136 |
| Month 2 | $296,160 | $0 | $296,160 |
| Month 3 | $299,275 | $ 9,636 | $308,911 |
| Month 4 | $302,392 | $ 75,320 | $377,712 |
| Month 5 | $305,542 | $ 76,324 | $381,867 |
| Month 6 | $308,725 | $ 77,342 | $385,067 |
| Month 7 | $311,941 | $ 78,373 | $390,314 |
| Month 8 | $315,190 | $ 79,418 | $394,609 |
| Month 9 | $318,474 | $ 80,477 | $398,951 |
| Month 10 | $321,791 | $ 81,550 | $403,341 |
| Month 11 | $286,266 | $ 82,637 | $368,903 |
| | | | |
| TOTALS: | $3,649,037 | $922,941 | $4,571,979 |

Note: The principal disbursed at closing is not shown hereon.

37

## EXHIBIT "C"

### PERMITTED EXCEPTIONS

Items 1 and 2 (with all taxes paid current), and 3 and 4, as shown on that Commitment issued by Chicago Title Company under Title No. 04-31100930-KF dated October 28, 2004 at 7:30 a.m.

# EXHIBIT "D"

## DESCRIPTION OF REAL PROPERTY

Land situated in the County of Placer, State of California, and described as follows:

PARCEL ONE (APN: 023-200-010-000 and 023-200-012-000):

The South half of Section 10, Township 10 North, Range 5 East, M.D.B.M.

Excepting therefrom: beginning at a point located North 89° 27' East 1344.40 feet from the Southwest corner of said Section 10 and running thence North 89° 27' East 1658.80 feet; thence North 0° 10' West 2629.40 feet to the North line of the South half of said Section 10; thence along the said North line, North 89° 56' West 1643.20 feet; thence South 0° 10' West 2647.22 feet to a point of beginning.

PARCEL TWO (APN: 023-200-013-000):

The Southwest quarter of Section 11, Township 11 North, Range 5 East, M.D.B.M.

EXCEPTING from PARCEL ONE and PARCEL TWO described above any portion thereof lying within Sacramento County.

ALSO EXCEPTING from PARCEL ONE and PARCEL TWO described above, a one-half interest in and to all oil, gas and other minerals and mineral rights as reserved in the Deed from Moseley Land and Cattle Company recorded May 11, 1955, in Book 674 at page 520, Placer County Records, said rights also having been purported modified per that certain "Agreement" recorded October 4, 1961, in Book 893 at Page 330, Placer County Records which states as follows "the exception and reservation set forth in said grant deed particularly described in the foregoing recitals is hereby amended to read as follows: excepting and reserving however unto the grantor, its successors and/or assigns including lessees:

(A) an undivided one-half interest in and to all oil, gas and associated substances and all other mineral rights of every kind and description now or hereafter in or under recoverable from that portion of said lands below a depth of 200 feet beneath the present surface of said lands and:

(B) the perpetual right exclusively to occupy and use the surface and subsurface of the following described parcel of land (hereinafter referred to as "surface operational sites") comprising a portion of said lands to wit: a rectangular parcel of land each having its North and South boundaries 200 feet in length and its East and West boundaries 300 feet in length, said surface operational sites having center points the center of the Southwest quarter of Section 11.

Assessor's Parcel Numbers: 023-020-010, 012 and 013

# EXHIBIT C



When Recorded, Return To:
USA Commercial Mortgage Company
4484 South Pecos Road
Las Vegas, NV 89121

RECORDING REQUESTED BY:
CHICAGO TITLE CO.

PLACER, County Recorder
JIM MCCAULEY
**DOC- 2004-0169766**
Acct 3-CHICAGO TITLE
Monday, DEC 20, 2004 12:45:34
MIC  $12.00:AUT   $39.00:SBS   $35.00
REC  $47.00:ADD   $54.00:

Ttl Pd  $187.00           Nbr-0001204878
                          rec/SK/4-36

31100930 / 04-PHX-0105

# DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING ("Deed of Trust"), made this 10th day of December, 2004, by and between Placer County Land Speculators, LLC, a California limited liability company ("Trustor'), Chicago Title Company ("Trustee"), and those persons listed on **Exhibit "A"** attached hereto ("Beneficiary"). Capitalized terms used herein and not otherwise defined herein are used with the meanings set forth in that certain Loan Agreement ("Loan Agreement") of even date herewith between Trustor and Beneficiary.

## WITNESSETH:

That for good and valuable consideration, including the indebtedness herein recited and the trust herein created, the receipt of which is hereby acknowledged, and for the purpose of securing, in such priority as Beneficiary may elect, each of the following:

1.     The due, prompt and complete payment, observance, performance and discharge of each and every obligation, covenant and agreement contained in that certain Promissory Note of even date herewith in the initial principal amount of Twenty-Seven Million Five Hundred Thousand Dollars ($27,500,000) (the "Note"), together with interest thereon specified therein, executed by Trustor, as maker, to the order of Beneficiary and any and all modifications, extensions or renewals thereof, whether hereafter evidenced by the Note or otherwise; and

2.     The payment of all other sums, with interest thereon at the rate of interest provided for herein or in the Note, becoming due or payable under the provisions of this Deed of Trust, the Loan Agreement or any other instrument or instruments heretofore or hereafter executed by Trustor having reference to or arising out of or securing the indebtedness represented by the Note; and

3.     The payment of such additional sums and interest thereof which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, whether or not evidenced by a promissory note or notes which are secured by this Deed of Trust; and

4.     The due, prompt and complete observance, performance and discharge of each and

1

every obligation, covenant and agreement of Trustor contained in the Loan Agreement, the Note, this Deed of Trust or any other Loan Document; but notwithstanding the foregoing, this Deed of Trust does not secure the obligations of Thomas A. Hantges and Joseph D. Milanowski under that certain Unconditional Guaranty given in favor of Beneficiary and dated on or about the date hereof.

TRUSTOR DOES HEREBY irrevocably grant, transfer, bargain, sell, convey and assign to Trustee, in trust, with power of sale and right of entry and possession, and does grant to Beneficiary a security interest for the benefit and security of Beneficiary under and subject to the terms and conditions hereinafter set forth, in and to any and all of the following described property which is (except where the context otherwise requires) herein collectively called the "Mortgaged Property" whether now owned or held or hereafter acquired and wherever located, including any and all substitutions, replacements and additions to same:

(a)     That certain real property located in Placer County, State of California, and more particularly described in **Exhibit "B,"** attached hereto and incorporated herein by this reference, together with all of the easements, rights, privileges, franchises, appurtenances thereunto belonging or in any way appertaining to the real property, including specifically but not limited to all appurtenant water, water rights and water shares or stock of Trustor, any and all general intangibles relating to the use and/or development of the real property, including development allotments, governmental permits, approvals, authorizations and entitlements, agreements to provide necessary utility or municipal services, all engineering plans and diagrams, surveys and/or soil and substrata studies, and all other rights, privileges and appurtenances related to the said real property and all of the estate, right, title, interest, claim and demand whatsoever of Trustor therein or thereto, either in law or in equity, in possession or in expectancy, now owned or hereafter acquired (hereinafter referred to as the "Property");

(b)     All structures, buildings and improvements of every kind and description now or at any time hereafter located on the Property (hereinafter referred to as the "Improvements"), including all equipment, apparatus, machinery, fixtures, fittings, and appliances and other articles and any additions to, substitutions for, changes in or replacements of the whole or any part thereof, now or at any time hereafter affixed or attached to and which are an integral part of said structures, buildings, improvements or the Property or any portion thereof, and such Improvements shall be deemed to be fixtures and an accession to the freehold and a part of the Property as between the parties hereto and all persons claiming by, through or under such parties except that same shall not include such machinery and equipment of Trustor, its contractors or subcontractors, or any tenant of any portion of the Property or Improvements, which is part of and/or used in the conduct of the normal business of Trustor or its tenant conducted upon the Mortgaged Property, which is distinct and apart from the ownership, operation and maintenance of the Mortgaged Property.

(c)     All articles of tangible personal property and any additions to, substitutions for, changes in or replacements of the whole or any part thereof other than personal property which is or at any time has become toxic waste, waste products or hazardous substances (hereinafter referred to as the "Personal Property"), including without limitation all wall-beds, wall-safes, built-in furniture and installations, shelving, partitions, door-tops, vaults, elevators, dumb-waiters, awnings, window shades, venetian blinds, light fixtures, fire hoses and brackets and boxes for the same, fire

2

sprinklers, alarm systems, drapery rods and brackets, screens, water heaters, incinerators, wall coverings, carpeting, linoleum, tile, other floor coverings of whatever description, communication systems, all specifically designed installations and furnishings, office maintenance and other supplies and all of said articles of property, the specific enumerations herein not excluding the general, now or at any time hereafter placed upon or used in any way in connection with the ownership, operation or maintenance of the Property or the Improvements or any portion thereof and owned by Trustor or in which Trustor now has or hereafter acquires an interest, and all building materials and equipment now or hereafter delivered to the Property and intended to be installed or placed in or about the Improvements. Such tangible, personal property shall, in addition to all other tangible, personal property herein described or defined, specifically include each and every item of tangible, personal property and any substitutions for, changes in or replacements thereof which are used in the operation of the Improvements. Notwithstanding the breadth of the foregoing, the Personal Property shall not include (i) personal property which may be owned by lessees or other occupants of the Mortgaged Property; (ii) inventory of any lessee or occupant of the Mortgaged Property used in the normal course of the business conducted thereon; (iii) material, equipment, tools, machinery, or other personal property which is brought upon the Mortgaged Property only for use in construction, maintenance or repair and which is not intended to remain after the completion of such construction, maintenance or proper maintenance, of the Mortgaged Property; or (iv) such items of tangible personal property which have not been purchased or installed with proceeds of the Note and for which Beneficiary shall have executed such documents as may be required to subordinate to the lien or security interest of any purchase money lender or supplier of such tangible personal property;

(d)    All right, title and interest of Trustor, now owned or hereafter acquired in and to and lying within the right-of-way of any street, road, alley or public place, opened or proposed, vacated or extinguished by law or otherwise, and all easements and rights of way, public or private, tenements, hereditaments, appendages, rights and appurtenances how or hereafter located upon the Property or now or hereafter used in connection with or now or hereafter belonging or appertaining to the Property; and all right, title and interest in the Trustor, now owned or hereafter acquired, in and to any strips and gores adjoining or relating to the Property;

(e)    All judgments, awards of damages, settlements and any and all proceeds derived from such hereafter made as a result of or in lieu of any taking of the Mortgaged Property or any part thereof, interest therein or any rights appurtenant thereto under the power of eminent domain, or by private or other purchase in lieu thereof, or for any damage (whether caused by such taking or otherwise) to the Mortgaged Property or the Improvements thereon, including change of grade of streets, curb cuts or other rights of access for any public or quasi-public use or purpose under any law;

(f)    All rents, incomes, issues and profits, revenues, royalties, bonuses, rights, accounts, contract rights, insurance policies and proceeds thereof, general intangibles and benefits of the Mortgaged Property, or arising from any lease or similar agreement pertaining thereto (the "Rents and Profits"), and all right, title and interest of Trustor in and to all leases of the Mortgaged Property now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their

3

obligations thereunder, whether said cash or securities are to be held until the expiration of the terms of said leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of said terms with the right to receive and apply the same to said indebtedness, and Trustee or Beneficiary may demand, sue for and recover such payments but shall not be required to do so; and

(g)    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims.

Trustor makes the foregoing grant to Trustee for the purposes herein set forth; provided, however, that if the Trustor shall pay or cause to be paid to the holder of the Note all amounts required to be paid under the provisions of the Note, this Deed of Trust or any other Loan Documents, and at the time and in the manner stipulated therein, and shall further pay or cause to be paid all other sums payable hereunder and all indebtedness hereby secured, then, in such case, the estate, right, title and interest of the Trustee and Beneficiary in the Mortgaged Property shall cease, determine and become void, and upon proof being given to the satisfaction of the Beneficiary that all amounts due to be paid under the Note have been paid or satisfied, and upon payment of all fees, costs, charges, expenses and liabilities chargeable or incurred or to be incurred by Trustee or Beneficiary, and of any other sums as herein provided, the Trustee shall, upon receipt of the written request of the Beneficiary, cancel, reconvey and discharge this Deed of Trust.

TO HAVE AND TO HOLD THE MORTGAGED PROPERTY UNTO THE TRUSTEE ITS SUCCESSORS AND ASSIGNS FOREVER, ALL IN ACCORDANCE WITH THE PROVISIONS HEREOF.

## ARTICLE 1
### TRUSTOR'S COVENANTS

Trustor covenants, warrants and agrees with Trustee and Beneficiary as follows:

1.1    <u>Payment of Note</u>. Trustor shall pay the principal and interest and other sums coming due with respect to the Note, this Deed of Trust or any of the Loan Documents at the time and place in the manner specified in and according to the terms thereof.

1.2    <u>Title</u>. The Trustor warrants that:

(a)    Trustor has good and marketable title to an indefeasible fee simple estate in the Property described in **Exhibit "B"**, subject only to those liens, charges or encumbrances set forth as Permitted Exceptions in the Loan Agreement; that Trustor has full power and authority to grant, bargain, sell and convey the Mortgaged Property in the manner and form herein done or intended hereafter to be done; that this Deed of Trust is and shall remain a valid and enforceable lien on the Mortgaged Property subject only to the Permitted Exceptions; that Trustor and its successors and assigns shall preserve its title and interest in and title to the Mortgaged Property and shall forever warrant and defend the same and shall warrant and defend the validity and priority of the lien thereof forever against all claims and demands of all persons whomsoever, and that this

4

covenant shall not be extinguished by any exercise of power of sale or foreclosure sale hereof, but shall run with the land; and

(b)     Trustor has and shall maintain good and marketable title to the Improvements and Personal Property, including any additions or replacements thereto, free of all security interests, liens and encumbrances, if any, except as set forth as Permitted Exceptions in the Loan Agreement, or as otherwise disclosed to and accepted by Beneficiary in writing, and has good right to subject Improvements and Personal Property to the security interest created hereunder. If the lien of this Deed of Trust on any Improvements or Personal Property be subject to a lease agreement, conditional sale agreement or chattel mortgage covering such property, then in the event of any default hereunder all the rights, title and interest of the Trustor in any and all deposits made thereon or therefor are hereby assigned to the Trustee, together with the benefit of any payments now or hereafter made thereon. There is also transferred, set over and assigned by Trustor to Trustee, its successors and assigns, hereby all of Trustor's right, title and interest in and to the Project Documents, and all leases and use agreements of machinery, equipment and other personal property of Trustor in the categories hereinabove set forth, under which Trustor is the lessee of, or entitled to use such items, and Trustor agrees to execute and deliver to Trustee or Beneficiary all such Project Documents, leases and agreements when requested by Trustee or Beneficiary. Trustor hereby covenants and agrees to well and punctually perform all covenants and obligations under such Project Documents, leases or agreements as it so chooses, but nothing here n shall obligate Trustee or Beneficiary to perform any obligations of Trustor under such Project Documents, leases or agreements unless Trustee or Beneficiary shall so choose; and

(c)     Trustor will, at its own cost without expense to Trustee or Beneficiary, do, execute, acknowledge and deliver all and every such further act, deed, conveyance, mortgage, assignment, notice of assignment, transfer and assurance as Trustee or Beneficiary shall from time to time reasonably require for the better assuring, conveying, assigning, transferring and confirming unto Trustee and Beneficiary the property and rights hereby conveyed or assigned or intended now or thereafter so to be, or which Trustor may be or hereafter become bound to convey or assign to Beneficiary for the intention of facilitating the performance of the terms of this Deed of Trust or for the filing, registering, perfecting or recording of this Deed of Trust and any other Loan Document and, on demand, Trustor will execute, deliver and file or record one or more financing statements, chattel mortgages or comparable security instruments more effectively evidencing the lien hereof upon the Personal Property.

1.3    Business Existence. Trustor shall do all things necessary to preserve and keep in full force and effect its rights and privileges to do business and to conduct its business in the State of California, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental authority or court applicable to the Trustor.

1.4    Payment of Taxes, Assessments, Insurance Premiums and Charges. Trustor shall pay, prior to delinquency, all insurance premiums that become due and payable on any insurance policies required to be maintained hereunder, all taxes, assessments, charges and levies imposed by any Governmental Agency which are or may become a lien affecting the Property or any part thereof, including without limitation assessments on any appurtenant water stock; except that

5

Trustor shall not be required to pay and discharge any tax, assessment, charge or levy that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited.

1.5     Maintenance and Repair.  The Trustor shall, at its sole cost and expense, keep the Mortgaged Property in good operating order, repair and condition and shall not commit or permit any waste thereof, which condition, during the course of any construction or reconstruction of the Improvements, shall be subject to the normal constraints and effects of construction or reconstruction. Trustor shall make all repairs, replacements, renewals, additions and improvements and complete and restore promptly and in good workmanlike manner any Improvements which may be damaged or destroyed thereon, and pay when due all costs incurred therefor. Trustor shall not remove or demolish any of the Mortgaged Property conveyed hereby, nor demolish or materially alter the Mortgaged Property without the prior written consent of the Beneficiary. Trustor shall permit Trustee or Beneficiary or its agents the opportunity to inspect the Mortgaged Property, including the interior of any structures, at any reasonable times upon twenty-four (24) hours telephonic notice.

1.6     Compliance with Laws.  The Trustor shall comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Mortgaged Property or the operation thereof, and shall pay all fees or charges of any kind in connection therewith; except that Trustor shall not be required to pay and discharge any fee or charge that is being actively contested in good faith by appropriate proceedings, as long as Trustor has established and maintains reserves adequate to pay any liabilities contested pursuant to this Section in accordance with generally accepted accounting principles, and, by reason of nonpayment, none of the Mortgaged Property covered by the Loan Documents or the lien or security interest of Beneficiary is in danger of being lost or forfeited.

1.7     Insurance.  Trustor shall be responsible to provide, maintain and keep in force or to cause to be maintained or kept in force, all policies of insurance on the Mortgaged Property as required by the Loan Agreement.

1.8     Casualty.  The Trustor will give the Beneficiary prompt notice of damage to or destruction of any Improvements on the Property and in case of loss covered by policies of insurance, the Beneficiary is hereby authorized to make proof of loss if not made promptly by the Trustor or any lessee. Any expenses incurred by the Beneficiary in the collection of insurance proceeds, together with interest thereon from date of any such expense at the per annum interest rate set forth in the Note shall be added to and become a part of the indebtedness secured hereby and all be reimbursed to the Beneficiary, together with accrued interest thereon, no later than seventy-two (72) hours after demand therefor.  Upon the occurrence of damage to or destruction of any Improvements, if Beneficiary shall so elect in its sole and unfettered discretion, the Beneficiary shall make the net proceeds of insurance available for repair, restoration and/or reconstruction under the conditions and in the manner specified in the following paragraph. If Beneficiary shall otherwise

6

rights and powers of Trustee or Beneficiary. Trustor shall, at all times, indemnify, hold harmless and on demand reimburse Beneficiary for any and all loss, damage, reasonable expense or cost, including cost of evidence of title and reasonable attorneys fees, arising out of or incurred in connection with any such suit, action or proceeding, and the sum of such expenditures shall be secured by this Deed of Trust and shall accrue interest at the "Default Rate" as that term is defined in the Note and shall be due and payable on demand. Trustor shall pay costs of suit, cost of evidence of title and reasonable attorneys' fees in any proceeding or suit brought by Trustee or Beneficiary to foreclose this Deed of Trust.

      1.11    Sale of Premises or Additional Financing Not Permitted. Trustor specifically agrees that:

      (a)    In order to induce Beneficiary to make the loan secured hereby, Trustor agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold, assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Trustor whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Beneficiary, then Beneficiary, at its option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Trustor shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Trustor shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Trustor is a substantial and material consideration to Beneficiary in its agreement to make the loan to Trustor secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Beneficiary's security for the indebtedness secured hereby. Moreover, Beneficiary has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Beneficiary's security if junior financing, except as shall be permitted by Beneficiary, or if other liens or encumbrances should attach to the Mortgaged Property.

      (b)    Trustor may request Beneficiary to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Trustor under the Loan Documents (the "Purchaser"). Beneficiary shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Beneficiary may impose limiting conditions and requirements to its consent to an assumption.

      (c)    In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Trustor, the Beneficiary may deal with such successor or successors in interest with reference to the Note or this Deed of Trust in the same manner as with Trustor, without in any way releasing, discharging or otherwise affecting the liability of Trustor under the Note, this Deed of Trust or the other Loan Documents. No sale of Trustor's

8

interest in the Mortgaged Property, no forbearance on the part of Beneficiary, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Beneficiary shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Trustor herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Trustor's obligations under the Note, this Deed of Trust and all other Loan Documents. In the event such deed shall not contain such assumption, Beneficiary shall have all rights reserved to it hereunder in the event of a default or if Beneficiary shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to this Deed of Trust. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 1.11(a).

1.12    Transfer of Personal Property. Trustor shall not voluntarily, involuntarily or by operation of law sell, assign, transfer, hypothecate, pledge or otherwise dispose of the Personal Property or any interest therein and shall not otherwise do or permit anything to be done or occur that may impair the Personal property as security hereunder, except that so long as this Deed of Trust is not in default, Trustor shall be permitted to sell or otherwise dispose of the Personal Property when absolutely worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property or in the conduct of the business of Trustor, upon replacing the same or substituting for the same other Personal Property at least equal in value to the initial value of that disposed of and in such a manner so that said Personal Property is sold in connection with the sale of the Property.

1.13    Title to Replacements and Substitutions. All right, title and interest of Trustor in and to all extensions, improvements, betterments, renewals, substitutes and replacements of, and all additions and appurtenances to the Personal Property, Improvements or the Mortgaged Property hereafter acquired by or released to Trustor or constructed, assembled or placed by Trustor on the Mortgaged Property, and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assembling, placement or conversion, as the case may be, and in each such case, without any further deed of trust, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Deed of Trust as fully and completely, and with the same effect and in the same priority as the lien of this Deed of Trust shall have attached to the item so replaced or substituted immediately prior to such replacement of substitutions, as though now owned by Trustor and specifically described in the granting clause hereof, but at any and all times Trustor will execute and deliver to Trustee any and all such further assurances, deeds of trust, conveyances or assignments thereof as Trustee or Beneficiary may reasonably require for the purpose of expressly and specifically subjecting the same to the lien of this Deed of Trust.

1.14    Security Agreement. This Deed of Trust shall be self-operative and shall constitute a security agreement for purposes of the California and Nevada Uniform Commercial Codes with respect to all of those portions of the Mortgaged Property which constitute personal property or fixtures governed by the California or Nevada Uniform Commercial Codes, provided, however, Trustor hereby agrees to execute and deliver on demand and hereby irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor (such power coupled with an interest) to execute,

9

deliver and, if appropriate, to file such agreement, financing statement or other instruments as Beneficiary may request or require in order to impose or perfect the lien or security interest hereof more specifically thereon. Notwithstanding the above, this Deed of Trust is intended to serve as a fixture filing pursuant to the terms of the California and Nevada Uniform Commercial Codes. This filing is to be recorded in the real estate records in the county in which the Mortgaged Property is located. In that regard, the following information is provided:

| | |
|---|---|
| Name of Debtor: | Trustor |
| Address of Debtor: | See Section 5.12 |
| Name of Secured Party: | Beneficiary |
| Address of Secured Party: | See Section 5.12 |

1.15    Management. The Trustor agrees that the Beneficiary shall have and reserves the right to install professional management of the Mortgaged Property upon the occurrence of an Event of Default as defined herein. Such installation shall be at the sole discretion of the Beneficiary and nothing herein shall obligate the Beneficiary to exercise its right to install professional management. The cost of such management shall be borne by Trustor and shall be treated as an Advance under Section 1.16. Nothing contained herein shall limit Beneficiary's rights in equity to obtain a receiver for the Mortgaged Property.

1.16    Advances. If Trustor shall fail to perform any of the covenants herein contained or contained in any other Loan Document, the Beneficiary may, but is not obligated to, pay any and all amounts necessary to perform same or cause same to be performed on behalf of Trustor, and all sums so expended by Beneficiary for payment of any item whatsoever, including, but not by limiting the generality of the foregoing, payment of taxes, insurance premiums, lien claimants or assessments shall be secured by this Deed of Trust and each such payment shall be and all such payments shall be collectively referred to herein as an "Advance." The Trustor shall repay to Beneficiary on demand each and every Advance and the sum of each such Advance shall accrue interest at the Default Rate, as that term is defined in the Note, from the date of each Advance until repaid to Beneficiary. Nothing herein contained, including the payment of such amount or amounts by Beneficiary, shall prevent any such failure to perform on the part of Trustor from constituting an Event of Default as defined herein. Any such advance shall be deemed made under an obligation to do so.

1.17    Time. The Trustor agrees that time is of the essence hereof in connection with all obligations of the Trustor herein, in the Note or any other Loan Documents.

1.18    Estoppel Certificates. The Trustor within ten (10) days after written request shall furnish a duly acknowledged written statement setting forth the amount of the debt secured by this Deed of Trust, and stating either that no setoffs or defenses exist against the Deed of Trust debt, or, if such setoffs or defenses are alleged to exist, the nature thereof.

10

thereof, and with or without judicial process to the extent permitted by law, enter upon any premises on which the Personal Property or any part thereof, may be situated and remove the same therefrom without being deemed guilty of trespass and without liability for damages thereby occasioned, or at Beneficiary's option Trustor shall assemble the Personal Property and make it available to the Beneficiary at the place and the time designated in the demand. Beneficiary shall be entitled to hold, maintain, preserve and prepare the Personal Property for sale. Beneficiary, without removal of the Personal Property from the Mortgaged Property, may render the Personal Property inoperable and dispose of the Personal Property on the Mortgaged Property. To the extent permitted by law, Trustor expressly waives any notice of sale or other disposition of the Personal Property and any other right or remedy of Beneficiary existing after default hereunder, and to the extent any such notice is required and cannot be waived, Trustor agrees that as it relates to this Section 3.6 only, if such notice is mailed, postage prepaid, to the Trustor at the address set forth in Section 5.12 hereof at least ten (10) days before the time of the sale or disposition, such notice shall be deemed reasonable and shall fully satisfy any requirement for giving of said notice.

3.7    Foreclosure.    All rights, powers and privileges granted to or conferred upon a beneficiary and trustee under a deed of trust in accordance with the laws of the State of California are hereby adopted and incorporated into this Deed of Trust by this reference and in accordance with such rights, powers and privileges:

(a)    The Trustee may, and upon the written request of Beneficiary shall, with or without entry, personally or by its agents or attorneys insofar as applicable pursuant to and in accordance with the laws of California:

(i)    subject to the provisions of the Loan Agreement, cause any or all of the Mortgaged Property to be sold under the power of sale granted by this Deed of Trust or any of the other Loan Documents in any manner permitted by applicable law. For any sale under the power of sale granted by this Deed of Trust, Trustee or Beneficiary must record and give all notices required by law and then, upon the expiration of such time as is required by law, may sell the Mortgaged Property, and all estate, right, title, interest, claim and demand of Trustor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property (and, to the extent permitted by applicable law, may elect to deem all of the Mortgaged Property to be real property for purposes thereof), and at such time or place and upon such terms as Trustee and Beneficiary may determine and shall execute and deliver to the purchaser or purchasers thereof a deed or deeds conveying the property sold, but without any covenant or warranty, express or implied, and the recitals in the deed or deeds of any facts affecting the regularity or validity of a sale will be conclusive against all persons. In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Deed of Trust shall continue as a lien and security interest on the remaining portion of the Mortgaged Property; or

14

(ii)    institute proceedings for the complete or partial foreclosure of this Deed of Trust as a mortgage; and in this connection Trustor does hereby expressly waive to the extent permitted by law its right of redemption after a mortgage foreclosure sale; or

(iii)    apply to any court of competent jurisdiction for the appointment of a receiver or receivers for the Mortgaged Property and of all the earnings, revenues, rents, issues, profits and income thereof, which appointment is hereby consented to by Trustor; or

(iv)    take such steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Note or in this Deed of Trust, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Beneficiary shall select.

(b)    The Trustee may adjourn from time to time any sale by it made under or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or sales and, except as otherwise provided by any applicable provision of law, the Trustee without further notice or publication, may make such sale at the time and place to which the sale shall be so adjourned.

(c)    Upon the completion of any sale or sales made by the Trustee under or by virtue of this Section, the Trustee shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying assigning and transferring all estate, right, title and interest in and to the property and rights sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof to the extent permitted by law. Any such sale or sales made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Trustor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against the Trustor and against any and all persons claiming or who may claim the same, or any part thereof from through or under the Trustor.

(d)    In the event of any sale made under or by virtue of this Section whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the entire principal of and interest on the Note and all accrued interest on the Note, and all other sums required to be paid by the Trustor pursuant to the Note and this Deed of Trust shall be due and payable, anything in the Note or in this Deed of Trust to the contrary notwithstanding.

(e)    Upon any sale made under or by virtue of this Section, whether made under the power of sale herein granted or granted in accordance with the laws of the state in which the

15

loss, cost, liability and expense.

4.2    Substitution of Trustee. From time to time with or without cause for whatever reason, by a writing signed and acknowledged by Beneficiary and filed for record in the Office of the Recorder of the County in which the Mortgaged Property is situated, Beneficiary may appoint another trustee to act in the place and stead of Trustee or any successor and such writing shall refer to this Deed of Trust and set forth the date, book and page of its recordation. The recordation of such instrument of substitution shall discharge trustee herein named and shall appoint the new trustee as the Trustee hereunder with the same effect as if originally named Trustee herein. A writing recorded pursuant to this paragraph shall be conclusive proof of the proper substitution of such new trustee.

4.3    Trustee's Powers. At any time, or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of the Note secured hereby, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of said Mortgaged Property, Trustee may (i) reconvey any part of said Mortgaged Property, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement or any agreement subordinating the lien or charge hereof.

4.4    Reconveyance of Trust. Upon written request of Beneficiary stating that all sums secured hereby have been paid and upon surrender to Trustee of this Deed of Trust and the Note or notes secured hereby for cancellation and retention and payment of its fees, Trustee shall reconvey, without warranty, the Mortgaged Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

4.5    Indemnification of Trustee. Trustee may rely on any document believed by him in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, but need not be segregated (except to the extent required by law), and Trustee shall not be liable for interest thereon. Trustor shall indemnify Trustee against all liability and expenses that he may incur in the performance of his duties hereunder, except for its own negligence.

## ARTICLE 5
## MISCELLANEOUS

5.1    Non-Waiver. By accepting payment of any sum secured hereby after its due date or by accepting late performance of any obligation secured hereby, Beneficiary shall not waive its right against any person obligated directly or indirectly hereunder or on any indebtedness hereby secured, either to require prompt payment when due of all other sums so secured or to declare a default for failure to make payment except as to such payment accepted by Beneficiary. No exercise of any right or remedy by Trustee or Beneficiary hereunder shall constitute a waiver of any other right or remedy herein contained or provided by law. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy accruing hereunder or arising otherwise shall impair

18

any such right, power or remedy, or be construed to be a waiver of any default or acquiescence therein. Receipts of rents, awards, and any other monies or evidences thereof, pursuant to the provisions of this Deed of Trust and any disposition of the same by Trustee or Beneficiary shall not constitute a waiver of the power of sale or right of foreclosure by Trustee or Beneficiary in the event of a default or failure of performance by Trustor of any covenant or agreement contained herein or the Note secured hereby.

5.2    Right to Release. Without affecting the liability of any other person for the payment of any indebtedness herein mentioned (including Trustor should it convey said Mortgaged Property) and without affecting the lien or priority hereof upon any property not released, Beneficiary may, without notice, release any person so liable, extend the maturity or modify the terms of any such obligation, or grant other indulgences, release or reconvey or cause to be released or reconveyed at any time all or any part of the Mortgaged Property, take or release any other security or make compositions or other arrangements with debtors. Beneficiary may also accept additional security, either concurrently herewith or hereafter, and sell same or otherwise realize thereon either before, concurrently with, or after sale hereunder.

5.3    Protection of Security. Should Trustor fail to make any payment or to perform any covenant as herein provided, Beneficiary (but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof) may: (i) make or do the same in such manner and to such extent as Beneficiary may deem necessary to protect the security hereof, Beneficiary being authorized to enter upon the Mortgaged Property for such purposes; (ii) commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary; and/or (iii) pay, purchase, contest, or compromise any encumbrance, charge or lien which in the judgment of Beneficiary is prior or superior hereto and, in exercising any such power, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title and reasonable attorneys' fee. Any expenditures in connection herewith shall be deemed an Advance and shall constitute part of the indebtedness secured by this Deed of Trust

5.4    Rules of Construction. When the identity of the parties hereto or other circumstances make it appropriate, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The headings of each article, section or paragraph are for information and convenience only and do not limit or construe the contents of any provision hereof.

5.5    Severability. If any term of this Deed of Trust or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this Deed of Trust, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Deed of Trust shall be valid and enforceable to the fullest extent.

5.6    Successors in Interest. This Deed of Trust applies to, inures to the benefit of, and is binding not only on the parties hereto, but on their heirs, executors, administrators, successors and assigns. All obligations of Trustor hereunder are joint and several. The term "Beneficiary" shall mean the holder and owner, including pledges, of the Note secured hereby, whether or not named

19

as Beneficiary herein and any owner or holder of the beneficial interest under this Deed of Trust.

   5.7    Governing Law; Jurisdiction; Waiver of Jury Trial.

      (a)    This Deed of Trust shall be construed according to and governed by the laws of the State of Nevada excepting the provisions in Articles 3.6, 3.7 and 3.8 governing the remedy of foreclosure, which shall be governed by the laws of the State of California.

      (b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 5.12 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

      (c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

   5.8    Modifications.  This Deed of Trust may not be amended, modified or changed nor shall any waiver of any provision hereof be effective, except only by an instrument in writing and signed by the party against whom enforcement of any waiver, amendment, change, modification or discharge is sought.

5.9    No Merger. If both the Lessor's and Lessee's estates under any lease or any portion thereof which constitutes a part of the Mortgaged Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger, and, in such event, Beneficiary shall continue to have and enjoy all of the rights and privileges of Beneficiary as to the separate estates. In addition, upon the foreclosure of the lien created by this Deed of Trust on the Mortgaged Property pursuant to the provisions hereof, any leases or subleases then existing shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless Beneficiary or any purchaser at any such foreclosure sale shall so elect. No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall have given written notice thereof to such tenant or subtenant.

5.10    Attorneys' Fees. If Beneficiary reasonably incurs any costs or expenses, including attorneys' fees, for any of the following relating to this Deed of Trust (or any other instrument evidencing or securing this loan): (a) the interpretation, performance or enforcement thereof; (b) the enforcement of any statute, regulation or judicial decision; (c) any collection effort; or (d) any suit or action for the interpretation, performance or enforcement thereof is commenced or defended, or, if any other judicial or nonjudicial proceeding is instituted by Beneficiary or any other person, and an attorney is employed by Beneficiary to appear in any such action or proceeding, or to reclaim, seek relief from a judicial or statutory stay, sequester, protect, preserve or enforce Beneficiary's interest in this Deed of Trust or any other security for the Note, including but not limited to proceedings under federal bankruptcy law, in eminent domain, under the probate code, or in connection with any state or federal tax lien, then Trustor agrees to pay the reasonable attorneys' fees and costs thereof. Such fees and costs shall be added to the principal of the Note and shall bear interest at the Default Rate. The foregoing notwithstanding, in any action commenced by Trustor or Beneficiary against the other to enforce the provisions of this Deed of Trust or any other instrument evidencing or securing this loan, the prevailing party of such action shall be entitled to recover its reasonable attorneys' fees (as set forth above) from the non-prevailing party and the non-prevailing party shall not be entitled to recover its attorneys' fees.

5.11    Conflict. If the term of any other Loan Document, except the Note, shall be in conflict with this Deed of Trust, then this Deed of Trust shall govern to the extent of the conflict. If the term of this Deed of Trust shall be in conflict with the Note, the Note will then govern to the extent of the conflict.

5.12    Notices. All notices to be given pursuant to this Deed of Trust shall be sufficient if given by personal service, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

21

TRUSTOR'S ADDRESS:               Placer County Land Speculators, LLC
                                 4484 South Pecos Road
                                 Las Vegas, Nevada 89121
                                 Attn. Joseph D. Milanowski

BENEFICIARY'S ADDRESS:           c/o USA Commercial Mortgage Company
                                 4484 South Pecos Road
                                 Las Vegas, Nevada 89121
                                 Attn. Thomas Rondeau

     5.13    <u>Request for Notice of Default</u>. Trustor requests that a true and correct copy of any notice of default and any notice of sale be sent to Trustor at the address set forth in Section 5.12 hereof.

     5.14    <u>Late Charges</u>. As set forth and defined in the Note, there shall be due to Beneficiary a Late Charge of five percent (5%) of the amount of any payment which is received by Beneficiary so as to incur a Late Charge, and all such Late Charges are secured hereby.

     5.15    <u>Statutory Covenants</u>. Where not inconsistent with the above, the following covenants, Nos. 1; 2 (full replacement value); 3; 4 (twenty percent [20%] per annum); 5; 6; 7 (a reasonable percentage); 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

     5.16    <u>Non-Assumption</u>. Notice is hereby given that Trustor's obligations under this Deed of Trust may not be assumed except as permitted by Section 1.11 hereof. Unless otherwise provided herein, any transfer of Trustor's interest in the Mortgaged Property or any attempted assumption of Trustor's obligations under the Deed of Trust not so approved shall constitute a default hereunder and shall permit Beneficiary to accelerate the Maturity Date of the Note. Reference to applicable sections of the Loan Documents must be made for the full text of such provisions

     5.17    <u>Review of Covenants, Conditions and Restrictions</u>. No covenant, condition or restriction or any rule or regulation or any other document or agreement, however, denominated, which shall purport to apply to the ownership, operation, maintenance or governance of the Mortgaged Property or any part thereof, nor any article of incorporation bylaw or any other document or agreement, however denominated, which shall purport to establish an organization for the operation, maintenance of governance of the Mortgaged Property or any part thereof, shall be approved, executed and/or recorded without the express prior written consent of Beneficiary.

     5.18    <u>Loan Agreement</u>. Performance of Trustor's obligations under that certain Loan Agreement of even date herewith by and between Trustor and Beneficiary are secured by this Deed of Trust, and a default thereunder shall constitute an Event of Default under this Deed of Trust.

     5.19    <u>Partial Releases of Lots and Units</u>. So long as no Event of Default has occurred and is continuing, Beneficiary shall release individual or multiple Lots (whether or not said Lot(s) contain a home on them) from the lien and operation of the Deed of Trust upon satisfaction in Lender's sole discretion of the following requirements:

22

(a)     Trustor pays to Beneficiary 135% of the par value of the property to be released,

(b)     Trustor pays all costs and expenses in connection with such release and reconveyance,

(c)     Beneficiary shall have obtained a form CLTA 111 endorsement to its lender's policy of title insurance, and if requested by Beneficiary, an endorsement insuring that the partial reconveyance does not constitute a violation of the California Subdivision Map Act, all at the cost and expense of Trustor; and

(d)     for the release of the last parcel remaining subject to the lien of this Deed of Trust, the total amount of the indebtedness secured hereby shall be reduced to zero, and all obligations secured hereby shall be performed in full.

The term "par value" as used herein is defined as:

$PV = 1.35 \times \{(P \div A) \times RA\}$, where PV = par value; P = the total purchase price of the Real Property; A = the total acreage of the Real Property; and RA = the acreage of the released parcel.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be signed as of the date first above written.

TRUSTOR:          Placer County Land Speculators, LLC
                  By: USA Investors II, LLC, Manager
                  By: USA Investment Partners, LLC, its Manager


                  By: _____
                      Joseph D. Milanowski, Manager

23

STATE OF NEVADA        )
                       )ss
COUNTY OF CLARK        )

On December 14, 2004, before me, Lynda Stewart, a Notary Public, personally appeared Joseph D. Milanowski, personally known to me, and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public



LYNDA STEWART
Notary Public, State of Nevada
Appointment No. 94-5312 1
My Appt. Expires Feb. 4, 2007

24

# EXHIBIT "A"

## LENDERS

| | Names | Amount |
|---|---|---|
| 1. | Premiere Holdings Inc. Defined Benefit Pension Plan & Trust | $50,000 |
| 2. | Wara L.P., a Pennsylvania limited partnership | $100,000 |
| 3. | Arthur V. Adams Trustee of the Arthur V. Adams Trust dated 9/12/97 | $50,000 |
| 4. | Kenneth Addes & Victoria Addes,Co-Trustees of the Addes Trust | $100,000 |
| 5. | Stanley Alexander Trustee of the Stanley Alexander Trust | $100,000 |
| 6. | Alvin L. Allen & Valerie Allen, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 7. | Robert L. And Donna L. Allgeier Trustees of the R.L. Allgeier Family Trust dated 10/4/97 | $50,000 |
| 8. | Arnold Alves & Agnes Alves Trustees of the Alves Family Trust dated 10/27/89 | $100,000 |
| 9. | Charles B. Anderson Trustee of the Charles B. Anderson Trust | $200,000 |
| 10. | First Savings Bank Custodian for Larry H. Anderson IRA | $300,000 |
| 11. | Rita P. Anderson Trustee FBO Rita P. Anderson Trust | $100,000 |
| 12. | Steven K. Anderson Trustee of the Steven K. Anderson Family Trust dated 6/30/94 | $50,000 |
| 13. | Joan M. Arends Trustee of the Arends Family Trust | $50,000 |
| 14. | William P. Austin & Mary Lee Austin, as joint tenants with right of survivorship | $50,000 |
| 15. | Gemini 5 Family Limited Partnership, Darrin Badger General Partner | $500,000 |
| 16. | Stanley J. Baldwin & Patricia A. Baldwin, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 17. | Pedro Luis Barroso & Carol Ann Barroso Trustees for the benefit of Pedro L. & Carol A. Barroso Trust dated 11/29/90 | $50,000 |
| 18. | Teresa Anne Bell Trustee of the Teresa Anne Bell Living Trust | $50,000 |
| 19. | Dorothy Bennett, a single woman & Robert Bennett, a married man dealing with his sole & separate property, as joint tenants with right of survivorship | $50,000 |
| 20. | Virgil L. Birgen & La Donna F. Birgen Trustees of the Birgen Charitable Trust dated 8/1/90 | $50,000 |
| 21. | First Savings Bank Custodian for Albert Blumenthal IRA | $50,000 |
| 22. | James R. Bonfiglio & Donna M. Bonfiglio Trustees of the Bonfiglio Family Limited Partnership | $100,000 |
| 23. | Charles E. Borom & Lanna G. Borom, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 24. | Helena A. Bova, a single woman | $50,000 |
| 25. | Richard L. Bowman Trustee for the benefit of The Bowman 1989 Revocable Trust | $50,000 |
| 26. | Larry R. Brasuell & Susan L. Brasuell Trustees of The Larry R. & Susan L. Brasuell 1996 Living Trust dated 7/22/96 | $50,000 |

| 27. | Glen J. Brecht & Janine K. Brecht Trustees of the Glen J. Brecht Trust dated 1/24/86 | $75,000 |
| 28. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $100,000 |
| 29. | Hannah Brehmer, an unmarried woman & Marti McAllister, a married woman, as joint tenants with right of survivorship | $100,000 |
| 30. | Roger C. Bruce, a single man | $50,000 |
| 31. | Neil G. Buckwald Trustee of the Buckwald Revocable Trust dated 2/11/92 | $50,000 |
| 32. | Dr. Joselito Tan Burgos, a single man | $50,000 |
| 33. | Evelyn A. Calhoun, an unmarried woman with Transfer on Death to Dale E. Calhoun | $50,000 |
| 34. | William C. Campbell & Lois M. Campbell Trustees of the 2001 Campbell Family Trust dated 10/03/01 | $50,000 |
| 35. | Louis John Canepa Trustee of the Louis John Canepa Revocable Trust dated 6/18/98 | $50,000 |
| 36. | Scott K. Canepa Charitable Supporting Organization | $1,250,000 |
| 37. | John R. Cangelosi & Margaret M. Cangelosi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 38. | James Cardwell & Reba Cardwell Trustees of the Cardwell Family Trust | $600,000 |
| 39. | Don F. Carrier & Sara L. Carrier Trustees of the Carrier Family Trust dated 8/9/91 | $50,000 |
| 40. | Douglas Carson Trustee of the Douglas W. Carson Trust | $100,000 |
| 41. | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 42. | Maurice A. Cauchois & Jacqueline M. Cauchois Trustees of the M & J Cauchois Family Trust dated 2/25/93 | $50,000 |
| 43. | Michael W. Cecil, a married man dealing with his sole & separate property | $55,000 |
| 44. | Frank A. Cerrone & Shari L. Cerrone Trustees of The Cerrone Family Trust dated 1/26/96 | $50,000 |
| 45. | Ray L. Coffin & Toni H. Coffin, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 46. | Shirley M. Collins Trustee as her sole & separate property under the Collins Family Trust dated 1/29/93 | $75,000 |
| 47. | Pamela Conboy, an unmarried woman | $50,000 |
| 48. | June Cook Trustee of the Alvin Broido Marital Trust U/A dated 4/24/72 | $50,000 |
| 49. | Harold Corcoran & Joyce Corcoran, husband & wife, as joint tenants with right of survivorship | $110,000 |
| 50. | James B. Corison Trustee of the James B. Corison Trust dated 12/3/98 | $100,000 |
| 51. | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | $50,000 |
| 52. | Sam Costanza, Trustee of The Costanza 1987 Decedent's Trust | $100,000 |
| 53. | Howard L. Craig & Frankye D. Craig Trustees of the Craig Living Trust dated 08/10/00 | $100,000 |
| 54. | Shelley Wike Cranley Trustee of The S.W. Cranley Revocable Trust dated 2/20/03 | $100,000 |

26

| 55. | Richard N. Dahlke, a married man dealing with his sole & separate property | $50,000 |
|---|---|---|
| 56. | Davis Investments, a Nevada partnership | $50,000 |
| 57. | Donna Lou Denny Trustee of The Denny 1983 Marital Trust dtd 2/14/83 | $100,000 |
| 58. | James D. Dery & Ann R. Dery, husband & wife | $75,000 |
| 59. | Tamara Dias Trustee for the Helms Grandchildren Educational Trust FBO Jarod Dias dated 7/21/98 | $100,000 |
| 60. | Tamara Dias Trustee of the Separate Property Trust of Tamara Dias dated 12/04/00 | $100,000 |
| 61. | Robert DiBias & Louise G. Sherk Trustees of the Louise G. Sherk, MD, a medical corporation, Employee Benefit Plan Trust | $50,000 |
| 62. | Ronald O. Dixon & Heidi R. Dixon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 63. | Pat A. Dolce, a married man dealing with his sole & separate property | $50,000 |
| 64. | D. Joseph Doucet & Louise M. Doucet Trustees of the D. Joseph & Louise M. Doucet 1989 Trust dated 3/30/89 | $55,000 |
| 65. | Mary E. Dunlop Trustee of the Mary E. Dunlop 1992 Trust dated 7/29/03 | $50,000 |
| 66. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 67. | John D. Eichhorn & Jill A. Eichhorn, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 68. | Allan R. Eisenbach & Jayne M. Eisenbach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 69. | Robert Essaff & Cindy H. Essaff Trustees of the Essaff Family Trust dated 6/18/02 | $200,000 |
| 70. | William H. Favro & Carol M. Favro Trustees of the Favro Trust dated 9/14/00 | $75,000 |
| 71. | Paul Fedrizzi & Jane E. Fedrizzi, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 72. | Larry Fernandez Trustee of the Fernandez Family Trust dated 6/20/84 | $50,000 |
| 73. | Carol A. Fischer Trustee of the Fischer Trust dated 1/6/92 | $50,000 |
| 74. | Mildred Fischermann, a single woman & Stanley Ferraro & Florence Ferraro, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 75. | John R. Fleiner & Karen M. Fleiner, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 76. | Donald T. Flood & Betty R. Flood Trustees of the Flood Family Trust dated 12/24/85 | $50,000 |
| 77. | Fraley Limited Partnership, a Nevada limited partnership | $100,000 |
| 78. | Gregory L. Freeman Trustee of the Lillian M. Freeman Trust dated 5/31/85 | $55,000 |
| 79. | Gail A. Freitas Trustee of the Gail A. Freitas Revocable Trust dtd 6/20/03 | $50,000 |
| 80. | David Fuller & Monica Fuller Trustees of the David R. Fuller & Monica D. Fuller Trust | $60,000 |
| 81. | Jerry L. Gage & Darlene C. Gage Trustees of the Dakota Trust dtd 9/16/96 | $100,000 |

27

| | | |
|---|---|---|
| 82. | Brian K. Gallagher & Mariateresa Gallagher, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 83. | Anthony V. Gambello & Elizabeth Gambello Trustees of the Gambello Trust | $50,000 |
| 84. | Elmer Eugene Gilbert, Jr., a married man dealing with his sole & separate property | $50,000 |
| 85. | Lynn M. Gillmore & Jimmy D. Gillmore, husband & wife | $50,000 |
| 86. | Gale Gladstone-Katz Trustee of the Gale Gladstone-Katz Revocable Living Trust dated 12/10/03 | $75,000 |
| 87. | Jo M. Gledhill Trustee of the Gledhill Revocable Family Trust | $50,000 |
| 88. | Nancy Golden, a married woman dealing with sole & separate property | $50,000 |
| 89. | Jack Goldenthal & Sylvia Goldenthal, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 90. | Barry J. Goldstein & Patricia B. Goldstein, as joint tenants with right of survivorship | $50,000 |
| 91. | Sylvia M. Good Successor Trustee under the Sylvia M. Good Survivor's Trust established under the Sam Good Family Trust dated 6/25/86, amended & restated 3/14/91 as amended | $50,000 |
| 92. | Nancy L. Gouveia Trustee of the Nancy L. Gouveia Trust dated 10/23/98 | $60,000 |
| 93. | Noel S. Gouveia, a married man dealing with his sole & separate property | $50,000 |
| 94. | Robin B. Graham Trustee of the Graham Family Marital Trust B dated 2/13/97 | $100,000 |
| 95. | First Savings Bank Custodian for Michael H. Greeley IRA | $100,000 |
| 96. | Bernie Gregorio & Corazon S. M. Gregorio, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 97. | Charles T. Hamm & Sandra L. Hamm, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 98. | Darlene Hammond Trustee of the Dar Living Trust dated 2/12/03 | $50,000 |
| 99. | John A. M. Handal, a single man | $50,000 |
| 100. | MLH Family Investment Limited, a Texas company | $300,000 |
| 101. | Waldemar Hanslik & Katharina Hanslik Trustees of the Hanslik Family Trust dated 12/23/91 | $70,000 |
| 102. | Roger N. Havekost, a married man dealing with his sole & separate property | $50,000 |
| 103. | Helms Homes, LLC, a Nevada limited liability company | $200,000 |
| 104. | Terry Helms Trustee of the Terry Helms Living Trust dated 11/11/94 | $200,000 |
| 105. | Jay E. Henman Trustee of the Jay E. Henman Retirement Plan | $100,000 |
| 106. | Patricia A. Herrin & Terry W. Royder, wife & husband, as joint tenants with right of survivorship | $100,000 |
| 107. | Roy H. Hibdon & Oma C. Hibdon, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 108. | Michael Hilgenberg & Shellie Hilgenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 109. | Maureen A. Hjelte & G. Craig Hjelte, husband & wife, as joint tenants with right of survivorship | $50,000 |

| | | |
|---|---|---|
| 110. | Fred Holland & Marjorie Holland Trustees of the Holland Family Trust dated 1993 | $50,000 |
| 111. | Jason L. Holt & Sally A. Holt, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 112. | Homfeld II, LLC, a Florida limited liability company | $200,000 |
| 113. | Earl Howsley, a married man dealing with his sole & separate property | $50,000 |
| 114. | Jack Humphry & Alice Humphry Trustees of the Humphry 1999 Trust | $75,000 |
| 115. | Leslie Irwin, a single woman | $50,000 |
| 116. | Evelyn A. Ives Trustee of the Mevin J. Ives & Evelyn A. Ives QTIP Trust | $150,000 |
| 117. | First Savings Bank Custodian for Mary Jellison, IRA | $100,000 |
| 118. | Everett H. Johnston Trustee of the Everett H. Johnston Family Trust dated 1/24/90 | $100,000 |
| 119. | Maurice Jones & Marlene Y. Jones Trustees of the Jones Family Trust dated 9/3/98 | $50,000 |
| 120. | William J. Kassel Trustee of the Kassel 1988 Trust | $50,000 |
| 121. | Christina M. Kehl, an unmarried woman | $200,000 |
| 122. | Kehl Development, an Iowa corporation | $500,000 |
| 123. | Kevin A. Kehl, a married man dealing with his sole & separate property | $150,000 |
| 124. | Krystina Kehl, a single woman | $500,000 |
| 125. | Robert J. Kehl & Ruth Ann Kehl, husband & wife, as joint tenants with right of survivorship | $2,000,000 |
| 126. | Carol A. Kelly, a single woman | $50,000 |
| 127. | Marsha Kendall Trustee of the David A. Gean Revocable Trust dtd 4/3/92 | $150,000 |
| 128. | Melvin W. Kerner Trustee of the Kerner Revocable Trust B dated 3/16/81 | $50,000 |
| 129. | Norma M. Kerner Trustee of the Eugene H. & Norma M. Stokes Trust dated 5/16/84 | $50,000 |
| 130. | Mildred P. Kesler Trustee of the Lindsey H. Kesler Family Revocable Trust dated 10/15/80 | $85,000 |
| 131. | Clawiter Associates, LLC, a California limited liability company | $50,000 |
| 132. | Dunham Trust Company Trustee of the Frederick W. Kewell IRA | $75,000 |
| 133. | Frederick W. Kewell Trustee of the Barbara J. Kewell Trust dated 7/18/89 | $50,000 |
| 134. | Frederick W. Kewell, II Trustee of the Kewell Living Trust dated 7/18/89 | $50,000 |
| 135. | Travis L. Killebrew & Lorna F. Killebrew, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 136. | Edward H. Kim, an unmarried man | $50,000 |
| 137. | Walter Klevay & Gail Klevay, husband & wife | $50,000 |
| 138. | Bernard A. Kloenne Trustee of the Bernard Kloenne Living Trust dated 10/10/86 | $50,000 |
| 139. | Ronald Kreykes & Linda Kreykes, husband & wife, as tenants in common | $200,000 |
| 140. | Jester, LP, a Nevada limited partnership | $50,000 |
| 141. | Jor Law, a single man | $50,000 |
| 142. | James W. Lehr & Julie Anne Lehr, husband & wife, as joint tenants with right of survivorship | $65,000 |
| 143. | Larry D. Lehrmann & Kathleen F. Lehrmann Trustees of the Lehrmann Family Trust dated 4/19/96 | $60,000 |

29

| | | |
|---|---|---|
| 144. | Richard Glenn Leiby & Carol K. Leiby, Trustees of the Leiby Family 1992 Trust dated 7/8/92 | $50,000 |
| 145. | Bruce R. LeMar, an unmarried man | $50,000 |
| 146. | William H. Lenhart Trustee of the William H. Lenhart Living Trust | $50,000 |
| 147. | James H. Lidster & Phyllus M. Lidster Trustees of the James H. Lidster Family Trust dated 1/20/92 | $50,000 |
| 148. | Anna Lieblein, an unmarried woman & John Drakoules, an unmarried man | $100,000 |
| 149. | Steve Lindquist Trustee of the Steve Lindquist Charitable Remainder Unit Trust dated 9/9/96 | $60,000 |
| 150. | Edward G. Loughlin, an unmarried man & Thelma E. Guevara, an unmarried woman, as joint tenants with right of survivorship | $100,000 |
| 151. | R. Lance Loughlin, a married man dealing with his sole & separate property | $100,000 |
| 152. | Henri L. Louvigny & Marcelle A. Louvigny Co-Trustees of the Henry L. Louvigny & Marcelle A. Louvigny Family Trust dated 10/18/84 | $50,000 |
| 153. | B. Sue Luthi Trustee of the B. Sue Luthi Trust dated 7/9/97 | $50,000 |
| 154. | B & W Precast Construction, Inc., a California corporation | $200,000 |
| 155. | Edward D. Lynch, a single man | $100,000 |
| 156. | Thomas D. Lynch Trustee of The Thomas D. Lynch 1995 Revocable Living Trust | $100,000 |
| 157. | Terry Markwell Trustee of the Terry Markwell Profit Sharing Plan & Trust | $50,000 |
| 158. | Michael C Maroko & Haviva Maroko Trustees of the Michael C Maroko & Haviva Maroko 2001 Revocable Intervivos Trust dated 12/19/01 | $100,000 |
| 159. | JV Marrone Trustee for the benefit of The JV Marrone Revocable Trust dated 12/12/95 | $50,000 |
| 160. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 161. | James M. McConnell & M. Fay McConnell, husband & wife, as joint tenants with right of survivorship | $120,000 |
| 162. | J. Richard McMichael & Karen L. McMichael Trustees of the McMichael Living Trust dated 12/16/88 | $50,000 |
| 163. | William L. McQuerry Trustee of the McQuerry Family Partnership | $50,000 |
| 164. | Don D. Meyer, an unmarried man & Dennis E. Hein, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 165. | Michaelian Holdings, LLC, a Nevada limited liability company | $50,000 |
| 166. | Gary A. Michelsen, an unmarried man | $100,000 |
| 167. | Patricia A. Middel Trustee of the Middel Separate Property Revocable Living Trust dated 11/7/00 | $50,000 |
| 168. | Robert D. Mierau & Sandra J. Mierau Trustees of the Mierau Living Trust dated 9/14/98 | $100,000 |
| 169. | Cynthia Milanowski Trustee of the Cynthia Milanowski Trust | $50,000 |
| 170. | Monighetti, Inc., a Nevada corporation | $150,000 |
| 171. | Wesley L. Monroe & Jeannie M. Monroe, joint tenants with right of survivorship | $100,000 |

| | | |
|---|---|---|
| 172. | Albert Montero Trustee of the Albert Montero Family Trust U/A dated 11/3/94 | $100,000 |
| 173. | William L. Montgomery, Jr., an unmarried man | $50,000 |
| 174. | James Michael Moore & Jody C. Moore, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 175. | Robert J. Moretto & Josephine Moretto Trustees of the Moretto Family Living Trust dated 9/19/94 | $50,000 |
| 176. | Adelaide Moschogianis, an unmarried woman & Christine Moschogianis, an unmarried woman | $50,000 |
| 177. | GSL Investments LLC, a Nevada Company | $50,000 |
| 178. | Elaine Mullin Trustee for the benefit of Elaine P. Mullin Trust dtd 8/6/90 | $50,000 |
| 179. | Denise A. Murphy, a single woman | $50,000 |
| 180. | Marvin Lynn Nicola Trustee of the Marvin Lynn Nicola Faimly Trust dated 6/13/78 | $50,000 |
| 181. | Olga O'Buch Trustee of the Olga O'Buch Trust dated 5/28/98 | $50,000 |
| 182. | Gary J. O'Hara & Janice D. O'Hara Co Trustees of the O'Hara Family Trust dated 2/26/93 | $70,000 |
| 183. | Douglas O'Herron & Nancy O'Herron Trustees of the Douglas & Nancy O'Herron Revocable Trust dated 4/2/02 | $50,000 |
| 184. | William W. Ogren & Betty R. Ogren, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 185. | Jennefer Cole Peele Trustee of the Peele Bypass Trust dated 2/10/87 | $50,000 |
| 186. | Michael Pezzano & Lisa Pezzano, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 187. | Phil L. Pfeiler & Loy E. Pfeiler, husband & wife, as joint tenants with right of survivorship | $200,000 |
| 188. | Michael Eugene Pinney, a single man | $50,000 |
| 189. | Stephen Polacheck Trustee of the Polacheck & Associates, Inc. Profit Sharing Plan dated 2/20/73 | $100,000 |
| 190. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/83 | $50,000 |
| 191. | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 192. | Helmut O. Przystaw & Erika L. Przystaw, joint tenants with right of survivorship | $50,000 |
| 193. | Dennis Raggi, a married man dealing with his sole & separate property | $100,000 |
| 194. | Rains Properties, LP, a Nevada limited partnership | $350,000 |
| 195. | First Savings Bank FBO Robert E. Ray IRA | $100,000 |
| 196. | Elan Reddell Trustee of the Elan Reddell Revocable Living Trust dated 8/4/03 | $100,000 |
| 197. | Donald E. Redmon & Jaylyle Redmon Trustees of the Donald E. Redmon & Jaylyle Redmon Family Trust dated 10/31/95 | $50,000 |
| 198. | Orban H. Reich Trustee of the Orban H. Reich Trust dated 12/27/00 | $50,000 |
| 199. | Lawrence H. Reynolds & Jayne L. Reynolds, husband & wife, as joint tenants with right of survivorship | $60,000 |

31

| | | |
|---|---|---|
| 200. | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | $200,000 |
| 201. | Rachel Riehle, an unmarried woman | $50,000 |
| 202. | Nancy K. Rivard & David L. Olden Trustees of the Nancy Kathryn Rivard & David Lee Olden Trust dated 7/20/83 | $50,000 |
| 203. | Blair E. Roach & Barbara K. Roach, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 204. | Robert W. Roberts & Donna R. Roberts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 205. | Alan Robinson & Gail Robinson, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 206. | Saul Roisentul & Ilene Roisentul Trustees of the Roisentul Family Trust | $75,000 |
| 207. | Crosbie B. Ronning, a single woman | $50,000 |
| 208. | Grable B. Ronning, an unmarried woman | $85,000 |
| 209. | Grable B. Ronning Trustee of the Bosworth 1988 Family Trust for the benefit of Eric Ronning dated 11/4/88 | $50,000 |
| 210. | Stuart J. Ross, a married man dealing with his sole & separate property & Heather Goolsby, a married woman dealing with her sole & separate property, as joint tenants with right of survivorship | $60,000 |
| 211. | Robert J. Rossetter & Jane L. Rossetter, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 212. | Dr. Toya V. Russell, a single woman | $100,000 |
| 213. | Barbara M. Sanchez Trustee of The Barbara M. Sanchez 2002 Revocable Living Trust dated 4/4/02 | $50,000 |
| 214. | First Savings Bank Custodian For Randy Sanchez IRA | $50,000 |
| 215. | Randy M. Sanchez & Sharon Sanchez Trustees of the Sanchez Living Trust dated 10/13/03 | $50,000 |
| 216. | First Savings Bank Custodian for Karen E. Sass IRA | $50,000 |
| 217. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $300,000 |
| 218. | Edward Schreiber & Sally Schreiber Trustees of the Schreiber Family Trust | $55,000 |
| 219. | Alvina Agatha Sedlak Trustee of the Alvina Agatha Sedlak Living Trust dated 6/23/04 | $50,000 |
| 220. | Carey B. Sigmen & Lisa K. Sigmen Trustees of The Carey B. Sigmen & Lisa K. Sigmen Trust dated 3/3/97 | $50,000 |
| 221. | Alan R. Simmons & Judith B. Simmons, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 222. | Emery T. Smith & Mary C. Smith, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 223. | Robert D. Smith, an unmarried man & Jane Feld, an unmarried woman, as joint tenants with right of survivorship | $50,000 |
| 224. | Woodrow Smith & Mary Alyce Smith, as joint tenants with right of survivorship | $50,000 |

32

| | | |
|---|---|---|
| 225. | Bruce Sonnenberg & Rosemary Sonnenberg, husband & wife, as joint tenants with right of survivorship | $100,000 |
| 226. | Robert Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | $80,000 |
| 227. | Clifton H. Spindle & Verna R. Spindle, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 228. | Floyd M. Spindle, an unmarried man with transfer on death to A. Cherryl Sergeant | $100,000 |
| 229. | Stater Family Ltd Partnership | $250,000 |
| 230. | Neal J. Stehly & Kam E. Stehly Trustees of the Neal & Kam Stehly Family Trust dated 1/8/00 | $100,000 |
| 231. | Nicholas A. Steinmetz & Cynthia M. Steinmetz Trustees of the 2001 Steinmetz Family Trust | $50,000 |
| 232. | Nicole Steinmnetz, a single woman | $50,000 |
| 233. | Gordon N. Stimpson & Marjorie I. Stimpson Co-Trustees of The Stimpscn Family Trust | $50,000 |
| 234. | Jacqueline S. Stroehmann, an unmarried woman | $50,000 |
| 235. | Leland K. Swanson & Lena M. Swanson Trustees of the Swanson Family Trust dated 9/14/94 | $60,000 |
| 236. | Michael Tarr, a single man | $50,000 |
| 237. | Gary N. Taylor Trustee of the Gary N. Taylor PSP | $100,000 |
| 238. | KTaylorGO Investments, LTD, a Texas company | $100,000 |
| 239. | First Savings Bank Custodian For Louise Teeter IRA Rollover | $50,000 |
| 240. | Norman Teeter, a single man | $100,000 |
| 241. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants wi:h right of survivorship | $100,000 |
| 242. | John M. Tripp Trustee of the Tripp Family Trust 1997 | $50,000 |
| 243. | Augustine Tuffanelli Trustee of the Augustine Tuffanelli Family Trust dated 7/26/94 | $50,000 |
| 244. | Shirley Jean Tuffanelli Trustee of the Shirley Jean Tuffanelli Trust dated 6/18/91 | $50,000 |
| 245. | Louis H. Turner & Shirley M. Turner Trustees of the Louis H. & Shirley M. Turner Family Trust dated 9/9/97 | $50,000 |
| 246. | Turner Development, LLC, a California limited liability company | $100,000 |
| 247. | Robert W. Ulm, an unmarried man | $50,000 |
| 248. | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $100,000 |
| 249. | USA Commercial Mortgage | $913,000 |
| 250. | First Savings Bank Custodian for Peggy Ann Valley IRA | $90,000 |
| 251. | Jay C. McLaughlin & Peggy Ann Valley Trustees of the McLaughlin-Valley Trust dated 2/24/97 | $100,000 |
| 252. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $100,000 |
| 253. | Kenneth B. Van Woert Trustee of the Sheehan Van Woert Bigotti Architects 401(k) PSP & Trust dated 7/1/98 | $50,000 |

| | | |
|---|---|---|
| 254. | Kip E. Virts & Melissa A. Virts, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 255. | Linda C. Vlautin Trustee of the Linda C. Vlautin Trust dated 10/31/01 | $50,000 |
| 256. | Wolf Dieter Voss & Claudia Voss Trustees of The Voss Family Trust dated 10/4/99 | $125,000 |
| 257. | Robert R. Wade & Shirley E. Wade, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 258. | John H. Warner, Jr. & Linda M. Warner Trustees of The Warner Family Trust dated 3/17/00 | $75,000 |
| 259. | First Trust Company of Onaga C/F Frank Wasko Beneficiary for Stephanie Wasko IRA | $62,000 |
| 260. | Dean Watson, a married man dealing with his sole & separate property | $50,000 |
| 261. | Donna Webb, a single woman | $50,000 |
| 262. | Ardis Weible & Dean F. Weible Co-Trustees of the Weible 1981 Trust dated 6/30/81 | $50,000 |
| 263. | John Austin Werthing, Sr. & Sallie Mae Werthing Trustees of the Werthing Senior Family Trust UAD 10/22/01 | $50,000 |
| 264. | Gerald W. Wickland & Irene F. Wickland Co-Trustees of the Wickland Family Trust dated 2/10/81 | $70,000 |
| 265. | William D. Wickland & Victoria R. Wickland, husband & wife, as joint tenants with right of survivorship | $60,000 |
| 266. | Edna P. Wilson, a married woman & Sloan D. Wilson, an unmarried man, as joint tenants with right of survivorship | $50,000 |
| 267. | Albert Winemiller Inc. | $100,000 |
| 268. | Debra Ann Winemiller, a married woman dealing with her sole & separate property | $50,000 |
| 269. | Cynthia A. Winter, a married woman dealing with her sole & separate property | $100,000 |
| 270. | Jerry Woldorsky, a married man dealing with his sole & separate property | $50,000 |
| 271. | Richard Woldorsky, a single man | $50,000 |
| 272. | Richard D. Wood Trustee of the Wood Living Trust dated 10/1/99 | $90,000 |
| 273. | Melvin B. Wright & Susan D. Wright Trustees of the S.B. Wright Family Trust dated 12/28/94 | $50,000 |
| 274. | Kenneth H. Wyatt & Phyllis P. Wyatt Trustees of The Kenneth H. & Phyllis P. Wyatt Family Trust | $50,000 |
| 275. | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/95 | $100,000 |
| 276. | Joseph G. Zappulla & Carol A. Zappulla, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 277. | Zawacki, a California LLC | $100,000 |
| 278. | Teresa G. Zeller Trustee of the Teresa G. Zeller Trust | $50,000 |
| 279. | Franz J. Zimmer Trustee of the Franz J. Zimmer Revocable Trust dated 02/05/97 | $75,000 |
| 280. | Raymond J. Zurfluh, Jr. & Shirley J. Zurfluh, husband & wife, as joint tenants with right of survivorship | $65,000 |
| | TOTAL | $27,500,000 |

34

## EXHIBIT "B"

### DESCRIPTION OF PROPERTY

THIS DEED OF TRUST IS SENIOR TO A DEED OF TRUST GIVEN BY TRUSTOR SECURING A PROMISSORY NOTE IN THE AMOUNT OF $6,500,000 RECORDED CONCURRENTLY HEREWITH.

Land situated in the County of Placer, State of California, and described as follows:

PARCEL ONE (APN: 023-200-010-000 and 023-200-012-000):

The South half of Section 10, Township 10 North, Range 5 East, M.D.B.M.

Excepting therefrom: beginning at a point located North 89° 27' East 1344.40 feet from the Southwest corner of said Section 10 and running thence North 89° 27' East 1658.80 feet; thence North 0° 10' West 2629.40 feet to the North line of the South half of said Section 10; thence along the said North line, North 89° 56' West 1643.20 feet; thence South 0° 10' West 2647.22 feet to a point of beginning.

PARCEL TWO (APN: 023-200-013-000):

The Southwest quarter of Section 11, Township 11 North, Range 5 East, M.D.B.M.

EXCEPTING from PARCEL ONE and PARCEL TWO described above any portion thereof lying within Sacramento County.

ALSO EXCEPTING from PARCEL ONE and PARCEL TWO described above, a one-half interest in and to all oil, gas and other minerals and mineral rights as reserved in the Deed from Moseley Land and Cattle Company recorded May 11, 1955, in Book 674 at page 520, Placer County Records, said rights also having been purported modified per that certain "Agreement" recorded October 4, 1961, in Book 893 at Page 330, Placer County Records which states as follows "the exception and reservation set forth in said grant deed particularly described in the foregoing recitals is hereby amended to read as follows: excepting and reserving however unto the grantor, its successors and/or assigns including lessees:

(A) an undivided one-half interest in and to all oil, gas and associated substances and all other mineral rights of every kind and description now or hereafter in or under recoverable from that portion of said lands below a depth of 200 feet beneath the present surface of said lands and:

(B) the perpetual right exclusively to occupy and use the surface and subsurface of the following described parcel of land (hereinafter referred to as "surface operational sites") comprising a portion of said lands to wit: a rectangular parcel of land each having its North and South boundaries 200 feet in length and its East and West boundaries 300 feet in length, said surface operational sites having center points the center of the Southwest quarter of Section 11.

35

Assessor's Parcel Numbers: 023-020-010, 012 and 013

36