**LEWIS AND ROCA LLP LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles, Jr. NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com
Marvin Ruth NV State Bar No. 10979
Email: mruth@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>           Debtor | Case No. BK-S-06-10725-LBR<br><br>Chapter 11<br><br>**FIRST OMNIBUS OBJECTION OF USACM TRUST TO PROOFS OF CLAIM BASED ENTIRELY UPON INVESTMENT IN THE BINFORD MEDICAL DEVELOPERS LOAN**<br><br>**Date of Hearing: September 30, 2011**<br>**Time of Hearing: 9:30 a.m.**<br>**Estimated Time for hearing:  10 min**. |

The USACM Liquidating Trust (the "USACM Trust") moves this Court, pursuant to § 502 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order disallowing 85% and allowing 15% of each Proof of Claim listed in **Exhibit A**. These claims were filed by investors ("Direct Lenders") against USA Commercial Mortgage Company ("USACM") based upon an investment in a loan (the "Binford Loan") to Binford Medical Developers, LLC (the "Borrower").  This Objection is supported by the Court's record and the Declarations of Geoffrey L. Berman and Edward M. Burr in Support of Omnibus Objections to Proofs of Claim Based Upon the Investment in the Binford Loan.  (the "Berman Decl." and "Burr Decl.")**.**

2428969.1

<u>THIS OBJECTION DOES NOT RELATE TO AND WILL NOT IMPACT THE DIRECT LENDERS' RIGHTS TO REPAYMENT ON THE BINFORD LOAN, TO SHARE IN ANY PROCEEDS GENERATED FROM THE SALE OF THE REAL PROPERTY SECURING THE BINFORD LOAN, OR TO SHARE IN THE RECOVERY OF ANY FUNDS FROM THE GUARANTOR FOR THE LOAN.</u>

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  BACKGROUND FACTS

#### a. The USACM Bankruptcy

On April 13, 2006 ("Petition Date"), USACM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Debtor continued to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Debtor's post-petition management of the Debtor was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC, who served as the Chief Restructuring Officer.

USACM was a Nevada corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account.  That business included the solicitation of investors to purchase fractional interest in loans that USACM originated and then serviced.  These investors are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein [Docket No. 2376].  As part of the Plan, and pursuant to an Asset Purchase Agreement filed with this Court, USACM sold the servicing rights to most of the loans it serviced to Compass Partners, LLC and Compass Financial Partners, LLC ("Compass"), including the Binford Loan.  The sale to Compass closed on February 16, 2007.

The USACM Trust exists as of the Effective Date of the Plan, which was March 12, 2007. Geoffrey L. Berman is the Trustee. Under the Plan, the USACM Trust is the successor to USACM with respect to standing to seek allowance and disallowance of Claims under 11 U.S.C. § 502(a).

Upon information derived from filings in the United States District Court, District of Nevada, *3685 San Fernando Lenders Company, LLC, et al v. Compass USA SPE, LLC, et al*, No. 2:07-cv-00892-RCJ-GWF action, the Trust believes that "Silar Advisors, LP ("Silar") financed Compass' acquisition of the Purchased Assets, including the loan service agreements in the USACM bankruptcy case and took a secured interest in those Purchased Assets by executing a Master Repurchase Agreement ("Repurchase Agreement") with Compass, and by filing a UCC-1 financing statement with the State of Delaware." *Id.* Docket 1250 at 13-14 (citations to declarations omitted).

Further, from filings in the same action, the Trust believes that "Effective as of September 26, 2007, Silar foreclosed on Compass through Asset Resolution LLC ("Asset Resolution") and took ownership of the Purchased Assets.… Silar created Asset Resolution as a 'single purpose entity,' conveyed all of its interests in the Repurchase Agreement to Asset Resolution, and Asset Resolution properly foreclosed on the assets of Compass, including the Purchased Assets." (Citations omitted.) Asset Resolution LLC is now a debtor in a chapter 7 bankruptcy case pending in Nevada, case no. BK-S-09-32824-RCJ, along with certain affiliates.[1] William A. Leonard, Jr. was appointed trustee in the Asset Resolution case. By Order entered on July 19, 2010 by the Hon. Robert C. Jones in the Asset Resolution Case, the servicing rights for 19 loans, including the Binford Loan, were transferred to Cross, FLS.

---

[1] 10 90 SPE LLC, Fiesta Stoneridge LLC, CFP Gramercy SPE LLC, Bundy 2.5 Million SPE LLC, CFP Cornman Toltec SPE LLC, Bundy Five Million LLC, Fox Hills SPE LLC, HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean Atlantic SPE LLC, CFP, Gess SPE LLC, CFP Brookmere Matteson SPE LLC, and Shamrock SPE LLC.

The Trust has attempted to monitor loan collections through monitoring the district court litigation and the Asset Resolution bankruptcy case, but has received limited information concerning servicing and resolution of direct loans by Compass/Silar/Asset Resolution or their successors, including the trustee in bankruptcy for Asset Resolution. The Trust has also been in contact with Cross, FLS regarding the Binford Loan. The following is the extent of the USACM Trust's information on the current servicing and status of the Binford Loan.

### b. The Binford Loan

USACM circulated an Offer Sheet to prospective Direct Lenders soliciting funding for an acquisition and development loan to borrowers identified as "Binford Medical Developers, LLC." A copy of the Offer Sheet is attached hereto as **Exhibit B** and incorporated by this reference. (Berman Decl., ¶ 4.) The total loan amount proposed was $8,375,000. *Id.* The Offer Sheet described the investment as a "First Trust Deed Investment" and noted that the investment would be secured by a first deed of trust on 16.8 acres of land for a medical office complex, including construction of a 47,000 square feet [sic] office building on the corner of 65th and Binford Boulevard in Indianapolis, Indiana." The Offer Sheet also provided a loan-to-value of "approximately 75% based on a land appraisal by Meid Compton Realty dated November 15, 2004" and it noted that Meid Compton was also doing an appraisal for "Building 2."

On June 24, 2005, Borrower made and delivered to various lenders, including the Direct Lenders identified in **Exhibit A**, a "Promissory Note Secured by Mortgage" (the "Note") and a Construction Loan Agreement. (Berman Decl., ¶5.) The Loan Agreement provided for an initial loan of $4,250,000, with potential subsequent advances up to $8,375,000. *Id.* Pursuant to the Loan Agreement, the loan amount was intended for the Borrower to "refinance and develop the Real Property, including the construction of 47,000 square feet of office space known as Building II…" (*Id.*) The Note was secured

1  by a "Mortgage, Assignment of Leases, Rents And Contracts, Security Agreement,
2  Financing Statement and Fixture Filing" (the "Mortgage") from Borrower in favor of the
3  Direct Lenders, which was recorded in the official records of Marion County, Indiana on
4  September 15, 2005 at Instrument Number 2005-0153711, as were subsequent
5  amendments to the Mortgage to secure advances on the loan up to $7,450,000. (Berman
6  Decl., ¶ 6.) The Note was also supported by an Unconditional Repayment and Completion
7  Guaranty signed by Ken E. Schmidt on August 31, 2005. (Berman Decl., ¶ 7.)

8  The USACM "Loan Summary" dated July 31, 2006 and filed in this case shows
9  that Borrower was "Performing" on the Note as of July 31, 2006. (Berman Decl., ¶ 8.)
10 Pursuant to the "Loan Summary" dated February 28, 2007, however, the loan was in
11 "Maturity Default" as of February 28, 2007. During this bankruptcy case through the
12 transfer of servicing to Compass, USACM treated the Direct Lenders with respect to any
13 interim payments by the borrower in accordance with this Court's orders and the
14 confirmed Plan.

15 Counsel for the Trustee had a brief conversation with a representative of Cross,
16 FLS regarding the status of the Binford Loan. According to Cross, FLS, the Borrower
17 offered to buy-out the Direct Lenders for $2.3 million, but could not obtain financing to
18 close the deal. The Direct Lenders are now attempting to move forward with foreclosure,
19 although the Borrower has threatened litigation, asserting that the short fall on the loan
20 funding caused his default.

21 The Borrower filed a proof of claim in the bankruptcy (POC No. 10725-00784-2),
22 which alleged that USACM had damaged it by failing to fully fund the loan. (Berman
23 Decl., ¶ 10.) The Proof of Claim included an unsecured non-priority claim in the amount
24 of $3,502,383. *Id.* The Trust objected to the Proof of Claim, but ultimately settled the
25 Proof of Claim by stipulating with Borrower that the Court approve the Proof of Claim in
26

the amount of $1.425 million. *Id.* The Court approved the Proof of Claim in that amount based upon the stipulation of the parties. [DE 7618]

### c. The Binford Claims

**Exhibit A,** attached, lists Proofs of Claim filed by Direct Lenders that appear to be based upon an investment in the Binford Loan. (Burr Decl. ¶ 7.) **Exhibit A** identifies the Proof of Claim number, the claimant, the claimant's address, the total amount of the claim and the total amount of the claim that appears to be related to an investment in the Binford Loan based upon the information provided by the claimant. (Burr Declaration ¶ 7.) The claims listed in **Exhibit A** are referred to hereafter as the "Binford Claims." As required by Nevada LR 3007, a copy of the first page of the proof of claim for each of the claims referenced in **Exhibit A** are attached as **Exhibit C**.

## II.    JURISDICTION

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 502 and Bankruptcy Rule 3007.

The statutory predicates for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## III.    APPLICABLE AUTHORITY

Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects. If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b). A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f). However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of

2428969.1

persuasion as to the validity and amount of the claim. *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).

## IV.    THE OBJECTION

The Binford Loan appears to have been a legitimate, arms-length transaction with a third party borrower. As noted with other Direct Lender proof of claim objections, the Direct Lenders took a known risk by investing in a promissory note secured by a lien on real property.

The Trust believes that USACM is not liable for the Borrower's default or any decrease in the value of the collateral. However, as a result of the dispute with the Borrower as to its proof of claim in the USACM estate, there is some question as to whether the alleged failure to fund the full amount of the loan to the Borrower was material in its ability to complete the project and repay the advanced loan. Therefore, the Trust believes allowing the Direct Lender proof of claims in an amount equal to 15% of the filed proof of claim is appropriate, with the balance being disallowed to account for the nature of the Direct Lenders' investment in the loan.

This objection will not affect the Direct Lenders' right to be repaid on the Binford Loan by the Borrower or to recover from the sale of any collateral that secured the Binford Loan or on the guarantee supporting the Binford Loan.

## V.    CONCLUSION

The USACM Trust respectfully requests that the Court disallow 85% and allow 15% of each claim listed in **Exhibit A** because those claims are based entirely upon an investment in the Binford Loan. This objection concerns only claims based upon an investment in the Binford Loan and not any other claims of any of the Direct Lenders. The USACM Trust also requests such other and further relief as is just and proper.

7

2428969.1

Dated: August 7, 2011.

LEWIS AND ROCA LLP

By  s/ *John Hinderaker* (AZ 18024)
    Robert M. Charles, Jr., NV 6593
    John Hinderaker, AZ 18024 (*pro hac vice*)
    Marvin Ruth, NV 10979
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
E-mail:  JHinderaker@lrlaw.com
*Attorneys for the USACM Liquidating Trust*

Copy of the foregoing and pertinent portion of Exhibits deposited in first class postage prepaid U.S. Mail on August 7, 2011 to all parties listed on Exhibit A attached.

LEWIS AND ROCA LLP

 s/ *Matt Burns*
Matt Burns,  Paralegal

2428969.1