LEWIS
AND
ROCA
—LLP—
L A W Y E R S

1  3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
2  Facsimile (702) 949-8321
Telephone (702) 949-8320

3  Robert M. Charles, Jr.,  NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
4  Email: jhinderaker@lrlaw.com
Marvin Ruth NV State Bar No. 10979
Email: mruth@lrlaw.com

5  Attorneys for USACM Liquidating Trust

6  **UNITED STATES BANKRUPTCY COURT**

7  **DISTRICT OF NEVADA**

8  In re:                                        Case No. BK-S-06-10725-LBR

9  USA Commercial Mortgage Company,              Chapter 11

10
                            Debtor.             **FIFTH OMNIBUS OBJECTION OF**
11                                              **USACM TRUST TO PROOFS OF**
                                                **CLAIM BASED IN PART UPON**
12                                              **INVESTMENT IN THE LERIN**
                                                **HILLS LOAN**
13

14                                              Hearing Date:      September 30, 2011
                                                Hearing Time:      9:30 a.m.
15                                              Estimated Time for Hearing:  10 minutes

16

17          The USACM Liquidating Trust (the "USACM Trust") moves this Court, pursuant

18  to § 502 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and

19  Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an

20  order disallowing 85% and allowing 15% of each Proof of Claim listed in **Exhibit A**. to

21  the extent those claims are based upon an investment in the Lerin Hills Loan.  These

22  claims were filed by investors ("Direct Lenders") against USA Commercial Mortgage

23  Company ("USACM") based upon multiple loans,  including an investment in a loan to

24  Lerin Hills, Ltd. (the "Borrower").  This loan was sometimes referred to as the "Lerin

25  Hills Loan" and that is how the USACM Trust will refer to it here.  This Objection is

26  supported by the Court's record and the Declarations of Geoffrey Berman and Edward M.

2434161.1

LEWIS
AND
ROCA
—— LLP ——
L A W Y E R S

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Burr in Support of Omnibus Objections to Proofs of Claim Based Upon the Investment in the Lerin Hills Loan filed with the Court today (the "Burr Decl.").

THIS OBJECTION DOES NOT RELATE TO AND WILL NOT IMPACT THE DIRECT LENDERS' RIGHTS TO REPAYMENT ON THE LERIN HILLS LOAN, SHARE IN ANY PROCEEDS GENERATED FROM THE SALE OF THE REAL PROPERTY SECURING THE LERIN HILLS LOAN OR SHARE IN THE RECOVERY OF ANY FUNDS FROM THE GUARANTOR FOR THE LERIN HILLS LOAN.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND FACTS

#### a.  The USACM Bankruptcy

On April 13, 2006 ("Petition Date"), USACM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Debtor continued to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtor's post-petition management of the Debtor was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC, who served as the Chief Restructuring Officer.

USACM was a Nevada corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account.  That business included the solicitation of investors to purchase fractional interest in loans that USACM originated and then serviced.  These investors are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein [Docket No. 2376].  As part of the Plan, and pursuant to an Asset Purchase Agreement filed with this Court, USACM sold the servicing rights to most of the loans it serviced to Compass

2434161.1

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

Partners, LLC and Compass Financial Partners, LLC ("Compass"), including the

Margarita Annex Loan.  The sale to Compass closed on February 16, 2007.

The USACM Trust exists as of the Effective Date of the Plan, which was March 12,

2007.  Geoffrey L. Berman is the Trustee.  Under the Plan, the USACM Trust is the

successor to USACM with respect to standing to seek allowance and disallowance of

Claims under 11 U.S.C. § 502(a).

Upon information derived from filings in the United States District Court, District

of Nevada, *3685 San Fernando Lenders Company, LLC, et al v. Compass USA SPE, LLC,*

*et al*, No. 2:07-cv-00892-RCJ-GWF action, the Trust believes that "Silar Advisors, LP

("Silar") financed Compass' acquisition of the Purchased Assets, including the loan

service agreements in the USACM bankruptcy case and took a secured interest in those

Purchased Assets by executing a Master Repurchase Agreement ("Repurchase

Agreement") with Compass, and by filing a UCC-1 financing statement with the State of

Delaware."  *Id.* Docket 1250 at 13-14 (citations to declarations omitted).

Further, from filings in the same action, the Trust believes that "Effective as of

September 26, 2007, Silar foreclosed on Compass through Asset Resolution LLC ("Asset

Resolution") and took ownership of the Purchased Assets.  … Silar created Asset

Resolution as a 'single purpose entity,' conveyed all of its interests in the Repurchase

Agreement to Asset Resolution, and Asset Resolution properly foreclosed on the assets of

Compass, including the Purchased Assets."  (Citations omitted.)  Asset Resolution LLC is

now a debtor in a chapter 7 bankruptcy case pending in Nevada, case no. BK-S-09-32824-

RCJ, along with certain affiliates.[1]  On November 6, 2007, pursuant to an order from the

---

[1] 10 90 SPE LLC, Fiesta Stoneridge LLC, CFP Gramercy SPE LLC, Bundy 2.5 Million
SPE LLC, CFP Cornman Toltec SPE LLC, Bundy Five Million LLC, Fox Hills SPE LLC,
HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean
Atlantic SPE LLC, CFP, Gess SPE LLC, CFP Clear Lake SPE LLC, and Shamrock SPE
LLC.

2434161.1

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Honorable Judge Jones in the District of Nevada litigation, the Lerin Hills Loan was abandoned by Compass.

The Trust has attempted to monitor loan collections through monitoring the district court litigation and the ARC bankruptcy case, but has received limited information concerning servicing and resolution of direct loans by Compass/Silar/Asset Resolution or their successors, including the trustee in bankruptcy for Asset Resolution.  The following is the extent of the USACM Trust's information on the current servicing and status of the Lerin Hills Loan.

### b.  The Lerin Hills Loan

USACM circulated an Offer Sheet to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "Lerin Hills Ltd."   A copy of the Offer Sheet is attached hereto as **Exhibit B** and incorporated by this reference. (Berman Decl., ¶ 4.)  The total loan amount proposed was $12,900,000.  The Offer Sheet described the investment as a "Subordinated Trust Deed Investment" and noted that the investment would be secured by a second deed of trust on 893 acres of land located along the north side of State Highway 46 and three miles west of Interstate 10, about 30 miles northwest of San Antonio, Texas.  (Berman Decl., ¶ 5.)  The Offer Sheet noted that the project was a fully entitled master planned community on 893 acres, which would include 1,375 lots.  (Berman Decl., ¶ 5.)  The Offer Sheet also noted that the Borrower would establish a Municipal Utility District that provides reimbursement for certain infrastructure costs through bond issuances, and that any reimbursements would be part of the Direct Lenders' collateral.  (Berman Decl., ¶ 5.)   The Offer Sheet further stated that the loan to value was approximately 61% based on a July 22, 2005 appraisal from Dugger, Canaday, Grafe, Inc.[2]   (Berman Decl., ¶ 6.)

---

[2] The appraisal prepared by Dugger, Canaday, Grafe, Inc. indicates an "as is" valuation of $17,420,000, which would be a 74% loan to value; a prospective market value based upon

2434161.1

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

On December 7, 2005, the Borrower made and delivered to various lenders, including the Direct Lenders identified in **Exhibit A**, a Promissory Note Secured by Deed of Trust, in the amount of $12,900,000 (the "Note") and a Loan Agreement.  (Berman Decl. ¶ 7.)  The Loan Agreement and Note provided for an initial loan of $10,000,000, with potential subsequent advances up to $12,900,000.  (Berman Decl. ¶ 7).  The Note was secured by a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" from Borrower in favor of the Direct Lenders that was recorded in the official records of Kendall County, Texas on December 22, 2005 at Instrument Number 00203809.  (Berman Decl., ¶ 7.)  The Loan Agreement expressly provided that the Deed of Trust was a second position lien on the Property behind a $20,000,000 deed of trust in favor of Wachovia.  (Berman Decl., ¶ 7.)  The Note was also supported by an Unconditional Guaranty executed by J. Abel Godines on December 7, 2005.  (Berman Decl., ¶ 8.)

The USACM "Loan Summary" dated July 31, 2006 and filed in this case shows that Borrower was "Non-performing" on the Note as of July 31, 2006.  (Berman Decl., ¶ 9.)  During this bankruptcy case through the transfer of servicing to Compass, USACM treated the Direct Lenders with respect to any interim payments by the borrower in accordance with this Court's orders.

Pursuant to a review of the relevant records in the Kendal County Recorder's Office, counsel for the Trustee has determined that an entity named MA Lerin Hills Holder, LLC foreclosed on the first position deed of trust on February 4, 2010.   The bid price was $10.00.

Lerin Hills filed a proof of claim in the bankruptcy (POC No. 10725-01279), which alleged that USACM had damaged it by failing to fully fund the loan.  (Berman Decl., ¶

completion of Phase 1 of the project (388 lots) as of March 1, 2006 as $23,970,000 which would be a 54% loan to value; and a $29,535,000 value upon completion of the project.

5

2434161.1

10.)  The Proof of Claim included an unsecured claim in the amount of $1,257,233.40 and a priority claim in the amount of $797,175.62.  (Berman Decl., ¶ 10.)  The Trust objected to the Proof of Claim, but ultimately settled the Proof of Claim by stipulating with Lerin Hills that the Court approve the Proof of Claim in the amount of  $1,200,000.  (Berman Decl., ¶ 9.)  The Court approved the Proof of Claim in that amount based upon the stipulation of the parties.  [DE 7450.]

### c.  The Lerin Hills Claims

**Exhibit A,** attached, lists Proofs of Claim filed by Direct Lenders that appear to be based upon an investment in the Lerin Hills Loan.  (Burr Decl. ¶ 7.)  **Exhibit A** identifies the Proof of Claim number, the claimant, the claimant's address, the total amount of the claim and the total amount of the claim that appears to be related to an investment in the Lerin Hills Loan based upon the information provided by the claimant.  (Burr Decl. ¶ 7.)  The claims listed in **Exhibit A** are referred to hereafter as the "Lerin Hills Claims."  As required by Nevada LR 3007, a copy of the first page of the proof of claim for each of the claims referenced in **Exhibit A** are attached as **Exhibit C**.

## II.    JURISDICTION

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 502 and Bankruptcy Rule 3007.

The statutory predicates for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## III.    APPLICABLE AUTHORITY

Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects.  If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the

6

2434161.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b).  A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f).  However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim.  *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).

## IV.    THE OBJECTIONS

The Lerin Hills Loan appears to have been a legitimate, arms-length transaction with a third party borrower.  In addition, the Direct Lenders took an known risk by investing in a promissory note secured by a second position lien on real property.

USACM is not liable for the Borrower's default or any decrease in the value of the collateral.

The Direct Lenders fail to state a claim because USACM does not appear to have breached the loan servicing agreements with respect to collection of the Lerin Hills Loan. USACM was under no duty to foreclose on the collateral securing the Lerin Hills Loan or take any other action.

The Trust believes that USACM is not liable for the Borrower's default or any decrease in the value of the collateral. However, as a result of the dispute with the Borrower as to its proof of claim in the USACM estate, there is some question as to whether the alleged failure to fund the full amount of the loan to the Borrower was material in its ability to complete the project and repay the advanced loan.  Therefore, the Trust believes allowing the Direct Lender proof of claims in an amount equal to 15% of the filed proof of claim is appropriate, with the balance being disallowed to account for the nature of the Direct Lenders' investment in the loan.

2434161.1



1    This objection will not affect the Direct Lenders' right to be repaid on the Lerin

2  Hills Loan by the Borrower, to recover from the sale of any collateral that secured the

3  Lerin Hills Loan, or to recover on the guaranty supporting the Lerin Hills Loan.

4    **V.    CONCLUSION**

5    The USACM Trust respectfully requests that the Court disallow 85% and allow

6  15% of each claim listed in **Exhibit A** to the extent those claims are based upon an

7  investment in the Lerin Hills Loan.  This objection concerns only claims based upon an

8  investment in the Lerin Hills Loan and not any other claims of any of the Direct Lenders.

9  The USACM Trust also requests such other and further relief as is just and proper.

10    DATED this 7th day of August, 2011.

11                                        LEWIS AND ROCA LLP

12

13

14    By /s/ *John Hinderaker* (AZ #018024)
         Rob Charles, NV 6593
         John Hinderaker, AZ 18024 (*pro hac vice*)

15       Marvin Ruth, NV 10979
      3993 Howard Hughes Parkway, Suite 600

16    Las Vegas, Nevada  89169
      Telephone:  (702) 949-8200

17    Facsimile:   (702) 949-8398
      E-mail:  mruth@lrlaw.com

18    *Attorneys for the USACM Liquidating Trust*

19  Copy of the foregoing and pertinent
    portion of Exhibit A deposited in first

20  class postage prepaid U.S. Mail on
    August 7, 2011 to all parties listed on

21  Exhibit A attached.

22  LEWIS AND ROCA LLP

23

24   /s/    *Matt Burns* _____
    Matt Burns,  Paralegal

25

26

2434161.1