**LEWIS AND ROCA LLP — LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles, Jr. NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com
Marvin Ruth NV State Bar No. 10979
Email: mruth@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No. BK-S-06-10725-LBR<br><br>CHAPTER 11<br><br>**USACM TRUST'S MOTION TO ALLOW PROOFS OF CLAIM BASED UPON INVESTMENT IN THE AMESBURY HATTERS POINT LOAN**<br><br>**Date of Hearing: September 30, 2011**<br>**Time of Hearing: 9:30 a.m.**<br>**Estimated Time for hearing: 10 min**. |

The USACM Liquidating Trust (the "USACM Trust") moves this Court, pursuant to § 502 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order allowing the Proofs of Claim listed in **Exhibit A**. to the extent those claims are based upon an investment in Amesbury Hatters Point. These claims were filed by investors ("Direct Lenders") against USA Commercial Mortgage Company ("USACM") based upon an investment in a loan (the "Amesbury Loan") to Amesburyport Corporation (the "Borrower"). This Motion is supported by the Court's record and the Declarations of Geoffrey L. Berman and Edward M. Burr in Support of USACM Trust's Motion to Allow

2436848.1

Proofs of Claim Based Upon the Investment in the Amesbury Loan. (the "Berman Decl." and "Burr Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND FACTS

#### a. The USACM Bankruptcy

On April 13, 2006 ("Petition Date"), USACM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continued to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtor's post-petition management of the Debtor was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC, who served as the Chief Restructuring Officer.

USACM was a Nevada corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account. That business included the solicitation of investors to purchase fractional interest in loans that USACM originated and then serviced. These investors are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Motion.

On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein [Docket No. 2376]. As part of the Plan, and pursuant to an Asset Purchase Agreement filed with this Court, USACM sold the servicing rights to most of the loans it serviced to Compass Partners, LLC and Compass Financial Partners, LLC ("Compass"), including the Amesbury Loan. The sale to Compass closed on February 16, 2007.

The USACM Trust exists as of the Effective Date of the Plan, which was March 12, 2007. Geoffrey L. Berman is the Trustee. Under the Plan, the USACM Trust is the

successor to USACM with respect to standing to seek allowance and disallowance of Claims under 11 U.S.C. § 502(a).

Upon information derived from filings in the United States District Court, District of Nevada, *3685 San Fernando Lenders Company, LLC, et al v. Compass USA SPE, LLC, et al*, No. 2:07-cv-00892-RCJ-GWF action, the Trust believes that "Silar Advisors, LP ("Silar") financed Compass' acquisition of the Purchased Assets, including the loan service agreements in the USACM bankruptcy case and took a secured interest in those Purchased Assets by executing a Master Repurchase Agreement ("Repurchase Agreement") with Compass, and by filing a UCC-1 financing statement with the State of Delaware." *Id.* Docket 1250 at 13-14 (citations to declarations omitted).

Further, from filings in the same action, the Trust believes that "Effective as of September 26, 2007, Silar foreclosed on Compass through Asset Resolution LLC ("Asset Resolution") and took ownership of the Purchased Assets. … Silar created Asset Resolution as a 'single purpose entity,' conveyed all of its interests in the Repurchase Agreement to Asset Resolution, and Asset Resolution properly foreclosed on the assets of Compass, including the Purchased Assets." (Citations omitted.) Asset Resolution LLC is now a debtor in a chapter 7 bankruptcy case pending in Nevada, case no. BK-S-09-32824-RCJ, along with certain affiliates.[1] William A. Leonard, Jr. was appointed trustee in the Asset Resolution case. By Order entered on July 19, 2010 by the Hon. Robert C. Jones in the Asset Resolution Case, the servicing rights for 19 loans, including the Amesbury Loan, were transferred to Cross, FLS.

The Trust has attempted to monitor loan collections through monitoring the district court litigation and the Asset Resolution bankruptcy case, but has received limited

---

[1] 10 90 SPE LLC, Fiesta Stoneridge LLC, CFP Gramercy SPE LLC, Bundy 2.5 Million SPE LLC, CFP Amesbury Toltec SPE LLC, Bundy Five Million LLC, Fox Hills SPE LLC, HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean Atlantic SPE LLC, CFP, Gess SPE LLC, CFP Brookmere Matteson SPE LLC, and Shamrock SPE LLC.

3

2436848.1

information concerning servicing and resolution of direct loans by Compass/Silar/Asset Resolution or their successors, including the trustee in bankruptcy for Asset Resolution. The Trust has also been in contact with Cross, FLS regarding the Amesbury Loan. The following is the extent of the USACM Trust's information on the current servicing and status of the Amesbury Loan.

### b. The Amesbury Loan

USACM circulated an Offer Sheet to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "Amesburyport Corporation." A copy of the Offer Sheet is attached hereto as **Exhibit B** and incorporated by this reference. (Berman Decl., ¶ 4.) The total loan amount proposed was $21,750,000. *Id.* The Offer Sheet described the investment as a "First Trust Deed Investment" and noted that the investment would be secured by a "First Mortgage on buildings 1 through 9 at 'Hatter' Point' in Amesbury, Massachusetts." *Id.* The Offer Sheet stated that the loan proceeds would be used to "refinance the existing construction loan and provide construction funds to complete the balance of the project," which was described as the restoration of 9 historic brick mill buildings for conversion in to condominiums. *Id.* The Offer Sheet stated that the loan-to-value was approximately 75% based on "revolver fundings of $15 million to reach an appraised 'aggregate retail sell-out' of $48,900,000" pursuant to a August 15, 2002 appraisal from Joseph J. Blake and Associates. *Id.*

On December 18, 2002, Borrower made and delivered to various lenders, including the Direct Lenders identified in **Exhibit A**, a "Promissory Note (Refinancing and Construction Loan)" (the "Note") and a Loan Agreement. (Berman Decl., ¶5.) The Loan Agreement provided for a loan of up to $21,750,000. *Id.* Pursuant to the Loan Agreement, the loan amount was intended for the "refinancing of certain existing debt of the Borrower, and for financing the construction of the Project." *Id.* The Loan

4

2436848.1

Agreement also provided for a $5,000,000 "construction revolver" whereby the Borrower could borrower, repay, and then re-borrow $5,000,000 of the loan.

The Note was secured by a "Construction Mortgage and Security Agreement" (the "Mortgage") from Borrower in favor of the Direct Lenders, which was recorded in the official records of the Essex County South District Registry on December 18, 2002 at Instrument 2002121800924. (Berman Decl., ¶ 6.) The Note was also supported by a Guaranty signed by William H. Sullivan on December 18, 2002. (Berman Decl., ¶ 7.)

The USACM "Loan Summary" dated July 31, 2006 and filed in this case shows that Borrower was "Non-Performing" on the Note as of July 31, 2006. (Berman Decl., ¶ 8.) During this bankruptcy case through the transfer of servicing to Compass, USACM treated the Direct Lenders with respect to any interim payments by the borrower in accordance with this Court's orders and the confirmed Plan.

Counsel for the Trustee had a brief conversation with a representative of Cross, FLS regarding the status of the Amesbury Loan. According to Cross, FLS, numerous condominium units were completed and sold after USACM provided a partial release. However, the Trust has seen evidence that the funds received from the sale of the units were either not provided to USACM or USACM diverted them back to the Borrower. The result was that those sale proceeds were not used to pay down the Amesbury Loan, although the collateral for the loan was released by USACM. The Guarantor has now passed away. A brief review of the public record shows that numerous partial releases were granted to USACM. Cross is no longer going to service this loan because it considers there to be no chance of recovery.

### c. The Amesbury Claims

**Exhibit A,** attached, lists Proofs of Claim filed by Direct Lenders that appear to be based in whole or in part upon an investment in the Amesbury Loan. (Burr Decl. ¶ 7.) **Exhibit A** identifies the Proof of Claim number, the claimant, the claimant's address, the

5

2436848.1

total amount of the claim and the total amount of the claim that appears to be related to an investment in the Amesbury Loan based upon the information provided by the claimant. (Burr Declaration ¶ 7.)  The claims listed in **Exhibit A** are referred to hereafter as the "Amesbury Claims."

## II.     JURISDICTION

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 502.

The statutory predicates for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## III.    APPLICABLE AUTHORITY

Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects.  If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b).  A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f).  However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim.  *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).

## IV.    THE MOTION TO ALLOW

The Direct Lenders received the first position interest in the collateral securing the loan as promised by the Offer Sheet.  In addition, the Direct Lenders took a known risk by



investing in a promissory note secured by a lien on real property. USACM is not liable for the Borrower's default or any decrease in the value of the collateral.

Nonetheless, the Trust believes USACM failed to fulfill its duties as a servicer to the Direct Lenders in this loan. USACM apparently granted partial releases of numerous individual condominium units without receiving consideration in return for the release or, possibly allowing the Borrower to retain the proceeds thereby denying the direct lenders their share of those proceeds. Thus, USACM released the collateral supporting the direct lender investments and securing the Amesbury Loan, without receiving anything of value in return. It appears that the direct lenders who invested in the Amesbury Claim have suffered a total loss that was caused, at least in large part, by USACM's misdeeds.

## V. CONCLUSION

The USACM Trust respectfully requests that the Court allow as general unsecured claims the claims against USACM listed in **Exhibit A** to the extent those claims are based upon an investment in the Amesbury Loan. The USACM Trust also requests such other and further relief as is just and proper.

Dated: August 11, 2011.

LEWIS AND ROCA LLP

By  s/John Hinderaker (AZ 18024)
   Robert M. Charles, Jr., NV 6593
   John Hinderaker, AZ 18024 (*pro hac vice*)
   Marvin Ruth, NV 10979
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
E-mail: JHinderaker@lrlaw.com
*Attorneys for the USACM Liquidating Trust*

Copy of the foregoing and pertinent portion of Exhibits mailed by first class postage prepaid U.S. Mail on August 11, 2011 to all parties listed on Exhibit A attached.

LEWIS AND ROCA LLP

  s/ Matt Burns
Matt Burns, Paralegal

2436848.1