# EXHIBIT

# C

*Record* RETURN TO: *CHau*
**CHICAGO TITLE INSURANCE COMPANY**
495 STATE ROAD 436
CASSELBERRY, FLORIDA 32707



PREPARED BY/RETURN TO:
Thomas Rondeau
USA Capital
4484 South Pecos Road
Las Vegas, Nevada 89121

KEN BURKE, CLERK OF COURT
PINELLAS COUNTY FLORIDA
INST# 2005502422 12/16/2005 at 01:42 PM
OFF REC BK: 14813 PG: 458-499
DocType:MTG RECORDING: $358.50

M DOC STAMP: $101500.00 INT TAX: $58000.00

## MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS

THIS MORTGAGE, SECURITY AGREEMENT AND ASSIGNMENT OF RENTS ("Mortgage") executed this *14th* day of *December*, 2005, by PALM HARBOR ONE, LLC, a Florida limited liability company ("Mortgagor"), whose address is 153 Andover Street, Suite 104, Danvers, Massachusetts 01923, Attn. Joseph Lilly, and the heirs, personal representatives, successors and assigns of Mortgagor, including all subsequent grantees, either voluntarily by act of the parties or involuntarily by operation of law, to USA COMMERCIAL MORTGAGE COMPANY, a Nevada corporation, as agent for those persons listed on Exhibit "A" attached hereto (collectively, "Mortgagee"), whose address is 4484 South Pecos Road, Las Vegas, Nevada 89121, its successors and assigns;

## W I T N E S S E T H:

THAT for good and valuable consideration and also in consideration of the aggregate sum of money named in the Promissory Note of even date herewith hereinafter described, and such additional sums of money as shall be borrowed by Mortgagor from Mortgagee or expended by Mortgagee for the account of Mortgagor, and any extensions, renewals, modifications or amendments of same, Mortgagor does hereby grant, bargain, lien, encumber, sell, alien, mortgage, remise, release, convey and confirm unto Mortgagee, in fee simple, the real estate, of which Mortgagor is now seized and possessed and in actual possession, situate in Pinellas County, Florida, and more particularly described in attached       Exhibit "B" ("Premises").

1

TOGETHER with (i) all buildings, structures and improvements of every nature whatsoever now and hereafter on said Premises, (ii) all insurance policies, leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Premises heretofore or hereafter entered into and all accounts, rents, revenues, issues, profits and all proceeds from the sale or other disposition of such agreements accruing and to accrue from said Premises, (iii) all easements, rights-of-way, licenses, privileges, gores of land, streets, ways, alleys, passages, sewer rights, waters, water rights, permits, development rights and powers and all estates, rights, titles and interests in any way belonging, relating or appertaining to the Premises, (iv) all present and future inventory and equipment, as those terms are defined in the Uniform Commercial Code, and all other present and future personal property of any kind or nature whatsoever, now or hereafter located at, upon, or without the Premises described on Exhibit "B" or used or to be used in connection with or relating or arising with respect to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof, including without limitation all present and future furniture, furnishings, fixtures, goods, machinery, plumbing and plumbing material and supplies, concrete, lumber, hardware, electrical wiring and electrical material and supplies, heating and air conditioning material and supplies, roofing material and supplies, window material and supplies, doors, paint, drywall, insulation, cabinets, ceramic material and supplies, flooring, carpeting, appliances, fencing, landscaping and all other materials, supplies and property of every kind and nature, (v) all present and future accounts, general intangibles, chattel paper, contract rights, instruments and documents as those terms are defined in the Uniform Commercial Code, and all contracts, agreements and documents now existing or hereafter arising, now or hereafter relating or arising with respect to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof, including without limitation: (a) all rights to the payment of money, including escrow proceeds arising out of the sale or other disposition of all or any portion of the Premises; (b) all plans, specifications and drawings relating to the development of the Premises and/or any construction thereon; (c) all use permits, occupancy permits, construction and building permits, environmental impact reports and soil reports, inspections, or surveys, and all other permits and approvals required by any governmental or quasi-governmental authority in connection with the development, construction, use, occupancy, operation, lease or sale of the Premises; (d) any and all agreements relating to the development, construction, use, occupancy, operation, lease and/or sale of the Premises between Mortgagor and any contractor, subcontractor, project manager or supervisor, architect, engineer, laborer, supplier of materials or any other party; (e) all lease or rental agreements now or hereafter covering or affecting the Premises or any portion thereof; (f) all names under which the Premises is now or hereafter known and all rights to carry on business under any such names or any variant thereof; (g) all trademarks relating to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof; (h) all goodwill relating to the Premises and/or the development, construction, use, occupancy, operation, lease or sale thereof; (i) all insurance proceeds and condemnation awards arising out of or incidental to the ownership, development, construction, use, occupancy, operation, lease or sale of the Premises; (j) all reserves, deferred payments, deposits, refunds, cost savings, bonds, insurance policies and payments of any kind relating to the Premises and/or

2

the development, construction, use, occupancy, operation, lease, or sale thereof; (k) all loan and financing commitments issued to Mortgagor in connection with the development, construction, sale, lease or financing of the Premises or any portion thereof or interest therein; (l) all funds deposited with Mortgagee by Mortgagor, and all accounts of Mortgagor with Mortgagee; and (m) all supplements, modifications and amendments to the foregoing, (vi) all fixtures owned by Mortgagor located upon or within the Premises or now or hereafter attached to, installed in, or used or intended for use in connection with the Premises, including without all partitions, generators, awnings, motors, engines, boilers, furnaces, pipes, plumbing, elevators, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, light fixtures, water tanks, heating, ventilating, air conditioning and air cooling equipment, and gas and electric machinery and equipment, and (vii) all present and future accessories, additions, attachments, proceeds, products, replacements and substitutions of or to all of the foregoing, with all of the foregoing being included in the term "Premises", it being the intention of Mortgagor and Mortgagee that this Mortgage (which is to be filed for record in the real estate records of the county mentioned above) shall also constitute a security agreement and financing statement as to the Premises herein mortgaged under the Florida Uniform Commercial Code, and that Mortgagee have all rights and remedies of a secured party thereunder;

TO HAVE AND TO HOLD the same, together with the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

AND Mortgagor does hereby covenant with Mortgagee that it is indefeasibly seized of said Premises in fee simple and is the record owner thereof; that it has full power and lawful right to convey said Premises in fee simple as aforesaid; that it shall be lawful for Mortgagee at all times peaceably and quietly to enter upon, hold, occupy and enjoy said Premises; that said Premises are free from all encumbrances; that Mortgagor will make such further assurances to protect the fee simple title to said Premises in Mortgagee as may reasonably be required; and that Mortgagor does hereby warrant the title to said Premises and will defend the same against the lawful claims of all persons whomsoever.

PROVIDED, ALWAYS, that if Mortgagor shall pay unto Mortgagee that certain Promissory Note (the "Promissory Note" or the "Note") from Mortgagor to Mortgagee in the amount of $29,000,000.00, which Note matures on the 30th day of November, 2006, and shall promptly perform, comply with and abide by each and every stipulation, agreement, condition and covenant of said Promissory Note and of this Mortgage, then the estate hereby created shall cease and be null and void.

AND, Mortgagor does hereby covenant and agree as follows:

1.    Payment of Indebtedness and Performance of Obligations.  Mortgagor shall pay all and singular the principal and interest and other sums of money payable by virtue of the Promissory Note and this Mortgage, or either, promptly on the days the same come due, and

3

shall perform, comply with and abide by each and every stipulation, agreement, condition and covenant in the Promissory Note, this Mortgage and any other instrument of indebtedness or security and any extensions, renewals, modifications or amendments of the foregoing described documents (collectively, the "Collateral Loan Documents") given by Mortgagor in connection herewith, all of which are secured by this Mortgage, including, but not limited to, all costs and expenses paid by Mortgagee in connection with this Mortgage and under any of the other Collateral Loan Documents.

2.     Taxes.

(a)     Mortgagor shall pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on the Premises when due and payable according to law before they become delinquent; and if the same shall not be promptly paid, Mortgagee may at any time, either before or after delinquency, pay, compromise, purchase, discharge or settle the same, or redeem the same from any tax or assessment, without waiving or affecting its rights hereunder.

(b)     Mortgagor shall deliver to Mortgagee, on or before April 15th of each year, tax receipts evidencing the payment of all taxes for the preceding calendar year, shall deliver to Mortgagee receipts evidencing the payment of all liens for public improvements within ninety (90) days after the same shall become due and payable, and shall pay or discharge within ninety (90) days after the due date any and all then-due installments of governmental levies that may be made on the Premises or this Mortgage or the Promissory Note, or in any other way resulting from the indebtedness secured by this Mortgage; and if this condition be not complied with and performed, Mortgagee may, but need not, pay such sum or sums without waiving or affecting its rights hereunder.

3.     Insurance.

(a)     Mortgagor shall keep the buildings (not including the foundations) and all equipment and personal property now or hereafter on the Premises fully insured in an amount at least equal to the full cash value thereof, but in no event less than the unpaid balance of the Promissory Note secured by this Mortgage, including both fire and extended coverage insurance. Where appropriate, said policy or policies shall be held by Mortgagee and shall bear a Standard New York Mortgagee Clause without contribution, making the loss under said policy or policies payable to Mortgagee as its interest may appear and shall provide for thirty (30) day notice of cancellation and such other terms required by Mortgagee; and in the event Mortgagor does not comply with this covenant, Mortgagee may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose, or any other right thereunder.

(b)     Provided (i) there is no Event of Default under this Mortgage, the Note or any of the other Loan Documents, and (ii) if promptly after the insurance claims are settled,

4

Mortgagor proceeds with the restoration, replacement, rebuilding or repair (hereinafter collectively referred to as "Restoration") of the Premises as nearly as possible to the condition the Premises was in immediately prior to such fire or other casualty, (iii) such Restoration, in Mortgagee's reasonable opinion, is capable of being completed not later than the maturity date under the Note, (iv) in the opinion of Mortgagee, the principal balance of the Note after completion of the Restoration will not exceed 70% of the appraised value of the Premises after the completion of the Restoration, as determined by an appraiser selected by Mortgagee, and (v) if no more than twenty (20) Contracts for Sale, as defined in the Loan Agreement, are terminated as a result of such fire or other casualty, the net amount of all insurance proceeds received by Mortgagee or Mortgagor with respect to such damage or destruction after deduction of its reasonable costs and expenses, if any, in collecting the same (hereinafter referred to as the "Net Proceeds") will be disbursed by Mortgagee to pay for the costs and expenses of Restoration.

(c)     The Net Proceeds shall be held by Mortgagee in an interest-bearing money market account or its equivalent and shall be paid by Mortgagee to, or as directed by, Mortgagor from time to time during the course of the Restoration, upon receipt of evidence, satisfactory to Mortgagee, that (i) all materials installed and work and labor performed (except to the extent they are to be paid for out of the requested payment) in connection with the Restoration have been paid for in full, (ii) there exist no notices of intention, mechanics' or other liens or encumbrances on the Premises arising out of the Restoration, and (iii) the balance of the Net Proceeds   plus any undisbursed Loan Funds plus the balance of any deficiency deposits given by Mortgagor to Mortgagee pursuant to the provisions of this paragraph hereinafter set forth shall be sufficient to pay in full the balance of the cost of Restoration.

(d)     The Restoration shall be done and completed in compliance with all applicable laws, rules and regulations, and all plans and specifications required in connection with the Restoration shall be subject to review and reasonable approval in all respects by Mortgagee. All costs and expenses incurred by Mortgagee in connection with making the Net Proceeds available for Restoration of the Premises, including, without limitation, counsel fees and inspecting engineer's fees incurred by Mortgagee, shall be paid by Mortgagor. The excess, if any, of the Net Proceeds after payment to Mortgagor as hereinabove provided, shall be applied by Mortgagee in reduction of the debt in such priority and proportions as Mortgagee in its discretion shall deem proper.

(e)     If at any time the Net Proceeds, or the undisbursed balance thereof plus the undisbursed Loan funds, shall not in the opinion of the Mortgagee be sufficient to pay in full the balance of the cost of Restoration, Mortgagor shall deposit the deficiency with the Mortgagee before any further disbursement of the Net Proceeds shall be made.

(f)     All insurance proceeds received by Mortgagee and not required to be disbursed for Restoration pursuant to the provisions hereinabove set forth may be retained and applied by Mortgagee toward the payment of the debt whether or not then due and payable in such priority and proportions as Mortgagee in its discretion shall deem proper. If Mortgagee

5

shall receive and retain such insurance proceeds, the lien of this Mortgage shall be reduced only by the amount thereof received and retained by Mortgagee and actually applied by Mortgagee in reduction of the debt.

(g)    In event of foreclosure of this Mortgage or other transfer of title to the Premises in extinguishment of the indebtedness secured hereby, all right, title, and interest of Mortgagor in and to any insurance policies then in force and all proceeds thereof shall pass, without charge therefor, to the purchaser or grantee, including Mortgagee.

(h)    Provided that the same is available, Mortgagor, at its expense and if required by law, shall carry flood insurance for the maximum amount available or the amount secured by this Mortgage, whichever is less, pursuant to the Flood Disaster Protection Act of 1973 or any subsequent legislation, and in the event that Mortgagee shall require flood insurance, the payment of premiums for such insurance and the application of any proceeds therefrom shall be governed by the provisions of paragraph 3(b) of this Mortgage and other applicable provisions hereof.

After Borrower has successfully filed all documents needed to effect the conversion of the apartments to a legal condominium regime, all insurance obligations hereunder may be performed by the condominium owners association, and the provisions in said filed documents regarding restoration shall govern; provided, however, that if said provisions are inconsistent with the provisions of Section 3(b), above, then Lender may, in its absolute discretion, declare an Event of Default.

4.    Reserve for Taxes and Insurance.  In order to provide for the payment of taxes, assessments, insurance premiums (including flood insurance) and other annual charges on the Premises, Mortgagor, upon the occurrence of an event of default under any of the Collateral Loan Documents and upon Mortgagee's written request, will pay monthly to Mortgagee, in addition to the other payments provided herein, a sum estimated to be equivalent to one twelfth (1/12th) of such items, which payment may be held by Mortgagee and commingled with other funds or its own funds without interest for the payment of such items.  If the amount estimated to be sufficient to pay said items is not sufficient, Mortgagor will pay the difference upon demand.  The provisions of this paragraph are solely for the added protection of Mortgagee and entail no responsibility on Mortgagee's part beyond the allowance of due credit, without interest, for sums actually received by it.  Upon the occurrence of an Event of Default under this Mortgage, Mortgagee may apply all or any part of the accumulated funds then held, upon any obligation secured hereby.

5.    Use, Preservation and Maintenance of Property.

(a)    Mortgagor shall permit, commit or suffer no waste, impairment or deterioration of the Premises, or any part thereof; and, upon the failure of Mortgagor to keep the Premises in good condition of repair, Mortgagee may demand the immediate repair of said

6

Premises or increase in the amount of security. Mortgagor shall permit no exploration for, nor mining or other means of production of minerals or other natural resources from the Premises. Mortgagor shall promptly comply with all laws, regulations and requirements of all governmental bodies affecting the Premises, including, but not limited to, full compliance with the Americans With Disabilities Act of July 26, 1990, 42 U.S.C. Section 12191, et seq., as amended from time to time, and all regulations promulgated pursuant thereto. Mortgagor shall not construct or permit the construction of any improvements to the Premises without Mortgagee's prior written consent.

(b)    Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Premises or any part thereof, nor shall Mortgagor initiate, join in, acquiesce in, or consent to any zoning change or zoning matter affecting the Premises. If under applicable zoning provisions, the use of all or any portion of the Premises are or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee. Mortgagor shall not permit or suffer to occur any waste on or to the Premises or to any portion thereof and shall not take any steps whatsoever to convert the Premises, or any portion thereof, to a condominium or cooperative form of management. Mortgagor will not install or permit to be installed on the Premises any underground storage tank or above-ground storage tank without the written consent of Mortgagee.

After Borrower has successfully filed all documents needed to effect the conversion of the apartments to a legal condominium regime, all maintenance obligations hereunder may be performed by the condominium owners association, and the provisions in said filed documents regarding maintenance shall govern; provided, however, that if said provisions are inconsistent with the provisions of Section 5, above, then Lender may, in its absolute discretion, declare an Event of Default.

6.    <u>Transfer of Property or Beneficial Interest in Mortgagor</u>. Any sale, conveyance or further encumbrance of all or any part of the Premises or any of Mortgagor's interests therein, and any transfer of stock in Mortgagor shall be subject to the terms and provisions of the Note and the Loan Agreement. The sale of condominium units on the Premises shall be subject to the partial release provisions set forth in the Loan Agreement.

7.    <u>Inspection</u>. Mortgagee or its agents shall have the right to enter upon and inspect the Premises. Mortgagee shall give Mortgagor notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8.    <u>Subrogation</u>. To the extent of the indebtedness secured hereby, Mortgagee is hereby subrogated to the lien or liens, and to the rights of the owners and holders thereof, of each and every mortgage lien or other encumbrance on the Premises which is paid and/or

7

satisfied in whole or in part out of the proceeds of the loan secured hereby, and the respective liens of said mortgages, liens or other encumbrances shall be and the same and each of them hereby is preserved and shall pass to and be held by Mortgagee herein as security for the indebtedness hereby secured, to the same extent that it would have been preserved and would have been passed to and been held by Mortgagee had it been duly and regularly assigned, transferred, set over and delivered unto Mortgagee by separate deed of assignment.

9.    Condemnation.

(a)    In the event the entire Premises, shall be condemned and taken for public use under the power of eminent domain, Mortgagee shall have the right to demand that all damages awarded for the taking of, or damages to said Premises, shall be paid to Mortgagee, up to the amount then unpaid on this Mortgage, and, at the option of Mortgagee, the same may be applied upon the payments last payable thereon.

(b)    If less than all of the Premises is taken, and if there is no Event of Default under this Mortgage or the Note, and if promptly after the making of any award or payment for such taking, Mortgagor proceeds with the restoration, replacement, rebuilding or repair (hereinafter collectively referred to as "Restoration") of the Premises as nearly as possible to the condition the Premises was in immediately prior to such taking, and if no more than twenty (20) Contracts for Sale, as defined in the Loan Agreement, are terminated as a result of such taking, and if in the reasonable opinion of Mortgagee the Restoration of the Premises is economically feasible, then the net amount of all awards and payments received by Mortgagee with respect to such taking, after deduction of its reasonable costs and expenses in collecting the same (hereinafter referred to as the "Net Award"), will be disbursed by Mortgagee to pay for the costs and expenses of Restoration.

(c)    The Net Award shall be held in trust by Mortgagee in an interest-bearing money market account or its equivalent and shall be paid by Mortgagee to, or as directed by, Mortgagor from time to time during the course of the Restoration, upon receipt of evidence satisfactory to Mortgagee, that (i) all materials installed and work and labor performed (except to the extent they are to be paid for out of the requested payment) in connection with the Restoration have been paid for in full, (ii) there exists no notice of intention, mechanics' or other liens or encumbrances on the Premises arising out of the Restoration, and (iii) the balance of the Net Award plus any undisbursed Loan funds plus the balance of any deficiency deposits given by Mortgagor to Mortgagee pursuant to the provisions of this paragraph hereinafter set forth shall be sufficient to pay in full the balance of the cost of Restoration.

(d)    Mortgagee shall not be obligated to make the Net Award available for the Restoration of the Premises, unless in the opinion of Mortgagee (i) principal balance of the Note after the completion of the Restoration will not exceed 70% of the appraised value of the Premises after the completion of the Restoration, as determined by an appraiser selected by Mortgagee and

(ii) such Restoration is capable of being completed not later than 90 days to the maturity date under the Note.

(e)    The Restoration shall be done and completed in compliance with all applicable laws, rules and regulations, and all plans and specifications required in connection with the Restoration shall be subject to review and reasonable approval in all respects by Mortgagee. All costs and expenses incurred by Mortgagee in connection with making the Net Award available for Restoration of the Premises, including, without limitation, counsel fees, inspecting engineers' fees and appraisal fees incurred by Mortgagee, shall be paid by Mortgagor.

(f)    The excess, if any, of the Net Award after payment to Mortgagor, as hereinafter provided, shall be applied by Mortgagee in reduction of the indebtedness in such priority and proportions as Mortgagee in its discretion shall deem proper. If at any time the Net Award, or the undisbursed balance thereof and the undisbursed Loan funds, shall not in the opinion of Mortgagee be sufficient to pay in full the balance of the cost of Restoration, Mortgagor shall deposit the deficiency with Mortgagee before any further disbursement of the Net Award shall be made.

(g)    Subject to the provisions hereinabove set forth, Mortgagee may apply any such award or payment to the discharge of the indebtedness evidenced by the Note, whether or not then due and payable in such priority and proportions as Mortgagee in its discretion shall deem proper.

(h)    If the Premises is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such award or payment, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive such award or payment, or a portion thereof sufficient to pay the indebtedness, whichever is less.

(i)    Mortgagor shall file and prosecute its claim or claims for any such award or payment in good faith and with due diligence and cause the same to be collected and paid over to Mortgagee, and hereby irrevocably authorizes and empowers Mortgagee, in the name of Mortgagor or otherwise to collect and receipt for any such award or payment and to file and prosecute such claim or claims, and although it is hereby expressly agreed that the same shall not be necessary in any event, Mortgagor, upon demand of Mortgagee, makes, executes and delivers any and all assignments and other instruments sufficient for the purpose of assigning any such award or payment to Mortgagee, free and clear of any encumbrances of any kind or nature whatsoever.

After Borrower has successfully filed all documents needed to effect the conversion of the apartments to a legal condominium regime, the provisions in said filed documents regarding condemnation shall govern; provided, however, that if said provisions are inconsistent with the provisions of this Section 9, above, then Lender may, in its absolute discretion, declare an Event of Default.

9

10.    <u>Events of Default and Remedies</u>.

(a)    Mortgagor acknowledges that (i) if it should fail to pay any sums of money under this Mortgage, the Note or the Collateral Loan Documents within ten (10) days after the same shall have become due and payable, or (ii) if it should fail to perform any stipulation, agreement or condition of this Mortgage, the Note or the Collateral Loan Documents to be performed by it other than with regard to the payment of money within thirty (30) days after Mortgagee's demand therefor, or (iii) if any representation or warranty made in this Mortgage, the Note or the Collateral Loan Documents by or on behalf of Mortgagor or any guarantor ("<u>Guarantor</u>") is at any time false, misleading or breached, or (iv) if any mortgage or lien of any nature, superior or inferior to this Mortgage, should have been in default (after passage of any time to cure), whether or not foreclosure proceedings should be instituted, or (v) if the value of the Premises should be impaired or Mortgagor's ability to pay the indebtedness secured hereby should be so diminished that Mortgagee should deem itself insecure, or if the Mortgagee should determine that a material adverse change has occurred in the financial condition of Mortgagor or any Guarantor from the conditions set forth in the most recent financial statement of Mortgagor or any Guarantor, heretofore furnished to Mortgagee, or from the condition of Mortgagor or any Guarantor as heretofore most recently disclosed to Mortgagee, or (vi) if Mortgagor or any Guarantor of the indebtedness secured by this Mortgage shall take any action pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered, or if, Mortgagor or any Guarantor shall be adjudicated a bankrupt, or be declared insolvent, or if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors, or shall petition or apply to any tribunal for the appointment of, or consent to the appointment of, a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, or if Mortgagor shall acquiesce in any petition filed against Mortgagor or any Guarantor under the Federal Bankruptcy Code, or if Mortgagor or any Guarantor shall take any action for the purpose of effecting any of the foregoing, or (vii) if any Guarantor, Mortgagor or any general partner of Mortgagor, if Mortgagor is a limited partnership, or any partner of Mortgagor, if Mortgagor is a general partnership, dies or is declared incompetent or any suspension or discontinuance of Mortgagor's or any Guarantor's business as a going concern, or (viii) if any of the creditors of Mortgagor or any Guarantor shall take any action against Mortgagor pursuant to the Federal Bankruptcy Code or any reorganization, arrangement, readjustment of debt, dissolution, or liquidation law or any similar law, federal or state, or if an order for relief with respect to Mortgagor or any Guarantor shall be entered in an involuntary case under the Federal Bankruptcy Code, or if any such creditor shall petition or apply to any tribunal for the appointment of a custodian, receiver, liquidator or trustee of Mortgagor or any Guarantor or of all or any part of the Premises, and if such action, petition or order shall not be discharged or dismissed within sixty (60) days after the date on which such action or petition was commenced or ordered entered, or (ix) if final judgment for the payment of money shall be rendered against Mortgagor or any Guarantor, and Mortgagor or any Guarantor shall not discharge the same or

10

cause it to be discharged within sixty (60) days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which such judgment was granted, based or entered, and secure a stay of execution pending such appeal, Mortgagor shall be in default and Mortgagee shall have the right, but not the obligation, to pursue all its rights and remedies under the laws of the State of Florida, including, without limitation, the right to declare all sums due and payable under the Note and this Mortgage to be immediately due and payable, anything in the Note or herein to the contrary notwithstanding.

(b)     Mortgagor shall pay all costs, charges and expenses, including attorneys' fees for all pre-litigation, litigation and any and all appeals therefrom, reasonably incurred or paid at any time by Mortgagee because of the failure of Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Promissory Note, this Mortgage or the Collateral Loan Documents, and every such payment shall bear interest from date of payment at the highest legal rate assessable under the Note.

(c)     Should there be an Event of Default hereunder, Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the Court having jurisdiction thereof for the appointment of a receiver of all and singular the Premises, and all of the rents, incomes, profits, issues and revenues thereof, from whatsoever source derived; and thereupon it is hereby expressly covenanted and agreed that the Court shall forthwith appoint a receiver of said mortgaged property, all and singular, and of such rents, incomes, profits, issues and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in like cases, and such appointment shall be made by such Court as a matter of strict right to Mortgagee, its successors, legal representatives or assigns, and without reference to the adequacy or inadequacy of the value of the Premises or to the solvency or insolvency of Mortgagor, and that such rents, profits, incomes, issues and revenues shall be applied by such receiver to the payment of the mortgage indebtedness, costs and charges, according to the order of such Court.

(d)     Should there be an Event of Default hereunder, Mortgagee shall have the right, without notice to Mortgagor, to collect and receive from any tenant of any portion of the Premises the rents, issues and profits of such demised premises and to give proper receipts and acquittances therefor, after paying all commissions of any rental agent collecting the same, and any reasonable attorneys' fees and other necessary expenses incurred in collecting same, and to apply the proceeds of such collection upon any indebtedness, obligation or liability, of Mortgagor hereunder.

(e)     The rights, options, powers and remedies provided to Mortgagee shall be cumulative, and no one or more of them shall be exclusive of the other or others, or of any right or remedy now or hereafter given or allowed by law, including, without limitation, all rights under Chapter 697.07, Florida Statutes, regarding assignment of rents and all rights under Chapter 702, Florida Statutes, regarding foreclosure actions.

11

(f)    The proceeds of any sale of all or any portion of the Premises shall be applied by Mortgagee first, to the extent of receiver's fees and expenses, if any, and to the payment of all costs and expenses (including, without limitation, reasonable attorney's fees and expenses) incurred by Mortgagee, together with interest thereon at the default rate of interest prescribed under the Note, in connection with any entry, action or proceeding under this Mortgage, and second, in such order as Mortgagee may elect, to payment of other amounts secured by this Mortgage and the Collateral Loan Documents. Mortgagor shall be and remain liable to Mortgagee for any difference between the net proceeds of the sale and the amount of the secured indebtedness until all such indebtedness has been paid in full.

(g)    If Mortgagee shall have proceeded to enforce any right under any Collateral Loan Documents and such proceedings shall have been discontinued or abandoned for any reason, then except as may be provided in any written agreement between Mortgagor and Mortgagee providing for the discontinuance or abandonment of such proceedings, Mortgagor and Mortgagee shall be restored to their former positions and the rights, remedies and powers of Mortgagee shall continue as if no such proceedings had been instituted.

11.    <u>Further Assurances</u>. Mortgagor shall do, execute, acknowledge, and deliver, at the cost of Mortgagor and without expense to Mortgagee, all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Mortgagee shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention of facilitating the performance of the terms of this Mortgage or for the filing, registering, or recording this Mortgage and, on written demand, will execute and deliver to Mortgagee one or more financing statements or comparable security instruments, to evidence more effectively the lien hereof upon the mixed or personal property; and upon Mortgagor's failure, refusal or neglect to do so after written demand, Mortgagee shall have the right to execute any such documents in the name of Mortgagor.

12.    <u>Indemnification</u>.    Mortgagor shall protect, indemnify and save harmless Mortgagee from and against all liabilities, claims, judgments, damages, penalties, causes of action, cost and expenses (including, without limitation, attorneys' fees and expenses, including those incurred in connection with appellate, bankruptcy and post-judgment proceedings) imposed upon or incurred by or asserted against Mortgagee by reason of: (a) ownership of this Mortgage, the Premises or any interest therein or receipt of any rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas or streets; (c) any use, non-use or condition in, on or about the Premises or any part thereof or on the adjoining sidewalks, curbs, adjacent property, parking areas or streets; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; or (e) the performance of any labor or services or the furnishing of

12

any materials or other property in respect of the Premises or any part thereof. Any amounts payable to Mortgagee by reason of the application of this paragraph shall become immediately due and payable upon demand by Mortgagee. The obligations of Mortgagor under this paragraph shall survive any termination or satisfaction of this Mortgage. The provisions of this paragraph shall not apply to any obligation, claim, judgment, damage, penalty or cause of action caused by the negligence or willful malfeasance of Mortgagee.

13.    Assignment of Additional Collateral.

(a)    Mortgagor hereby assigns to Mortgagee, the following items, which are sometimes hereinafter collectively referred to as the " Additional Collateral": All licenses, permits, approvals, variances, land use entitlements, franchises, certificates and agreements with or from all boards, agencies, departments, governmental or otherwise, relating directly or indirectly to the ownership, use, operation and maintenance of the Premises, or the construction of improvements on the Premises, whether heretofore or hereafter issued or executed (collectively, the "Licenses"), said boards, agencies, departments, governmental or otherwise, being hereinafter collectively referred to as the " Governmental Authorities"; all contracts and agreements (including, but not limited to, contracts or agreements with contractors, architects, engineers, surveyors, other design professionals and other consultants), subcontracts, agreements with utility companies (public or private), service agreements, surveys, plats, site plans, soil reports, wetlands reports, environmental studies, architectural or land planner renderings, plans and specifications, shop drawings, floor plans, brochures, advertising materials, warranties, guaranties and purchase orders which have heretofore been or will hereafter be executed by or on behalf of Mortgagor, or which have been assigned to Mortgagor, in connection with the use, operation and maintenance of the Premises, or the construction of development improvements on the Premises (collectively, the " Contracts"), and the parties with whom or to whom such Contracts have been or are given are hereinafter collectively referred to as the "Contractors"; and all contracts and agreements which have heretofore been or will hereafter be executed by or on behalf of Mortgagor in connection with the sale of any portion of the Premises (collectively, the "Sales Agreements"), and the parties with whom or to whom the Sales Agreements have been or are given are hereinafter collectively referred to as the "Purchasers".

(b)    Mortgagor hereby assigns, transfers and sets over unto Mortgagee, all of Mortgagor's right, title and interest in and to the Additional Collateral and all of the rights and benefits therefrom as security for the payment of the indebtedness secured hereby and any and all future indebtedness of Mortgagor to Mortgagee secured by this Mortgage and any and all future advance agreements made pursuant hereto. Until the occurrence of an event of default hereunder and/or any such future advance agreement(s), Mortgagor may retain, use and enjoy the benefits of the Additional Collateral. After the occurrence of an event of default, Mortgagee may enforce this assignment. The affidavit or written statement of an officer, agent or attorney of Mortgagee stating that there has been a default shall constitute conclusive

13

evidence thereof, and any of the Governmental Authorities, Contractors or Purchasers or any other person is authorized and directed to rely thereon.

(c)    Mortgagor agrees to faithfully observe and perform all of the obligations and agreements imposed upon Mortgagor under the Additional Collateral. From and after the date hereof, except as otherwise permitted in the Loan Documents or except in the ordinary course of business, no Sales Agreement, Contract or License may be altered, amended or cancelled, and no new Contract or Sales Agreement may be entered into except in accordance herewith. Mortgagee shall not be deemed in any manner to have assumed any of the Additional Collateral, nor shall Mortgagee be liable to Purchasers, Governmental Authorities or Contractors by reason of any default by any party under the Sales Agreements, Licenses or Contracts.

(d)    Mortgagor agrees to indemnify and hold Mortgagee harmless of and from any liability, loss or damage which Mortgagee may incur by reason of any claims or demands against it, based on its alleged assumption of Mortgagor's duties and obligations to perform and discharge the terms, covenants and agreements in the Sales Agreement, Licenses and Contracts.

(e)    After the occurrence of an event of default, Mortgagee may, in its sole discretion, elect to exercise any and all of Mortgagor's rights and remedies under the Additional Collateral without any interference and objection from Mortgagor, and Mortgagor shall cooperate in causing the Contractors and Purchasers to comply with all the terms and conditions of the Contracts and Sales Agreements. In no event shall Mortgagee be obligated to exercise any or all of such rights and remedies of Mortgagor. If, and to the extent permitted by law and the terms of the Additional Collateral, Mortgagee may, with or without entry upon the Premises, at its option, take over and enjoy the benefits of the Licenses, exercise Mortgagor's rights under the Additional Collateral, and perform all acts in the same manner and to the same extent as Mortgagor may do. In connection with the foregoing powers, and without limiting the same, Mortgagee may effect new Sales Agreements, Contracts and Licenses, cancel or surrender existing Sales Agreements, Contracts or Licenses, alter or amend the terms of and renew existing Sales Agreements, Contracts and Licenses, and make concessions to Purchasers, Governmental Authorities and Contractors. Mortgagor hereby releases any and all claims which it has or may have against Mortgagee arising out of such performance by Mortgagee.

(f)    All of the foregoing powers herein granted to Mortgagee shall be liberally construed. Mortgagee need not expend its own funds in the exercise of such powers, but if it does, such amounts shall be considered as advances for and on behalf of Mortgagor secured by this Mortgage and also evidenced and secured by the Promissory Note and the other Collateral Loan Documents given in connection herewith and also secured by any and all future advance agreement(s) made pursuant to this Mortgage and any and all promissory note(s) executed and delivered in connection therewith. Any amounts so advanced shall bear

14

interest at the then current rate prescribed in the Promissory Note or promissory note(s) executed and delivered in connection with any future advance agreement made pursuant hereto.

(g) Mortgagor shall, upon request of Mortgagee, furnish Mortgagee a complete list of all Sales Agreements, Contracts and License. Further, if requested, Mortgagor shall deliver to Mortgagee executed or certified copies of all Sales Agreements, Contracts, Licenses and other written agreements, correspondence and memoranda between Mortgagor (and its predecessors in title) and Purchasers, Contractors and Governmental Authorities, setting forth the contractual and other arrangements between them.

(h) Nothing herein contained shall be construed as making Mortgagee a mortgagee in possession, or as constituting a waiver or suspension by Mortgagee of its rights to enforce payment of the debts under the terms hereof, the Promissory Note, or the other Collateral Loan Documents. Mortgagee is not the agent, partner or joint venturer of Mortgagor or of any of the Purchasers, Contractors or Governmental Authorities.

14. Assignment of Rents and Leases . Mortgagor hereby conveys, transfers and assigns unto Mortgagee, its successors and assigns, all the rights, interest and privileges which Mortgagor, as lessor, has and may have in the leases now existing or hereafter made and affecting the Premises, as said leases may have been, or may from time to time be hereafter, modified, extended and renewed, together with all accounts, rents, income, deposits and profits due and becoming due therefrom (individually, a " Lease" and, collectively, the "Leases"). Mortgagor further covenants and agrees as follows:

(a) This assignment of leases is made as additional security for the payment of the Note (and all extensions or modifications thereof). Mortgagor and Mortgagee intend for this assignment to be a present, absolute, unconditional and irrevocable assignment of the Leases and all accounts, rents, income, deposits and profits due and becoming due therefrom. The Mortgagee grants to the Mortgagor a conditional license, subject to the Mortgagee's rights under this Mortgage, to collect the rents, income, deposits and profits from the Leases, in trust for the Mortgagee, and to use them solely in accordance with the terms of this Mortgage. It is expressly understood and agreed by Mortgagor that before an Event of Default occurs under the terms of the Note and this Mortgage, Mortgagor shall have the right to collect said rents, income and profits from the Leases and to retain, use and enjoy the same. Anything to the contrary notwithstanding, Mortgagor hereby assigns to Mortgagee any award made hereafter to it in any court procedure involving any of the lessees in any bankruptcy, insolvency or reorganization proceedings in any State or Federal court and any and all payments made by lessees in lieu of rent. Mortgagor hereby appoints Mortgagee as its irrevocable attorney-in-fact to appear in any action, after an Event of Default, to collect any such award or payment, and/or to perform and discharge any and all obligations and undertakings of Mortgagor under any Lease.

15

(b)    Mortgagor, in the event of default in the performance of any of the terms and conditions of the Note and this Mortgage, hereby authorizes Mortgagee, at its option and to the extent permitted by law, to enter and take possession of the Premises and to manage and operate the same, to collect all or any rents accruing from the Leases, to let or relet said Premises or any part thereof, subject to the terms of the Leases, to cancel and modify Leases, evict tenants, bring or defend any suits in connection with the possession of said Premises in its own name or Mortgagor's name, make repairs as Mortgagee deems appropriate, and perform such other acts in connection with the management and operation of said Premises as Mortgagee, in its discretion, may deem proper.

(c)    The receipt by Mortgagee of any rents, issues or profits after the institution of foreclosure proceedings shall not cure such default nor affect such proceedings or any sale pursuant thereto.

(d)    Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any of the Leases, and Mortgagor hereby agrees to indemnify Mortgagee for, and to save it harmless from, any and all liability arising from any of said Leases, and this Mortgage shall not place responsibility for the control, care, management or repair of said Premises upon Mortgagee, or, unless Mortgagee does so take control, make Mortgagee responsible or liable for any negligence in the management, operation, upkeep, repair or control of said Premises resulting in loss or injury or death to any tenant, licensee, employee or stranger.

(e)    Mortgagor warrants and represents that to its knowledge:

(i)    Each Lease is in full force and effect;

(ii)    No default exists on the part of the lessee thereunder or Mortgagor;

(iii)    No rent has been collected in advance other than as specified in each Lease;

(iv)    No Lease nor any interest therein has been previously assigned or pledged;

(v)    No lessee under a Lease has any defense, setoff or counterclaim against Mortgagor;

(vi)    All rent due to date under the Leases has been collected and no concession has been granted to any lessee in the form of a waiver, release, reduction, discount or other alteration of rent due or to become due; and

16

(vii)   Mortgagor has full right and lawful authority to assign the Leases and the rents, income and profits due or to become due thereunder.

(f)   Mortgagor agrees:

(i)   Mortgagor shall not collect any rents and profits in advance of the date on which they become due under the terms of a Lease;

(ii)   Mortgagor shall not enter into any new Leases, terminate any Lease (except pursuant to the terms of the Lease upon a default by the lessee) or modify or amend a Lease or any of the terms thereof, or grant any concessions in connection therewith or accept a surrender thereof, except in the ordinary course of business, without the prior written consent of Mortgagee;

(iii)   Mortgagor shall, immediately upon execution thereof, forward any new or additional lease to Mortgagee;

(iv)   Mortgagor shall faithfully perform and discharge all obligations of the lessor under the Leases and shall give prompt written notice to Mortgagee of any notice of Mortgagor's default received from a lessee or any other person together with a photocopy of such notice;

(v)   Mortgagor shall give Mortgagee written notice immediately upon entering into any lease or other occupancy agreement of any part of the Premises and shall promptly provide to Mortgagee a true and correct copy of such lease or other occupancy agreement; and

(vi)   Mortgagor shall use its best efforts to obtain and deliver to Mortgagee, within twenty (20) days after request therefor, duly executed estoppel certificates from each lessee under the Leases, attesting that each Lease is in full force and effect with no defaults thereunder on the part of any party, that no rental (exclusive of any advance rent given or as constituting a security deposit) has been paid more than one month in advance, and that the lessee claims no defense or offset against the full and timely performance of Mortgagor's obligations under the Lease.

(g)   Mortgagor hereby authorizes Mortgagee to give notice in writing of this assignment at any time to any lessee under any of the Leases.

17

(h)     The rights, options, powers and remedies to Mortgagee under this paragraph 14 shall be cumulative, and no one or more of them shall be exclusive over the other or others, or of any right or remedy now or hereafter given or allowed by law, including, without limitation, all rights under Chapter 697.07, Florida Statutes, regarding assignment of rents and all rights under Chapter 702, Florida Statutes, regarding foreclosure actions. In no event shall reference to the foregoing statutes diminish, alter, impair or affect any other rights and remedies of Mortgagee provided in this Mortgage and the Collateral Loan Documents. This assignment of rents shall be fully operative without regard to the value of the Premises or without regard to the adequacy of the Premises to serve as security for the obligations owed by Mortgagor to Mortgagee, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Mortgagor waives any notice of default or demand for turn over of rents by Mortgagee, together with any rights under Section 697.07 to apply to a court to deposit the rents into the registry of the court or such other depository as the court may designate.

(i)     All Leases entered into after the date of this Mortgage and any modifications and amendments to any existing Leases shall be subordinate to the lien and operation of this Mortgage.

15.     <u>Loan Agreement</u>. Mortgagor covenants and agrees that (i) all of the terms and conditions of the Loan Agreement ("<u>Loan Agreement</u>") of even date between Mortgagee and Mortgagor are hereby incorporated into this Mortgage, (ii) any Event of Default under the Loan Agreement shall constitute an Event of Default under this Mortgage, and (iii) any advances or disbursements made under the Loan Agreement with interest on such advances or disbursements, including, but not limited to, interest, costs and expenses, are secured by the lien and operation of this Mortgage.

16.     <u>Bankruptcy</u>. Mortgagor hereby agrees that in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor does agree that in the event Mortgagor or any partner of Mortgagor shall (a) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended; (b) be the subject of any order for relief issued under such Title 11 of the U.S. Code, as amended; (c) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or other relief for debtors; (d) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator or liquidator; or (e) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency or relief for debtors, then and in any of such events Mortgagee shall thereupon be entitled to relief from any automatic stay imposed by Section 362 of Title 11 of the U.S. Code, as amended, or

18

otherwise, on or against the exercise of the rights and remedies otherwise available to Mortgagee as provided in this Mortgage, any Promissory Note evidencing the subject indebtedness, or any other documents or instruments executed in connection therewith, and as otherwise provided by law. Mortgagor hereby agrees not to object to Mortgagee immediately seeking relief from the automatic stay, to allow Mortgagee to proceed immediately to obtain a final judgment of foreclosure of this Mortgage, to complete a foreclosure sale and/or to proceed against and realize upon the collateral for the indebtedness secured hereby and to otherwise allow Mortgagee to take all such actions as Mortgagee may elect in its sole discretion in pursuance of the other rights and remedies available in the event of a default by Mortgagor under this Mortgage and all Collateral Loan Documents. Mortgagor hereby waives any protection afforded under 11 U.S.C., Section 362(a).

17.   Future Advance.

(a)   It is mutually covenanted and agreed by and between Mortgagor and Mortgagee hereto that upon request of Mortgagor, Mortgagee may hereafter, at its option, at any time within twenty (20) years from the date hereof and prior to full payment of this Mortgage and the Promissory Note secured thereby, make further advances to Mortgagor, and any such further advances, with interest, shall be secured by this Mortgage and shall be evidenced by an additional note then executed and delivered to Mortgagee and that the total amount of indebtedness that may be secured by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed twice the original principal amount of the Note, together with interest thereon and any and all disbursements made by Mortgagee for the payment of taxes, levies or insurance on the Premises with interest on such disbursements at the rate specified in the Promissory Note and for reasonable attorneys' fees and court costs incurred in the collection of any or all such sums of money.

(b)   Mortgagor expressly waives and relinquishes any right granted under Section 697.04, Florida Statutes, or otherwise, to limit the amount of indebtedness that may be outstanding at any time during the term of this Mortgage. Mortgagor further covenants not to file for record any notice limiting the maximum principal amount that may be secured by this Mortgage and agrees that any such notice, if filed, shall be null and void and of no effect, and further agrees that the filing of any such notice shall constitute an event of default hereunder.

18.   Environmental Matters.   Mortgagor expressly represents, covenants and warrants to Mortgagee that to its knowledge, based on the environmental report referenced in the Loan Agreement, there is not present on the Premises and the improvements thereof do not contain any pollutants, hazardous wastes or hazardous substances (including asbestos), other than as may have been disclosed to and approved in writing by the United States Environmental Protection Agency and any state regulatory body with jurisdiction thereover, and that the Premises are not now being used and will not, in the future, be used for the handling, storage, treatment, transportation or disposal of pollutants, hazardous wastes or

19

hazardous substances. Mortgagor agrees to indemnify, defend and hold Mortgagee harmless from and against any loss to Mortgagee, including, without limitation, attorneys' fees (including appellate), incurred by Mortgagee as a result of such presence or content or the present or future use, handling, storage, transportation, treatment or disposal of pollutants, hazardous wastes or hazardous substances, including asbestos. In the event of a violation of the covenant and warranty in this paragraph, Mortgagee may, at its sole discretion, either declare an event of default hereunder or require Mortgagor to take action, or expend monies on Mortgagor's behalf, to correct such violation and to rectify all adverse consequences of such violation. In the event Mortgagee elects to expend monies to correct any such violation, such monies shall be deemed proceeds of the loan secured by this Mortgage, shall be so secured and shall be repaid and bear interest as provided in the Promissory Note. Any such action taken by Mortgagee shall not constitute a waiver of any claim that Mortgagee has under law for any loss incurred by Mortgagee as a result of such violation.

19.    <u>Notice</u>. Any notice to Mortgagor provided for in this Mortgage shall be given by delivering it or by mailing it by first-class mail unless applicable law requires use of another method. The notice shall be directed to Mortgagor's address set forth on page 1 of this Mortgage or any other address Mortgagor designates by notice to Mortgagee. Any notice to Mortgagee shall be given by first-class mail to Mortgagee's address set forth on page 1 of this Mortgage, or any other address Mortgagee designates by notice to Mortgagor. Any notice provided for in this Mortgage shall be deemed to have been given to Mortgagor or Mortgagee when given as provided in this paragraph. Lender shall send a copy of any notice given to Borrower hereunder to Robert Lee Shapiro, Esq., at 2401 PGA Blvd., Ste. 272, Palm Beach Gardens, FL 33410.

20.    <u>Forbearance by Mortgagee Not a Waiver</u>. Any waiver of any payment under the Promissory Note or Mortgage at any time shall not, at any other time, constitute a waiver of the terms of the Promissory Note or Mortgage, and the acceptance of late payments under the Promissory Note shall not constitute a waiver of the option of Mortgagee to accelerate the indebtedness as provided for herein.

21.    <u>Default Interest</u>. Any payments made by Mortgagee pursuant to the terms hereof shall be additional indebtedness secured by this Mortgage and shall bear interest at the highest rate set forth in the Promissory Note. Such sum(s) shall be paid by Mortgagor immediately upon demand by Mortgagee.

22.    <u>Other Lienholders</u>. Any person or entity taking a junior mortgage, or other lien upon the Premises or any part thereof or any interest therein, shall take said lien subject to the rights of Mortgagee to amend, modify, extend, renew or release the Note, this Mortgage or any other document or instrument evidencing, securing or guaranteeing the Note, in each and every case without obtaining the consent of the holder of such junior lien and without the lien of this Mortgage losing its priority over the rights of any such junior lien.

23.    Taxation.

(a)    If any law is amended, enacted or adopted after the date of this Mortgage which deducts the Note from the value of the Premises for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Note or Mortgagee's interest in the Premises, Mortgagor will pay such tax, with interest and penalties thereon, if any.  In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than forty-five (45) days, to declare the Note immediately due and payable.

(b)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.  Mortgagor hereby agrees that, in the event that it is determined that additional documentary stamp tax or intangible tax is due hereon or on any mortgage or promissory note executed in connection herewith (including without limitation, the Note), Mortgagor shall indemnify and hold harmless Mortgagee for all such documentary stamp tax and/or intangible tax, including all penalties and interest assessed or charged in connection therewith.  Mortgagor shall pay the same within ten (10) days after demand of payment from Mortgagee and the payment of such sums shall be secured by this Mortgage and such sums shall bear interest at the default rate (as defined in the Note) until paid in full.

24.    Rights of Mortgagee, Actions of Mortgagee and Waivers by Mortgagor.

(a)    Mortgagee may release, regardless of consideration, any part of the Premises without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests evidenced by this Mortgage or the other Collateral Loan Documents or affecting the obligations of Mortgagor or any other party to pay the Note.  For payment of the Note, Mortgagee may resort to any collateral securing the payment of the Note in such order and manner as Mortgagee may elect.  No collateral taken by Mortgagee shall in any manner impair or affect the lien or security interests given pursuant to the Collateral Loan Documents, and all collateral shall be taken, considered and held as cumulative.

(b)    Mortgagor hereby irrevocably and unconditionally waives and releases: (i) all benefits that might accrue to Mortgagor by virtue of any present or future law exempting the Premises from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment; (ii) all notices of any event of default except as expressly provided herein or of Mortgagee's exercise of any right, remedy or recourse provided for under the Collateral Loan

21

Documents; and (iii) any right to a marshalling of assets, a sale in inverse order of alienation or any other right to direct in any manner, the order of sale of any of the Premises.

       (c)    To the extent permitted by applicable law, Mortgagee's rights hereunder shall continue even to the extent that a suit for collection of the Note, or part thereof, is barred by a statute of limitations. Mortgagor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Note.

       (d)    Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Premises and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its reasonable discretion, decides should be brought to protect Mortgagee's interest in the Premises. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security instrument discharged in whole or in part by the Note, and any such subrogation rights shall constitute additional security for the payment of the Note.

       (e)    All amounts due under this Mortgage, the Note and the other Collateral Loan Documents shall be payable without setoff, counterclaim or any deduction whatsoever.

       (f)    Mortgagor shall not be entitled to any notices of any nature whatsoever from Mortgagee except with respect to matters for which this Mortgage specifically and expressly provides for the giving of notice by Mortgagee to Mortgagor and except with respect to matters for which Mortgagee is required by applicable law to give notice, and Mortgagor hereby expressly waives the right to receive any notice from Mortgagee with respect to any matter for which this Mortgage does not specifically and expressly provide for the giving of notice by Mortgagee to Mortgagor.

       (g)    In the event that a claim or adjudication is made that Mortgagee has acted unreasonably or unreasonably delayed acting in any case where by law or under the Note, this Mortgage or the other Collateral Loan Documents, it has an obligation to act reasonably or promptly, Mortgagee shall not be liable for any monetary damages, and Mortgagor's remedies shall be limited to injunctive relief or declaratory judgment.

       (h)    The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note or other Collateral Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Premises, or of any person liable for the Note or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or the other Collateral Loan Documents.

Mortgagee may resort for the payment of the Note to any other security held by Mortgagee in such order and manner as Mortgagee, in its discretion, may elect. Mortgagee may take action to recover the Note, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclose this Mortgage. The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

(i)     Mortgagor hereby waives and renounces all homestead and exemption rights provided by the constitution and the laws of the United States and of any state, in and to the Premises as against the collection of the Note, or any part hereof. Mortgagor hereby represents and warrants to Mortgagee that no portion of the Premises constitutes the homestead of any person, that neither Mortgagor nor any of its principals or partners or their relatives reside on any portion of the Premises or claim any portion of the Premises as their homestead, and that no individual residing on the Premises or any portion thereof has any claim to homestead rights on any portion of the Premises.

(j)     By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Mortgagee pursuant to the Collateral Loan Documents, including, but not limited to, any officer certificates, balance sheet, statement, survey or appraisal, Mortgagee shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Mortgagee.

(k)     If Mortgagor shall fail to duly pay or perform any of the terms and provisions of this Mortgage or the Collateral Loan Documents, then at any time thereafter without notice to or demand upon Mortgagor, and without waiving or releasing any right, remedy or power of Mortgagee, Mortgagee may pay or perform same for the account of and at the expense of Mortgagor, and shall have the right to enter and to authorize others to enter upon the Premises at all reasonable times for such purpose and to take all such action thereon and with respect to the Premises as may be necessary or appropriate for such purpose.

25.    Uniform Commercial Code Security Agreement. This Mortgage creates a lien on and grants a security interest in, the personal property of Mortgagor located and to be located on the Premises, and it shall constitute a security agreement under the Florida Uniform Commercial code or other law applicable to the creation of liens on personal property described in the UCC-1 Financing Statements executed in connection herewith. Mortgagor covenants and agrees to execute, file and refile such financing statements, continuation statements or other documents as Mortgagee shall require from time to time with respect to

23

such personal property. This Mortgage shall constitute a financing statement under the Florida Uniform Commercial Code. If an Event of Default occurs, Mortgagee shall have all rights and remedies of a secured party under the Florida Uniform Commercial Code.

26. <u>Covenants, Representations and Warranties.</u> Mortgagor hereby covenants, represents and warrants to Mortgagee as follows:

(a) Mortgagor has full power and authority to execute and deliver this Mortgage and the Collateral Loan Documents and to incur and perform the obligations provided for therein, all of which have been duly authorized by all proper and necessary action of the appropriate governmental body of Mortgagor. No consent or approval of any public authority or other third party is required as a condition to the validity of any of the Collateral Loan Documents, and Mortgagor is in compliance with all laws and regulatory requirements to which it is subject.

(b) There is no litigation involving Mortgagor pending, or to the knowledge of Mortgagor threatened before any court or governmental authority, agency or arbitration authority.

(c) Mortgagor shall maintain its corporation or partnership in existence and in good standing and qualification to do business where required and comply with all laws, regulations and governmental requirements, including, without limitation, environmental laws applicable to it or to any of its property, business operations and transactions.

(d) Mortgagor shall not change the general character of its business as conducted at the date hereof.

(e) Neither Mortgagor nor any Guarantor has any defense to the payment in full of the Note that arises from applicable local, state or federal laws, regulations or other requirements. None of the Collateral Loan Documents are subject to any right of rescission, setoff, abatement, diminution, counterclaim or defense, including the defense of usury, nor will the operation of any of the terms of any such Collateral Loan Documents, or the exercise of any right thereunder, render any Collateral Loan Documents unenforceable, in whole or in part, or subject to any right of rescission, setoff, abatement, diminution, counterclaim or defense, including the defense of usury.

(f) No improvements on adjoining properties encroach upon the Premises, and no easements or other encumbrances upon the Premises encroach upon any of the improvements, so as to affect the value or marketability of the Premises except for immaterial encroachments which do not adversely affect the security intended to be provided by this Mortgage or the use, enjoyment, value or marketability of the Premises. All of the improvements comply with all material requirements of any applicable zoning and subdivision

24

laws and ordinances. The Premises are properly zoned to permit the existing use and/or the intended use by Mortgagor.

(g)    The Premises are not subject to any leases, except as shown on the rent roll delivered toMortgagee, or operating agreements.

(h)    All financial data, including, without limitation, statements of cash flow and income and operating expenses, delivered to Mortgagee by, or on behalf of Mortgagor are (i) true and correct in all material respects; (ii) accurately represent the financial condition of Mortgagor or the Premises as of the date thereof in all material respects; and (iii) to the extent reviewed by an independent certified public accounting firm, have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered.

(i)    The Premises are located on a dedicated, all-weather road, or has access to an irrevocable easement permitting ingress and egress which are adequate in relation to the Premises and location on which the Premises are located.

(j)    The Premises are served by public utilities and services in the surrounding community, including police and fire protection, public transportation, refuse removal, public education and enforcement of safety codes which are adequate in relation to the Premises and location on which the Premises are located.

(k)    The Premises are serviced by public water and sewer systems which are adequate in relation to the Premises and location on which the Premises are located.

(l)    The Premises are a contiguous parcel and a separate tax parcel, and there are no delinquent taxes or other outstanding charges adversely affecting the Premises.

(m)    The Premises are not relied upon by, and does not rely upon, any building or improvement not part of the Premises to fulfill any zoning, building code or other governmental or municipal requirement for structural support or the furnishing of any essential building systems or utilities, except to the extent of any valid and existing reciprocal easement agreements shown in the title insurance policy insuring the lien of this Mortgage.

(n)    No action, omission, misrepresentation, negligence, fraud or similar occurrence has taken place on the part of any person that would reasonably be expected to result in the failure or impairment of full and timely coverage under any insurance policies providing coverage for the Premises.

(o)    There are no defaults by Mortgagor beyond any applicable grace period under any contract or agreement (other than this Mortgage and the other Collateral Loan Documents) that binds Mortgagor and/or the Premises, including any management, service,

25

supply, security, maintenance or similar contracts; and Mortgagor has no knowledge of any such default for which notice has not yet been given; and no such agreement is in effect with respect to the Premises that is not capable of being terminated by Mortgagor on less than thirty (30) days' notice except as previously disclosed to Mortgagee by a delivery of a copy of all such agreements.

All of the representations, covenants and warranties made under this Mortgage and the Collateral Loan Documents, including, but not limited to, the Affidavit of Owner shall be deemed to be made at and as of the date hereof and at and as of the date of any future advance or additional funding under the Note. Mortgagor acknowledges that Mortgagee has relied upon Mortgagor's representations, has made no independent investigation of the truth thereof, is not charged with any knowledge contrary thereto that may be received by an examination of the public records or that may have been received by any officer, director, agent, employee or shareholder of Mortgagee.

    27.   Miscellaneous.

       (a)    Time is of the essence of this Mortgage.

       (b)    The covenants, provisions and conditions imposed on Mortgagor under this Mortgage shall be binding on and shall inure to the successors, heirs, executors, personal representatives and assigns of and all successors in title to Mortgagor.

       (c)    Each and all of the covenants and obligations of Mortgagor (other than warranties and representations contained herein) shall survive the execution and delivery of the Collateral Loan Documents and shall continue in full force and effect until the Note shall have been paid in full; provided, however, that nothing contained in this paragraph shall limit the obligations of Mortgagor except as otherwise set forth herein. In addition, any and all warranties and representations of Mortgagor contained herein shall survive the execution and delivery of the Collateral Loan Documents and (i) shall continue for a period of one (1) year following any release of this Mortgage executed by Mortgagee and satisfaction of the loan evidenced by the Collateral Loan Documents, and (ii) shall, with respect to prior events, survive the transfer or assignment of this Mortgage, the entry of a judgment of foreclosure, sale of the Premises by foreclosure or deed in lieu of foreclosure (including, without limitation, any transfer of the Mortgage by Mortgagee of any of its rights, title and interest in and to the Premises to any party, whether or not affiliated with Mortgagee).

       (d)    The terms and provisions of the loan commitment letter, if any, between Mortgagor and Mortgagee are hereby incorporated into and made a part of this Mortgage. In the event any of the terms and provisions of this Mortgage, the Note or any of the other Collateral Loan Documents of even date herewith, conflict with any of the terms and provisions of the commitment letter, the terms and provisions of this Mortgage, the Note and such Collateral Loan Documents will prevail.

(e)    Mortgagor, within ten (10) days after written request from Mortgagee, shall furnish a written statement, duly acknowledged, setting forth the unpaid principal balance of, and interest on, the Note, and whether or not any offsets or defenses exist thereto.

(f)    Mortgagor shall, at Mortgagor's sole cost and expense, provide Mortgagee with any financial statements, financial reports, appraisals or other documentation with respect to Mortgagor or the Premises which may be required from time to time by any governmental authority having regulatory authority over Mortgagee. Such information shall be provided by Mortgagor within thirty (30) days after written request from Mortgagee.

(g)    If required by the applicable governmental authorities, Mortgagee may obtain at Mortgagor's expense an appraisal(s) of any part of the Premises prepared in accordance with written instructions from Mortgagee by a third party appraiser engaged directly by Mortgagee. Each such appraiser and appraisal shall be satisfactory to Mortgagee. The cost of such appraisal shall be due and payable by Mortgagor on demand and shall be secured by this Mortgage.

(h)    No agreement unless in writing and signed by an authorized officer of Mortgagee and no course of dealing between the parties hereto shall be effective to change, waive, terminate, modify, discharge or release in whole or in part any provision of this Mortgage.

(i)    Upon Mortgagee's receipt of evidence of the loss, theft, destruction or mutilation of the Note, or any amendment or modification thereto, or of any of the other Collateral Loan Documents, Mortgagor will execute and deliver, in lieu thereof, a replacement note or document, as applicable, identical in form and substance to the replaced document.

(j)    The provisions of this Mortgage and the other Collateral Loan Documents are for the benefit of Mortgagor and Mortgagee and shall not inure to the benefit of any third party (other than any successor or assignee of Mortgagee). This Mortgage and the other Collateral Loan Documents shall not be construed as creating any rights, claims or causes of action against Mortgagee or any of its officers, directors, agents or employees in favor of any party other than Mortgagor.

(k)    The relationship of Mortgagee and Mortgagor is solely that of debtor and creditor, and Mortgagee has no fiduciary or other special relationship with Mortgagor, and no term or condition of any of the Collateral Loan Documents shall be construed to be other than that of debtor and creditor. Mortgagor represents and acknowledges that the Collateral Loan Documents do not provide for any shared appreciation rights or other equity participation interest.

(l)    Mortgagee may institute and maintain any suits and proceedings as Mortgagee may deem advisable (i) to prevent any impairment of the Premises by any acts

27

which may be unlawful or in violation of this Mortgage, (ii) to preserve or protect its interest in the Premises, and (iii) to restrain the enforcement of or compliance with any governmental requirement that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such governmental requirement might impair the security hereunder or be prejudicial to Mortgagee's interest.

(m)    MORTGAGOR AND MORTGAGEE, BY ACCEPTING THIS MORTGAGE, HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO TRIAL BY JURY IN RESPECT TO ANY ACTION, LITIGATION OR COUNTERCLAIM BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE NOTE AND THE COLLATERAL LOAN DOCUMENTS, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.

27.    <u>Partial Release Provisions</u>.   So long as no Event of Default has occurred and is continuing, Mortgagee shall release an individual condominium unit ("Unit") from the lien of the Mortgage upon the occurrence of the following events: (i) Mortgagor shall pay to Mortgagee a release price equal to 90% of the net proceeds from the sale ("Release Price"); provided, however that the net proceeds shall be based on the greater of the gross sale price or the following minimum sale prices:

| Square Footage of Unit | Minimum Sale Price |
| --- | --- |
| 630 | $104,400 |
| 650 | $108,000 |
| 775 | $117,000 |
| 860 | $122,400 |
| 900 | $135,900 |
| 930 | $134,100 |

(ii) Mortgagor shall pay all of costs and expenses in connection with such release; (d) the property being released and the remaining Property shall be legal parcels under Florida law.

For the purpose of this section, the term "net proceeds" means the gross sale price less customary closing costs and escrow fees; provided, however, that if a real estate commission is payable to Mortgagor or an affiliate of Mortgagor, then no more than 2% of the gross sale price (or, in the case of co-brokerage with a buyer's broker, 1% on account of the Mortgagor or its affiliate) shall be deducted to determine the net proceeds, regardless of the actual commission payable to Mortgagor or its affiliate.

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage on the date first above written.

WITNESSES:

MORTGAGOR: PALM HARBOR ONE,
LLC

Thomas Rondeau
(Print Name: *Thomas Rondeau* )

Elisa C. Withrow
(Print Name: *ELISA A. WITHROW* )

By: _____

Joseph Lilly, Manager

(CORPORATE SEAL)

STATE OF NEVADA            )
                           ) ss
COUNTY OF CLARK            )

The foregoing Mortgage was acknowledged before me this _29th_ day of November, 2005, by Joseph Lilly, the Manager, of Palm Harbor One, LLC., on behalf of the company, who produced _Mass. Drivers License_ _____ as identification.

_____
Notary Signature

MARGARET M. STONE
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 04-27-2009
Certificate No: 05-96400-1

29

# EXHIBIT "A"

## LENDERS

| | NAME | Amount |
|---|---|---|
| 1 | Liberty Resource Management Corp. a Pennsylvania company | 200000 |
| 2 | Celso Acosta an unmarried man | 50000 |
| 3 | Gloria Weiner Adams Trustee of the Gloria Weiner Adams Revocable Trust dated 6-8-2005 | 50000 |
| 4 | First Savings Bank Custodian For Kenneth Addes IRA | 50000 |
| 5 | Michel F. Aiello and Patricia A. Aiello Trustees of the Michel F. Aiello and Patricia A. Aiello Trust Agreement dated 10/4/94 | 50000 |
| 6 | Steven C. Altman a married man dealing with his sole and separate property | 100000 |
| 7 | AIG Limited a Nevada Limited Partnership | 50000 |
| 8 | August J. Amaral Inc. a Nevada corporation | 100000 |
| 9 | Pensco Trust Company Inc. Custodian for Robert S. Angel IRA | 70000 |
| 10 | Patrick J. Anglin an unmarried man | 100000 |
| 11 | Toni Antonacci Family Trust dated 6/26/98 | 100000 |
| 12 | John P. Aquino and Lisa Aquino husband and wife as joint tenants with the right of survivorship | 100000 |
| 13 | Rod Arbogast & Donna Arbogast Trustees of the Arbogast Family Trust | 250000 |
| 14 | Richard Armijo & Sanayha Armijo Trustees for the Armijo Family Trust dated 8/19/1999 | 50000 |
| 15 | Bert E. Arnlund Trustee of the Bert E. Arnlund Charitable Remainder Unitrust dated 12/31/01 | 100000 |
| 16 | Darlene Ashdown & Vincent N. Greene husband & wife as joint tenants with right of survivorship | 50000 |
| 17 | Robert J. Asselin & Mary E. Asselin Trustees of the 1994 Robert Asselin & Mary Asselin Family Trust | 50000 |
| 18 | Dr. H. C. Ayoub a married man as his sole & separate property | 75000 |
| 19 | Paul P. Backes & Loretta D. Backes Co-Trustees of the Backes Family Trust dated 8/8/88 | 50000 |
| 20 | Simmtex Inc. a Nevada corporation | 50000 |
| 21 | Gary R. Barton & Mavis J. Barton husband & wife as joint tenants with right of survivorship | 50000 |
| 22 | Beatrice Baskin Trustee of the Beatrice Baskin Family Trust Dtd 6/1/91 | 50000 |
| 23 | Alan B. Bennett A Married Man Dealing With His Sole & Separate Property | 50000 |
| 24 | David P. Betteridge a single man | 100000 |
| 25 | Jerry L. Blackman Sr. and Carolyn N. Blackman Living Trust dated 11/26/01 | 50000 |
| 26 | Wayne Dotson Co. a Nevada company | 50000 |
| 27 | Donald W. Brehm a married man dealing with his sole & separate property | 50000 |
| 28 | June F. Brehm a unmarried woman | 50000 |

Palm Harbor One, LLC
12/13/05

| | | |
|---|---|---|
| 29 | Charles R. Brice and Jayneta L. Brice husband and wife as joint tenants with the right of survivorship | 50000 |
| 30 | Donald E. Briney Trustee of the Briney Family Exemption Trust dated 11/5/82 | 65000 |
| 31 | Charles R. Brooks and Wendy S. Brooks husband and wife as joint tenants with right of survivorship | 50000 |
| 32 | Sunrise Mini-Storage a Nevada General Partnership | 100000 |
| 33 | First Savings Bank Custodian For Edward Burgess IRA | 50000 |
| 34 | June Y. Burlingame & David B. Burlingame husband & wife as joint tenants with right of survivorship | 70000 |
| 35 | PLB Enterprises LLC | 65000 |
| 36 | Richard L. Cadieux & Clara M. Cadieux husband & wife as joint tenants with right of survivorship | 100000 |
| 37 | David S. Cadwallader & Alyce E. Cadwallader Trustees of the Cadwallader 2001 Trust | 50000 |
| 38 | Doris Mae Campbell Trustee of the Doris Mae Campbell Revocable Trust of 1999 dated 3/30/99 | 70000 |
| 39 | Linda F. Carsten an unmarried woman | 80000 |
| 40 | A. William Ceglia a married man dealing with his sole & separate property | 50000 |
| 41 | Robert J. Centanni Sr. & Susan R. Centanni husband & wife as joint tenants with right of survivorship | 50000 |
| 42 | Eunice O. Chapman an unmarried woman payable on death to Barbara Heffner and Elizabeth Tomlin | 50000 |
| 43 | Jack R. Clark & Linda C. Reid husband & wife as joint tenants with right of survivorship | 100000 |
| 44 | Ray L. Coffin a married man dealing with his sole & separate property | 50000 |
| 45 | George S. Cohan Trustee of the George S. Cohan & Natalie H. Cohan Family Trust dated 4/1/03 | 100000 |
| 46 | Irwin Cohen & Marilyn T. Cohen Trustees of the Cohen Living Trust dated 3/6/90 | 50000 |
| 47 | Bernard Cohen and Elaine Cohen Trustees of the Bernard Cohen Trust dated 3/24/88 | 50000 |
| 48 | Gerald E. Colligan an unmarried man | 50000 |
| 49 | Shirley M. Collins Trustee as her sole & separate property under the Collins Family Trust dated 1/29/93 | 50000 |
| 50 | Thomas Raymond Conway & Victoria C. E. Conway husband & wife as joint tenants with right of survivorship | 50000 |
| 51 | Iris G. Corley Trustee of the Iris G. Corley Trust dated 9/19/84 | 50000 |
| 52 | Billy James Corley Trustee of the Billy James Corley Revocable Living Trust dated 9/13/04 | 50000 |
| 53 | April M. Corley Trustee of the April Corley Trust dated 4/25/05 | 50000 |
| 54 | Bruce H. Corum Trustee of the Credit Shelter Trust | 50000 |
| 55 | Sam Costanza Trustee of the Costanza 1987 Survivor's Trust dated 3/12/87 | 100000 |

Palm Harbor One, LLC
12/13/05

| | | |
|---|---|---|
| 56 | Gareth A. R. Craner Trustee of the Craner Family Trust Under Agreement dated 2/23/99 | 50000 |
| 57 | Charles D. Cunningham & Susan M. Cunningham husband & wife as joint tenants with right of survivorship | 80000 |
| 58 | Richard N. Dahlke a married man dealing with his sole & separate property | 50000 |
| 59 | Leslie Shane Daniel and Denise M. Daniel husband and wife as joint tenants with the right of survivorship | 50000 |
| 60 | Deborah A. Daniel A single woman | 50000 |
| 61 | Michael Dashosh & Elizabeth Dashosh husband & wife as joint tenants with rights of survivorship | 100000 |
| 62 | Andrew Dauscher & Ellen Dauscher husband & wife as joint tenants with right of survivorship | 150000 |
| 63 | Davis Investments a Nevada partnership | 300000 |
| 64 | Marrice L. Davis and Nanci E. Davis husband and wife as joint tenants with the right of survivorship | 100000 |
| 65 | DeHart/Hooks LP a Nevada limited partnership | 100000 |
| 66 | Gary Deppe A single man | 50000 |
| 67 | Ann R. Dery and James D. Dery husband and wife as Tenants in Common | 100000 |
| 68 | Dwayne H. Deutscher and Michelle T. Deutscher husband and wife as joint tenants with the right of survivorship | 50000 |
| 69 | Dennis A. DeVito a married man | 100000 |
| 70 | Thomas Di Jorio & Antonette Di Jorio husband & wife | 50000 |
| 71 | Helmut R. Dobeck & Eloise A. Dobeck husband and wife as joint tenants with the right of survivorship | 50000 |
| 72 | Linda Patrucco Doerr Trustee of the Doerr Family Trust dated 9/12/02 | 85000 |
| 73 | Mark A. Dolginoff Trustee of the Mark A. Dolginoff Separate Property Trust dated 11/21/97 amended/restated on 5/10/00 | 50000 |
| 74 | Daniel Drubin & Laura Drubin husband & wife as joint tenants with right of survivorship | 100000 |
| 75 | First Savings Bank Custodian For Daniel Drubin IRA | 25000 |
| 76 | First Savings Bank Custodian For Daniel Drubin Sep IRA | 40000 |
| 77 | James J. Duffy Jr. Trustee of the Duffy 1986 Trust dated 6/18/86 | 150000 |
| 78 | Donald C. Dunbar and Wanda Dunbar Trustees of the Dunbar Revocable Living Trust dated 11/21/1998 | 300000 |
| 79 | Wayne A. Dutt & Cynthia Deann Dutt Trustees of the Wayne A. Dutt Trust | 150000 |
| 80 | Edward D. Earl a married man dealing with his sole and separate property | 75000 |
| 81 | First Savings Bank Custodian For Mary H. Earp IRA | 75000 |
| 82 | Schwartz & Earp Joint Venture | 57000 |
| 83 | Pioneer Accounting & Investments LLC a Colorado LLC  Christian Elbert Manager | 50000 |
| 84 | Ellis L. Elgart and Sivia V. Elgart Trustees of the Ellis L. Elgart Revocable Living Trust dated 7/8/02 | 50000 |
| 85 | Frank E. Ensign a single man | 75000 |

Palm Harbor One, LLC
12/13/05

| 86 | Melinda Estevez & Richard David Estevez wife & husband as joint tenants with right of survivorship Acct. #2 | 50000 |
|---|---|---|
| 87 | Daniel L. Everett & Sandra M. Everett husband & wife as joint tenants with right of survivorship | 50000 |
| 88 | Marguerite Falkenborg Trustee of the Marguerite Falkenborg 2000 Trust dated 6/20/00 | 100000 |
| 89 | John J. & Gina A. Fanelli Husband and Wife as joint tenants with rights of survivorship | 500000 |
| 90 | John Fanelli & Jodi Fanelli husband & wife as joint tenants with right of survivorship | 150000 |
| 91 | Patricia Ferguson Trustee of the Ferguson Living Trust dated 6/28/00 | 50000 |
| 92 | Dennis Flier Trustee of the Dennis Flier Inc. Defined Benefit Trust dated 6/29/87 | 40000 |
| 93 | Donald T. Flood & Betty R. Flood Trustees of the Flood Family Trust dated 12/24/85 | 50000 |
| 94 | Sarah A Foley & Bernadette Foley as joint tenants with right of survivorship | 150000 |
| 95 | Allen K. Forbes a single man | 50000 |
| 96 | Seymour Frank a married man dealing with his sole and separate property | 50000 |
| 97 | Robert G. Fuller Trustee of the RGF Revocable Trust | 50000 |
| 98 | Theodore J. Fuller and Joan L. Fuller Trustee of the Fuller Family Trust dated 5/29/97 | 100000 |
| 99 | Susan F. Gackenbach Trustee of the Susan F. Stein Trust Dated 2/12/00 | 100000 |
| 100 | Jerry L. Gage & Darlene C. Gage Trustees of the Dakota Trust dated 9/16/96 | 50000 |
| 101 | Frederick D. Garth and Blair F. Garth husband and wife as joint tenants with the right of survivorship | 50000 |
| 102 | Thornton Garth and Sharon R. Garth husband and wife as joint tenants with the right of survivorship | 50000 |
| 103 | Walter L. Gasper Jr. an unmarried man | 50000 |
| 104 | Christian Geisser & Hildegard Geisser husband & wife as joint tenants with right of survivorship | 50000 |
| 105 | Caroline M. Gerwin Trustee of the Caroline Gerwin Family Trust dated 11/2/95 | 330000 |
| 106 | William L. Ghidossi an unmarried man | 55000 |
| 107 | First Savings Bank custodian for Nancy R. Gilmour IRA | 50000 |
| 108 | Gonska Foundation LLC a Nevada limited liability company | 50000 |
| 109 | Karen Gordon Trustee of the KGG Living Trust dated 7/29/96 | 50000 |
| 110 | Horizon Investment Management LLC | 100000 |
| 111 | William Harrison Goulding and Elizabeth R. Goulding husband & wife as joint tenants with right of survivorship | 50000 |
| 112 | Glenn Greenberg and Denise M. Greenberg husband and wife as joint tenants with the right of survivorship | 50000 |
| 113 | David M. Greenblatt an unmarried man transfer on death to Karl Greenblatt | 50000 |
| 114 | Clifford Hagberg & Claire F. Hagberg husband & wife as joint tenants with right of survivorship | 100000 |

| | | |
|---|---|---|
| 115 | First Savings Bank Custodian For Gary Haider IRA | 50000 |
| 116 | Stanley Halfter a married man dealing with his sole & separate property | 50000 |
| 117 | Daniel R. Halseth & Sandra K Halseth Trustees of the Halseth Family Trust restated 4/21/00 | 100000 |
| 118 | Larry E. Hanan Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02 | 50000 |
| 119 | T. Claire Harper Trustee of the Harper Family Trust dated 2/28/84 | 50000 |
| 120 | Marisa Deville Harvey a married woman dealing with her sole and separate property payable on death to Liana De Ville Paul De Ville and Christina De Ville | 100000 |
| 121 | Kevin J. Haselhorst A Single Man | |
| 122 | Roger N. Havekost a married man dealing with his sole & separate property | 50000 |
| 123 | Brooke Ann Hawley an unmarried woman & Stephen Hawley a married man dealing with his sole & separate property as joint tenants with right of survivorship | 50000 / 100000 |
| 124 | Rose O. Hecker a single woman & Anita Rosenfield a single woman as joint tenants with right of survivorship | 50000 |
| 125 | Michael T. Heffner & Barbara C. Heffner Trustees of the Heffner Family Trust dated 9/10/02 | 100000 |
| 126 | Richard M. Heinen a married man as his sole & separate property | 100000 |
| 127 | Helms Homes LLC a Nevada limited liability company | 2000000 |
| 128 | Walter F. Henningsen Trustee of the Walter F. Henningsen Revocable Trust dated 2/18/03 | 50000 |
| 129 | Brian K. Herndon and Sharon L. Herndon Trustees of the Herndon Family Trust dated 05/29/1997 | 300000 |
| 130 | Donald A. Herrmann & Nancy E. Herrmann husband & wife as joint tenants with right of survivorship | 50000 |
| 131 | Edward O. High an unmarried man | 50000 |
| 132 | Ruby M. Hill Trustee of The Ruby M. Hill Family Trust dated December 12 1992 | 60000 |
| 133 | Ralph C. Holder & Naomi S. Holder Trustees of the Holder Revocable Trust dated 10/21/91 | 75000 |
| 134 | Jason L. Holt a married man dealing with his sole & separate property | 50000 |
| 135 | Edward W. Homfeld an unmarried man | 100000 |
| 136 | Susan N. Houston & William H. Houston Trustees of the William H. Houston and Susan N. Houston Revocable Family Trust dated 12/20/85 | 100000 |
| 137 | Earl Howsley Jr. a married man dealing with his sole & separate property | 90000 |
| 138 | George W. Hubbard and Carol N. Hubbard Trustees of the Hubbard trust dated 7/29/1998 | 100000 |
| 139 | Richard Ianni an unmarried man | 50000 |
| 140 | Jonathan R. Iger A married man as his sole & separate property | 50000 |
| 141 | Donald E. James an unmarried man transfer on death to Betty A. Roe sister | 60000 |
| 142 | Mary Jean Jellison a married woman dealing with her sole & separate property | 50000 |

| | | |
|---|---|---:|
| 226 | Ray Properties LLC a Nevada limited liability company | 50000 |
| 227 | Jean G. Richards Trustee of the Jean G. Richards Trust dated 9/30/1999 | 60000 |
| 228 | Larry L. Rieger & Patsy R. Rieger Trustees of the Larry L. Rieger & Patsy R. Rieger Revocable Trust dated 8/14/91 | 50000 |
| 229 | Brooks H. & Dee Dee Robinson Husband and wife joint tenants with right of survivorship | 50000 |
| 230 | Robert R. Rodriguez an unmarried man | 50000 |
| 231 | Arnold Rosenthal a single man | 50000 |
| 232 | John Ross Enterprises Inc. a California corporation | 50000 |
| 233 | Sheila E. Rothberg a married woman dealing with her sole & separate property | 50000 |
| 234 | Thalia Nicholas Routsis Trustee of the Thalia Routsis Family Trust dated 7/24/90 | 50000 |
| 235 | Ingrid A. Rutherford Trustee of the Ingrid A. Rutherford Family Trust dated 7/8/99 | 50000 |
| 236 | Ronald F. Ryan and Mary A. Ryan husband and wife as joint tenants with the right of survivorship | 50000 |
| 237 | Mark A. Sauceda an unmarried man | 200000 |
| 238 | Irwin Schneider & Ursula Schneider husband & wife as joint tenants with right of survivorship | 50000 |
| 239 | Robert H. Schultz & Sharon L. Schultz Trustees of the Robert H. Schultz & Sharon L. Schultz Living Trust dated 2/25/97 | 50000 |
| 240 | Jacqueline L. Scott a married woman dealing with her sole & separate property | 50000 |
| 241 | Abraham Serouya a married man | 100000 |
| 242 | Ronald C. Shackelford Trustee of the Shackelford Family Trust dated 9/21/04 | 50000 |
| 243 | Ryan S. Shane a single man and Tracy Benson a single woman | 50000 |
| 244 | First Savings Bank Custodian For Gary O. Sharp IRA | 50000 |
| 245 | Gerald A. Sherwin Transfer on Death to Pamela J. Sherwin | 50000 |
| 246 | Andrew Shier & Peri Chickering husband & wife as joint tenants with right of survivorship | 50000 |
| 247 | Donald E. Shoup & Sharon K. Shoup husband & wife as joint tenants with right of survivorship | 100000 |
| 248 | Alan R. Simmons & Judith B. Simmons husband & wife as joint tenants with right of survivorship | 50000 |
| 249 | Herbert Slovis a single man  & Julie B. Slovis a single woman as joint tenants with right of survivorship | 50000 |
| 250 | Oliver F. Smith Trustee of the Oliver F. Smith Incorporated Profit Sharing Plan | 50000 |
| 251 | The Soldo Family Limited Partnership | 100000 |
| 252 | Robert S. Speckert Trustee of the Robert S. Speckert Rev. Living Trust dated 6/11/92 | 100000 |
| 253 | Charles A. Spencer a single man | 60000 |

| | | |
|---|---|---:|
| 254 | Brett W. Sperry an unmarried man | 300000 |
| 255 | Peter E. Sprock Trustee of the Peter E. Sprock 2001 Trust | 60000 |
| 256 | Stater Family Ltd Partnership | 300000 |
| 257 | Naomi F. Stearns Trustee of the Naomi F. Stearns Trust Dated 8/9/1985 | 50000 |
| 258 | Jay S. Stein Trustee of the Jay S. Stein Charitable Remainder Unitrust dated 7/15/02 | 200000 |
| 259 | Michael D. Stewart & Mary Jude Stewart Trustees of the Stewart Family Trust dated 1/15/98 | 100000 |
| 260 | Lesley Stricker a widow | 50000 |
| 261 | Hans - Ueli Surber a married man dealing with his sole and separate property | 50000 |
| 262 | Marcia Sweany-Volpe a married woman dealing with her sole & separate property transfer on death to Linda St. Pierre | 175000 |
| 263 | Nicholas Randazzo Linda Tabas Stempel & Robert Tabas Executors for the Estate of Daniel Tabas | 250000 |
| 264 | Sovereign Capital Advisors LLC a Nevada limited liability company | 50000 |
| 265 | KTaylorGO Investments LTD a Texas company | 100000 |
| 266 | Kerry S. Taylor & Joyce L. Taylor Trustees of the Taylor Living Trust dated 2/27/98 | 50000 |
| 267 | Annabelle E. TaylorTTEE of the Annabelle E. Taylor Family Trust dated 5/12/95 | 50000 |
| 268 | William Taylor & Lyla Taylor Trustees of the Taylor Family Trust dated 12/23/86 | 50000 |
| 269 | Gregory R. Thompson an unmarried man | 50000 |
| 270 | Ronda L. Threlfall a married woman dealing with her sole & seperate property | 100000 |
| 271 | Lynnette S. Thurman and John H. Thurman husband and wife as joint tenants with right of survivorship | 50000 |
| 272 | Sigmund L. Tomczak & Diana Tomczak Trustees of the Tomczak Family Trust dated 4/25/83 | 85000 |
| 273 | Robert C. Toombes and Patsy G. Toombes husband and wife as joint tenants with the right of survivorship | 100000 |
| 274 | Stephanie Trager & Lawrence B. Trager a husband & wife as joint tenants with rights of survivorship | 100000 |
| 275 | T-2 Enterprises LLC. Manager  Warren W. Tripp | 50000 |
| 276 | T-3 Enterprises LLC. Manager Warren W. Tripp | 50000 |
| 277 | Gary E. Tucker & Linda L. Tucker husband & wife as joint tenants with right of survivorship | 50000 |
| 278 | Mark Tysseling & Sharon Vey-Tysseling husband & wife as joint tenants with right of survivorship | 100000 |
| 279 | USA Capital First Trust Deed Fund | 1174000 |
| 280 | USA Commercial Mortgage Company | 605000 |
| 281 | Peggy Ann Valley Trustee as her sole & separate property under the McLaughlin-Valley Trust dated 2/24/97 | 95000 |

Palm Harbor One, LLC
12/13/05

| | | |
|---|---|---|
| 282 | Julie A. Virga an unmarried woman | 50000 |
| 283 | Marietta Voglis a married woman dealing with her sole & separate property | 50000 |
| 284 | Darren E. Watson A single man transfer on death to Linda L. Watson | 50000 |
| 285 | Dean F. Weible & Ardis Weible Co-TTEEs of the Weible 1981 Trust dated 6/30/81 | 50000 |
| 286 | Diana F. Weiland Trustee for the benefit of Gerald R. Weiland & Diana F. Weiland Trust | 100000 |
| 287 | George S. Willett and Laurene Willett husband and wife as joint tenants with right of survivorship | 50000 |
| 288 | Frederick P. Windisch Trustee of the Windisch 1998 Living Trust | 75000 |
| 289 | Frederick Paul Windisch a widower | 50000 |
| 290 | Jerry Woldorsky a married man dealing with his sole & separate property | 50000 |
| 291 | Richard G. Worthen and La Rue S. Worthen Trustees of the Richard G. Worthen Family Trust | 500000 |
| 292 | Gregory D. Yonai Trustee of the Gregory D. Yonai Family Trust | 75000 |
| 293 | Terry Thomas Young a single man | 50000 |
| 294 | First Savings Bank Custodian For Craig Zager SEP IRA | 65000 |
| 295 | Erin Belle Zenor Trustee of the Erin Belle Zenor 1994 Trust dated 4/13/94 | 50000 |
| 296 | Osvaldo Zunino Trustee of the Osvaldo Zunino Living Trust dated 12/18/98 | 100000 |
| | TOTAL | 26200000 |

## Exhibit "B"

**Parcel 1**

A portion of Lots 18, 19, 58, 59 and 64, TAMPA AND TARPON SPRINGS LAND COMPANY, as recorded in Plat Book 1, page 116, of the public records of Hillsborough County, Florida, of which Pinellas County was formerly a part, situated in the Northwest 1/4 of Section 30, Township 27 South, Range 16 East and also being in the Southwest 1/4 of Section 19, Township 27 South, Range 16 East, Pinellas County, Florida, being more particularly described as follows:

From the Northeast corner of the Northwest 1/4 of said Section 30; thence along the North line of said Section 30, North 86° 04'07" West, 652.04 feet to the Point of Beginning; thence along the boundary of property described in Official Records Book 5309, page 2031, by the following 7 courses: (1) thence continue North 86° 04'07" West, 50.94 feet; (2) thence leaving said line North 65° 02'55" West, 63.86 feet; (3) thence South 00° 03'51" East, 266.72 feet; (4) thence South 89 ° 56'09" West, 83.54 feet; (5) thence South 00° 03'51" East, 455.95 feet; (6) thence North 89° 56'09" East, 69.67 feet; (7) thence South 00° 03'51" East, 265.88 feet; thence North 87° 07'35" West, 536.13 feet to the Easterly right-of-way of Belcher Road Corridor (a 110 foot right-of-way); thence North 00° 02'46" West, along said right-of-way, 1031.73 feet to a point of curve; thence along the arc of a curve to the left, radius 1200.92 feet, delta 04° 33'28", arc 95.53 feet, chord bearing North 02° 19'29" West, 95.51 feet; thence leaving said right-of-way South 81° 32'09" East, 667.87 feet; thence South 00° 36'33" East, 97.60 feet to the Point of Beginning.

LESS AND EXCEPT land conveyed to Pinellas County for CYPRESS POND ROAD by Quitclaim Deed recorded in Official Records Book 6647, page 146, of the public records of Pinellas County, Florida.

ALSO LESS AND EXCEPT land conveyed to Pinellas County for CYPRESS POND ROAD by Quit-Claim Deed recorded in Official Records Book 14642, Page 1104, public records of Pinellas County, Florida.

**Parcel 2**

A portion of Lots 18 and 59, TAMPA AND TARPON SPRINGS LAND COMPANY, as recorded in Plat Book 1, Page 116, public records of Hillsborough County, Florida, of which Pinellas County was formerly a part situated in the Northwest 1/4 of Section 30, Township 27 South, Range 16 East and also being in the Southwest 1/4 of Section 19, Township 27 South, Range 16 East, Pinellas County, Florida, being more particularly described as follows: From the Northeast corner of the Northwest 1/4 of said Section 30; thence along the North line of said Section 30, North 86° 04'07" West, 437.33 feet to the Point of Beginning; thence leaving said line South 00° 03'51" East, 960.32 feet; thence North 87° 07'35" West, 337.11 feet; thence North 00° 03'51" West, 265.88 feet;

thence South 89° 56'09" West, 69.67 feet; thence North  00° 03'51" West, 455.95 feet; thence North 89° 56'09" East, 83.54 feet; thence North 00° 03'51" West, 266.72 feet; thence South 65° 02'55" East, 63.86 feet to a point on the aforedescribed North line of Section 30, thence along said line South 86° 04'07" East, 50.94 feet; thence leaving said line South 00° 36'33" East, 26.60 feet to a point on a curve; thence along the arc of a curve to the right concaved to the Southeast, radius 860.00 delta 14 ° 15'57", arc 214.13 feet, chord bearing North 86° 47'54" East, 213.58 feet to a point of tangency on the aforementioned North section line; thence along said line South 86° 04'07" East, 0.61 feet to the aforedescribed Point of Beginning.