Arthur I. Kriss
2398 West 1050 North
Hurricane, UT 84737
(435) 635-5466

Appearing Pro Se

RECEIVED
AND FILED

AUG 30  9 03 AM '11

# UNITED STATE BANKRUPTCY COURT

# DISTRICT OF NEVADA

vs.

USA Commercial Mortgage Company,

Debtor

) Case No.: BK-S-06-10725-lbr
)
) Chapter 11
)
) MOTION FOR SUMMARY JUDGMENT ON
) PROOF OF CLAIM 10725-01876
) BASED ENTIRELY UPON INVESTMENT
) IN THE TAPIA RANCH LOAN, AND
) OTHER CLAIMS
)
) Date of Hearing August 30, 2011
)
) Time of Hearing: 10:30 AM
)

Arthur I. Kriss, Claimant, hereby files this Motion for Summary Judgment on Proof of Claims 10725-01876, the Tapia Ranch Loan, and other claims.

**BACKGROUND:**

1. The Court having considered the "Second Omnibus Objection of USACM Trust to Proofs of Claim based entirely upon investment in the Tapia Ranch Loan [DE 8523] on July 26, 2011; and the Court having considered the response filed by Arthur I. Kriss [DE 8610], and having ordered a continued hearing be held on August 30, 2011 at 10:30 AM on the Proof of Claim 10725-01876.

2. The Court, further having Ordered [DE 8877] a Scheduling Conference for October 11, 2011 at 2:00 PM, and setting of a Trial date of October 21, 2011 for a trial combining all Claims (including those that have not been objected to) filed by Arthur I. Kriss to include Proof of Claims 10725-01874, 10725-01875, 10725-01876 – Tapia Ranch, and 10725-01877, respectfully begs the Court to REMAND the Order for Trial, and to consider this Motion for Summary Judgment on the Claims 10725-01874, 10725-01875, 10725-01876, and 10725-01877.

**Introduction:**

1. The Claimant/Movant, Arthur I. Kriss is, like the Trustee (and probably the Court) very much interested in bringing these Claims to a just close in as efficient a manner as can be had.  Hearings having been held on both the Anchor B and Tapia Ranch claims, and this continued hearing on the Tapia Ranch Claim perhaps sets forth an opportunity to address all the claims at the same time; similar to the manner in which the Trustee proposed in his application to combine the trials on all claims.  At the Status Hearing of July 26, 2011, Mr. Charles, of Lewis and Roca, Attorney for the Trustee made a proposal to combine the trials of the subject Claims into a single trial.  Mr. Kriss, in an effort to cooperate with the Trustee and minimize the costs associated with the trials concurred. However, upon

reflection on the matter and the dramatically different circumstances surrounding the loans, Mr. Kriss has determined that because of the differences in each loan (claim) it would be extraordinarily difficult and confusing to review for discovery each of the loan files individually; and prepare, and present evidence to the Court on each individual claim at a single trial.  For example; Claim 10725-01874 re Clear Lake is much like the other loans; 1) predicated on the failure of USACM to enforce the provisions of the LSA, and 2) is further based upon the fact that USACM took my money for the investment even though the existing Clear Lake loan at the time was in default; 3) did not disclose the same to me; and 4)neither did the principles of USACM disclose their personal interest/relationship with the borrower in the investment. The Anchor B and other loan circumstances are significantly different.  Nonetheless, the objections to the claims are very much alike and the reasons why the objections should be overridden are much alike. Thus, this proposal and Motion for Summary Judgment in accordance with FRCP Rule 56 on all the Claims.

**STATEMENT OF FACTS:**

    1.    The Trustees objections (thus far) to the Proofs of Claim filed by me are essentially the same as to

form and substance; that the direct lenders took a known risk by investing in a promissory note secured by a lien on real property, that USACM is not liable for the default and did not guarantee repayment of the Notes, and that "USACM does not appear to have breached the loan servicing agreements with respect to collection on the Notes".

2. I readily acknowledge the risk associated with investments of any kind, and assume those risks, sometimes with trepidation. However, the risks one takes when making an investment also assumes that the broker of the investment is honest, and an independent third party. The investment is judged on its merits, and USACM was assumed to be an honest broker. I had made several previous investments with USACM which were successful. They were properly licensed by the State of Nevada and there were no Notices of impending problems with the business and the business was in good standing when I made the investments. I contend that the Trustee's objection is unsubstantiated.

3. It is further readily acknowledged that USACM did not guarantee repayment of the Notes, and is probably not directly responsible for the default, though when they declared bankruptcy, they announced

to the world that they were in trouble and could not be easily sued by their borrowers for any wrongdoing, and that a default by a borrower would probably not be pursued, which is apparently what happened in these loans. I contend that the Trustee's objection is unsubstantiated, though I would agree that the default is not wholly caused by USACM.

4. As to the matter of **"does not appear to have breached the Loan Servicing Agreement"**. These Claims are all primarily about Breach of the Loan Servicing Agreement (Contract) [Exhibit 1], in that USACM did not conform to the provisions of the LSA (contract) concerning their duties and responsibilities to perform certain actions upon default by the borrowers; Breach of Fiduciary Duty, and violations of Nevada law. As noted in [DE 8609] re Anchor B, a **Contract** (Loan Servicing Agrement) is a legally enforceable <u>Agreement</u> between two or more parties with mutual obligations. The remedy at law for breach of contract and Fiduciary Duty is **"damages"** or monetary compensation. In this certain case, because legal action against the offending party is not possible due to the bankruptcy filing, damages cannot be pursued and therefore Claims against the

Estate in Bankruptcy Court are the proper forum for recovery.

(a.) The Contract (LSA) specifies certain explicit duties (services) that USA will perform.

(b.) Re: C. 2. (c) "Until the total amount due under each note is paid in full":

(i) Proceed **diligently** to collect all payments due under the terms of the note…. **"diligently"**: *persevering, the attention and care legally expected or required characterized by steady, earnest, and energetic application and effort.*

(ii) In the event the Borrower fails to make any payment to USA as required, **USA will take steps to collect payment……to fully protect the interests of the Lender,** and of all Lenders in the loan.

(c.) I would contend that the Trustee has not substantiated the assertion that "USACM did not appear to have breached the loan servicing agreement".

(d.) USA / USACM / Mr. Allison (appointed by the Court on April 17, 2006) had an absolute responsibility to pursue all legal options to protect the Lenders

interests in the note and failed to do so.  The failure of USA / USACM/ Allison (MIFM) to act on this matter actually extended from before the bankruptcy (pre-petition) occurred to February 16, 2007, the closing date of the sale to Compass.  I would contend Mr. Allison may be somewhat complicit as he audited the accounts prior to the bankruptcy.  This failure to act can only be attributed to deliberate negligence on the part of management of USA/USACM.  The Contract / LSA clearly defines the scope of responsibility and gives full authority to the Servicer to take any and all necessary actions to protect the Lenders interest.

(e.) The LSA  in Paragraph C. 4, <u>Legal Proceedings,</u> provides for and guarantees payment / repayment of funds expended by USA in pursuit of actions to protect the Lender interests.  Therefore, the matter of expenses for USA to perform could not have been an issue.

(f.) "Allison shall have complete and exclusive charge of the management and operation of the business" (Court Order appointing Allison). Therefore, there is no excuse for the failure of USA / USACM / Allison (MIFM) to conform to the provisions of the Contract / LSA.

5. Violations of Nevada Revised Statutes:

a. NRS-645B.175: Regulations concerning Trust accounts as a depository of funds belonging to others: USA apparently kept multiple sets of books/accounts and issued fraudulent payments.

b. NRS-645B.250: Prohibition on advancing payments to investor on behalf of debtor in default; i.e. advance interest payments. This action violated the provisions of the Loan Servicing Agreement by covering up the Default.

c. NRS-645B.186: Disclosure of business relationships.

**SUMMARY:**

1. USA/USACM, pre-bankruptcy, fraudulently diverted funds from other funds/resources to hide/cover the pre-bankruptcy default of the Anchor B and other loans.

2. This fraudulent diversion of funds was the first step of many steps taken (not taken) by USA / USACM / Allison (MIFM) that ultimately led to the loss of my investment.

3. Pre-petition and post petition actions by USA / USACM / Allison / MIFM to simply ignore the contractual requirements of the LSA to protect the interests of the Lenders through foreclosure, or pursuit of the personal guaranties for more than one year became the predicate to the loss of my investment. The emphasis by

USACM/MIFM was almost totally directed toward preparing the portfolio of loans for sale, and the uncollected Notes and guaranties were a large part of the pie that was to be sold, and which in fact was sold.

4. Failure to disclose business relationship on the Clear Lake loan, and fraudulently taking investment money for a loan already in default.

5. Even though Compass became the Servicer of record with the closing of the sale of USA's contract rights relative to the LSA's, the damage had been done. The Borrower(s) walked away from the loans and the Court sold the loan assets to Compass.

6. For the Trustee to even suggest that "the Direct Lenders fail to state a claim because USACM does not appear to have breached the loan servicing agreements…", is difficult to comprehend. All of the evidence points to negligence. I had four loans which have all failed, and not a shred of evidence exists to indicate that USACM pursued collection on the notes, or attempted to recover funds from the personal or corporate guarantees.

7. There is no "genuine dispute" as to any of the material facts on any of the four loans. The Trustee fails to substantiate his statement asserting that "USACM does

not appear to have breached the LSA" [Rule 56 (c) (1) and (e)].

**Conclusion:**

In accordance with the provisions of the FRCP Rule 56, I respectfully request the Court grant Summary Judgment on the four claims I have filed, or alternatively grant Summary Judgment on the Tapia Ranch 10725-01876 claim alone, and allow regular order on the remaining claims.

Dated this 24th day of August 2011

By: _____
Arthur I. Kriss
Pro Se

Copy to:

Lewis & Roca, Attention: John Hinderaker & Robert Charles, Jr.
3993 Howard Hughes Parkway, Las Vegas, NV 89169