**LEWIS AND ROCA LLP LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles Jr. NV State Bar No. 006593
Email: rcharles@lrlaw.com
John C. Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>Debtor. | Case No. BK-S-06-10725-LBR<br><br>CHAPTER 11<br><br>**OBJECTION OF USACM LIQUIDATING TRUST TO PROOF OF CLAIM NO. 10725-02574 IN THE AMOUNT OF $148,648; AND CERTIFICATE OF SERVICE**<br><br>Date of Hearing: October 18, 2011<br>Time of Hearing: 1:30 p.m.<br>Estimated Time for hearing: 10 min. |

The USACM Liquidating Trust (the "USACM Trust") recently discovered approximately 140 proofs of claim ("POC's") that had not been entered into the database of Sierra Consulting and, therefore, had not been included in the loan by loan objections filed by the USACM Trust. The POC's contain claims that relate to investments in loans that the USACM Trust has already processed. Accordingly, where appropriate the USACM Trust is objecting to these remaining POC's on a claim by claim basis.

Pursuant to § 502 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the USACM Trust requests an order disallowing in full Proof of

289035.1



1  Claim No. 10725-02574 filed by August J. Amaral, Inc. (the "Subject Proof of Claim")
2  against USA Commercial Mortgage Company ("USACM") in the amount of $148,648.[1]
3     Here, the Subject Proof of Claim is based upon an investment in three different
4  loans: the Bay Pompano Beach, LLC Loan; the Oak Shores II Loan; and the Universal
5  Hawaii Loan.  The USACM Trust has filed omnibus objections to the claims arising out of
6  investments in these loans.  In association with those objections, on July 23, 2009, the
7  USACM Trust filed the Declaration of Edward M. Burr in Support of Omnibus Objections
8  to Proofs of Claim Based Upon the Investment in the Bay Pompano Beach Loan ("Burr
9  Decl. re Pompano Beach Loan") [DE 7444][2]; on August 3, 2001, the Declaration of
10 Edward M. Burr in Support of Omnibus Objections to Proofs of Claim Based Upon the
11 Investment in the Universal Hawaii Loan ("Burr Decl. re Universal Hawaii Loan") [DE
12 8818][3]; on April 11, 2011, the Declaration of Geoffrey L. Berman in Support of Omnibus
13 Objections to Proofs of Claim Based Upon the Investment in the Oak Shores II Loan
14 ("Berman Decl. re Oak Shores II Loan") [DE 8311].[4]  Copies of all three declarations have
15 been served on the claimant with this Objection.
16    THIS OBJECTION DOES NOT RELATE TO AND WILL NOT IMPACT THE
17 DIRECT LENDER'S SCHEDULED CLAIM IN THE AMOUNT OF $115,000 ARISING
18 OUT OF UNREMITTED PRINCIPLE ASSOCIATED WITH THE UNIVERSAL
19 HAWAII LOAN, RIGHT TO REPAYMENT FROM A BORROWER OR TO SHARE IN

---

[1] In compliance with Nevada LR 3007, a copy of the first page of the Subject Proof of Claim is attached as **Exhibit A**

[2] The USACM Trust filed the Burr Decl. re Pompano Beach Loan in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan.  The Court heard those omnibus objections and sustained them at the omnibus hearing on August 21, 2009.

[3] The USACM Trust filed the Burr Decl. re Universal Hawaii Loan in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan.  The Court will hear those omnibus objections at the omnibus hearing scheduled for September 30, 2011.

[4] The USACM Trust filed the Berman Decl. re Oak Shores II Loan in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan.  The Court heard those omnibus objections and sustained them at the omnibus hearing on May 9, 2011.

289035.1



<u>ANY PROCEEDS GENERATED FROM THE SALE OF REAL PROPERTY SECURING THE LOANS AT ISSUE.</u>

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     BACKGROUND FACTS**

On April 13, 2006 ("Petition Date"), USACM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continued to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtor's post-petition management of the Debtor was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC, who served as the Chief Restructuring Officer.

USACM was a Nevada corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account. That business included the solicitation of investors to purchase fractional interest in loans that USACM originated and then serviced. These investors are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein [Docket No. 2376]. As part of the Plan, and pursuant to an Asset Purchase Agreement filed with this Court, USACM sold the servicing rights to most of the loans it serviced to Compass Partners, LLC and Compass Financial Partners, LLC ("Compass"), including The Gardens LLC Timeshare Loan. The sale to Compass closed on February 16, 2007.

The USACM Trust exists as of the Effective Date of the Plan, which was March 12, 2007. Geoffrey L. Berman is the Trustee. Under the Plan, the USACM Trust is the successor to USACM with respect to standing to seek allowance and disallowance of Claims under 11 U.S.C. § 502(a).

289035.1

LEWIS AND ROCA LLP LAWYERS

Upon information derived from filings in the United States District Court, District of Nevada, *3685 San Fernando Lenders Company, LLC, et al v. Compass USA SPE, LLC, et al*, No. 2:07-cv-00892-RCJ-GWF action, the Trust believes that "Silar Advisors, LP ("Silar") financed Compass' acquisition of the Purchased Assets, including the loan service agreements in the USACM bankruptcy case and took a secured interest in those Purchased Assets by executing a Master Repurchase Agreement ("Repurchase Agreement") with Compass, and by filing a UCC-1 financing statement with the State of Delaware." *Id.* Docket 1250 at 13-14 (citations to declarations omitted).

Further, from filings in the same action, the Trust believes that "Effective as of September 26, 2007, Silar foreclosed on Compass through Asset Resolution LLC ("Asset Resolution") and took ownership of the Purchased Assets. … Silar created Asset Resolution as a 'single purpose entity,' conveyed all of its interests in the Repurchase Agreement to Asset Resolution, and Asset Resolution properly foreclosed on the assets of Compass, including the Purchased Assets." (Citations omitted.) Asset Resolution LLC is now a debtor in a chapter 7 bankruptcy case pending in Nevada, case no. BK-S-09-32824-RCJ, along with certain affiliates.[5] William A. Leonard, Jr. was appointed trustee in the Asset Resolution case.

The Trust has attempted to monitor loan collections through monitoring the district court litigation and the Asset Resolution bankruptcy case, but has received limited information concerning servicing and resolution of direct loans by Compass/Silar/Asset Resolution or their successors, including the trustee in bankruptcy for Asset Resolution. The following is the extent of the USACM Trust's information on current services for Bay Pompano Loan, Universal Hawaii Loan and Oak Shores II Loan.

---

[5] 10 90 SPE LLC, Fiesta Stoneridge LLC, CFP Gramercy SPE LLC, Bundy 2.5 Million SPE LLC, CFP Cornman Toltec SPE LLC, Bundy Five Million LLC, Fox Hills SPE LLC, HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean Atlantic SPE LLC, CFP, Gess SPE LLC, CFP Anchor B SPE LLC, and Shamrock SPE LLC.



The Trust notes that by Order entered on June 24, 2010 by the Hon. Robert C. Jones in United States Bankruptcy Court (Case No. BK-S-09-32824-RCJ), the servicing rights for 19 loans were transferred to Cross, FLS.

## II.  JURISDICTION

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is appropriate under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 502 and Bankruptcy Rule 3007.

The statutory predicates for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## III.  APPLICABLE AUTHORITY

Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects.  If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. § 502(b).  A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f).  However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim.  *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).

## IV.  LOANS AND OBJECTIONS

### a.  The Bay Pompano Loan

On June 20, 2005, Bay Pompano Beach, LLC made and delivered to various Direct Lenders a Promissory Note in an amount of $32,000,000 (the "Note").  The Bay Pompano Loan is secured by a first position Mortgage, Security Agreement and Assignment of

289035.1



Rents ("Mortgage") on real property and improvements thereon, as described in the Mortgage. The Mortgage was recorded on June 30, 2005 at Instrument No. 105140658 in the Official Records of the Broward County Commission, Florida.

Upon information and belief, the Bay Pompano Loan was fully secured at the time of the loan and was fully secured at the time USACM's servicing rights were sold to Compass Partners. Upon information and belief, the property securing the Pompano Loan had an approximate value of $30,100,000 as of May 25, 2006 based on an appraisal by Hilco Real Estate Appraisal, LLC dated June 16, 2006. The Loan defaulted on June 19, 2006.

### b. The Bay Pompano Objection

The Direct Lenders do not appear to have been harmed by USACM in this instance. Upon information and belief, the Direct Lenders were owed the following as of July 1, 2009:

$3,387,598    Principal
$4,545,208    Accrued Interest
$7,932,806    Total of above

Thus, even assuming the Direct Lenders were entitled to all of the above amounts, the Bay Pompano Loan appears to have been fully secured by collateral at the time USACM originated the Bay Pompano Loan and at the time USACM sold the servicing rights to the loan.

USACM did not guarantee the Direct Lenders' investment in the Bay Pompano Loan. The Direct Lenders, including Amaral, took an obvious risk by investing in a loan secured by real property. USACM is not liable for the Borrower's default or any decrease in the value of the collateral caused by the downturn in the real estate market.

Upon information and belief, the direct lenders in the Bay Pompano claim were paid in full.

289035.1



### c. The Universal Hawaii Objection

There is a total of about $5 million in scheduled unremitted principal associated with the Universal Hawaii Loan. There is a $115,000 scheduled claim for Amaril. The USACM has already made a disbursement based upon this scheduled claim. This is the same amount asserted in the claim. Here, the USACM Trust asks the Court to disallow the Proof of Claim. The scheduled claim for $115,000 will remain valid and eligible for future distributions.

### d. The Oak Shores II Loan

By Order entered on June 24, 2010 by the Hon. Robert C. Jones in United States Bankruptcy Court (Case No. BK-S-09-32824-RCJ), the servicing rights for 19 loans were transferred to Cross, FLS. The Oak Shores II Loan servicing rights were transferred to Cross, FLS by that Order. The Trust has been in contact with Cross, FLS with regard to the status of the Oak Shores Loan.

In or around November 2005, USACM circulated an Offer Sheet to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "John and Carol King" for a project generally known as Oak Shores II, which consists of 343 lots near Paso Robles, California. A copy of the undated Offer Sheet is attached hereto as **Exhibit B** and incorporated by this reference. (Berman Decl. re Oak Shores II Loan, ¶ 4.) The total loan amount proposed was $15,150,000. The loan proceeds were to be used by the borrower to develop the real property and construct certain infrastructure improvements required for the development of single family residences. The Offer Sheet described the investment as a "First Trust Deed Investment" and noted that the investment would be secured by a first deed of trust on approximately 400 acres of land in San Luis Obispo County on Lake Nacimiento. The Offer Sheet indicated that the loan would be repaid from the sale of lots to individual buyers and from a bulk sale at final map to a third party. The Offer Sheet also stated there would be a loan

289035.1



to value ratio of approximately 60% based on an appraisal prepared by Ryon Associates. The Ryon Associates appraisal estimates the bulk value of the property to be $25,300,000 as of March 7, 2005.

On June 6, 2005, Borrower made and delivered to various lenders, including Amaral, a "Promissory Note Secured by Deed of Trust" (the "Note") and a Construction Loan Agreement (Berman Decl., ¶5.) The Note and Loan Agreement provided for a loan in the initial principal amount of $7,725,000. Pursuant to subsequent amendments to the Note and Loan Agreement, and as expressly permitted by the Loan Agreement, the amount of the loan was eventually increased to $15,150.00. The Note was secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") that was recorded in the official records of San Luis Obispo County, California on July 1, 2005. (Berman Decl., ¶ 5.) Subsequent loan advances were secured by amendments to the Deed of Trust, and were likewise recorded in the official records of San Luis Obispo County.

According to information provided to the undersigned counsel, pursuant to its terms, the note was scheduled to mature twelve months after the loan documents needed to close were deposited with the title company. According to the USACM "Loan Summary" filed in this case, the loan was non-performing as of July 31, 2006. According to Cross, FLS, the loan remains non-performing, no amounts have been collected from the Borrower since Cross, FLS took over servicing of the Oak Shores II Loan, and the collateral securing the Oak Shores II Loan has not been sold.

According to USACM's business records, during this bankruptcy case through the transfer of servicing to Compass, USACM treated the Direct Lenders with respect to any interim payments by the borrower in accordance with this Court's orders and the confirmed Plan.

**e. The Oak Shores II Objection**

289035.1

The Oak Shores II Loan appears to have been a legitimate, arms-length transaction, with a third party borrower. The Direct Lenders took a known risk by investing in a promissory note secured by liens on real property.

Amaral fails to state a claim based upon the Oak Shores II Loan because USACM did not guarantee the Direct Lenders' investment in the Oak Shores II Loan.

USACM is not liable for the Borrower's default or any decrease in the value of the collateral.

Amaral fails to state a claim because USACM does not appear to have breached the loan servicing agreement with respect to collection of the Oak Shores II Loan.

This objection will not affect Amaral's right to be repaid on the Oak Shores II Loan by the Borrower, or to recover from the sale of any collateral that secured the Oak Shores II Loan.

### V.  CONCLUSION

Based on the foregoing, the USACM Trust respectfully requests that the Court disallow in full Proof of Claim No. 10725-02574 filed by August J. Amaral, Inc. in the amount of $148,648.

The USACM Trust also requests such other and further relief as is just and proper.

DATED this 15th day of September, 2011.

LEWIS AND ROCA LLP

By /s/ John Hinderaker (#18024)
Robert M. Charles Jr. NV 6593
John C. Hinderaker, AZ 18024 (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
Telephone:  (702) 949-8200
Facsimile:   (702) 949-8398
E-mail:  jhinderaker@lrlaw.com

*Attorneys for the USACM Liquidating Trust*

LEWIS AND ROCA LLP LAWYERS
---

Copy of the foregoing mailed by first class Postage prepaid U.S. mailed on September 15, 2011 to:

August J. Amaral, President
August J. Amaral, Inc.
9644 Rolling Rock Way
Reno, NV 89521

LEWIS AND ROCA LLP

  /s/Renee L. Creswell
Renee L. Creswell

289035.1