LEWIS AND ROCA LLP
LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles Jr. NV State Bar No. 006593
Email: rcharles@lrlaw.com
John C. Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com

Attorneys for USACM Liquidating Trust

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re:

USA COMMERCIAL MORTGAGE COMPANY,

Debtor.

Case No. BK-S-06-10725-LBR

CHAPTER 11

**OBJECTION OF USACM LIQUIDATING TRUST TO PROOF OF CLAIM NO. 10725-01208 IN THE AMOUNT OF $1,509,963.55 BY PETE MONIGHETTI; AND CERTIFICATE OF SERVICE**

Date of Hearing: October 18, 2011
Time of Hearing: 1:30 p.m.

The USACM Liquidating Trust (the "USACM Trust") recently discovered approximately 140 proofs of claim ("POC's") that had not been entered into the database of Sierra Consulting and, therefore, had not been included in the loan by loan objections filed by the USACM Trust. The POC's contain claims that relate to investments in loans that the USACM Trust has already processed. Accordingly, where appropriate the USACM Trust is objecting to these remaining POC's on a claim by claim basis.

Pursuant to § 502 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the USACM Trust requests an order allowing in part and disallowing in part Proof of Claim No. 10725-01208 filed by Pete Monighetti (the




"Subject Proof of Claim") against USA Commercial Mortgage Company ("USACM") in the amount of $1,509,963.55.[1]

Here, the Subject Proof of Claim is based upon an investment in three different loans: the SVRB 4.5 Loan; the Copper Sage Phase II Loan; and the HFAH Asylum Loan. The USACM Trust has filed omnibus objections to the claims arising out of investments in these loans. In association with those objections, on August 5, 2011, the USACM Trust filed the Declaration of Geoffrey L. Berman in Support of Omnibus Objections to Proofs of Claim Based Upon the Investment in the SVRB 4.5 Loan ("Berman Decl. Re SVRB 4.5 Loan") [DE 8834][2]; on August 11, 2011, the USACM Trust filed the Declaration of Geoffrey L. Berman in Support of Motion to Allow Proofs of Claim Based Upon an Investment in the Copper Sage Phase II Loan ("Berman Decl. Re Copper Sage Phase II") [DE 8919][3]; on August 7, 2011, the USACM Trust filed the Declaration of Geoffrey L. Berman in Support of Omnibus Objections to Proofs of Claim Based Upon the Investment in the HFAH Asylum Loan ("Berman Decl. Re HFAH Asylum Loan ") [DE 8864].[4] The omnibus objections related to the HFAH Asylum Loan sought to disallow 70% of those claims and allow the remaining 30%. The USACM Trust will seek the same treatment for the claimant here. Copies of all three declarations have been served on the claimant with this Objection.

---

[1] In compliance with Nevada LR 3007, a copy of the first page of the Subject Proof of Claim is attached as **Exhibit A**

[2] The USACM Trust filed the Berman Decl. re SVRB 4.5 Loan in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan. The Court is scheduled to heard those omnibus objections at the omnibus hearing on September 30, 2011 at 9:30 a.m.

[3] The USACM Trust filed the Berman Decl. re Copper Sage Phase II in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan. The Court will hear those omnibus objections at the omnibus hearing scheduled for September 30, 2011 at 9:30 a.m.

[4] The USACM Trust filed the Berman Decl. re HFAH Asylum Loan in support of omnibus objections to Direct Lender claims that were based upon an investment in that loan. The Court will hear those omnibus objections at the omnibus hearing on September 30, 2011 at 9:30 a.m.




<u>THIS OBJECTION DOES NOT RELATE TO AND WILL NOT AFFECT THE DIRECT LENDER'S RIGHT TO REPAYMENT FROM A BORROWER OR TO SHARE IN ANY PROCEEDS GENERATED FROM THE SALE OF REAL PROPERTY SECURING THE LOANS AT ISSUE.</u>

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. BACKGROUND FACTS

On April 13, 2006 ("Petition Date"), USACM filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continued to operate its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Debtor's post-petition management of the Debtor was under the direction of Thomas J. Allison of Mesirow Financial Interim Management, LLC, who served as the Chief Restructuring Officer.

USACM was a Nevada corporation that, prior to the Petition Date, was in the business of underwriting, originating, brokering, funding and servicing commercial loans primarily secured by real estate, both on behalf of investors and for its own account. That business included the solicitation of investors to purchase fractional interest in loans that USACM originated and then serviced. These investors are referred to as "Direct Lenders" in USACM's bankruptcy case and in this Objection.

On January 8, 2007, this Court entered its Order Confirming the "Debtors' Third Amended Joint Chapter 11 Plan of Reorganization" as Modified Herein [Docket No. 2376]. As part of the Plan, and pursuant to an Asset Purchase Agreement filed with this Court, USACM sold the servicing rights to most of the loans it serviced to Compass Partners, LLC and Compass Financial Partners, LLC ("Compass"). The sale to Compass closed on February 16, 2007.

The USACM Trust exists as of the Effective Date of the Plan, which was March 12, 2007. Geoffrey L. Berman is the Trustee. Under the Plan, the USACM Trust is the




successor to USACM with respect to standing to seek allowance and disallowance of Claims under 11 U.S.C. § 502(a).

Upon information derived from filings in the United States District Court, District of Nevada, *3685 San Fernando Lenders Company, LLC, et al v. Compass USA SPE, LLC, et al*, No. 2:07-cv-00892-RCJ-GWF action, the Trust believes that "Silar Advisors, LP ("Silar") financed Compass' acquisition of the Purchased Assets, including the loan service agreements in the USACM bankruptcy case and took a secured interest in those Purchased Assets by executing a Master Repurchase Agreement ("Repurchase Agreement") with Compass, and by filing a UCC-1 financing statement with the State of Delaware." *Id.* Docket 1250 at 13-14 (citations to declarations omitted).

Further, from filings in the same action, the Trust believes that "Effective as of September 26, 2007, Silar foreclosed on Compass through Asset Resolution LLC ("Asset Resolution") and took ownership of the Purchased Assets. … Silar created Asset Resolution as a 'single purpose entity,' conveyed all of its interests in the Repurchase Agreement to Asset Resolution, and Asset Resolution properly foreclosed on the assets of Compass, including the Purchased Assets." (Citations omitted.) Asset Resolution LLC is now a debtor in a chapter 7 bankruptcy case pending in Nevada, case no. BK-S-09-32824-RCJ, along with certain affiliates.[5] William A. Leonard, Jr. was appointed trustee in the Asset Resolution case.

The Trust has attempted to monitor loan collections through monitoring the district court litigation and the Asset Resolution bankruptcy case, but has received limited information concerning servicing and resolution of direct loans by Compass/Silar/Asset Resolution or their successors, including the trustee in bankruptcy for Asset Resolution.

[5] 10 90 SPE LLC, Fiesta Stoneridge LLC, CFP Gramercy SPE LLC, Bundy 2.5 Million SPE LLC, CFP Cornman Toltec SPE LLC, Bundy Five Million LLC, Fox Hills SPE LLC, HFAH Monaco SPE LLC, Huntsville SPE LLC, Lake Helen Partners SPE LLC, Ocean Atlantic SPE LLC, CFP, Gess SPE LLC, CFP Anchor B SPE LLC, and Shamrock SPE LLC.




The Trust notes that by Order entered on June 24, 2010 by the Hon. Robert C. Jones in United States Bankruptcy Court (Case No. BK-S-09-32824-RCJ), the servicing rights for 19 loans were transferred to Cross, FLS.

## II. JURISDICTION

The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 1334 and 157. Venue is appropriate under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 502 and Bankruptcy Rule 3007.

The statutory predicates for the relief requested herein are 11 U.S.C. § 502 and Bankruptcy Rule 3007.

## III. APPLICABLE AUTHORITY

Under the Bankruptcy Code, any Claim for which a proof of claim has been filed will be allowed unless a party in interest objects. If a party in interest objects to the proof of claim, the Court, after notice and hearing, shall determine the amount of the Claim and shall allow the Claim except to the extent that the Claim is "unenforceable against the debtor . . . under any . . . applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b). A properly filed proof of claim is presumed valid under Bankruptcy Rule 3001(f). However, once an objection to the proof of claim controverts the presumption, the creditor ultimately bears the burden of persuasion as to the validity and amount of the claim. *See Ashford v. Consolidated Pioneer Mortg. (In re Consolidated Pioneer Mortg.)*, 178 B.R. 222, 226 (9th Cir. B.A.P. 1995), *aff'd*, 91 F.3d 151 (9th Cir. 1996).

## IV. LOANS, OBJECTIONS AND A MOTION TO APPROVE

### a. SVRB 4.5 Million Loan

USACM circulated an Offer Sheet to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "Rio Bravo Industrial Development, LLC" (the "SVRB Offer Sheet"). A copy of the SVRB Offer Sheet is




attached hereto as **Exhibit B** and incorporated by this reference. (Berman Decl. SVRB 4.5, ¶ 4.) The SVRB Offer Sheet stated that the borrower was a joint venture between USA Investment partners and Robert Russell.[6] The total loan amount proposed was $4,500,000. The SVRB Offer Sheet noted that the investment would be secured by a "first deed of trust on approximately 28 acres of land zoned for industrial development and a 50,000 square feet [sic] industrial building fully leased located at Rio Bravo and Prince Street" off of Interstate 25 near the Albuquerque, New Mexico airport. The SVRB Offer Sheet further stated that the loan to value was approximately 61% based on an April 13, 2005 opinion of value letter from CB Richard Ellis, which valued the land at $3.50 per square foot, with a sale value for the building of $3,500,000. Pursuant to the Offer Sheet, an appraisal update for the land was in process.[7] The loan was intended to be used "to repay existing borrowers partners and to begin the development process for the remaining phases" of the project, which included an eventual build out of 200,000 square feet of industrial warehouse space. The Loan Agreement likewise stated that the loan proceeds were going to be used to retire certain debts related to the real property. *Id.*

On April 27, 2005, the borrower made and delivered to various Direct Lenders, a "Promissory Note Secured by Deed of Trust," in the amount of $4,500,000 (the "SVRB Note") and a Loan Agreement. (Berman Decl. Re SVRB 4.5 Loan, ¶ 5). The Note was secured by a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" from borrower in favor of the Direct Lenders that was recorded in the official records of Bernalillo County, New Mexico on April 29, 2005 at Instrument Number 2005059760. *Id.* The SVRB Note was also supported by an Unconditional Guaranty executed by Tom Hantges, Joseph Milanowski, and Robert Russell on April 27, 2005. (Berman Decl. Re SVRB 4.5 Loan, ¶ 6).

---

[6] The loan was eventually made to a different entity, SVRB Investments, LLC, but that entity is also a joint venture between Robert Russell and USA IP according to the Arizona Corporation Commission website.

[7] The Trustee has not been able to locate a copy of the appraisal or the broker opinion of value.




The USACM "Loan Summary" dated July 31, 2006 and filed in this case shows that borrower was "Performing" on the Note as of July 31, 2006. (Berman Decl. Re SVRB 4.5 Loan, ¶ 7.) The USACM "Loan Summary" dated February 28, 2007 and filed in this case shows that borrower was in "Interest Default" as of February 28, 2007. *Id.* During this bankruptcy case through the transfer of servicing to Compass, USACM treated the Direct Lenders with respect to any interim payments by the borrower in accordance with this Court's orders.

Counsel for the Trustee had a brief conversation with a representative of Platinum regarding the status of the SVRB 4.5 Loan. According to Platinum, it purchased the Direct Lenders' interests in the Note and the Deed of Trust, foreclosed on the collateral, and has received a nearly 100% return. Platinum also stated that the Direct Lenders assigned their claims against USACM to Platinum, however, no notice of assignment has been filed with the Court to date. The Trustee will serve a copy of this objection on Platinum and give it the opportunity to provide proof that the portion of the subject Proof of Claim related to the SVRB 4.5 Loan was assigned to it and to oppose this objection.

**b. SVRB 4.5 Objection**

USA Investment Partners ("USA IP") held an interest in the borrower. As such, and unlike many of the other loans brokered by USACM, the SVRB 4.5 Loan was not completely arms' length. The Direct Lenders, however, did receive the first position security interest in the collateral promised them by the borrower through the Offer Sheet. The Trust believes USACM is not liable for the borrower's default. USACM is not responsible for any decrease in the value of the collateral and the Direct Lenders took an obvious risk by investing in a promissory note secured by a lien on real property. Further, it appears that those Direct Lenders who did not assign their interests in this loan to Platinum received close to full value for their direct lender interests; those Direct Lenders who in fact assigned their interests to Platinum, including any claims against USACM,




have already received consideration for those assignments and should not be allowed to recover further on their respective claims. To the extent Platinum proves it is the holder of the Direct Lender claims against USACM, having recovered nearly all of the underlying claim through the foreclosure and sale of the collateral all but eliminates any remaining claims. The claimant fails to state a claim. The Direct Lenders including Mr. Monighetti; received the first position security interest promised them, and USACM does not appear to have breached the loan servicing agreements with respect to collection of the SVRB 4.5 Loan.

To the extent the claimant still holds any interest in the SVRB 4.5 Loan, the Note, or the Deed of Trust, this objection will not affect the claimant's right to be repaid on the SVRB 4.5 Loan by the borrower, to recover from the sale of any collateral that secured the SVRB 4.5 Loan, or to recover on the guaranty supporting the SVRB 4.5 Loan.

c. **Copper Sage Phase II Loan**

USACM circulated an Offer Sheet (the "Copper Sage Offer Sheet") to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "Copper Sage Commerce Center, LLC." A copy of the Copper Sage Offer Sheet is attached hereto as **Exhibit C** and incorporated by this reference. (Berman Decl. Re Copper Sage, ¶ 4.) The Copper Sage Offer Sheet indicated that the Borrower was a joint venture between USA Investment Partners and Robert Russell/A-D Development Group, LLC. *Id.* The total loan amount proposed was $11.3 million. The Copper Sage Offer Sheet described the investment as a "First Trust Deed Investment" and noted that the investment would be secured by a first deed of trust on 8.45 acres of property to be developed into warehouse space. *Id.* The Copper Sage Offer Sheet further provided that the loan had a 75% loan to value based on the sell-out price for the buildings. *Id.* The loan was intended to acquire the property and construct the buildings. *Id.*




On March 1, 2006, Borrower made and delivered to various lenders a "Promissory Note Secured by Deed of Trust" (the "Copper Sage Note") and a Construction Loan Agreement. (Berman Decl. Copper Sage, ¶ 5.) The Note and Loan Agreement provided for a loan in the initial principal amount of $3,550,000, which could be increased up to $11,300,000. *Id.* The Copper Sage Note was secured by a "Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing" ("Deed of Trust") that was recorded in the official records of Clark County, Nevada on March 6, 2006, at Instrument Number 200603-6-0003310. *Id.* The Copper Sage Note was also supported by a guaranty executed by Thomas Hantges, Joseph Milanowski, and Robert Russell. The USACM Trust has not found a copy of the guaranty. The Copper Sage Offer Sheet also provided that "real estate markets can be negatively impacted by interest rates, availability of capital, supply and demand factors, and general economic conditions locally, regionally, and nationally" and warned the Direct Lenders to keep these risks in mind. *Id.*

The USACM "Loan Summary" dated July 31, 2006 and filed in this case shows that Borrower was "Non-performing" on the Note as of July 31, 2006, with $3,550,000 in principal outstanding at that time. (Berman Decl. Re Copper Sage, ¶ 6.)

USACM did not disperse any additional funds to Copper Sage after the initial disbursement. *Id.* Copper Sage Commerce Center, LLC asserted a claim against USACM in the amount of $3.5 million. [POC No. 10725-00792-2.] Copper Sage's Proof of Claim alleged that USACM failed to fully fund the remainder of the loan in breach of the loan agreement. *Id.* It also alleged an intentional misrepresentation by USACM. *Id.* USACM filed an objection to Copper Sage's proof of claim. [DE 3077]

USACM filed an adversary claim against, among others, Copper Sage and Robert Russell. [DE 6191; Adv. Case. No. 08-01119.] Copper Sage ultimately agreed to release its claims against USACM as part of a settlement of USACM's adversary claim against it. (Berman Decl. Re Copper Sage, ¶ 7.)



Based on a review of the Clark County Recorder's land records, counsel for the Trustee has determined that the property securing the loan consisted of two parcels, and both parcels were sold at a trustee's sale on October 22, 2010 for $800,000 credit bid to certain Direct Lenders, as well as to Compass and to BMR Funding, LLC, which took a 72.54% interest. The ultimate disposition of the property is unknown.

d. **Motion to Allow Copper Sage Phase II Claim**

USA Investment Partners ("USA IP") held an interest in the borrower. As such, and unlike many of the other loans brokered by USACM, the Copper Sage Phase II Loan was not completely arms' length. However, the Direct Lenders received the first position interest in the collateral securing the loan as promised by the Offer Sheet. In addition, the Direct Lenders took an obvious risk by investing in a promissory note secured by a lien on real property, as was pointed out by the Copper Sage Offer Sheet. USACM is not liable for the borrower's default or any decrease in the value of the collateral.

Nonetheless, there are certain facts related to the Copper Sage Phase I claim that raise serious concern for the Trustee. First, Tom Hantges and Joe Milanowski held an indirect interest in the borrower through USA IP. Second, Robert Russell was the principal for Copper Sage. The Trust's claims against Mr. Russell were settled as part of a comprehensive settlement, including the release of the proof of claim filed by this borrower asserting damages for the failure to fully fund the loan. Third, USACM funded this loan a few weeks before the filing of the bankruptcy and in light of Milanowski and Hantges' involvement in the borrower, the Trust has serious reservations about the disclosures made to investors to solicit their investments in this loan. Moreover, USACM had already retained bankruptcy counsel and the self-dealing nature of this investment is of concern. Finally, it appears that Copper Sage may have used the proceeds from the Copper Sage Phase II Loan to pay off the original Copper Sage Loan which was due, pursuant to an extension agreement, on March 11, 2006. In turn, USACM diverted some



or all of the principal payments on the original Copper Sage Loan. In light of these issues, the Trustee is prepared to allow the Copper Sage Phase II Loans in full for the Direct Lenders.

e. **HFAH Asylum Loan**

USACM circulated an Offer Sheet (the "Asylum Offer Sheet") to prospective Direct Lenders soliciting funding for an acquisition and development loan to a borrower identified as "Homes for America Holding."[8] A copy of the Asylum Offer Sheet is attached hereto as **Exhibit D** and incorporated by this reference. (Berman Decl. Re HFAH Asylum Loan, ¶ 4.) The total loan amount proposed was $6,000,000. The Asylum Offer Sheet described the investment as a "First Trust Deed Investment" and noted that the investment would be secured by a first deed of trust on approximately 13.2 acres of land, with 299,969 square feet of commercial space in nine building in Willimantic Connecticut, commonly known as Windham Mills. The Asylum Offer Sheet also stated that the loan would be supported by a guaranty from Homes for America Holdings, Inc.

The HFAH Asylum Loan was funded. However, loan documents (including the promissory note, loan agreement, and guaranty) were never executed, and the deed of trust intended to secure repayment of the loan was never signed or recorded.

Based on a review of documents and conversations with Platinum, the HFAH Asylum Loan was used by borrower to purchase obligations owed by Windham Mills Development Corporation, which were secured by mortgages on the Windham Mills property, in order to foreclose on the mortgages. Windham Mills Development Corporation, however, filed for bankruptcy in the District of Connecticut before the Borrower could foreclose. Platinum, on behalf of a majority of Direct Lenders (the "Opt-

[8] The loan was ultimately made to HFAH Asylum, LLC, an entity owned and controlled by Homes for America Holdings. USA Investment Partners, and thus Thomas Hantges and John Milanowski, held a member interest in Homes for America Holdings. That direct interest in the parent company, and indirect interest in the Borrower, was not, upon information and belief, disclosed to the Direct Lenders.




In Direct Lenders"), filed suit against the borrower (and other entities) for the funds provided by the Direct Lenders. Ultimately, Platinum and the borrower settled that lawsuit, and Platinum obtained the right to pursue the obligations owed by Windham Mills, including the claims held by the borrower in the Windham Mills bankruptcy. *Id.* By pursuing those obligations, Platinum estimates that it collected 70% of the funds owed to the Opt-In Direct Lenders. *Id.*

f. **Objection to HFAH Asylum Claim**

USA IP held a member interest in the borrower's parent Homes for America Holdings. As such, the HFAH Asylum Loan brokered by USACM was less than completely arms' length. Moreover, contrary to the Offer Sheet, the Direct Lenders did not receive the promised secured interest in the collateral, nor did they receive the benefit of an executed guaranty. However, the Opt-In Direct Lenders received an approximately 70% recovery on their claim.

Thus, in light of USACM's potential conflict of interest noted above, USACM's failure to properly document the loan, USACM's failure to obtain the promised security agreements, and Platinum's 70% recovery on behalf the Opt-In Direct Lenders, the Trustee is prepared to allow a general unsecured claim for the HFAH Asylum Claims in the amount of 30% of each claim. The Trustee objects to allowance of the remaining 70% of each claim because the Direct Lenders either (a) received the remaining 70% of their claim through Platinum or (b) had the opportunity to receive the remaining 70% of their claim through Platinum, yet failed to mitigate their damages.

**V. CONCLUSION**

Based on the foregoing, the USACM Trust respectfully requests that the Court disallow in part and allow in part Proof of Claim No. 10725-01208 filed by Pete Monighetti as follows:

a. Disallow in full the $31,646.26 related to the SVRB $4.5 Loan;

LEWIS AND ROCA LLP LAWYERS

b. Allow the $50,000 related to the Copper Sage II Loan; and

c. Disallow 70% of the $500,000 related to the HFAH Asylum Loan ($350,000) and allow the remaining 30% ($150,000).

The USACM Trust also requests such other and further relief as is just and proper.

DATED this 16th day of September, 2011.

LEWIS AND ROCA LLP

By /s/ John Hinderaker (#18024)
Robert M. Charles Jr. NV 6593
John C. Hinderaker, AZ 18024 (*pro hac vice*)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398
E-mail: jhinderaker@lrlaw.com

*Attorneys for the USACM Liquidating Trust*

Copy of the foregoing and supporting declarations of Geoffrey L. Berman [DE 8834, DE 8919 and DE 8864] with hearing date is redacted and Exhibit A omitted mailed by first class postage prepaid on September 16, 2011 to:

Pete Monighetti
6515 Frankie Lane
Prunedale, CA 93907

LEWIS AND ROCA LLP

/s/Renee L. Creswell
Renee L. Creswell