# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

RECEIVED AOC

SEP 19  2:30 PM '11

MARY A. SCHOTT, CLERK

| | |
|---|---|
| In re:<br><br>USA COMMERCIAL MORTGAGE COMPANY,<br><br>                     Debtor. | Case No.: BK-S-06-10725-LBR<br><br>Chapter 11<br><br>**RESPONSE TO SIXTH OMNIBUS OBJECTION OF USACM TRUST TO PROOFS OF CLAIM BASED UPON INVESTMENT IN THE BINFORD MEDICAL DEVELOPERS LOAN**<br><br>Date of Hearing: September 30, 2011<br>Time of Hearing: 9:30 a.m. |

SEGEL, GOLDMAN, MAZZOTTA & SIEGEL, P.C., Counsel for Claimant MORRIS MASSRY ("Massry") hereby files this response to the USACM Liquidating Trust's (the "USACM Trust") Ninth Omnibus Objection to Proof of Claim, Claim No. 10725-01898 filed January 9, 2007 (the "Proof of Claim"), and begs the Court to reject the objection of the USACM Trust based upon the following facts:

    1.    On or about August 31, 2005 Massry invested $100,000 in the Binford Medical Developers loan. The terms of the investment allowed for accrual of interest at a rate of 12.0% resulting in interest of $1,466.67 at the time of the filing of the Proof of Claim. Accordingly, Massry is owed $101,466.67 for his investment in the Binford Medical Developers loan (the "Massry Claim").

    2.    The USACM Trust seeks to disallow the claim on the basis that Massry "took a known risk by investing in a promissory note secured by a lien on real property." USA Commercial Mortgage Company (the "Company") was a well known company in the brokerage

business. The Company's objection was insufficient to convert the presumption. The Company was properly licensed by the State of Nevada and Massry was unaware of any financial problems with the Company.

3. As acknowledged in the Debtor's moving papers, the Massry Claim is secured by the Promissory Note Secured by Mortgage (the "Note") and a Construction Loan Agreement. A copy of the Note is annexed hereto at **Exhibit "A"** and a copy of the Construction Loan Agreement is annexed hereto at **Exhibit "B"**. Debtors further admit that the Note was further secured by a Mortgage, Assignment of Leases, Rents and Contracts, Security Agreement, Financing Statement and Fixture Filing recorded on September 15, 2005. A copy of the Mortgage, Security Agreement and Assignment of Rents is annexed hereto at **Exhibit "C"**.

4. Accordingly, the Massry Claim is secured and the Company had a responsibility, pursuant to the Note, to repay the lenders. The Company, however, has made no attempt to do so and now seeks to avoid its responsibility in its entirety.

5. In conclusion, the Massry Claim is valid and should be paid in priority together with the accrued interest in accordance with the terms of the Note.

Dated: September 15, 2011       SEGEL, GOLDMAN, MAZZOTTA & SIEGEL P.C.

*/s/ Erika C. Browne*
Erika C. Browne, Esq., Of Counsel
Attorneys for Morris Massry
9 Washington Square
Albany, New York 12205
(518)452-0941

To:   John Hinderaker, Esq.
      LEWIS & ROCA LLP
      3993 Howard Hughes Parkway, Suite 600
      Las Vegas, Nevada 89169
      (702)949-8321

RECEIVED BNC
AND FILED

SEP 16  2 04 PM '11

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| In re: | Case No.: BK-S-06-10725-LBR |
|---|---|
| USA COMMERCIAL MORTGAGE COMPANY, | Chapter 11 |
| Debtor. | **RESPONSE TO SIXTH OMNIBUS OBJECTION OF USACM TRUST TO PROOFS OF CLAIM BASED UPON INVESTMENT IN THE BINFORD MEDICAL DEVELOPERS LOAN**<br><br>Date of Hearing: September 30, 2011<br>Time of Hearing: 9:30 a.m. |

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF ALBANY     )

Nancy Smith, being duly sworn, deposes and says that she is over the age of eighteen (18) years, is not a party to this action and resides in the Town of Athens, County of Greene and State of New York. On September 15, 2011, she mailed a copy of the Response to Sixth Omnibus Objection of USACM Trust to Proofs of Claim Based Upon Investment of the Binford Medical Developers Loan, FedEx overnight delivery, upon the following:

John Hinderaker, Esq.
LEWIS & ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

by depositing a true and correct copy of the original of the same, properly enclosed in a pre-paid Federal Express envelope, picked up by Federal Express, 9 Washington Square, Albany, New York directed to said attorney, that being the address within the State designated for that purpose upon the last papers served in this action or the place where the above then resided or kept offices, according to the best information which can be conveniently obtained.

_____
Nancy Smith

Sworn to before me this
15th day of September, 2011.

_____
Notary Public – State of New York

ERIKA C BROWNE
Notary Public, State of New York
No. 02BR6160882
Qualified in Saratoga County
Commission Expires February 18, 20__

SCANNED

M:\1855\12297\Aff of Svc Omnibus 6th Objection Binford.doc

# Exhibit "A"

# PROMISSORY NOTE
# SECURED BY MORTGAGE



$4,250,000.00

Las Vegas, Nevada
August 31, 2005

This Promissory Note ("Note") is executed pursuant to the Construction Loan Agreement (the "Loan Agreement"), dated as of August 31, 2005, by and among **Binford Medical Developers, LLC**, an Indiana limited liability company ("Borrower"), and those persons listed on Exhibit "A" attached hereto as may be amended from time to time ("Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Four Million Two Hundred Fifty Thousand Dollars ($4,250,000) (the "Note Amount"), as provided in the Loan Agreement, together with interest as provided herein. Pursuant to the Construction Loan Agreement of even date herewith, the loan amount shall be disbursed in installments as follows:

1. <u>Interest Rate</u>. Interest shall accrue on the full Note Amount, from the date the Mortgage is recorded until the date the Note Amount is paid in full, at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. Accrued but unpaid interest shall be compounded monthly.

2. <u>Payments</u>. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears. For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day. All payments shall be made, without relief from valuation and appraisement laws in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3. <u>Maturity Date</u>. The term of this Note shall be for a period of twelve (12) months from the date the entire Loan Amount and documents needed to close the Loan are deposited with the Title Company. If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on the Maturity Date.

4. <u>Application of Payments</u>. All payments on this Note shall be applied first to any prepayment fees, if any are due, second to accrued late charges, if any, third to default interest, if any, fourth to the payment of accrued ordinary interest then payable, and last to principle. This Note is entitled to all of the rights, benefits and privileges provided for in the Loan Agreement as it may from time to time be supplemented, modified or amended. The Loan Agreement, among other

1

things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events.

5. <u>Prepayment</u>. Maker agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Maker may prepay this Note in part or in full without penalty; provided, however, that if this Note is prepaid, whether voluntarily or involuntarily due to an acceleration hereof, within the first sixty (60) days of the term hereof then Borrower shall pay a prepayment charge equal to the sum of all interest which would accrue on the entire Note Amount during the first sixty (60) days of the term hereof, less the sum of all interest previously paid to Lender.

6. <u>Collateral</u>. This Note is secured by (1) the Mortgage (the "Mortgage") executed by Borrower in favor of Lender covering certain real property located in the County of Marion, State of Indiana (the "Property"), and (2) all other existing and future Security Documents.

7. <u>Defaults; Acceleration</u>. The occurrence of any Event of Default as defined in the Loan Agreement shall be a default hereunder. Upon the occurrence of an Event of Default, Lender may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Borrower hereunder and under the Loan Documents, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under the Note, the Mortgage or any other Loan Document shall become and be immediately due and payable, anything in this Note or in the Mortgage to the contrary notwithstanding.

8. <u>Late Charge</u>. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date or, if accelerated as permitted by this Note or any other Loan Document, by the payment date given in the acceleration notice, the holder hereof will incur extra administrative expenses (<u>i.e.</u>, in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the holder hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7, and without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including the timely payment of any accelerated amount.. Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right,

express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9. Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10. Waivers. Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note (other than notices expressly required by the terms of the Loan Agreement). Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11. Costs of Collection. Borrower agrees to pay all reasonable costs of collection when incurred and all costs incurred by the holder hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to reasonable attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12. Sale or Other Encumbrances.

(a) In order to induce Lender to make the loan secured hereby, Borrower agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold (except sales for which a partial release of the Mortgage shall be made pursuant to the Loan Agreement), assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Borrower whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or without the prior written consent of Lender, then Lender, at its option, may declare this Note and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not

3

of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Borrower shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Lender's security for the indebtedness secured hereby. Moreover, Lender has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Lender's security if junior financing, except as shall be permitted by Lender, or if other liens or encumbrances should attach to the Mortgaged Property.

(b) Borrower may request Lender to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c) In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Borrower, the Lender may deal with such successor or successors in interest with reference to this Note or the Mortgage in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of Borrower under this Note, the Mortgage or the other Loan Documents. No sale of Borrower's interest in the Mortgaged Property, no forbearance on the part of Lender, no extension of the time for the payment of the Mortgage indebtedness or any change in the terms thereof consented to by Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under this Note, the Mortgage and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to the Mortgage. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 12(a).

13. Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

14. <u>Notices</u>. Any and all notices, demands and/or communications described herein, or which may be necessary or appropriate hereunder, shall be given as provided in the Mortgage.

15. <u>Assignment By Lender</u>. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder; provided, however, that any such assignment shall in no way affect Lender's obligation to fund the Loan pursuant to the Loan Agreement and terms hereof.

16. <u>Multiple Parties</u>. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

17. <u>Construction</u>. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

18. <u>Partial Invalidity</u>. If any court of competent jurisdiction declares any section or provision of this Note invalid or unenforceable, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

19. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b) BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 14 HEREOF, AND CONSENTS AND AGREES

THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)     BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

(Signature page follows)

**BORROWER:**   Binford Medical Developers, LLC

By: _____
Kenneth E. Schmidt, Manager

G:\HOME\BKD\2800 USA\004 Binford Medical\Note2.wpd

# EXHIBIT "A"

## LENDERS

| | NAMES | AMOUNT |
|---|---|---|
| 1. | Kenneth Addes & Victoria Addes Co-Trustees of the Addes Trust | $50,000 |
| 2. | The Baltes Company, a Michigan Corporation | $100,000 |
| 3. | Jerry L. Blackman, Sr. and Carolyn N. Blackman Living Trust, dated 11/26/01 | $50,000 |
| 4. | Gregory E. Borgel, a married man dealing with his sole and separate property | $50,000 |
| 5. | Raymond Brahy & Rita Brahy, husband & wife, as joint tenants with right of survivorship | $75,000 |
| 6. | Vincent Bruno, a widower | $50,000 |
| 7. | Maurice A. Cauchois & Jacqueline M. Cauchois Trustees of the M & J Cauchois Family Trust dated 2/25/93 | $50,000 |
| 8. | Jack R. Clark & Linda C. Reid, husband & wife, as joint tenants with right of survivorship | $125,000 |
| 9. | Martin A. Davis & Virginia Lee Davis Trustees of the Davis Family 2000 Trust | $100,000 |
| 10. | Peter M. Digrazia DMD LTD PSP | $50,000 |
| 11. | David M. Edwards and Marcy P. Edwards, Trustees of the David M. & Marcy P. Edwards Family Trust | $50,000 |
| 12. | Pioneer Accounting & Investments, LLC a Colorado LLC, Christian Elbert Manager | $50,000 |
| 13. | Ellis L. Elgart and Sivia V. Elgart, Trustees of the Ellis L. Elgart Revocable Living Trust dated 7/8/02 | $50,000 |
| 14. | Patricia Ferguson Trustee of the Ferguson Living Trust dated 6/28/00 | $50,000 |
| 15. | Karyn Y. Finlayson Trustee of the 2003 Karyn Y. Finlayson Trust dated 12/29/03 | $100,000 |
| 16. | Robin B. Graham & Celia Allen-Graham Trustees of the Graham Family Trust dated 10/26/78 | $100,000 |
| 17. | Charles T. Hamm and Sandra L. Hamm, Trustees of the Hamm Trust dated 3/17/05 | $50,000 |
| 18. | Harold G. Hartwell, an unmarried man | $150,000 |
| 19. | Roland J. Hearn & Risa V.S. Hearn Trustees of the Roland J. Hearn & Risa V.S. Hearn Living Trust dated 2/19/93 | $100,000 |
| 20. | Don Hellings Trustee of the Don & Helen Hellings Family Trust | $50,000 |
| 21. | Philip C. Higerd, Trustee of The Philip Higerd Family Trust dated 5-30-03 | $50,000 |
| 22. | Ned Homfeld, an unmarried man | $100,000 |
| 23. | Fisko Ventures, LLC. | $50,000 |
| 24. | Stephen V. Kowalski & Maria T. Sutherland, husband and wife as joint tenants with the right of survivorship | $50,000 |

| | | |
|---|---|---|
| 25. | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 26. | Raymond Nunez & Sandra L. Lawson Trustees of the The Raymond & Sandra Nunez Family Trust | $50,000 |
| 27. | Randall Lococo & Allison Lococo, joint tenants with right of survivorship | $50,000 |
| 28. | Stuart J. Madsen Trustee of the Stuart J. Madsen Trust dated 9/7/00 | $100,000 |
| 29. | E. Grace Marston Trustee of the Marston Family Trust dated 8/13/93 | $50,000 |
| 30. | John M. Marston & Linda S. Marston, husband & wife, as joint tenants with right of survivorhsip | $50,000 |
| 31. | Morris Massry, a married man dealing with his sole & separate property | $100,000 |
| 32. | Jack R. Mennis & Susan A. Mennis, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 33. | Dr. Russell Gordon Tilley Millar Trustee of the R.G.T. Millar Trust dated 6-28-1988 | $60,000 |
| 34. | Wesley L. Monroe & Jeannie M. Monroe, as joint tenants with right of survivorship | $75,000 |
| 35. | Elaine Mullin Trustee for the benefit of Elaine P. Mullin Trust dated 8/6/90 | $70,000 |
| 36. | Ronald Douglas Neal, a married man, dealing with his sole and separate property | $50,000 |
| 37. | Shirley Payne, an unmarried woman | $50,000 |
| 38. | Tobi S. Pepper, Trustee, Tobi S. Pepper Inter Vivos Trust dated 7/6/78 as amended | $50,000 |
| 39. | Jack Polen Trustee of the Jack & Gladys Polen Family Trust dated 6/28/88 | $50,000 |
| 40. | Dennis Raggi, a married man dealing with his sole & separate property | $75,000 |
| 41. | Moshe Ram & Barbara Ram Trustees for the benefit of The Ram Family Trust dated 6/22/01 | $50,000 |
| 42. | Nicholas J. Santoro and Juanita Santoro, Trustees of the Santoro Family Trust U/T/D 4/29/02 | $50,000 |
| 43. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $50,000 |
| 44. | Joan L. Shoop and Kenneth D. Shoop, husband and wife as joint tenants with right of survivorship | $50,000 |
| 45. | Todd Sinett & Wendy Sinett, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 46. | Ralph Raymond Storch and Denise Rose Storch, Trustees of the Storch Family Trust, dated 5/3/04 | $115,000 |
| 47. | Alfonso Tennariello & Jean Tennariello Co-Trustees of the Tennariello Revocable Trust dated 7/10/97 | $50,000 |
| 48. | Douglas Tichenor & Susan Tichenor, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 49. | First Savings Bank Custodian for Anton Trapman Roth IRA | $70,000 |
| 50. | First Savings Bank Custodian for Anton Trapman Traditional IRA | $30,000 |

| | | |
|---|---|---|
| 51. | USA Capital First Trust Deed Fund | $855,000 |
| 52. | Gregory J. Walch Trustee of the Gregory J. Walch and Shauna M. Walch Family Trust dated 11/12/04 | $75,000 |
| 53. | Jerry Woldorsky, a married man dealing with his sole & separate property | $75,000 |
| | TOTAL | $4,250,000 |