30 August, 2011

Judge Linda B. Riegle
U.S. Bankruptcy Court
Foley Federal Building
300 Las Vegas Blvd. South, 3rd Floor
Courtroom # 1
Las Vegas, Nevada 89101 - 5833

RECEIVED
AND FILED

Re:    USA Commercial Mortgage Company, Debtor
       Case No. BK-S-06-10725-LBR
       Hearing Date: 30 September, 2011
       Lerin Hills Loan

SEP 06 2011

U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK

Honorable Judge Riegle:

This is written as a notice of objection. Inasmuch as I on behalf of the U.S. Government
represent you, the debtor and the filing attorney with regard to certain honest government
dealings in Indonesia, we will be unable to attend the scheduled hearing. It is noted that the time
is brief, so that it appears there will not be much discussion.

Nevertheless, I would expect that the filing attorney would be required to submit sound
"information" to justify what appears to be a frivolous effort to provide an escape for the
obligated debtors. The statement that we "took an obvious risk" could apply to almost any
business venture around the world. It is difficult to understand why the document states that there
was no guarantee of repayment.

As we have reviewed our documents it seems very clear that there was a written guarantee for
repayment signed by the debtor (copy enclosed). If there was not an intent /obligation to stand
behind the loan commitment, why was a guarantee provided?

Further if USACM had performed responsibly as expected by law, foreclosure would have been
initiated long before the current crash of the investment market. In recovery, the property itself
would have provided most of the required recovery of funds.

In considering the investment, the loan to value for this investment was presented as 61% which
is a reasonable rate for recovery. We have conducted this kind of investment since 1977
successfully and at one time actively operated our own investment company for such loans on a
smaller basis (Investment Industries, Inc – Montana). We are and were aware of the risks and
methods needed to successfully proceed with such a lending process, and until this period have
never had a problem with the process. We have enclosed a copy of the loan guarantee very
clearly signed by the Debtor, along with certain portions of the Promissory Note (see item 10 –
Waivers). Considering the lengthy period of these and related proceedings we are sure you have
copies of the complete documents. If not they can be provided.

Further please note the "indemnity "clause (8.6) included in the loan agreement which the "Borrower indemnifies Lender......"

In addition please note the copy of the USA Capitol statement of guarantee. To us in that statement of Guarantee it is implied that the borrower (Debtor) has sufficient personal funds and will stand behind any potential default.

It is our opinion that those funds ought to be directly resourced to satisfy all of ours and other lender's outstanding debt.

Therefore, there is no basis to arbitrarily propose or affect any sort of reduction in the value of our claim. The borrower knew what he was doing just as well as we knew what we were doing. It remains our opinion, though it is not the intent of this motion, that all parties (borrower and brokers) should be tried for fraud. You are respectfully requested to deny the request to reduce the amount of our documented value for our investment along with the outstanding interest.

Sincerely,

Roy K. Ventura, Jr., P.E.
USAID – Indonesia

c    John Hinderaker, Lewis and Roca, llp lawyers

# USA Capital

## Subordinated Trust Deed Investment

**Borrower:**      Lerin Hills, LTD
Mr. Godines, the manger of the borrower, is the Founder, President, and CEO of
KGME, Inc.  KGME is a civil construction company, which operates as an
integrated general contractor, specializing in underground utilities, road and
bridge constructions and large scale excavation.

**Loan Amount:**      $12,900,000

**Rate:**      15% (net) paid monthly

**Combined
Loan to Value:**      Approximately 61% based on an appraisal from Dugger, Canaday, Grafe, Inc.
dated July 22, 2005.

**Term:**      24 months

**Collateral:**      Second Deed of Trust on approximately 893 acres of land located along the
north side of State Highway 46 and approximately three miles west of Interstate-
10 approximately 30 miles northwest of San Antonio, Texas.

**The Project:**      Lerin Hills is a fully entitled master planned community on approximately 893
acres with large oak trees, a 46 acre lake, and a 100 acre floodplain which will be
developed into private parkland for residents that are members of the lake club.
This development will include 1,375 lots in a variety of product lines and is
scheduled to be built out in 3 phases.   The homes proposed for the development
range in price from $175,000 to $500,000.  There are a number of national home
builders, such as, Pulte Homes, Lennar Homes, and D.R. Horton,  which will
likely participate in the development.

The borrower will establish a Municipal Utility District (MUD) which provides
reimbursement for certain infrastructure cost through bond issuances, and any
reimbursements from this financing will be part of the collateral.

**Guarantees:**       Mr J. Abel Godines with a reported net worth of approximately $12,575,000 as
of April 25, 2005.

---

### Jane't Szabo

·**702-734-2400**                              **888-921-8009**
Licensed by the State of Nevada Division of Mortgage Lending
USA Commercial Mortgage Company 4484 S. Pecos Rd, Las Vegas NV 89121
License #MB 333 10/29/2005
Money invested through a mortgage broker is not guaranteed to earn any interest or return and is not insured. Before
investing investors must be provided applicable disclosure.

**Roy Ventura**

**From:**  "Janet Szabo" <jszabo@usasfund.com>
**To:**  "'Roy Ventura'" <rventura@accessme.com.jo>
**Sent:**  Wednesday, November 30, 2005 6:09 PM
**Subject:**  RE: Inv-TD Lerin Hills

Yes, Roy, all you need to do is get the money here.  How long will it take from where you are????  Jane't

**From:** Roy Ventura [mailto:rventura@accessme.com.jo]
**Sent:** Tuesday, November 29, 2005 8:37 PM
**To:** Janet Szabo
**Subject:** Re: Inv-TD Lerin Hills

Janet,

If possible we would like to add $10,000.00 to our current investment commitment on this loan.

Roy

—— Original Message ——
**From:** Janet Szabo
**To:** Janet Szabo
**Sent:** Tuesday, November 29, 2005 10:46 PM
**Subject:** FW: Inv-TD Lerin Hills

HOT HOT HOT HOT HOT
We want to close this NOW but one investor cannot meet his commitment. If you are in this but wish to add more, now is your chance. If you are not in this, please check this out.
This will pay you 15% for two full years!!!!!! Loan to value is only 61% COMBINED WITH THE FIRST. Borrower has big name builders very interested in the improved lots when the term is complete. Borrower also personally guaranteeing the loan. What else can you ask for????? I have $285K left. Come on, call me and let's get this loan closed and interest in your pocket. Jane't

## Subordinated Trust Deed Investment

**Borrower:**   Lerin Hills, LTD
Mr. Godines, the manger of the borrower, is the Founder, President, and CEO of KGME, Inc.  KGME is a civil construction company, which operates as an integrated general contractor, specializing in underground utilities, road and bridge constructions and large scale excavation.

**Loan Amount:**   $12,900,000

**Rate:**   15% (net) paid monthly

**Combined**

12/1/2005

**Loan to Value:**     Approximately 61% based on an appraisal from Dugger, Canaday, Grafe, Inc. dated July 22, 2005.

**Term:**     24 months

**Collateral:**     Second Deed of Trust on approximately 893 acres of land located along the north side of State Highway 46 and approximately three miles west of Interstate-10 approximately 30 miles northwest of San Antonio, Texas.

**The Project:**     Lerin Hills is a fully entitled master planned community on approximately 893 acres with large oak trees, a 46 acre lake, and a 100 acre floodplain which will be developed into private parkland for residents that are members of the lake club.  This development will include 1,375 lots in a variety of product lines and is scheduled to be built out in 3 phases.   The homes proposed for the development range in price from $175,000 to $500,000.  There are a number of national home builders, such as, Pulte Homes, Lennar Homes, and D.R. Horton,  which will likely participate in the development.

The borrower will establish a Municipal Utility District (MUD) which provides reimbursement for certain infrastructure cost through bond issuances, and any reimbursements from this financing will be part of the collateral.

**Guarantees:**     Mr J. Abel Godines with a reported net worth of approximately $12,575,000 as of April 25, 2005.

12/1/2005

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST



$12,900,000.00

Las Vegas, Nevada
December 7, 2005

This Promissory Note ("Note") is executed pursuant to the Loan Agreement (the "Loan Agreement") dated as of December 7, 2005, by **Lerin Hills, LTD**, a Texas limited partnership ("Borrower"), in favor of those persons listed on **Exhibit "A"** attached hereto ("Lender"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Twelve Million Nine Hundred Thousand Dollars ($12,900,000.00), or as much as advanced by Lender as provided in the Loan Agreement (the "Note Amount"), together with interest as provided herein.

1.     Interest Rate.  Interest shall accrue on the outstanding portion of the Note Amount from November 23, 2005 until the date the Note Amount is paid in full, at the rate of fifteen percent (15%) per annum.  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  Accrued but unpaid interest shall be compounded monthly.

2.     Payments. Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears.  For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day.  All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.     Maturity Date.  The term of this Note shall be for a period of twenty four (24) months from the date the Deed of Trust is recorded (the "Maturity Date").  If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on the Maturity Date.

4.     Application of Payments.  All payments on this Note shall, at the option of the holder hereof, be applied first to the payment of accrued interest then payable.  This Note is entitled to all of the rights, benefits and privileges provided for in the Loan Agreement as it may from time to time be supplemented, modified or amended.  The Loan Agreement, among other things, contains provisions for acceleration of the maturity hereof upon the happening of certain stated events.

- 1 -

5.    <u>Prepayment</u>.  Maker agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default).  Subject to the foregoing, at any time prior to the Maturity Date, Maker may prepay this Note in part or in full at any time; provided, however, that if Maker prepays the Note within the first one hundred twenty (120) days after the Effective Date (as defined in the Loan Agreement) (whether voluntarily or as a result of default), then Maker shall pay to Lender a prepayment fee equal to all interest which would accrue on the full Note Amount during said one hundred twenty (120) day period, less all interest previously paid.

6.    <u>Collateral</u>.  This Note is secured by (1) the Deed of Trust (the "Deed of Trust") executed by Borrower, as trustor, in favor of Lender, as beneficiary, covering certain real property located in the County of Kendall, State of Texas (the "Property"), and (2) all other existing and future Security Documents for the benefit of Lender.

7.    <u>Defaults; Acceleration</u>.  The occurrence of any Event of Default as defined in the Loan Agreement shall be a default hereunder.  Subject to any applicable notice and right to cure of Borrower as set forth in the Loan Documents, upon the occurrence of an Event of Default, Lender may declare the entire principal of the Note then outstanding (if not then due and payable thereunder) and all other obligations of Borrower hereunder and under the Loan Documents, to be due and payable immediately, and, subject to applicable provisions of law, upon any such declaration the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under the Note, the Deed of Trust or any other Loan Document shall become and be immediately due and payable, anything in this Note or in the Deed of Trust to the contrary notwithstanding.

8.    <u>Late Charge</u>.  Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date or, if accelerated as permitted by this Note or any other Loan Document, by the payment date given in the acceleration notice, the holder hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment.  Because the actual damages suffered by the holder hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such holder is entitled, upon such breach, in compensation therefor.  Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7, and without further notice, pay to the holder hereof as such holder's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment.  The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including the timely payment of any accelerated amount.  Nothing in this Note shall be construed as an express or implied agreement by the holder hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan

- 2 -

Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the holder hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such holder to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    Waivers. Subject to any applicable notice and right to cure of Borrower as set forth in the Loan Documents, Borrower waives any right of offset it now has or may hereafter have against the holder hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note (other than notices expressly required by the terms of the Loan Agreement). Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.    Costs of Collection. Borrower agrees to pay all reasonable costs of collection when incurred and all costs incurred by the holder hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to reasonable attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.    Sale or Other Encumbrances.

(a)    In order to induce Lender to make the loan secured hereby, Borrower agrees that if the Mortgaged Property or any part thereof or any interest therein, shall be sold (except sales for which a partial release of the Deed of Trust shall be made pursuant to the Loan Agreement), assigned, transferred, conveyed, pledged, mortgaged or encumbered with financing other than that secured hereby or otherwise alienated by Borrower whether voluntarily or involuntarily or by operation of law, except as shall be specifically hereinafter permitted or

without the prior written consent of Lender, then Lender, at its option, may declare this Note and all other obligations hereunder to be forthwith due and payable. Except as shall be otherwise specifically provided herein, or with the prior written consent of Lender, any (a) change in the legal or equitable ownership of the Mortgaged Property whether or not of record, or (b) change in the form of entity or ownership (including the hypothecation or encumbrance thereof) of the stock or any other ownership interest in Borrower shall be deemed a transfer of an interest in the Mortgaged Property; provided, however, that any transfer of the Mortgaged Property or any interest therein to an entity which controls, is controlled by, or is under common control with Borrower shall not be considered a transfer hereunder. In connection herewith, the financial stability and managerial and operational ability of Borrower is a substantial and material consideration to Lender in its agreement to make the loan to Borrower secured hereby. The transfer of an interest in the Mortgaged Property may materially alter and reduce Lender's security for the indebtedness secured hereby. Moreover, Lender has agreed to make its loan based upon the presumed value of the Mortgaged Property and the Rents and Profits thereof. Therefore, it will be a diminution of Lender's security if junior financing, except as shall be permitted by Lender, or if other liens or encumbrances should attach to the Mortgaged Property.

(b)     Borrower may request Lender to approve a sale or transfer of the Mortgaged Property to a party who would become the legal and equitable owner of the Mortgaged Property and would assume any and all obligations of Borrower under the Loan Documents (the "Purchaser"). Lender shall not be obligated to consider or approve any such sale, transfer or assumption or request for the same. However, upon such request, Lender may impose limiting conditions and requirements to its consent to an assumption.

(c)     In the event ownership of the Mortgaged Property, or any part thereof, becomes vested in a person or persons other than Borrower, the Lender may deal with such successor or successors in interest with reference to this Note or the Deed of Trust in the same manner as with Borrower, without in any way releasing, discharging or otherwise affecting the liability of Borrower under this Note, the Deed of Trust or the other Loan Documents. No sale of Borrower's interest in the Mortgaged Property, no forbearance on the part of Lender, no extension of the time for the payment of the Deed of Trust indebtedness or any change in the terms thereof consented to by Lender shall in any way whatsoever operate to release, discharge, modify, change or affect the original liability of the Borrower herein, either in whole or in part. Any deed conveying the Mortgaged Property, or any part thereof, shall provide that the grantee thereunder assume all of Borrower's obligations under this Note, the Deed of Trust and all other Loan Documents. In the event such deed shall not contain such assumption, Lender shall have all rights reserved to it hereunder in the event of a default or if Lender shall not elect to exercise such rights and remedies, the grantee under such deed shall nevertheless be deemed to have assumed such obligations by acquiring the Mortgaged Property or such portion thereof subject to the Deed of Trust. Nothing contained in this section shall be construed to waive the restrictions against the transfer of the Mortgaged Property contained in Section 12(a).

13.     Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should

determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

14. <u>Notices</u>. Any and all notices, demands and/or communications described herein, or which may be necessary or appropriate hereunder, shall be given as provided in the Deed of Trust.

15. <u>Assignment By Lender</u>. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder; provided, however, that any such assignment shall in no way affect Lender's obligation to fund the Loan pursuant to the Loan Agreement and terms hereof.

16. <u>Multiple Parties</u>. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

17. <u>Construction</u>. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

18. <u>Partial Invalidity</u>. If any court of competent jurisdiction declares any section or provision of this Note invalid or unenforceable, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

19. <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a) This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

(b) **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT**

BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 14 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

BORROWER:        **Lerin Hills, LTD,**
                 a Texas limited partnership

                 By:    **Lerin Development Company, LLC,** a Texas
                        limited liability company, its General Partner

                        By: _J. Abel Godines - President_
                            J. Abel Godines, President

- 6 -

## EXHIBIT "A"

### LENDERS

| | NAME | Amount |
|---|---|---|
| 1 | Drs. Stanley Alexander and Florence Alexander husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 2 | Pensco Trust Company Inc. Custodian for Robert S. Angel IRA | $25,000 |
| 3 | Rod Arbogast & Donna Arbogast Trustees of the Arbogast Family Trust | $250,000 |
| 4 | Kenneth R. Becker & Joanne T. Becker husband & wife Grace Becker & Sarah Becker their minor children with right of survivorship | $50,000 |
| 5 | First Savings Bank Custodian for Paula S. Bender IRA | $98,000 |
| 6 | Paul Bloch Trustee of the Paul Bloch Living Trust UA 10/29/02 | $150,000 |
| 7 | First Savings Bank Custodian for Paul Bloch IRA | $150,000 |
| 8 | John Borkoski & Kathleen Borkoski husband & wife as joint tenants with rights of survivorship | $60,000 |
| 9 | Ashley Brooks a single woman | $75,000 |
| 10 | Donna J. Brooks a single woman | $25,000 |
| 11 | First Savings Bank Custodian For John W. Brouwers MD SEP IRA | $50,000 |
| 12 | John P. Brouwers Trustee of the Brouwers Family Trust dated 1/11/1995 | $50,000 |
| 13 | Bruce D. Bryen an unmarried man transfer on death to Erica Bryen an unmarried woman | $25,000 |
| 14 | PLB Enterprises LLC | $25,000 |
| 15 | Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $50,000 |
| 16 | Margaret M. Cangelosi an unmarried woman | $50,000 |
| 17 | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 18 | Ronald M. Cetovick and Barbara Cetovick husband and wife as joint tenants with the rights of survivorship | $60,000 |
| 19 | Pat M. Chiappetta & Joann Chiappetta Trustees of The Chiappetta Trust dated 4/1/03 | $30,000 |
| 20 | Terry Coffing a married man dealing with his sole and separate property | $50,000 |
| 21 | Penny Lee Comsia Trustee of the Penny Lee Comsia Revocable Trust UDT 4/10/00 | $50,000 |
| 22 | Sam Costanza Trustee of The Costanza 1987 Decedent's Trust | $50,000 |
| 23 | Deborah A. Daniel a single woman | $50,000 |
| 24 | Frank Davenport a single man | $100,000 |
| 25 | Panagiotis Dovanidis a single man & Dimitra Dovanidou a married woman dealing with her sole & separate property as joint tenants with right of survivorship | $50,000 |
| 26 | Mark L. Eames & Sandy K. Eames husband & wife as joint tenants with right of survivorship | $50,000 |
| 27 | Aurora Investments Limited Partnership | $1,000,000 |

Lerin Hills
12/14/05

| 28 | John R. Emery & Sandra Kipp Emery Trustees of the Emery Living Trust dated 6/04/91 | $50,000 |
|---|---|---|
| 29 | Samuel Evans & Beverly Evans Trustees of the Samuel & Beverly Evans Living Trust | $125,000 |
| 30 | Denise F. Fager Trustee of the Denise F. Fager Revocable Trust under agreement dated 2/28/03 | $50,000 |
| 31 | Patrick F. Fenlon and Angela B. Fenlon husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 32 | Maurice Fink Trustee of the Maurice Fink Trust | $300,000 |
| 33 | Dennis Flier Trustee of the Dennis Flier Inc. Defined Benefit Trust dated 6/29/87 | $50,000 |
| 34 | Dennis Flier & Carol Flier Trustees of the Flier Family Trust dated 1/21/98 | $50,000 |
| 35 | Bruce Francis and Tamara Francis Trustees of the Francis Family Trust Dtd 11/10/98 | $50,000 |
| 36 | John R. Frederickson and Michele L. Frederickson Trustees of the Frederickson Trust dated 10/02/03 | $35,000 |
| 37 | Glenn W. Gaboury and Sharon M. Gaboury husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 38 | Sylvia Goldenthal & Jack Goldenthal husband & wife as joint tenants with right of survivorship | $100,000 |
| 39 | Gonska Foundation LLC a Nevada limited liability company | $50,000 |
| 40 | Patrick Gonzales and Rosemary Gonzales husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 41 | William Harrison Goulding and Elizabeth R. Goulding husband & wife as joint tenants with right of survivorship | $100,000 |
| 42 | Stacy Grant Trustee of The Stacy Grant Revocable Trust | $100,000 |
| 43 | Gail A. Gray and Robert W. Gray Trustees of the Robert W. & Gail A. Gray Revocable Trust | $40,000 |
| 44 | Toby Gunning an unmarried man | $45,000 |
| 45 | Larry E. Hanan Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02 | $50,000 |
| 46 | MLH Family Investment Limited a Texas company | $150,000 |
| 47 | Lynn J. Hansen Trustee of the Reynold E. Palesh Trust dated 6/17/01 | $50,000 |
| 48 | Gayle Harkins a married woman dealing with her sole & separate property | $25,000 |
| 49 | Jennifer J. Harmon a single woman and Cheryl Hoff a married woman dealing with her sole and separate property as joint tenants with the rights of survivorship | $25,000 |
| 50 | James F. Heaton and Nadine B. Heaton Trustees of The Heaton Family Trust Dated December 4 1995 | $100,000 |
| 51 | Virgil P. Hennen & Judith J. Hennen husband and wife as joint tenants with the right of survivorship | $50,000 |
| 52 | Richard Holeyfield and Marsha Holeyfield Trustees of the Holeyfield Family Trust dated 01/12/01 | $25,000 |

Lerin Hills
12/14/05

| | | |
|---|---|---:|
| 53 | Delwin C. Holt an unmarried man | $50,000 |
| 54 | Edward W. Homfeld an unmarried man | $400,000 |
| 55 | Kathy John an unmarried woman & Tina Eden as unmarried woman as joint tenants with right of survivorship | $25,000 |
| 56 | John W. Keith & Kathleen B. Keith Trustees of the John & Kathleen Keith Living Trust dated 8/19/02 | $50,000 |
| 57 | Carol A. Kelly a single woman | $50,000 |
| 58 | Freedom Properties Inc. | $50,000 |
| 59 | Gail Klevay a married woman dealing with her sole & separate property | $30,000 |
| 60 | First Savings Bank Custodian for Stephen V. Kowalski IRA | $30,000 |
| 61 | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 62 | Chris F. Lapacik and Rosemary D. Lapacik husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 63 | Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000 |
| 64 | Hans J. Leer & Carolyn F. Leer as joint tenants with right of survivorship | $30,000 |
| 65 | Henry L. Letzerich and Norma W. Letzerich husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 66 | Daniel B. Lisek Claire Lisek & Gayle Harkins Trustees of the Lisek Family Trust dated 1/29/92 | $75,000 |
| 67 | Nicholas Loader Trustee of the Nicholas Loader Trust U/A | $50,000 |
| 68 | Ben Lofgren & Dana Lofgren Husband and wife as joint tenants with right of survivorship | $50,000 |
| 69 | Scott Machock & Heidi Machock Husband and wife as joint tenants with right of survivorship | $70,000 |
| 70 | Samuel A. Mammano and Karen M. Mammano husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 71 | Melissa Mamula a single woman | $25,000 |
| 72 | Lily Markham a married woman dealing with her sole & separate property & Irene Anne Markham-Tafoya a married woman dealing with her sole & separate property | $25,000 |
| 73 | Barbara McClaflin Trustee of the Revocable Living Trust Agreement of Barbara Fay McClaflin | $25,000 |
| 74 | Don D. Meyer an unmarried man & Dennis E. Hein an unmarried man as joint tenants with right of survivorship | $25,000 |
| 75 | Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $25,000 |
| 76 | W. L. Montgomery Jr. Guaranty Loan Account | $250,000 |
| 77 | KM Financials LLC. a Utah corporation | $50,000 |
| 78 | Marvin Myers & Valliera Myers Trustees of the Marvin & Valliera Myers Trust | $35,000 |
| 79 | D & K Partners Inc. a Nevada corporation | $200,000 |

Lerin Hills
12/14/05                                    Page 3 of 5

| | | |
|---|---|---|
| 80 | Howard Nehdar Custodian for Kyle Nehdar UGMA | $50,000 |
| 81 | Gloria J. Nelson a married woman dealing with her sole & separate property | $50,000 |
| 82 | John Nix & Lisa Nix husband & wife as joint tenants with right of survivorship | $100,000 |
| 83 | James W. Pengilly and Amanda M. Pengilly husband and wife as joint tenants with right of survivorship | $50,000 |
| 84 | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 85 | Petuck Capital Corporation a Nevada Corporation | $50,000 |
| 86 | Holly J. Pickerel a single woman | $75,000 |
| 87 | Patricia A. Pontak and Darrell M. Wong Trustees of the Pontak Wong Revocable Trust dated Jan 19 2004 | $100,000 |
| 88 | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 89 | Hans J. Prakelt an unmarried man | $50,000 |
| 90 | James P. Randisi and Mary M. Randisi husband and wife as joint tenants with the rights of survivorship | $25,000 |
| 91 | First Savings Bank Custodian For Noel E. Rees IRA | $30,000 |
| 92 | Michael H. Ricci a married man dealing with his sole & separate property | $50,000 |
| 93 | Rulon D. Robison Trustee of the Rulon D. Robison Profit Sharing Plan | $50,000 |
| 94 | Robert R. Rodriguez an unmarried man | $50,000 |
| 95 | Rodney L. Roloff & Sharyn A. Roloff Trustees of the R & S Roloff Trust dated 9/20/03 | $50,000 |
| 96 | Robert F. Samuels & Linda M. Samuels husband & wife as joint tenants with right of survivorship | $25,000 |
| 97 | William J. Sandberg & Shang'Ling J. Tsai husband and wife as joint tenants with the right of survivorship | $50,000 |
| 98 | Robert B. Sandler & Patricia D. Sandler Trustees of the Sandler Living Trust dated August 29 2005 | $25,000 |
| 99 | William E. Schnadt & Janet E. Schnadt Trustees of the Schnadt Trust dated 6/18/93 | $25,000 |
| 100 | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 101 | Edward L. Schoonover & Susan A. Schoonover Co-Trustees of The Schoonover Family Trust dated 2/23/04 | $25,000 |
| 102 | Ira Jay Shapiro an unmarried man & Blanche Shapiro an unmarried woman as joint tenants with the right of survivorship | $25,000 |
| 103 | Billy Shope Jr. Family LP a Nevada limited partnership | $100,000 |
| 104 | Carol J. Simcock a single woman | $50,000 |
| 105 | First Savings Bank Custodian For Carol J. Simcock IRA | $70,000 |
| 106 | Michael S. Simcock & Dina M. Simcock husband & wife as joint tenants with right of survivorship | $50,000 |
| 107 | Alan R. Simmons & Judith B. Simmons husband & wife as joint tenants with right of survivorship | $25,000 |

Lerin Hills
12/14/05

| | | |
|---|---|---|
| 108 | Joyce E. Smith Trustee of the Joyce E. Smith Trust dated 11/3/99 | |
| 109 | Bruce A. Smith & Annina M. Smith husband & wife as joint tenants with right of survivorship | $50,000 $100,000 |
| 110 | Rocklin/Redding LLC | |
| 111 | Kerry S. Taylor & Joyce L. Taylor Trustees of the Taylor Living Trust dated 2/27/98 | $270,000 $50,000 |
| 112 | Alneil Associates Neil Tobias General Partner | |
| 113 | Neil Tobias a married man | $200,000 |
| 114 | Anton Trapman an unmarried man | $50,000 |
| 115 | John M. Tripp Trustee of the Tripp Family Trust 1997 | $25,000 |
| 116 | Robert W. Ulm Trustee of the Robert W. Ulm Living Trust dated 4/11/05 | $35,000 |
| 117 | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $25,000 $50,000 |
| 118 | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dated 5/20/99 | |
| 119 | Roy R. Ventura Jr. & Nancy B. Ventura husband & wife as joint tenants with right of survivorship | $200,000 $35,000 |
| 120 | Marietta Voglis a married woman dealing with her sole & separate property | |
| 121 | Frank Weinman Trustee of the Weinman Family Trust dated 9/6/96 | $25,000 |
| 122 | Rachel Wheeler Trustee of the Rachel Wheeler Trust | $150,000 |
| 123 | Work Holdings Inc. an Arizona corporation | $25,000 |
| 124 | Dwight J. Yoder & Nancy E. Yoder Trustees of the Yoder Family Trust dated 10/25/00 | $100,000 $50,000 |
| 125 | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | |
| 126 | Spectrum Capital LLC a California limited liability company | $147,000 |
| 127 | Shahriar Zavosh an unmarried man | $50,000 |
| 128 | USA Commercial Mortgage Company | $50,000 $2,900,000 |
| | TOTAL | $12,900,000 |

# LOAN AGREEMENT



This Loan Agreement, dated as of December 7, 2005, is entered into by and among **Lerin Hills, LTD., a** Texas limited partnership ("Borrower"), and those persons listed on **Exhibit "A"** attached hereto ("Lender").

## SECTION 1: <u>DEFINITIONS AND ACCOUNTING TERMS.</u>

1.1    <u>Defined Terms</u>.  As used in this Agreement, the following terms shall have the meanings set forth respectively after each:

**"Agreement"** means this Loan Agreement.

**"Assignment of Permits, Licenses, Franchises and Authorizations"** means the Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower.

**"Assignment of Rents"** means the Assignment of Rents contained in the Deed of Trust.

**"Business Day"** means any Monday, Tuesday, Wednesday, Thursday, or Friday on which banks in the State of Nevada are open for business.

**"Control Account"** means Disbursement Agent's account in which the Control Account Funds shall be held.

**"Control Account Escrow Agreement"** means the Control Account Escrow Agreement and Security Agreement by and between Borrower, Lender and Disbursement Agent of even date herewith.

**"Control Account Funds"** means the portion of the Loan funds held in the Control Account at any time, together with interest accrued thereon, any additions thereto made pursuant to this Agreement, and any and all investments and reinvestments of any such sums now or hereafter made.

**"Debt"** means any indebtedness of the Borrower other than indebtedness owed to trade creditors incurred in the ordinary course of business and payable in 180 days or less.

**"Deed of Trust"** means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith, executed by Borrower in favor of Lender with respect to the Property or portions thereof, either as originally executed or as it may from time to time be supplemented, modified or amended.

**"Default Rate"** shall have the meaning set forth in the Note.

1

connection with the Loan Documents shall not be "outside the scope of the activities of a lender of money" under Nevada law, as amended or recodified from time to time, and Lender does not intend to ever assume any responsibility to any Person for the quality, suitability, safety or condition of the Property or Improvements; and (iii) Lender shall not be deemed responsible for or a participant in any acts, omissions or decisions of Borrower; and

(f)     Lender shall not be directly or indirectly liable or responsible for any loss, claim, cause of action, liability, indebtedness, damage or injury of any kind or character to any Person or property arising from any construction on, or occupancy or use of, any of the Property, whether caused by, or arising from: (i) any defect in any building, structure, soil condition, grading, fill, landscaping, or other improvements thereon or in any on-site or off-site improvement or other facility therein or thereon; (ii) any act or omission of Borrower or any of Borrower's agents, employees, independent contractors, licensees or invitees; (iii) any accident in or on any of the Property or any fire, flood or other casualty or hazard thereon; (iv) the failure of Borrower, any of Borrower's licensees, employees, invitees, agents, independent contractors or other representatives to maintain any of the Property in a safe condition; and (v) any nuisance made or suffered on any part of the Property.

8.5     No Third Parties Benefitted. This agreement is made for the purpose of defining and setting forth certain obligations, rights and duties of Borrower, Lender and USA in connection with the Loan. It shall be deemed a supplement to the Note and the Security Documents, and shall not be construed as a modification of the Note or the Security Documents, except as provided herein. It is made for the sole protection of Borrower, Lender, and USA and their successors and assigns. No other Person shall have any rights of any nature hereunder of by reason hereof.

8.6     Indemnity. Borrower indemnifies Lender against, and holds Lender harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, cause of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses, including attorneys' fees, which Lender may suffer or incur as a direct or indirect consequence of: (a) Lender's performance of this Agreement or any of the Loan Documents, including, without limitation, Lender's exercise or failure to exercise any rights, remedies or powers in connection with this Agreement or any of the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon the Lender in the normal course of the Lender's business such as taxes and regulatory fees; (b) Borrower's failure to perform any of Borrower's obligations as and when required by this Agreement or any of the other Loan Documents, including without limitation any failure, at any time, of any representation or warranty of Borrower to be true and correct and any failure by Borrower to satisfy any condition; (c) any claim or cause of action of any kind by any Person to the effect that Lender is in any way responsible or liable for any act or omission by Borrower, whether on account of any theory or derivative liability or otherwise, including but not limited to any claim or cause of action for fraud, misrepresentation, tort or willful misconduct; (d) any act or omission by Borrower, any contractor, subcontractor or material supplier, engineer, architect, or any other Person with respect to any of the Property or Improvements; or (e) any claim or cause of action of any kind by any Person which would have the effect of denying Lender the full benefit or protection of any provision of this Agreement or the Loan Documents but excluding charges and assessments by Governmental

Agencies imposed upon Lender in the normal course of Lender's business such as taxes and regulatory fees. Lender's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Lender's conduct is active, passive or subject to any other classification or that Lender is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Borrower or any other Person. Notwithstanding the foregoing, Borrower shall not be obligated to indemnify Lender with respect to any intentional tort or act of negligence which Lender is personally determined by the judgment of a court of competent jurisdiction (sustained on appeal, if any) to have committed. Borrower shall pay any indebtedness arising under this indemnity to Lender immediately within seventy-two (72) hours after demand therefor by Lender together with interest thereon from the date such indebtedness arises until paid at the Default Rate. Borrower's duty to defend and indemnify Lender shall survive the release and cancellation of the Note and the release and reconveyance or partial release and reconveyance of the Deed of Trust.

8.7    <u>Commissions</u>. Borrower hereby indemnifies Lender from the claim of any Person for a commission or fee in connection with the Loan.

8.8    <u>Lenders' Representative</u>. The persons and entities which comprise Lender hereby collectively appoint USA Commercial Mortgage Company ("USA") to administer the Loan on their behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder.

8.9    <u>Binding Effect; Assignment</u>. This Agreement shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns, except that, as provided herein, Borrower may not assign its rights or interest or delegate any of its duties under this Agreement or any of the other Loan Documents without prior written consent of Lender.

8.10    <u>Amendments; Consents</u>. No amendment, modification, supplement, termination or waiver of any provision of this Agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, may in any event be effective unless in writing signed by Lender, and then only in the specific instance and for the specific purpose given.

8.11    <u>Costs, Expenses and Taxes</u>. Borrower shall pay to Lender, within seventy-two (72) hours after demand therefor:

(a)    the actual attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Documents and any matter related thereto;

(b)    the actual costs and expenses of Lender in connection with any modification of any Loan Document or in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the actual fees and out-of-pocket expenses, reasonably incurred, of any legal counsel, independent public accountants and other outside experts retained by Lender; and

25

(c)     all costs, expenses, fees, premiums and other charges relating or arising with respect to the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including without limitation the Disbursement Agent's fee, appraisal fees, inspection fees, cost review fees, recording fees, filing fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums paid or expended by Lender under the terms of this Agreement and the other Loan Documents shall be considered to be a part of the Loan.  Except as otherwise specifically stated herein, all such sums shall be secured by the Security Documents, shall bear interest from the date of expenditure as if such sums were advances under the Note, and shall be immediately due and payable by Borrower within seventy-two (72) hours after demand therefor.

8.12    Survival of Representations and Warranties.  All representations and warranties of Borrower and Guarantor contained herein or in any other Loan Document shall survive the making of the Loan and execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender.  For the purpose of the foregoing, all statements contained in any certificate, agreement, financial statement, or other writing delivered by or on behalf of Borrower or Guarantor pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower or Guarantor contained herein or in the other Loan Documents, as the case may be.

8.13    Notices.  All notices to be given pursuant to this Agreement shall be sufficient if given by personal services, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing.  Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the day after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**            Lerin Hills, LTD
                                   c/o Abel Godines
                                   4820 Bacon Road
                                   San Antonio, Texas 78249

**WITH A DUPLICATE TO:**           J. Abel Godines
                                   4820 Bacon Road
                                   San Antonio, Texas 78249

**LENDER'S ADDRESS:**              USA Commercial Mortgage Company
                                   4484 South Pecos Road
                                   Las Vegas, Nevada 89121
                                   Attn: Joe Milanowski

26

**WITH A DUPLICATE TO:**   Goold Patterson Ales & Day
4496 South Pecos Road
Las Vegas, Nevada 89121
Attn: Bryan K. Day, Esq.

8.14   Further Assurances.  Borrower shall, at its sole expense and without expense to Lender, do such further acts and execute and deliver such further documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest or lien under any Security Document.

8.15   Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)   The laws of the State of Nevada, without regard to its choice of law provisions, shall govern enforcement of the Loan Documents.

(b)   **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 8.13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).**

(c)   **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF**

LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

8.16    Severability of Provisions. Any provision in any Loan Document that is held to be inoperative, unenforceable or invalid shall be inoperative, unenforceable or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

8.17    Assignment or Sale of Participation by Lender; Advertising. Lender may, at any time, sell, transfer, assign or grant participation in the Loan and in the Loan Documents and Lender may forward to its Partners or to such participant and prospective participant all documents and information relating to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable. Lender and USA may also reasonably divulge and advertise the making of the Loan and the amount thereof.

8.18    Headings. Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

8.19    Time of the Essence. Time is of the essence with respect to all duties and obligations of Borrower under any Loan Document.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

**BORROWER:**        **Lerin Hills, LTD,**
a Texas limited partnership

By:    **Lerin Development Company, LLC**, a Texas
limited liability company, its General Partner

By: _____
J. Abel Godines, President

**LENDERS:**

_____          _____

## EXHIBIT "A"

### LENDERS

| | NAME | Amount |
|---|---|---|
| 1 | Drs. Stanley Alexander and Florence Alexander husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 2 | Pensco Trust Company Inc. Custodian for Robert S. Angel IRA | $25,000 |
| 3 | Rod Arbogast & Donna Arbogast Trustees of the Arbogast Family Trust | $250,000 |
| 4 | Kenneth R. Becker & Joanne T. Becker husband & wife Grace Becker & Sarah Becker their minor children with right of survivorship | $50,000 |
| 5 | First Savings Bank Custodian for Paula S. Bender IRA | $98,000 |
| 6 | Paul Bloch Trustee of the Paul Bloch Living Trust UA 10/29/02 | $150,000 |
| 7 | First Savings Bank Custodian for Paul Bloch IRA | $150,000 |
| 8 | John Borkoski & Kathleen Borkoski husband & wife as joint tenants with rights of survivorship | $60,000 |
| 9 | Ashley Brooks a single woman | $75,000 |
| 10 | Donna J. Brooks a single woman | $25,000 |
| 11 | First Savings Bank Custodian For John W. Brouwers MD SEP IRA | $50,000 |
| 12 | John P. Brouwers Trustee of the Brouwers Family Trust dated 1/11/1995 | $50,000 |
| 13 | Bruce D. Bryen an unmarried man transfer on death to Erica Bryen an unmarried woman | $25,000 |
| 14 | PLB Enterprises LLC | $25,000 |
| 15 | Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $50,000 |
| 16 | Margaret M. Cangelosi an unmarried woman | $50,000 |
| 17 | Ronald R. Carter & Leslie A. Carter Trustees of the Ronald R. Carter & Leslie A. Carter Revocable Trust dated 10/24/91 | $50,000 |
| 18 | Ronald M. Cetovick and Barbara Cetovick husband and wife as joint tenants with the rights of survivorship | $60,000 |
| 19 | Pat M. Chiappetta & Joann Chiappetta Trustees of The Chiappetta Trust dated 4/1/03 | $30,000 |
| 20 | Terry Coffing a married man dealing with his sole and separate property | $50,000 |
| 21 | Penny Lee Comsia Trustee of the Penny Lee Comsia Revocable Trust UDT 4/10/00 | $50,000 |
| 22 | Sam Costanza Trustee of The Costanza 1987 Decedent's Trust | $50,000 |
| 23 | Deborah A. Daniel A single woman | $50,000 |
| 24 | Frank Davenport a single man | $100,000 |
| 25 | Panagiotis Dovanidis a single man & Dimitra Dovanidou a married woman dealing with her sole & separate property as joint tenants with right of survivorship | $50,000 |
| 26 | Mark L. Eames & Sandy K. Eames husband & wife as joint tenants with right of survivorship | $50,000 |
| 27 | Aurora Investments Limited Partnership | $1,000,000 |

Lerin Hills
12/14/05

| | | |
|---|---|---|
| 28 | John R. Emery & Sandra Kipp Emery Trustees of the Emery Living Trust dated 6/04/91 | $50,000 |
| 29 | Samuel Evans & Beverly Evans Trustees of the Samuel & Beverly Evans Living Trust | $125,000 |
| 30 | Denise F. Fager Trustee of the Denise F. Fager Revocable Trust under agreement dated 2/28/03 | $50,000 |
| 31 | Patrick F. Fenlon and Angela B. Fenlon husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 32 | Maurice Fink Trustee of the Maurice Fink Trust | $300,000 |
| 33 | Dennis Flier Trustee of the Dennis Flier Inc. Defined Benefit Trust dated 6/29/87 | $50,000 |
| 34 | Dennis Flier & Carol Flier Trustees of the Flier Family Trust dated 1/21/98 | $50,000 |
| 35 | Bruce Francis and Tamara Francis Trustees of the Francis Family Trust Dtd 11/10/98 | $50,000 |
| 36 | John R. Frederickson and Michele L. Frederickson Trustees of the Frederickson Trust dated 10/02/03 | $35,000 |
| 37 | Glenn W. Gaboury and Sharon M. Gaboury husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 38 | Sylvia Goldenthal & Jack Goldenthal husband & wife as joint tenants with right of survivorship | $100,000 |
| 39 | Gonska Foundation LLC a Nevada limited liability company | $50,000 |
| 40 | Patrick Gonzales and Rosemary Gonzales husband and wife as joint tenants with the rights of survivorship | $100,000 |
| 41 | William Harrison Goulding and Elizabeth R. Goulding husband & wife as joint tenants with right of survivorship | $100,000 |
| 42 | Stacy Grant Trustee of The Stacy Grant Revocable Trust | $100,000 |
| 43 | Gail A. Gray and Robert W. Gray Trustees of the Robert W. & Gail A. Gray Revocable Trust | $40,000 |
| 44 | Toby Gunning an unmarried man | $45,000 |
| 45 | Larry E. Hanan Trustee of the Larry E. Hanan Revocable Trust dated 5/20/02 | $50,000 |
| 46 | MLH Family Investment Limited a Texas company | $150,000 |
| 47 | Lynn J. Hansen Trustee of the Reynold E. Palesh Trust dated 6/17/01 | $50,000 |
| 48 | Gayle Harkins a married woman dealing with her sole & separate property | $25,000 |
| 49 | Jennifer J. Harmon a single woman and Cheryl Hoff a married woman dealing with her sole and separate property as joint tenants with the rights of survivorship | $25,000 |
| 50 | James F. Heaton and Nadine B. Heaton Trustees of The Heaton Family Trust Dated December 4 1995 | $100,000 |
| 51 | Virgil P. Hennen & Judith J. Hennen husband and wife as joint tenants with the right of survivorship | $50,000 |
| 52 | Richard Holeyfield and Marsha Holeyfield Trustees of the Holeyfield Family Trust dated 01/12/01 | $25,000 |

Lerin Hills
12/14/05

| | | |
|---|---|---|
| 53 | Delwin C. Holt an unmarried man | $50,000 |
| 54 | Edward W. Homfeld an unmarried man | $400,000 |
| 55 | Kathy John an unmarried woman & Tina Eden as unmarried woman as joint tenants with right of survivorship | $25,000 |
| 56 | John W. Keith & Kathleen B. Keith Trustees of the John & Kathleen Keith Living Trust dated 8/19/02 | $50,000 |
| 57 | Carol A. Kelly a single woman | $50,000 |
| 58 | Freedom Properties Inc. | $50,000 |
| 59 | Gail Klevay a married woman dealing with her sole & separate property | $30,000 |
| 60 | First Savings Bank Custodian for Stephen V. Kowalski IRA | $30,000 |
| 61 | David Kravitz & Mable R. Kravitz Trustees of the Kravitz Family Revocable Trust under agreement dated 12/9/99 | $50,000 |
| 62 | Chris F. Lapacik and Rosemary D. Lapacik husband and wife as joint tenants with the rights of survivorship | $200,000 |
| 63 | Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000 |
| 64 | Hans J. Leer & Carolyn F. Leer as joint tenants with right of survivorship | $30,000 |
| 65 | Henry L. Letzerich and Norma W. Letzerich husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 66 | Daniel B. Lisek Claire Lisek & Gayle Harkins Trustees of the Lisek Family Trust dated 1/29/92 | $75,000 |
| 67 | Nicholas Loader Trustee of the Nicholas Loader Trust U/A | $50,000 |
| 68 | Ben Lofgren & Dana Lofgren Husband and wife as joint tenants with right of survivorship | $50,000 |
| 69 | Scott Machock & Heidi Machock Husband and wife as joint tenants with right of survivorship | $70,000 |
| 70 | Samuel A. Mammano and Karen M. Mammano husband and wife as joint tenants with the rights of survivorship | $50,000 |
| 71 | Melissa Mamula a single woman | $25,000 |
| 72 | Lily Markham a married woman dealing with her sole & separate property & Irene Anne Markham-Tafoya a married woman dealing with her sole & separate property | $25,000 |
| 73 | Barbara McClaflin Trustee of the Revocable Living Trust Agreement of Barbara Fay McClaflin | $25,000 |
| 74 | Don D. Meyer an unmarried man & Dennis E. Hein an unmarried man as joint tenants with right of survivorship | $25,000 |
| 75 | Douglas Minter & Elizabeth F. Minter Trustees of the Minter Family 1994 Trust | $25,000 |
| 76 | W. L. Montgomery Jr. Guaranty Loan Account | $250,000 |
| 77 | KM Financials LLC. a Utah corporation | $50,000 |
| 78 | Marvin Myers & Valliera Myers Trustees of the Marvin & Valliera Myers Trust | $35,000 |
| 79 | D & K Partners Inc. a Nevada corporation | $200,000 |

| | | |
|---|---|---|
| 80 | Howard Nehdar Custodian for Kyle Nehdar UGMA | $50,000 |
| 81 | Gloria J. Nelson a married woman dealing with her sole & separate property | $50,000 |
| 82 | John Nix & Lisa Nix husband & wife as joint tenants with right of survivorship | $100,000 |
| 83 | James W. Pengilly and Amanda M. Pengilly husband and wife as joint tenants with right of survivorship | $50,000 |
| 84 | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 85 | Petuck Capital Corporation a Nevada Corporation | $50,000 |
| 86 | Holly J. Pickerel a single woman | $75,000 |
| 87 | Patricia A. Pontak and Darrell M. Wong Trustees of the Pontak Wong Revocable Trust dated Jan 19 2004 | $100,000 |
| 88 | Sheldon Portman & Marion G. Portman Trustees of the Sheldon & Marion G. Portman Trust dated 11/01/85 | $100,000 |
| 89 | Hans J. Prakelt an unmarried man | $50,000 |
| 90 | James P. Randisi and Mary M. Randisi husband and wife as joint tenants with the rights of survivorship | $25,000 |
| 91 | First Savings Bank Custodian For Noel E. Rees IRA | $30,000 |
| 92 | Michael H. Ricci a married man dealing with his sole & separate property | $50,000 |
| 93 | Rulon D. Robison Trustee of the Rulon D. Robison Profit Sharing Plan | $50,000 |
| 94 | Robert R. Rodriguez an unmarried man | $50,000 |
| 95 | Rodney L. Roloff & Sharyn A. Roloff Trustees of the R & S Roloff Trust dated 9/20/03 | $50,000 |
| 96 | Robert F. Samuels & Linda M. Samuels husband & wife as joint tenants with right of survivorship | $25,000 |
| 97 | William J. Sandberg & Shang'Ling J. Tsai husband and wife as joint tenants with the right of survivorship | $50,000 |
| 98 | Robert B. Sandler & Patricia D. Sandler Trustees of the Sandler Living Trust dated August 29 2005 | $25,000 |
| 99 | William E. Schnadt & Janet E. Schnadt Trustees of the Schnadt Trust dated 6/18/93 | $25,000 |
| 100 | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 101 | Edward L. Schoonover & Susan A. Schoonover Co-Trustees of The Schoonover Family Trust dated 2/23/04 | $25,000 |
| 102 | Ira Jay Shapiro an unmarried man & Blanche Shapiro an unmarried woman as joint tenants with the right of survivorship | $25,000 |
| 103 | Billy Shope Jr. Family LP a Nevada limited partnership | $100,000 |
| 104 | Carol J. Simcock a single woman | $50,000 |
| 105 | First Savings Bank Custodian For Carol J. Simcock IRA | $70,000 |
| 106 | Michael S. Simcock & Dina M. Simcock husband & wife as joint tenants with right of survivorship | $50,000 |
| 107 | Alan R. Simmons & Judith B. Simmons husband & wife as joint tenants with right of survivorship | $25,000 |

Lerin Hills
12/14/05

| | | |
|---|---|---:|
| 108 | Joyce E. Smith Trustee of the Joyce E. Smith Trust dated 11/3/99 | $50,000 |
| 109 | Bruce A. Smith & Annina M. Smith husband & wife as joint tenants with right of survivorship | $100,000 |
| 110 | Rocklin/Redding LLC | $270,000 |
| 111 | Kerry S. Taylor & Joyce L. Taylor Trustees of the Taylor Living Trust dated 2/27/98 | $50,000 |
| 112 | Alneil Associates Neil Tobias General Partner | $200,000 |
| 113 | Neil Tobias a married man | $50,000 |
| 114 | Anton Trapman an unmarried man | $25,000 |
| 115 | John M. Tripp Trustee of the Tripp Family Trust 1997 | $35,000 |
| 116 | Robert W. Ulm Trustee of the Robert W. Ulm Living Trust dated 4/11/05 | $25,000 |
| 117 | Nevada Trust Company Custodian for Cal-Mark Beverage Company Defined Benefit Plan | $50,000 |
| 118 | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dated 5/20/99 | $200,000 |
| 119 | Roy R. Ventura Jr. & Nancy B. Ventura husband & wife as joint tenants with right of survivorship | $35,000 |
| 120 | Marietta Voglis a married woman dealing with her sole & separate property | $25,000 |
| 121 | Frank Weinman Trustee of the Weinman Family Trust dated 9/6/96 | $150,000 |
| 122 | Rachel Wheeler Trustee of the Rachel Wheeler Trust | $25,000 |
| 123 | Work Holdings Inc. an Arizona corporation | $100,000 |
| 124 | Dwight J. Yoder & Nancy E. Yoder Trustees of the Yoder Family Trust dated 10/25/00 | $50,000 |
| 125 | Ernie C. Young Trustee of The Ernie C. Young Living Trust dated 9/23/96 | $147,000 |
| 126 | Spectrum Capital LLC a California limited liability company | $50,000 |
| 127 | Shahriar Zavosh an unmarried man | $50,000 |
| 128 | USA Commercial Mortgage Company | $2,900,000 |
| | TOTAL | $12,900,000 |

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles, Jr. NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com
Marvin Ruth NV State Bar No. 10979
Email: mruth@lrlaw.com

Attorneys for USACM Liquidating Trust

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

USA COMMERCIAL MORTGAGE
COMPANY,

                Debtor.

Case No. BK-S-06-10725-LBR

Chapter 11

NOTICE OF HEARING RE
OMNIBUS OBJECTION OF USACM
TRUST TO PROOFS OF CLAIM
BASED UPON INVESTMENT IN
THE LERIN HILLS LOAN

Date of Hearing: September 30, 2011
Time of Hearing: 9:30 a.m.
Estimated Time for hearing: 10 min.

THE USACM LIQUIDATING TRUST IS OBJECTING TO THE CLAIM
THAT YOU FILED. THE USACM TRUST SEEKS TO DISALLOW 85% OF
YOUR CLAIM AND ALLOW 15% OF YOUR CLAIM TO THE EXTENT YOUR
CLAIM IS BASED UPON AN INVESTMENT IN THE LERIN HILLS LOAN. THE
USACM TRUST CONTENDS THAT YOU DO NOT HAVE A COMPLETELY
VALID CLAIM BASED UPON YOUR INVESTMENT IN THIS LOAN BECAUSE
YOU TOOK A KNOWN AND OBVIOUS RISK IN MAKING THAT
INVESTMENT AND USACM DID NOT GUARANTEE REPAYMENT OF THAT
LOAN. THIS OBJECTION WILL NOT IMPACT YOUR CLAIM TO THE
EXTENT IT IS BASED UPON AN INVESTMENT IN A DIFFERENT LOAN.

ORIGINAL OF ECF FILING

2434160.1

---

PLEASE DO NOT CONTACT THE CLERK OF THE BANKRUPTCY

COURT TO DISCUSS THE MERITS OF YOUR CLAIM. QUESTIONS

REGARDING THE AMOUNT OF A CLAIM OR THE FILING OF A CLAIM

SHOULD BE DIRECTED TO BRANT FYLLING AT SIERRA GROUP

CONSULTING, LLC (602-424-7009) OR TO UNDERSIGNED COUNSEL, JOHN

HINDERAKER (520-629-4430).

    NOTICE IS HEREBY GIVEN that the USACM Liquidating Trust, by and

through its counsel, has filed its Omnibus Objections to Proofs of Claim Based Upon

Investment in the Lerin Hills Loan (with Certificate of Service) (the "Objection"). Your

Proof of Claim number and other information regarding your claim is provided in **Exhibit**

A, attached to the Objection.  The USACM Liquidating Trust has requested that this Court

enter an order, pursuant to section 502 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), disallowing 85% and allowing 15% of your Proof of Claim to the

extent it is based upon an investment in the Lerin Hills Loan.  The Objection will not

impact your Claim to the extent it is based upon an investment in a different loan.

    NOTICE IS FURTHER GIVEN that the hearing on the Objection will be held

before the Honorable Linda B. Riegle, U.S. Bankruptcy Court Judge in the Foley Federal

Building, 300 Las Vegas Blvd. South, 3rd Floor, Courtroom No. 1, Las Vegas, Nevada on

**September 30, 2011, at the hour of 9:30 a.m.**

    NOTICE IS FURTHER GIVEN THAT THE HEARING SET ON

SEPTEMBER 30, 2011, WILL BE HELD FOR THE PURPOSE OF STATUS

CHECKS AND SCHEDULING EVIDENTIARY HEARINGS ONLY. NO

ARGUMENTS WILL BE HEARD ON THAT DATE.

    NOTICE IS FURTHER GIVEN that pursuant to Local Rule 9014(d), any

response to the objection must be filed and service must be completed no later than

**fourteen (14) days** preceding the hearing date. The opposition must set forth all relevant facts and any relevant legal authority.

If you object to the relief requested, you **must** file a **WRITTEN** response to this pleading with the Court. You **must** also serve your written response on the person who sent you this notice.

If you do not file a written response with the Court, or if you do not serve your written response on the person who sent you this notice, then:

- The Court may **refuse to allow you to speak** at the scheduled hearing; and
- The Court may **rule against you** and sustain the objection without formally calling the matter at the hearing.

Dated: August 7, 2011

LEWIS AND ROCA LLP

By s/ _John Hinderaker (AZ 18024)_
Robert M. Charles, Jr., NV 6593
John Hinderaker, AZ 18024 (_pro hac vice_)
Marvin Ruth, NV 10979
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
E-mail: Hinderaker@lrlaw.com
_Attorneys for the USACM Liquidating Trust_

Copy of the foregoing and pertinent portion of Exhibits deposited in first class postage prepaid U.S. Mail on August 7, 2011 to all parties listed on Exhibit A attached.

LEWIS AND ROCA LLP

s/ _Matt Burns_
Matt Burns

3

2434160.1

---

Page 1 of 30
**File a Notice:**

06-10725-lbr USACM COMMERCIAL MORTGAGE COMPANY
Type: bk                                    Office: 2 (Las Vegas)
Assets: y                                   Case Flag: EXHS, BAPCPA, LEAD,
Chapter: 11 v                               INTADMN, APPEAL
Judge: lbr

U.S. Bankruptcy Court

District of Nevada

Notice of Electronic Filing

The following transaction was received from JOHN HINDERAKER entered on 8/7/2011 at 4:37 PM PDT and filed on 8/7/2011
Case Name:      USA COMMERCIAL MORTGAGE COMPANY
Case Number:    06-10725-lbr
Document Number: 8875

**Docket Text:**
Notice of Hearing Re Omnibus Objection of USACM Trust To Proof Of Claim Based Upon Investment In The Lerin Hills Loan (Hearing Date: 09/30/11 | Hearing Time: 9:30 a.m. with Certificate of Service Filed by JOHN HINDERAKER on behalf of USACM LIQUIDATING TRUST (Related document(s)[8868] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8869] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8870] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8871] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8872] Objection filed by Interested Party USACM LIQUIDATING TRUST) (HINDERAKER, JOHN)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\fakepath\2434160_1.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=989277954 [Date=8/7/2011] [FileNumber=20190129-0]
[47feca8e513eeebe823f621f6e23626f6f7b96d5a8b06551370dc3831e97961fe9
1a7409a6f510889c6237cac3f6671608e7cdbacec51f9ee44854de12653ba]]

06-10725-lbr Notice will be electronically mailed to:

MICHELLE L. ABRAMS on behalf of Cross Defendant ROCKLIN/REDDING LLC
mabrams@lbrmsanko.com

FRANKLIN C. ADAMS on behalf of Creditor JAMES CORISON
franklin.adams@bbklaw.com, arthur.johnston@bbklaw.com

NANCY L. ALLF on behalf of Defendant THE WILD WATER LP
Nancy.Allf@gmail.com, karen.lawrence007@gmail.com;angela.nakamura007@gmail.com

FRANK A. ANDERSON on behalf of Creditor PENSION BENEFIT GUARANTY CORPORATION
anderson.frank@pbgc.gov, efile@pbgc.gov

OGONNA M. ATAMOH on behalf of Defendant ASHBY USA, LLC
oatamoh@nevadafirm.com,
bkecf@nevadafirm.com;sliberson@nevadafirm.com;rholley@nevadafirm.com;vrelson@nevadafirm.com;dlwkitsec@nevadafirm.com

JON MAXWELL BEATTY on behalf of Interested Party USACM LIQUIDATING TRUST
mbeatty@dannonlonecarthy.com

BMC GROUP, INC.
ecf@bmcgroup.com, mjohn@bmcgroup.com

https://ecf.nvb.uscourts.gov/cgi-bin/Dispatch.pl?418653229584485                8/7/2011