30 August, 2011

Judge Linda B. Riegle
U.S. Bankruptcy Court
Foley Federal Building
300 Las Vegas Blvd. South, 3rd Floor
Courtroom # 1
Las Vegas, Nevada 89101 - 5833

**RECEIVED AND FILED**

Re:    USA Commercial Mortgage Company, Debtor
        Case No. BK-S-06-10725-LBR
        Hearing Date: 30 September, 2011
        HFA-Clear Lake

**SEP 06 2011**

**U.S. BANKRUPTCY COURT
MARY A. SCHOTT, CLERK**

Honorable Judge Riegle:

This is written as a notice of objection. Inasmuch as I on behalf of the U.S. Government represent you, the debtor and the filing attorney with regard to certain honest government dealings in Indonesia, we will be unable to attend the scheduled hearing. It is noted that the time is brief, so that it appears there will not be much discussion.

Nevertheless, I would expect that the filing attorney would be required to submit sound "information" to justify what appears to be a frivolous effort to provide an escape for the obligated debtors. The statement that we "took an obvious risk" could apply to almost any business venture around the world. It is difficult to understand why the document states that there was no guarantee of repayment.

As we have reviewed our documents it seems very clear that there was a written <u>guarantee</u> for repayment signed by the debtor (copy enclosed). If there was not an intent /obligation to stand behind the loan commitment, why was a guarantee provided?

Further if USACM had performed responsibly as expected by law, foreclosure would have been initiated long before the current crash of the investment market. In recovery, the property itself would have provided most of the required recovery of funds.

In considering the investment, the loan to value for this investment was presented as 56% which is a reasonable rate for recovery. We have conducted this kind of investment since 1977 successfully and at one time actively operated our own investment company for such loans on a smaller basis (Investment Industries, Inc – Montana). We are and were aware of the risks and methods needed to successfully proceed with such a lending process, and until this period have never had a problem with the process. We have enclosed a copy of the loan guarantee very clearly signed by the Debtor's representative, along with certain portions of the Promissory Note (see item 10 – Waivers). Considering the lengthy period of these and related proceedings we are sure you have copies of the complete documents. If not they can be provided.

REC'D BY CAI 9/23/11

Further please note the "indemnity "clause (8.6) included in the loan agreement which the "Borrower indemnifies Lender......"

In addition please note the copy of the USA Capitol statement of guarantee. To us in that statement of Guarantee it is implied that the borrower (Debtor) has sufficient corporate funds and will stand behind any potential default.

It is our opinion that those funds ought to be directly resourced to satisfy all of ours and other lender's outstanding debt.

Therefore, there is no basis to arbitrarily propose or affect any sort of reduction in the value of our claim. The borrower knew what he was doing just as well as we knew what we were doing. It remains our opinion, though it is not the intent of this motion, that all parties (borrower and brokers) should be tried for fraud. You are respectfully requested to deny the request to reduce the amount of our documented value for our investment along with the outstanding interest.

Sincerely,

Roy R.Ventura, Jr., P.E.
USAID – Indonesia

c       John Hinderaker, Lewis and Roca, llp lawyers



March 23, 2006


Roy R. Ventura
Nancy B. Ventura
American Embassy Amman
USAID
APO AE 09892-9999

Dear Roy and Nancy,

USA Capital would like to take this opportunity to thank you for investing in our First Trust Deed program. Your investment of $30000 in the **HFA-Clear Lake** loan was funded on 03-22-06. You will start earning interest from 03-22-06.

USA Capital continues to underwrite all loans with the same care and diligence we have used since 1989. The interest for this first trust deed investment will be paid on or before the 10th of each month. USA Capital will fully service your investment, including monthly interest, statements, and tax reporting. If you have any questions or comments, please feel free to call (702) 734-2400. Thank you again.

Sincerely,


USA Capital

# USA Capital

## 2nd Trust Deed Investment

**Borrower:**     **Southern California Land Development, LLC**
The borrower is a joint venture between USA Investment Partners, and Monaco Diversified Corporation.

**Loan Amount:**     $4,250,000

**Rate:**     16.0% (net)

**Term:**     12 months

**Loan to Value:**     The combined loan to value of both the first and the second on the property is approximately 67% estimated from comparables sales of lots in the area. An appraisal update is in process.

**Collateral:**     Second Deed of Trust on 7 different parcels totaling approximately 60.5 acres of land in Hesperia, California near Main Street and Interstate 15.

**The Project:**     The loan will provide the borrower with a return of equity invested as well as satisfy development and construction lender requirements and provide for the balance of the hardscape and provide model home furnishings. The project has projected 350 units with lots size of approximately 6,100 square feet.

**Guarantees:**     The loan will be guaranteed by the principals of the borrower - Tom Hantges and Joe Milanowski. The principals in the transaction have a combined net worth in excess of $97 million as of 6-30-04.

---

### Jane't Szabo

**702-734-2400**                 **888-921-8009**

Licensed by the State of Nevada Division of Mortgage Lending
USA Commercial Mortgage Company 4484 S. Pecos Rd, Las Vegas NV 89121
License #MB 333 3/8/2005

Money invested through a mortgage broker is not guaranteed to earn any interest or return and is not insured. Before investing investors must be provided applicable disclosure.

# PROMISSORY NOTE
## SECURED BY DEED OF TRUST



$3,400,000

Las Vegas, Nevada
April 1, 2005

This Promissory Note ("Note"), dated as of April 1, 2005 is made and delivered by Southern California Land Development, LLC, a California limited liability company ("Borrower"), in favor of the persons listed on **Exhibit "A"** hereto ("Lender").

FOR VALUE RECEIVED, Borrower promises to pay to Lender, or order, the principal sum of Three Million Four Hundred Thousand Dollars ($3,400,000) (the "Note Amount"), together with interest as provided herein.

1.     Interest Rate.  Interest shall accrue on the outstanding portion of the Note Amount, from the date Lender initially disburses such funds until the date the Note Amount is paid in full, at the rate of seventeen percent (17%) per annum.  Interest shall be calculated on the basis of a 360-day year and actual days elapsed.  Accrued but unpaid interest shall be compounded monthly.

2.     Payments.  Monthly interest on the Note Amount shall be due and payable on the first day of each month, in arrears.  For example, interest that accrues in the month of May will be due and payable on June 1, and will be calculated on the amount due under the Note on that day.  All payments shall be made in lawful money of the United States of America and in immediately available funds at Lender's office, the address for which is specified below, or at such other place as the Lender hereof may from time to time direct by written notice to Borrower.

3.     Maturity Date.  If not sooner paid, the outstanding principal balance under this Note, all accrued and unpaid interest, and all other indebtedness of Borrower owing under any and all of the Loan Documents shall be due and payable in full on or before the date which is twelve months after the Deed of Trust is recorded (the "Maturity Date").

4.     Application of Payments.  All payments on this Note shall be applied first to any prepayment fees, if any are due, second to accrued late charges, if any, third to default interest, if any, fourth to the payment of accrued ordinary interest then payable, and last to principal.

5.     Prepayment.  Borrower agrees that all loan fees and any prepaid finance charges are fully earned as of the date hereof and will not be subject to refund upon early payment (whether voluntary or as a result of default). Subject to the foregoing, at any time prior to the Maturity Date, Borrower may prepay this Note in full or in part at any time.

6.     Collateral.  This Note is secured by a deed of trust encumbering real property located in San Bernardino County, California.

1

7.    <u>Defaults; Acceleration</u>.  The occurrence of any Event of Default (as hereinafter defined) shall be a default hereunder.  Upon the occurrence of an Event of Default, Lender may declare the entire principal balance of the Note then outstanding (if not then due and payable) and all other obligations of Borrower hereunder to be due and payable immediately.  Subject to the applicable provisions of law, upon any such declaration, the principal of the Note and accrued and unpaid interest, and all other amounts to be paid under this Note shall become and be immediately due and payable, anything in this Note to the contrary notwithstanding.

The occurrence of any one or more of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

(a)    Borrower shall fail to pay when due any amount due pursuant to the Note; or

(b)    Borrower or any guarantor ("Guarantor") of the Note shall fail to perform or observe any term, covenant or agreement contained in the Note or any guaranty executed and delivered concurrently herewith on its part to be performed or observed, other than the failure to make a payment covered by subsection (a), and such failure shall continue uncured as of ten (10) calendar days after written notice of such failure is given by Lender to Borrower; provided, however, that if the default cannot be cured in 10 days but Borrower is diligently pursuing the cure, then Borrower shall have thirty (30) days after written notice to effect the cure (the cure period set forth in this subsection (b) shall not apply to any other Event of Default); or

(c)    any representation or warranty contained in any document made or delivered pursuant to or in connection with any of the Loan Documents proves incorrect or to have been incorrect in any material respect when made; or

(d)    Borrower (which term shall include any entity comprising Borrower) is dissolved or liquidated, or otherwise ceases to exist, or all or substantially all of the assets of Borrower or any Guarantor are sold or otherwise transferred without Lender's written consent; or

(e)    Borrower or any Guarantor is the subject of an order for relief by the bankruptcy court, or is unable or admits in writing its inability to pay its debts as they mature, or makes an assignment for the benefit of creditors; or Borrower or any Guarantor applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer (the "Receiver"); or any Receiver is appointed without the application or consent of Borrower or any Guarantor, as the case may be, and the appointment continues undischarged or unstayed for sixty (60) calendar days; or Borrower or any Guarantor institutes or consents to any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation or similar proceedings relating to it or to all or any part of its property under the laws of any jurisdiction; or any similar proceeding is instituted without the consent of Borrower or any Guarantor, as the case may be, and continues undismissed or unstayed for sixty (60) calendar days; or any judgment, writ, attachment, execution or similar process is issued or levied against all or any part of the Property or Borrower or any Guarantor, and is not released, vacated or fully bonded within thirty (30) calendar days after such issue or levy; or

2

(f)    there shall occur a material adverse change in the financial condition of Borrower or any Guarantor from their respective financial conditions as of the date of this Note, as determined by Lender in its reasonable discretion; or

(g)    any Loan Document, at any time after its execution and delivery and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; or Borrower or any trustee, officer, director, shareholder or partner of any entity comprising Borrower or any Guarantor claims that any Loan Document is ineffective or unenforceable, in whole or in part, or denies any or further liability or obligation under any Loan Document, unless all indebtedness and obligations of Borrower thereunder have been fully paid and performed; or

(h)    all or a substantial portion of the Property is condemned, seized or appropriated by any Governmental Agency; or

(i)    any lien or security interest created by any Security Document, at any time after the execution and delivery of that Security Document and for any reason other than the agreement of Lender or the satisfaction in full of all indebtedness and obligations of Borrower under the Loan Documents, ceases or fails to constitute a valid, perfected and subsisting lien of the priority required by this Agreement or security interest in and to the Property purported to be covered thereby, subject only to the Permitted Exceptions; or

(j)    any default occurs in any loan document or other agreement by and between Borrower and Lender or by Borrower in favor of Lender with reference to the Loan or otherwise, or any default occurs in any loan document regarding any loan or other obligation secured by the Property or any portion thereof.

8.    Late Charge. Borrower acknowledges that if any interest payment is not made when due or if the entire amount due under this Note is not paid by the Maturity Date, or, if accelerated as permitted by this Note or any other Loan Document, by the date given in the notice of acceleration, the Lender hereof will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because the actual damages suffered by the Lender hereof by reason of such extra administrative expenses and loss of use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount so delinquent shall be the amount of damages to which such Lender is entitled, upon such breach, in compensation therefor. Therefore, Borrower shall, in the event any payment required under this Note is not paid within five (5) days after the date when such payment becomes due and payable pursuant to Sections 2 and 3, above, and without regard to any default notice under Section 7(a), and without further notice, pay to the Lender hereof as such Lender's sole monetary recovery to cover such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of such delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of the obligation of Borrower to make timely payments hereunder, including timely payment of any

3

accelerated amount. Nothing in this Note shall be construed as an express or implied agreement by the Lender hereof to forbear in the collection of any delinquent payment or in exercising any of its rights and remedies under the Loan Documents, or be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of the Lender hereof to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of such Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any security for this Note or to declare a default hereunder or under any security for this Note.

9.    Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date such default is cured, at the option of the Lender hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

10.    Waivers. Borrower waives any right of offset it now has or may hereafter have against the Lender hereof and its successors and assigns. Borrower waives presentment, demand, protest, notice of protest, notice of nonpayment or dishonor and all other notices in connection with the delivery, acceptance, performance, default or enforcement of this Note. Borrower expressly agrees that any extension or delay in the time for payment or enforcement of this Note, to renewal of this Note and to any substitution or release of the Property, all without any way affecting the liability of Borrower hereunder. Any delay on Lender's part in exercising any right hereunder or under any of the Loan Documents shall not operate as a waiver. Lender's acceptance of partial or delinquent payments or the failure of Lender to exercise any rights shall not waive any obligation of Borrower or any right of Lender, or modify this Note, or waive any other similar default.

11.    Costs of Collection. Borrower agrees to pay all costs of collection when incurred and all costs incurred by the Lender hereof in exercising or preserving any rights or remedies in connection with the enforcement and administration of this Note or following a default by Borrower, including but not limited to actual attorneys' fees. If any suit or action is instituted to enforce this Note, Borrower promises to pay, in addition to the costs and disbursements otherwise allowed by law, such sum as the court may adjudge reasonable attorneys' fees in such suit or action.

12.    Usury. Borrower hereby represents that this loan is for commercial use and not for personal, family or household purposes. It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law, with any excess interest theretofore collected being applied against principal or, if such principal has been fully repaid, returned to Borrower upon written demand.

13.    Notices. All notices to be given pursuant to this Note shall be sufficient if given by personal services, by guaranteed overnight delivery services, by telex, telecopy or telegram or by

4

being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the date after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**           Southern California Land Development, LLC
                                  c/o Builders Capital
                                  28475 Old Town Front Street, Ste D
                                  Temecula, CA 92590
                                  Attn. David Fogg

**WITH DUPLICATE NOTICE TO:**     USA Investors II, LLC
                                  4484 South Pecos Road
                                  Las Vegas, Nevada 89121
                                  Attn. Thomas Rondeau

**LENDER'S ADDRESS:**             c/o USA Commercial Mortgage Company
                                  4484 South Pecos Road
                                  Las Vegas, Nevada 89121
                                  Attn. Joseph D. Milanowski

14.    <u>Assignment By Lender</u>. Lender may assign its rights hereunder or obtain participants in this Note at any time, and any such assignee, successor or participant shall have all rights of the Lender hereunder.

15.    <u>Multiple Parties</u>. A default on the part of any one entity comprising Borrower or any Guarantor of this Note shall be deemed a default on the part of Borrower hereunder.

16.    <u>Construction</u>. This Note and all security documents and guaranties executed in connection with this Note have been reviewed and negotiated by Borrower, Lender and Guarantors at arms' length with the benefit of or opportunity to seek the assistance of legal counsel and shall not be construed against either party. The titles and captions in this Note are inserted for convenience only and in no way define, limit, extend, or modify the scope of intent of this Note.

17.    <u>Partial Invalidity</u>. If any section or provision of this Note is declared invalid or unenforceable by any court of competent jurisdiction, said determination shall not affect the validity or enforceability of the remaining terms hereof. No such determination in one jurisdiction shall affect any provision of this Note to the extent it is otherwise enforceable under the laws of any other applicable jurisdiction.

18.    <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

(a)    This Note shall be construed according to and governed by the laws of the State of Nevada, without regard to its choice of law provisions.

5

(b)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS NOTE, OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

BORROWER:    Southern California Land Development, LLC
By: USA Investors II, LLC, Manager
By: USA Investment Partners, LLC, its Manager

By: _____
    Joseph D. Milanowski, President

6

# EXHIBIT "A"

## LENDERS

| | Names | Amount |
|---|---|---|
| 1. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $50,000 |
| 2. | Michael R. Brines & Cindy G. Brines Trustees of the Michael R. Brines & Cindy G. Brines Revocable Family Trust U/A dated 11/5/94 | $50,000 |
| 3. | Shawntelle Davis-Canepa, a married woman, dealing with her sole & separate property | $25,000 |
| 4. | Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $40,000 |
| 5. | Philip Castiglia & Alis Kurtliyan-Castiglia Trustees of the Castiglia Family Trust dated 11/10/04 | $50,000 |
| 6. | Wen Dai & Zhimin Chen, husband & wife as joint tenants with the right of survivorship | $40,000 |
| 7. | First Savings Bank Custodian For Dennis J. Dalton, IRA | $30,000 |
| 8. | Gary Deppe, a single man | $25,000 |
| 9. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $25,000 |
| 10. | John R. Emery & Sandra Kipp Emery Trustees of the Emery Living Trust dated 6/04/91 | $25,000 |
| 11. | Marc Scot Etterman Trustee of the Marc Scot Etterman Living Trust dated 2/11/03 | $25,000 |
| 12. | Sagrario T. Evers Trustee of the Sagrario T. Evers Living Trust dated 5/1/01 | $25,000 |
| 13. | Lucille Farrlow Trustee of the Lucille Farrlow Trust 2000 | $60,000 |
| 14. | Adam L. Fetterly, a married man dealing with his sole & separate property | $40,000 |
| 15. | First Savings Bank Custodian For Lynn Fetterly IRA | $79,000 |
| 16. | Lynn L Fetterly & Melody A. Fetterly Trustees of the Fetterly Family Trust dated 6/30/89 | $25,000 |
| 17. | Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $200,000 |
| 18. | First Savings Bank Custodian For Edward C. Fraser IRA | $25,000 |
| 19. | Chris Hendrickson, an unmarried man | $60,000 |
| 20. | Richard Holeyfield & Marsha Holeyfield Trustees of the Holeyfield Family Trust dated 01/12/01 | $25,000 |
| 21. | Leif A. Johansen & Roberta K. Johansen Trustees of The Johansen Family Trust dated 10/23/87 amended 6/11/04 | $25,000 |
| 22. | Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000 |
| 23. | Gordon Marx, a married man dealing with his sole & separate property | $150,000 |
| 24. | James W. McCollum & Pamela P. McCollum, husband & wife, as joint tenants with right of survivorship | $100,000 |

| | | |
|---|---|---|
| 25. | Martin W. McColly & Carmen Garcia McColly Trustees of the Martin W. McColly & Carmen Garcia McColly Revocable Trust Agreement dated 5/27/03 | $50,000 |
| 26. | Robin E. McQuown & Brian C. McQuown, wife & husband, as joint tenants with right of survivorship | $50,000 |
| 27. | Christiane Mencini-Baker Trustee of the Christiane Mencini-Baker Revocable Trust | $100,000 |
| 28. | First Savings Bank Custodian for George J. Motto IRA | $50,000 |
| 29. | Ronald Noel, a single man | $60,000 |
| 30. | Robert H. O'Connor & Cathleen B. O'Connor Trustees of the O'Connor Revocable Trust UTD 9/17/97 | $25,000 |
| 31. | Robert O'Connor Sr. Administrator of the Bob O'Connor Self Employed Retirement Account | $25,000 |
| 32. | Jingxiu Jason Pan, a married man dealing with his sole & separate property | $56,000 |
| 33. | Michael Percy & Carol Percy Trustees of the Percy Family Trust U/A 9/28/99 | $25,000 |
| 34. | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $50,000 |
| 35. | Michael Pezzano & Lisa Pezzano, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 36. | Christina Reale, a married woman dealing with her sole & separate property | $75,000 |
| 37. | Frank Reale, a single man | $100,000 |
| 38. | Lauren Reale, a single woman | $25,000 |
| 39. | John J. Reber Trustee of the Reber Family Trust dated 01/18/99 | $50,000 |
| 40. | Frank W. Richardson & Margaret S. Richardson Trustees of the Richardson Family Trust Under Agreement dated 11/2/88 | $25,000 |
| 41. | Craig L. Rommel & Ann Marie Rommel, husband & wife, as joint tenants with right of survivorship | $160,000 |
| 42. | Taylor Samuels Trustee of the Samuels 1999 Trust | $50,000 |
| 43. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $100,000 |
| 44. | Michael R. Shuler Trustee of the Shuler Revocable Trust | $85,000 |
| 45. | Carol J. Simcock, a single woman | $50,000 |
| 46. | First Savings Bank Custodian For Carol J. Simcock IRA | $75,000 |
| 47. | Frank Snopko Trustee of the Snopko 1981 Trust dated 10/27/81 | $250,000 |
| 48. | Rocklin/Redding LLC | $150,000 |
| 49. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $150,000 |
| 50. | Roy R. Ventura, Jr. & Nancy B. Ventura, husband & wife, as joint tenants with right of survivorship | $40,000 |
| 51. | Patricia E. Von Euw Trustee of the Patricia E. Von Euw Revocable Trust dated 11/23/04 | $100,000 |
| 52. | Linda M. Walker, a single woman | $25,000 |

53.   Work Holdings Inc., an Arizona corporation        $100,000
      TOTAL                                       $3,400,000



# LOAN AGREEMENT

This Loan Agreement, dated as of April 1, 2005, is entered into by and among Southern California Land Development, LLC, a California limited liability company ("Borrower"), and those persons listed on **Exhibit "A"** attached hereto ("Lender").

## SECTION 1: DEFINITIONS AND ACCOUNTING TERMS.

1.1    Defined Terms.  As used in this Agreement, the following terms shall have the meanings set forth respectively after each:

"**Agreement**" means this Loan Agreement.

"**Assignment of Permits, Licenses, Franchises and Authorizations**" means the Assignment of Permits, Licenses, Franchises and Authorizations executed by Borrower.

"**Assignment of Rents**" means the Assignment of Rents contained in the Deed of Trust.

"**Business Day**" means any Monday, Tuesday, Wednesday, Thursday, or Friday on which banks in the State of Nevada are open for business.

"**Control Account**" means Disbursement Agent's account in which the Control Account Funds shall be held.

"**Control Account Escrow Agreement**" means the Control Account Escrow Agreement and Security Agreement by and between Borrower, Lender and Disbursement Agent of even date herewith.

"**Control Account Funds**" means the portion of the Loan funds held in the Control Account at any time, together with interest accrued thereon, any additions thereto made pursuant to this Agreement, and any and all investments and reinvestments of any such sums now or hereafter made.

"**Debt**" means any indebtedness of the Borrower other than indebtedness owed to trade creditors incurred in the ordinary course of business and payable in 180 days or less.

"**Deed of Trust**" means the Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith, executed by Borrower in favor of Lender with respect to the Property or portions thereof, either as originally executed or as it may from time to time be supplemented, modified or amended.

"**Default Rate**" shall have the meaning set forth in the Note.

"**Disbursement**" means each of the disbursements by Lender of the Proceeds of the Loan

1

No other Person shall have any rights of any nature hereunder of by reason hereof.

8.6    _Indemnity_. Borrower indemnifies Lender against, and holds Lender harmless from, any and all losses, damages (whether general, punitive or otherwise), liabilities, claims, cause of action (whether legal, equitable or administrative), judgments, court costs and legal or other expenses, including attorneys' fees, which Lender may suffer or incur as a direct or indirect consequence of: (a) Lender's performance of this Agreement or any of the Loan Documents, including, without limitation, Lender's exercise or failure to exercise any rights, remedies or powers in connection with this Agreement or any of the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon the Lender in the normal course of the Lender's business such as taxes and regulatory fees; (b) Borrower's failure to perform any of Borrower's obligations as and when required by this Agreement or any of the other Loan Documents, including without limitation any failure, at any time, of any representation or warranty of Borrower to be true and correct and any failure by Borrower to satisfy any condition; (c) any claim or cause of action of any kind by any Person to the effect that Lender is in any way responsible or liable for any act or omission by Borrower, whether on account of any theory or derivative liability or otherwise, including but not limited to any claim or cause of action for fraud, misrepresentation, tort or willful misconduct; (d) any act or omission by Borrower, any contractor, subcontractor or material supplier, engineer, architect, or any other Person with respect to any of the Property or Improvements; or (e) any claim or cause of action of any kind by any Person which would have the effect of denying Lender the full benefit or protection of any provision of this Agreement or the Loan Documents but excluding charges and assessments by Governmental Agencies imposed upon Lender in the normal course of Lender's business such as taxes and regulatory fees. Lender's rights of indemnity shall not be directly or indirectly limited, prejudiced, impaired or eliminated in any way by any finding or allegation that Lender's conduct is active, passive or subject to any other classification or that Lender is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by Borrower or any other Person. Notwithstanding the foregoing, Borrower shall not be obligated to indemnify Lender with respect to any intentional tort or act of negligence which Lender is personally determined by the judgment or a court of competent jurisdiction (sustained on appeal, if any) to have committed. Borrower shall pay any indebtedness arising under this indemnity to Lender immediately within seventy-two (72) hours after demand therefor by Lender together with interest thereon from the date such indebtedness arises until paid at the Default Rate. Borrower's duty to defend and indemnify Lender shall survive the release and cancellation of the Note and the release and reconveyance or partial release and reconveyance of the Deed of Trust.

8.7    _Commissions_. Borrower hereby indemnifies Lender from the claim of any Person for a commission or fee in connection with the Loan.

8.8    _Lenders' Representative_. The persons and entities which comprise Lender hereby collectively appoint USA Commercial Mortgage Company ("USA") to administer the Loan on their behalf, to make all necessary demands on Borrower and to execute and deliver all approvals and notices to be given by Lender hereunder.

8.9    _Binding Effect; Assignment_. This Agreement shall be binding upon and inure to the

23

benefit of Borrower and Lender and their respective successors and assigns, except that, as provided herein, Borrower may not assign its rights or interest or delegate any of its duties under this Agreement or any of the other Loan Documents without prior written consent of Lender.

8.10    Amendments; Consents.  No amendment, modification, supplement, termination or waiver of any provision of this Agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, may in any event be effective unless in writing signed by Lender, and then only in the specific instance and for the specific purpose given.

8.11    Costs, Expenses and Taxes.  Borrower shall pay to Lender, within seventy-two (72) hours after demand therefor:

(a)    the actual attorneys' fees and out-of-pocket expenses incurred by Lender in connection with the negotiation, preparation, execution, delivery and administration of this Agreement and any other Loan Documents and any matter related thereto;

(b)    the actual costs and expenses of Lender in connection with any modification of any Loan Document or in connection with the enforcement of this Agreement and any other Loan Document and any matter related thereto, including the actual fees and out-of-pocket expenses, reasonably incurred, of any legal counsel, independent public accountants and other outside experts retained by Lender; and

(c)    all costs, expenses, fees, premiums and other charges relating or arising with respect to the Loan Documents or any transactions contemplated thereby or the compliance with any of the terms and conditions thereof, including without limitation the Disbursement Agent's fee, appraisal fees, inspection fees, cost review fees, recording fees, filing fees, release or reconveyance fees, title insurance premiums, and the cost of realty tax service for the term of the Loan.

All sums paid or expended by Lender under the terms of this Agreement and the other Loan Documents shall be considered to be a part of the Loan.  Except as otherwise specifically stated herein, all such sums shall be secured by the Security Documents, shall bear interest from the date of expenditure as if such sums were advances under the Note, and shall be immediately due and payable by Borrower within seventy-two (72) hours after demand therefor.

8.12    Survival of Representations and Warranties.  All representations and warranties of Borrower and Guarantor contained herein or in any other Loan Document shall survive the making of the Loan and execution and delivery of the Note, and are material and have been or will be relied upon by Lender, notwithstanding any investigation made by Lender or on behalf of Lender. For the purpose of the foregoing, all statements contained in any certificate, agreement, financial statement, or other writing delivered by or on behalf of Borrower or Guarantor pursuant hereto or to any other Loan Document or in connection with the transactions contemplated hereby or thereby shall be deemed to be representations and warranties of Borrower or Guarantor contained herein or in the other Loan Documents, as the case may be.

8.13    Notices.  All notices to be given pursuant to this Agreement shall be sufficient if

24

given by personal services, by guaranteed overnight delivery service, by telex, telecopy or telegram or by being mailed postage prepaid, certified or registered mail, return receipt requested, to the described addresses of the parties hereto as set forth below, or to such other address as a party may request in writing. Any time period provided in the giving of any notice hereunder shall commence upon the date of personal service, the day after delivery to the guaranteed overnight delivery service, the date of sending the telex, telecopy or telegram or two (2) days after mailing certified or registered mail.

**BORROWER'S ADDRESS:**
    Southern California Land Development, LLC
    c/o Builders Capital
    28475 Old Town Front Street, Ste D
    Temecula, CA 92590
    Attn. David Fogg

**WITH DUPLICATE NOTICE TO:**
    USA Investors II, LLC
    4484 South Pecos Road
    Las Vegas, Nevada 89121
    Attn. Thomas Rondeau

**LENDER'S ADDRESS:**
    USA Commercial Mortgage Company
    4484 South Pecos Road
    Las Vegas, Nevada 89121
    Attn: Joe Milanowski

    8.14   <u>Further Assurances</u>.  Borrower shall, at its sole expense and without expense to Lender, do such further acts and execute and deliver such further documents as Lender from time to time may require for the purpose of assuring and confirming unto Lender the rights hereby created or intended now or hereafter so to be, or for carrying out the intention or facilitating the performance of the terms of any Loan Document, or for assuring the validity of any security interest or lien under any Security Document.

    8.15   <u>Governing Law; Jurisdiction; Waiver of Jury Trial</u>.

    (a)    The laws of the State of Nevada, without regard to its choice of law provisions, shall govern enforcement of the Loan Documents.

    (b)    **BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF NEVADA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THE NOTE, THIS INSTRUMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION SITTING IN CLARK COUNTY, NEVADA, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND, (iv) TO THE FULLEST EXTENT**

PERMITTED BY LAW, AGREES THAT IT WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY FORUM OTHER THAN CLARK COUNTY, NEVADA (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF LENDER TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM). BORROWER FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE BORROWER AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 8.13 HEREOF, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

(c)    BORROWER, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES AND FOREVER FORGOES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO THE INDEBTEDNESS SECURED HEREBY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, TRUSTEE OR BORROWER, OR ANY OF THEIR DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH LENDER, TRUSTEE OR BORROWER, IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE.

8.16    <u>Severability of Provisions</u>.  Any provision in any Loan Document that is held to be inoperative, unenforceable or invalid shall be inoperative, unenforceable or invalid without affecting the remaining provisions, and to this end the provisions of all Loan Documents are declared to be severable.

8.17    <u>Assignment or Sale of Participation by Lender; Advertising</u>.  Lender may, at any time, sell, transfer, assign or grant participation in the Loan and in the Loan Documents and Lender may forward to its Partners or to such participant and prospective participant all documents and information relating to the Loan and to Borrower, whether furnished by Borrower or otherwise, as Lender determines necessary or desirable.  Lender and USA may also reasonably divulge and advertise the making of the Loan and the amount thereof.

8.18    <u>Headings</u>.  Section headings in this Agreement are included for convenience of reference only and are not part of this Agreement for any other purpose.

8.19    <u>Time of the Essence</u>.  Time is of the essence with respect to all duties and obligations of Borrower under any Loan Document.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

26

**BORROWER:**     **Southern California Land Development, LLC**
By: USA Investors II, LLC, Manager
By: USA Investment Partners, LLC, its Manager

By: _____
       Joseph D. Milanowski, President

**LENDER:**

By: _____          By: _____

27

# EXHIBIT "A"

## LENDERS

| | Names | Amount |
|---|---|---|
| 1. | Marshall J. Brecht & Janet L. Brecht Trustees of the Marshall J. Brecht Trust dated 2/5/86 | $50,000 |
| 2. | Michael R. Brines & Cindy G. Brines Trustees of the Michael R. Brines & Cindy G. Brines Revocable Family Trust U/A dated 11/5/94 | $50,000 |
| 3. | Shawntelle Davis-Canepa, a married woman, dealing with her sole & separate property | $25,000 |
| 4. | Donna M. Cangelosi Trustee of the Donna M. Cangelosi Family Trust | $40,000 |
| 5. | Philip Castiglia & Alis Kurtliyan-Castiglia Trustees of the Castiglia Family Trust dated 11/10/04 | $50,000 |
| 6. | Wen Dai & Zhimin Chen, husband & wife as joint tenants with the right of survivorship | $40,000 |
| 7. | First Savings Bank Custodian For Dennis J. Dalton, IRA | $30,000 |
| 8. | Gary Deppe, a single man | $25,000 |
| 9. | Mark L. Eames & Sandy K. Eames, husband & wife, as joint tenants with right of survivorship | $25,000 |
| 10. | John R. Emery & Sandra Kipp Emery Trustees of the Emery Living Trust dated 6/04/91 | $25,000 |
| 11. | Marc Scot Etterman Trustee of the Marc Scot Etterman Living Trust dated 2/11/03 | $25,000 |
| 12. | Sagrario T. Evers Trustee of the Sagrario T. Evers Living Trust dated 5/1/01 | $25,000 |
| 13. | Lucille Farrlow Trustee of the Lucille Farrlow Trust 2000 | $60,000 |
| 14. | Adam L. Fetterly, a married man dealing with his sole & separate property | $40,000 |
| 15. | First Savings Bank Custodian For Lynn Fetterly IRA | $79,000 |
| 16. | Lynn L Fetterly & Melody A. Fetterly Trustees of the Fetterly Family Trust dated 6/30/89 | $25,000 |
| 17. | Dennis Flier Trustee of the Dennis Flier, Inc. Defined Benefit Trust dated 6/29/87 | $200,000 |
| 18. | First Savings Bank Custodian For Edward C. Fraser IRA | $25,000 |
| 19. | Chris Hendrickson, an unmarried man | $60,000 |
| 20. | Richard Holeyfield & Marsha Holeyfield Trustees of the Holeyfield Family Trust dated 01/12/01 | $25,000 |
| 21. | Leif A. Johansen & Roberta K. Johansen Trustees of The Johansen Family Trust dated 10/23/87 amended 6/11/04 | $25,000 |
| 22. | Sidney L. Larson & Ruth Ann Larson Trustees of the Larson Family Trust dated 6/19/94 | $50,000 |
| 23. | Gordon Marx, a married man dealing with his sole & separate property | $150,000 |
| 24. | James W. McCollum & Pamela P. McCollum, husband & wife, as joint tenants with right of survivorship | $100,000 |

| | | |
|---|---|---|
| 25. | Martin W. McColly & Carmen Garcia McColly Trustees of the Martin W. McColly & Carmen Garcia McColly Revocable Trust Agreement dated 5/27/03 | |
| 26. | Robin E. McQuown & Brian C. McQuown,  wife & husband, as joint tenants with right of survivorship | $50,000 |
| 27. | Christiane Mencini-Baker Trustee of the Christiane Mencini-Baker Revocable Trust | $50,000 |
| 28. | First Savings Bank Custodian for George J. Motto IRA | $100,000 |
| 29. | Ronald Noel, a single man | $50,000 |
| 30. | Robert H. O'Connor & Cathleen B. O'Connor Trustees of the O'Connor Revocable Trust UTD 9/17/97 | $60,000 |
| 31. | Robert O'Connor Sr. Administrator of the Bob O'Connor Self Employed Retirement Account | $25,000 |
| 32. | Jingxiu Jason Pan, a married man dealing with his sole & separate property | $25,000 |
| 33. | Michael Percy & Carol Percy Trustees of the Percy Family Trust U/A 9/28/99 | $56,000 |
| 34. | Robert H. Perlman & Lynn R. Perlman Trustees of the Robert H. Perlman & Lynn R. Perlman Trust dated 9/17/92 | $25,000 |
| 35. | Michael Pezzano & Lisa Pezzano, husband & wife, as joint tenants with right of survivorship | $50,000 |
| 36. | Christina Reale, a married woman dealing with her sole & separate property | $50,000 |
| 37. | Frank Reale, a single man | $75,000 |
| 38. | Lauren Reale, a single woman | $100,000 |
| 39. | John J. Reber Trustee of the Reber Family Trust dated 01/18/99 | $25,000 |
| 40. | Frank W. Richardson & Margaret S. Richardson Trustees of the Richardson Family Trust Under Agreement dated 11/2/88 | $50,000 |
| 41. | Craig L. Rommel & Ann Marie Rommel, husband & wife, as joint tenants with right of survivorship | $25,000 |
| 42. | Taylor Samuels Trustee of the Samuels 1999 Trust | $160,000 |
| 43. | Arthur P. Schnitzer & Lynn S. Schnitzer Trustees of the Schnitzer Living Trust dated 10/29/91 | $50,000 |
| 44. | Michael R. Shuler Trustee of the Shuler Revocable Trust | $100,000 |
| 45. | Carol J. Simcock, a single woman | $85,000 |
| 46. | First Savings Bank Custodian For Carol J. Simcock IRA | $50,000 |
| 47. | Frank Snopko Trustee of the Snopko 1981 Trust dated 10/27/81 | $75,000 |
| 48. | Rocklin/Redding LLC | $250,000 |
| 49. | Lloyd F. Van Sickle Trustee of The Van Sickle Family Trust dtd 5/20/99 | $150,000 |
| 50. | Roy R. Ventura, Jr. & Nancy B. Ventura, husband & wife, as joint tenants with right of survivorship | $150,000 |
| 51. | Patricia E. Von Euw Trustee of the Patricia E. Von Euw Revocable Trust dated 11/23/04 | $40,000 |
| 52. | Linda M. Walker, a single woman | $100,000 |
| | | $25,000 |

53.    Work Holdings Inc., an Arizona corporation                    $100,000
       TOTAL                                                          $3,400,000



LEWIS AND ROCA LLP LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-0996
Facsimile (702) 949-8321
Telephone (702) 949-8320

Robert M. Charles, Jr. - NV State Bar No. 006593
Email: rcharles@lrlaw.com
John Hinderaker AZ State Bar No. 018024
Email: jhinderaker@lrlaw.com
Marvin Ruth NV State Bar No. 10979
Email: mruth@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

USA Commercial Mortgage Company,

Debtor.

Case No. BK-S-06-10725-LBR

Chapter 11

NOTICE OF HEARING RE OMNIBUS OBJECTION OF USACM TRUST TO PROOFS OF CLAIM BASED UPON AN INVESTMENT IN HESPERIA II LOAN

Hearing Date: September 30, 2011
Hearing Time: 9:30 a.m.
Estimated Time for Hearing: 10 minutes

THE USACM LIQUIDATING TRUST IS OBJECTING IN PART TO THE CLAIM THAT YOU FILED. TO THE EXTENT YOUR CLAIM IS BASED UPON AN INVESTMENT IN THE HESPERIA II LOAN, THE USACM TRUST SEEKS TO DISALLOW 80% OF YOUR CLAIM AND ALLOW 20% OF YOUR CLAIM. THE USACM TRUST CONTENDS THAT YOU DO NOT HAVE A COMPLETELY VALID CLAIM BASED UPON YOUR INVESTMENT IN THIS LOAN BECAUSE YOU TOOK A KNOWN AND OBVIOUS RISK IN MAKING THAT INVESTMENT AND USACM DID NOT GUARANTEE REPAYMENT OF THAT LOAN. THIS OBJECTION WILL NOT IMPACT YOUR CLAIM TO THE EXTENT IT IS BASED UPON AN INVESTMENT IN A DIFFERENT LOAN.

ORIGINAL OF ECF FILING

287746.1

PLEASE DO NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF YOUR CLAIM. QUESTIONS REGARDING THE AMOUNT OF A CLAIM OR THE FILING OF A CLAIM SHOULD BE DIRECTED TO BRANT FYLLING AT SIERRA GROUP CONSULTING, LLC (602-424-7009) OR TO UNDERSIGNED COUNSEL, JOHN HINDERAKER (520-629-4430).

NOTICE IS HEREBY GIVEN that the USACM Liquidating Trust, by and through its counsel, has filed its Omnibus Objections to Proofs of Claim Based Upon Investment in the Hesperia II Loan (with Certificate of Service) (the "Objection"). Your Proof of Claim number and other information regarding your claim is provided in Exhibit A, attached to the Objection. The USACM Liquidating Trust has requested that this Court enter an order, pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), disallowing 80% and allowing 20% of your Proof of Claim to the extent it is based upon an investment in the Hesperia II Loan. The Objection will not impact your Claim to the extent it is based upon an investment in a different loan.

NOTICE IS FURTHER GIVEN that the hearing on the Objection will be held before the Honorable Linda B. Riegle, U.S. Bankruptcy Court Judge in the Foley Federal Building, 300 Las Vegas Blvd. South, 3rd Floor, Courtroom No. 1, Las Vegas, Nevada on September 30, 2011, at the hour of 9:30 a.m.

NOTICE IS FURTHER GIVEN THAT THE HEARING SET ON SEPTEMBER 30, 2011, WILL BE HELD FOR THE PURPOSE OF STATUS CHECKS AND SCHEDULING EVIDENTIARY HEARINGS ONLY. NO ARGUMENTS WILL BE HEARD ON THAT DATE.

NOTICE IS FURTHER GIVEN that pursuant to Local Rule 9014(d), any response to the objection must be filed and service must be completed no later than

2

287746.1

## Left column — Pleading

1  fourteen (14) **days** preceding the hearing date. The opposition must set forth all relevant

2  facts and any relevant legal authority.

3      If you object to the relief requested, you *must* file a **WRITTEN** response to this

4  pleading with the Court. You *must* also serve your written response on the person who

5  sent you this notice.

6      If you do not file a written response with the Court, or if you do not serve your

7  written response on the person who sent you this notice, then:

8      • The Court may *refuse to allow you to speak* at the scheduled hearing; and

9      • The Court may *rule against you* and sustain the objection without formally

10     calling the matter at the hearing.

12  Dated: August 8, 2011          LEWIS AND ROCA LLP

14      By s/John Hinderaker (AZ 18024)
           Robert M. Charles, Jr., NV 6593
15         John Hinderaker, AZ 18024 (*pro hac vice*)
           Marvin Ruth, NV 10979
16         3993 Howard Hughes Parkway, Suite 600
17         Las Vegas, Nevada 89169
           E-mail: JHinderaker@lrlaw.com
           *Attorneys for the USACM Liquidating Trust*

18
19  Copy of the foregoing and pertinent
    portion of Exhibits deposited in first
20  class postage prepaid U.S. Mail on
    August 8, 2011 to all parties listed on
21  Exhibit A attached.

22  LEWIS AND ROCA LLP

23  s/ *Matt Burns*
24  Matt Burns, Paralegal

25

26

287746.1

3

## Right column — Notice

**File a Notice:**

06-10725-lbr USA COMMERCIAL MORTGAGE COMPANY

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 2 (Las Vegas) |
| Assets: y | Judge: lbr | Case Flag: EXHS, BAPCPA, LLP, INTADMN, APPEAL |

U.S. Bankruptcy Court

District of Nevada

**Notice of Electronic Filing**

The following transaction was received from JOHN HINDERAKER entered on 8/8/2011 at 5:27 PM PDT and filed on 8/8/2011

Case Name:    USA COMMERCIAL MORTGAGE COMPANY
Case Number:    06-10725-lbr
Document Number: 8888

**Docket Text:**
Notice of Hearing Re Omnibus Objection of USACM Trust To Proofs Of Claim Based Upon An Investment In Hepa I / Loan Hearing Date: 09/30/11 Hearing Time: 9:30 a.m. with Certificate of Service Filed by JOHN HINDERAKER on behalf of USACM LIQUIDATING TRUST (Related document(s)[8883] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8884] Objection filed by Interested Party USACM LIQUIDATING TRUST, [8885] Objection filed by Interested Party USACM LIQUIDATING TRUST) (HINDERAKER, JOHN)

The following document(s) are associated with this transaction.

Document description: Main Document
Original filename: C:\fakepath\287746_1.pdf
Electronic document Stamp:
[STAMP bkecfStamp_ID=992277934 [Date=8/8/2011] [FileNumber=20208924-0]
[73e8e9a02eb74e1256a3f0ad562c92310565882d2e6c67fdc500b7abc2e4
42b2e08f7ba38fee400f7bee88f60824d00c3351359dbd456de4f4157fee]]

**06-10725-lbr Notice will be electronically mailed to:**

MICHELLE L. ABRAMS on behalf of Cross Defendant ROCKLIN/REDDING LLC
mabrams@abramsanko.com

FRANKLIN C. ADAMS on behalf of Creditor JAMES CORISON
franklin.adams@bbklaw.com, arthur_johnston@bbklaw.com

NANCY L. ALLF on behalf of Defendant THE WILD WATER LP
Nancy.Allf@gmail.com, karen.lawrence007@gmail.com;angela.nakamura007@gmail.com

FRANK A. ANDERSON on behalf of Creditor PENSION BENEFIT GUARANTY CORPORATION
anderson.frank@pbgc.gov, efile@pbgc.gov

OGONNA M. ATAMOH on behalf of Defendant ASHBY USA, LLC
oatamoh@nevadafirm.com,
bkecf@nevadafirm.com;tlibero@nevadafirm.com;rholley@nevadafirm.com;vsnelson@nevadafirm.com;adwhite@nevadafirm.com

JON MAXWELL BEATTY on behalf of Interested Party USACM LIQUIDATING TRUST
mbeatty@diamondmccarthy.com

BMC GROUP, INC.
ecf@bmcgroup.com

https://ecf.nvb.uscourts.gov/cgi-bin/Dispatch.pl?395614954829134                8/8/2011