Dean T. Kirby, Jr.   090114
KIRBY & McGUINN, A P.C.
707 Broadway, Suite 1750
San Diego, California 92101
Telephone: (619) 685-4000
Facsimile:   (619) 685-4004

Attorneys for Plaintiff
Debt Acquisition Company
of America, LLC

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>USA COMMERCIAL MORTGAGE<br>COMPANY,<br><br>         Debtor.<br><br><br>DEBT ACQUISITION COMPANY<br>OF AMERICA V, LLC,<br>A California limited liability company,<br><br>         Plaintiff<br><br>         v.<br><br>MESA VERDE RE VENTURES, LLC ,<br>a California limited liability company; et al,<br><br>         Defendants. | Case No.  BK-S-06-10725<br><br>Chapter 11<br><br><br><br><br>OPPOSITION TO MOTION RECEIVED BY<br>COUNSEL FOR MOVANT RE:<br><br>EX PARTE MOTION FOR TEMPORARY<br>RESTRAINING ORDER AND FOR ORDER<br>TO SHOW CAUSE WHY A PRELIMINARY<br>INJUNCTION SHOULD NOT ISSUE<br><br>**<u>TRO REQUESTED TO ISSUE PRIOR TO<br>OCTOBER 19, 2011</u>** |

Attached hereto is a copy of an opposition to DACA's Ex Parte Motion for Temporary Restraining Order and for Order to Show Cause Why a Preliminary Injunction Should Not Issue, which was submitted by Direct Lender Joanne Grundman to counsel for DACA.

Dated:   October 17, 2011                    KIRBY & McGUINN, A P.C.


By:___/s/ Dean T.Kirby, Jr._____
    Dean T. Kirby, Jr.
    Attorneys for Plaintiff
    Debt Acquisition Company of America V, LLC

1

United States Bankruptcy Court
District of Nevada

| | |
|---|---|
| USA Commerical Mortgage Co [USACM] | Case No. |
| 8:10-bk-12757-TA | |
| Debtor | |
| Adversary Case No. 11-01293 | |

Hearing Date: October 18, 2011

Debt Acquisition Co. of America V, LLC                                    Hearing Time:
9:30 am

Plaintiff    [DACA]                                                                          Place:
300 LV Blvd. S,

                                        V

Foley Federal Bldg Courtroom 1
Mesa Verde RE Ventures, LLC                                               Las Vegas, NV
89101
Defendants [MRVE]                                                                    Judge:
Linda B Riegle

Comes now Respondents aka Defendants, Joanne M Grundman and Erna D Grundman, who were original Co-lenders in the Oak Mesa loan now known as Calimesa Loan in response to Ex Parte Motion by Debt Acquisition Company of America LLC   [DACA] (who in March 2009 bought the rights to Debtor's Prepaid Interest Bankruptcy Account)  opposing Plaintiff's Temporary Restraining Order and Order to Show Cause Why Preliminary Injunction Should Not Issue.   The loan originated in mid 2004 for $20.5M funded by approximately 225 direct lenders through USACM secured by a first deed of trust for 1500 acres in San Bernardino and Riverside Counties. The loan was to be repaid by Borrower Oak Mesa LLC, December 18, 2005. Unknown to the lenders, shortly after origination the lender defaulted and USACM continued paying interest to the lenders. USACM filed for Chapter 11 in April 2006. In September 2008, Defendant MRVE purchased 80% interest in the loan. In March 2010, MRVE filed Chapter 11 impacting 23 of the original remaining lenders of whom Plaintiff alleges 11 owe approximately $137k in PPI; the matter before this Court.

NAMED DEFENDANTS:
Respondents question Plaintiff's named defendants; thus, the validity of Plaintiff's filings: Plaintiff   alleges Defendant Erna Grundman is estimated to receive a plan distribution from MVRE's Chapter 11 Plan of $45,000 [ page 7, line 16   of Complaint and page 2 line 22 of TRO Order] and owes $8212 in prepaid interest [page 7 line 10 Motion for TRO and   page 2 line 10 Proposed TRO Order].    In January 2006 defendant Erna Grundman deeded her interest in the loan to her daughter defendant Joanne M Grundman which is recorded in Document 2006-024715 Riverside Co. Recorder and Document 2007-463755 San Bernardino Co. Recorder. Defendant Erna [age 97] will not be receiving a distribution from MVRE. In Plaintiff's Complaint   seeking claim relief and Certificate of Service list Defendants Athanasios N and Rebecca Iordanu; however they are not listed   in Plaintiff's Complaint, page 7 line 6 through page 8, line 6; Motion for TRO page 2, line 15 thru page 3 line 5, and, Proposed TRO Order page 2   lines 4 thru 17.

DACA'S MOTION FOR ORDER WITHHOLDING OF PREPAID INTEREST BY MVRE
On September 1, 2011, Plaintiff filed Motion for Order For Withholding of Prepaid Interest From Plan Distributions with the US Bankruptcy Court Central District of California, Santa Ana Division in the matter of MVRE's Chapter 11 Case 8:10-bk-12757-TA.(1)  Court heard  the Motion on September 28, 2011, and dismissed for lack of jurisdiction.  Defendants Grundman filed an Opposition to said Motion  on September 21, 2011, and incorporates here-in [Exhibit 1].(2).Counsel for the Official Committee of Unsecured Creditors filed an Objection to said Motion on September 14, 2011, and incorporates here-in [Exhibit 2].(3).Plaintiff cites said filing by OCC and Plaintiff's Objection in it's Complaint   on page 8, Exhibit 2

CONCLUSION:
Based on the foregoing , Respondents   respectfully request that the Court dismiss Plaintiff's Motion for TRO and deny Order to show cause for Preliminary Injunction. The herein document is prepared by   Respondent Joanne M Grundman on behalf of self and Respondent Erna D. Grundman.

Dated:  October 15, 2011                                    By:

Joanne M Grundman
(1)   Plaintiff cites Motion in it's Complaint before this Court, page 7, lines 1 thru 5.
(2)   Plaintiff and   Defendant/Debtor MVRE received   electronic copies from Respondents   at time of filing
(3)   Plaintiff   and Defendant/Debtor MVRE received hard copies   from OCC Counsel at time of filing

United States Bankruptcy Court<br>
Central District of California<br>
Santa Ana   Division

| | |
|---|---|
| Mesa Verde RE Ventures, LLC | Case No. |
| 8:10-bk-12757-TA | |
| Debtor | OBJECTION |
| TO DACA'S PPI MOTION | |
| | Hearing |
| Date: September 28, 2011 | |
| | Hearing |
| Time: 10 am | |
| | Place: |
| 411 W Fourth Street   Rm 5B | |
| | |
| Santa Ana, CA 92701 | |
| | Judge: |
| Theodor C Albert | |

Comes now Respondents, Joanne M Grundman and Erna D Grundman, who were original Co-owners in the Oak Mesa loan now known as Calimesa Loan in response to Motion by Debt Acquisition Company of America LLC [DACA] an Order for Debtor to withhold from distributions   to investors their prepaid interest for reimbursement to DACA [Plaintiff].

In May 2004, Respondent Joanne M Grundman invested $50,000 in the Oak Mesa loan for $20.5M through USA Commercial Mortgage Company [USACM] secured by a first deed of trust on 1500 acres in the Calimesa Valley   [San Bernardino and RiversideCounties] in California. The account was joint with Respondent's mother, Erna D Grundman (1) who was 90 years old [now 97] with the monthly net interest paid directly to Erna totaling $8221.(1)    The Borrower, Oak Mesa LLC was to repay the loan on December 18, 2005; however, USACM gave the Borrower a 1 year extension without informing the lenders the Borrower was in default.   In early 2006, Co-owner Erna D. Grundman assigned/deeded her interest to Co-owner Joanne M Grundman. Said assignment is recorded with the San Bernardino and Riverside Counties Recorders Offices.

April 2006, USAMC filed for Chapter 11 with the US Bankruptcy Court, Nevada District. In late 2006, the USAMC Reorganization Plan [ the Plan]   was approved awarding Silar   [a hedge fund in NY] USAMC's loan portfolio. In   early 2007, the Confirmation Order was signed.   DACA   filed a lawsuit against the Confirmation Order and settled in March 2009, by purchasing the rights to the USACM's Liquidating Trust to recover Prepaid Interest   [PPI] on USACM originated loans. (2)   September 2008 Silar sold it's 51% interest [ bought out 110 direct lenders] and loan server rights in the Oak Mesa loan to Debtor. In 2007 DACA bought out approximately 88 lenders at a discount to procure a 26% interest which DACA sold   at a profit   in October 2008 to Debtor. DACA then bought out   22 of the 47   remaining direct lenders at a discount to acquire a 12.01% interest in the loan. In March 2010, Debtor filed for Chapter 11, and in Debtor's Amended Reorganization Plan, Debtor reached   separate negotiated settlements with DACA and   the remaining 25 direct lenders. DACA will gross a profit ,and the Lenders will loose 10-30% a percentage of their principal.

RESPONDENTS VOTED AGAINST USAMC REORGANIZATION PLAN

The Respondents voted against   USAMC 3rd Amended Reorganization Plan and filed a Response   in December 2006. [Exhibit A] (4) (5) The Plan required the original   Lenders to repay their   "prepaid interest"   on the non-performing fund

through offsets and recoupment making said monies property of the Bankruptcy estate.   Said No vote was because USAMC failed to provide loan collection statements to the Lender of the Borrower's   (Fiesta Valley Oak) nor informed Lender of loan's non-performance at the time of extension; nor took steps to collect from Borrower as required under the Loan Servicing Agreement. Instead   USAMC paid Lenders the monthly interest .Lenders accepted said payments in good faith without knowledge of Borrower's failure to perform in accordance with the Loan Servicing Agreement. *Under Greenwald v Chase Manhattan Mortg. Corp. 241 F.3d 76,79 (CA1,2001) "A lender has no duty of restitution where it made no misrepresentation and had no notice of mistaken benefits from which it benefited."*

### SAN FERNANDO PARTNERS ORDER

As outlined in Plaintiff's Motion of September 1, 2011, the US Bankruptcy Court Nevada District ruled in said case   against DACA's right to collect money owed from other loans from this disbursement unless the lender

Exhibit 1 pg 1

voted in favor of the USACM Plan [Plan] If the lender did vote in favor of the Plan, then DACA, as the successor owner to prepaid interest is permitted to collect prepaid interest owed from one loan against proceeds of another. If the lender did not vote in favor of the Plan then DACA is not permitted to collect prepaid interest from other loans against the proceeds from this or any other disbursement; they *can only collect prepaid interest from the loan against which it is owed when monetized, and then only after the lender receives their principal.* Plaintiff's Motion of September 1, 2011, page 5, paragraph 14, lines 8 through 18 discuss said Order.   Plaintiff is appealing said Order with the   US Ninth Circuit Appeal   Court. (3)

### NEVADA ORDER

Counsel for the Official Committee of Unsecured Creditors [OCC] in Debtor's case submitted a Reply on July 6, 2011, to Debtor's Motion for Order approving settlement with DACA. In the Response, page 3.   the US Bankruptcy Court, District of Nevada, on March 3, 2009, paragraph 3 provides DACA shall not sue any lender to recover PPI unless the lender received PPI in an aggregate amount of at least $200,000.   The total aggregate amount of remaining PPI on the Calimesa loan is less than $200,000. (4)

### DEBTOR'S AMENDED PLAN

The OCC negotiated settlement with Debtor was   approximately 70% of principal for those lenders who voted Yes to Debtor's amended plan and did not file a claim for damages, and 90% of principal for those lenders who voted Yes and had filed a claim for damages.   Respondent/ Co-owner voted 'yes' and had   filed a claim for damages.   Respondent voted for The Plan because of the buyout distribution stated in III.C. 3(a), pg 42 "…Buyout Agent shall…promptly pay to the Accepting Original Direct Lenders their respective pro rata share ….based on their respective percentage interests in the...Loan."   The Plan does not   authorize Debtor to withhold the PPI from a Direct Lenders buyout distributions nor have Debtor act as the collection agent. DACA did not object to said distribution during the Plan's confirmation process.

### DISCLOSURE STATEMENT BY DEBTOR

Debtor's Disclosure Statement of June 15, 2011, pages 60 to 61, disputes   the July 2, 2010, DACA Direct Lender PPI claim   for $143,672. Debtor does not feel   it has a duty to collect the PPI from the identified original lenders, and the claim should be disallowed in it's entirety. (6) In OCC's .Objection Response, of September 14, 2011, page 4, *"…The Plan   provides for distribution without any withholding … and has not taken any action …to be a collection agent for DACA…." (7)* DACA has not objected to the Debtor's Plan.

### CONCLUSION

Based on the foregoing , Respondents   respectfully request that the Court deny Plaintiff's Motion in it's entirety. The herein document is prepared by   Respondent Joanne M Grundman on behalf of self and Respondent Erna D. Grundman.

Dated:   September 21, 2011                                              By:

Joanne M Grundman

Footnotes:
(1)   Documented in Exhibit 1,   page 1 of Plaintiff's Motion
(2)   DACA's  PPI Trust purchase , Declaration of Howard Justus. September 1, 2011, Pages 2 - 3.
(3)   Plaintiff's Motion of   September 1, 2011, on file with the Court
(4)   OCC Reply of July 6, 2011, on file with the Court
(5)    Documented in Plaintiff's Motion, Exhibit 1, page 1
(6)   Debtor's Disclosure Statement of June 15, 2011, on file with the Court
(7) OCC's Objection Response of September 14, 2011, on file with the Court

-2-

Exhibit 1 pg 2


United States Bankruptcy Court
District of Nevada


In Re:
USA Commercial Mortgage Company,                                    Case No. BK S 06-10725 LBR
                                     Debtor
                                                                                          Hearing
Date: December 19, 2006
                                                                                          Hearing
Time: 10 am
                                                                                          Place:
Foley Federal Building

300 Las Vegas Blvd

Las Vegas NV 89101
                                                                 Judge: Linda Riegle

Opposition to Debtors' Third Amended
Joint Plan of Reorganization

Comes now Erna D. Grundman (Client No. 3198) and Joanne M. Grundman, joint tenants as former direct
lenders   [herein known as Lenders) in a first deed of trust (Account No. 5317) from June 2004 to February
2006, which was   serviced by USA Commercial Mortgage Company [herein known as Debtor]. Said account
was closed on or about February 10, 2006. Under the proposed plan, Lenders of said account are deemed Class
A-4 Claims.

Lenders oppose portions of the Debtor's proposed reorganization plan that are contra to the Lenders signed
"Loan Servicing Agreement" with Debtor. The opposed   portions pertain to the following issues: (1) "set offs"
or "reserving" of funds paid as interest to Lenders in a non-performing funds;   (2) increasing contractual loan
servicing fee;   and, (3) charging the Lenders for appraisals and collections.   Oppose the Debtors desire to   not
deem the Loan Servicing Agreement an executory contract for   Class A-4 claims.

The proposed reorganization plan wants Lenders "prepaid interest"   on the non-performing fund returned through offsets and
recoupment making said monies property of the Bankruptcy estate. Debtor failed to provide loan collection statements
to the Lender of the Borrower's   (Fiesta Valley Oak) nor informed Lender of loan's non-performance at the time
of extension; nor took steps to  collect from Borrower as required under the Loan Servicing Agreement:

          C.2(d) Provide Lender with regular statements regarding loan collections, but in no event less
frequently than quarterly.
          C.2(c)(ii)....Borrower fails to make any payment to USA...terms of note...USA will take steps to
collect....foreclosure procedures...

Instead, the Debtor paid Lenders the monthly interest as if the Borrower was meeting his contractual obligations,

and failed to take steps against the Borrower. Lenders accepted said payments in good faith without knowledge of Borrower's failure to perform in accordance with the Loan Servicing Agreement.
Under Greenwald v Chase Manhattan Mortg. Corp. 241 F.3d 76,79 (CA1,2001) "A lender has no duty of restitution where it made no misrepresentation and had no notice of mistaken benefits from which it benefited."

The reorganization plan needs to state that the loan servicing agent "must" pursue the Borrower and/or Guarantor(s) not the Lenders for said monies as stipulated under the Loan Servicing Agreement.

      C.2(c)(ii)....Borrower fails to make any payment to USA...terms of note...USA will take steps to collect....foreclosure procedures...
      C.1(e) Obtain ...at Borrower's expense, a fully paid ALTA lender's policy of title insurance...
      C.1(f) Cause the Borrower...casualty insurance policies at least equal to the principal amount of the note.....
Exhibit 1 Pg 3

The question of legality of whether or not Debtor is entitled to the Loan Servicing   fees when the servicing agent has violated it's fiduciary responsibility.   Under the Loan Servicing Agreement the Lender is only responsible for an annual 1% service fee:

      C.5. Lender authorizes USA to retain monthly....(1/12th) of its annual servicing fee....

The Loan Servicing Agreement does not allow the Debtor to   charge the Lender a fee for collection or appraisal.

      C.1(d) ....obtain at Borrower's expense, an appraisal of the property to be encumbered...

Debtor failed to meet it's fiduciary responsibility of pursuing collection of the fees, interest and principal from the borrower and/or the guarantor.   Instead, gave the Borrower an extension in December 2005, without informing the Lenders of Borrower's non-performance.

      C.2. (c)(i) Proceed...to collect all payments due under terms of the note...when due, principal, interest, late charges.....
      C.15. ...party hereto brings an action to enforce any of the provisions of this Agreement,...party against whom judgment is rendered ....liable to the other for reimbursement of costs....

In addition, the Lenders were forced into the Loan extension in December 2005, under the Power of Attorney Clause resulting in Lenders being thrown into Debtor's herein bankruptcy case.

      C.11.....Lender...agrees that USA shall have...authority....(b)..take all actions on behalf of Lender...necessary or convenient to under... deed of trust...pertaining to any Loan...

Not informing Lenders of Borrowers failure to perform (violated C2(d)   and Debtors failure to perform under C.2c(ii) is in direct violation of the Loan Service Agreement. Said omissions are violations of Debtors fiduciary responsibility and   possible fraud for keeping Lenders monies under false pretext.

The reorganization   plan should be amended to incorporate and mandate Debtor and/or it's servicing agent to comply with and/or enforce their fiduciary responsibilities contained in the Loan Servicing Agreement as cited herein. Therefore, no "set offs"   or "reserving"; nor the charging of the additional fees (increase in servicing fee, collection fee, and appraisal fee) as proposed under the Plan should be charged as to these objecting parties; instead, pursue and charge the Borrower. Lastly, the reorganization plan should be amended to state   the Loan Servicing Agreement for an A-4 Claim should be considered an executory contract by the Debtor.

Respectfully Submitted on December 1, 2006

_____

Joanne M. Grundman
1608 Brown Street
Carson City, NV 89701

and

_____

Erna D. Grundman
114 E Yolo Street
Orland, CA 95963
Mailed: December 1, 2006


Exhibit 1 Pg 4


PROOF OF SERVICE DOCUMENT

Matter of: USA Commercial Mortgage Co., Debtor                                        Case No.
BK-S-06-10725-LBR

Adversary Case No. 11-01293

Forgoing document 'Response Opposing DACA's Motion   For Temporary Restraining Order and Order to
Show Cause Why Preliminary Injunction Should Not Issue.

Served the following   person in said matter via   overnight Fed Ex on 10/15/11 [recd. Mon.10/17/11]

Honorable Linda B Riegle
US Bankruptcy Court - District of Nevada
Foley Federal Bldg
300 Las Vegas Blvd S, 3rd Floor
Las Vegas, Nv 89101


Served the following persons in said matter on 10/17/11 via e-mail:

Dean T Kirby, Esq dkirby@kirbymac.com
Ken Hennesay, Esq khennesay@allenmatkins.com


I, Joanne M Grundman declare under penalty of perjury under the laws of the USA the foregoing is true and
correct.


10/15/11                          Joanne M Grundman
Date                               Type Name
Signature

1  CHRISTOPHER CELENTINO, CA BAR NO.131688
      CCELENTINO@FOLEY.COM
2  KATHRYN M.S. CATHERWOOD, CA BAR NO. 149170
      KCATHERWOOD@FOLEY.COM
3  **FOLEY & LARDNER LLP**
   ATTORNEYS AT LAW
   402 W. BROADWAY, SUITE 2100
   SAN DIEGO, CA 92101-3542
4  TELEPHONE: 619.234.6655
   FACSIMILE: 619.234.3510

5  Proposed Counsel for Official Committee of Unsecured Creditors[1]

6

7

8                  UNITED STATES BANKRUPTCY COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10                       SANTA ANA DIVISION

11

12  IN RE                                CASE NO. 8:10-bk-12757-TA

13  Mesa Verde Real Estate Ventures, LLC  OBJECTION TO MOTION BY DEBT ACQUISITION
                                          COMPANY OF AMERICA V, LLC FOR ORDER
14                Debtor.                 FOR WITHHOLDING OF PREPAID INTEREST FROM
                                          PLAN DISTRIBUTIONS
15
                                          DATE: SEPTEMBER 28, 2011
16                                        TIME: 10:00 A.M.
                                          COURTROOM: 5B
17                                        HON. THEODOR ALBERT

18

19        The Official Committee of Unsecured Creditors (the "OCC"), having reviewed the

20  Motion by Debt Acquisition Company of America V, LLC ("DACA") for Order for Withholding

21  of Prepaid Interest from Plan Distributions (the "Motion"), is compelled to respond and oppose

22  in light of the fact that the OCC believes that the Motion is in direct contravention of the

23  confirmed Plan of Reorganization in this case, is not the proper procedural vehicle for this type

24  of relief as an adversary proceeding would be required, but most important is without merit as

25  _____

26        [1] Christopher Celentino and Kathryn M.S. Catherwood are formerly of Duane Morris
    LLP, approved counsel to the OCC. Both attorneys have joined Foley & Lardner LLP as
27  partners and the OCC has requested that Duane Morris LLP transfer the files to Foley & Lardner
    LLP and that Foley & Lardner substitute in as counsel to the OCC. An application to employ
28  Foley & Lardner and Substitution of Attorneys will be filed within the guidelines of the
    Bankruptcy Code.

DACA's claim for Prepaid Interest is, by DACA's own admission, without merit under the facts of the case.

## I.

## DACA's MOTION IS PROCEDURALLY DEFECTIVE

### A.    DACA's Motion Seeks to Alter the Terms of  Confirmed Plan And is Barred by Res Judicata and Collateral Estoppel

DACA's Motion is its latest effort to extract more from the victims in this case, the Direct Lenders, who have, by their proofs of claim, asserted tortious conduct by DACA.  The Motion is fatally flawed as it attempts to have this Court essentially amend the confirmed Plan by altering the distribution to certain creditors.  However, in light of the order confirming the Plan, the terms of the Plan are res judicata and collateral estoppel and  prohibit the relief sought in DACA's Motion.  The Plan provided that the Debtor would set up a reserve for DACA's claim but did not state that the reserve would be funded from money promised to the Direct Lenders.  (See Plan at pages 46-48.)  If DACA wished this to be the case, the Plan should have made that clear to allow the Direct Lenders to challenge such a provision.  It did not, thus this Motion is improper for all the reasons discussed below.

Generally, four elements must be present in order to establish the defense of res judicata: (1) the parties were identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and, (4) the same cause of action was involved in both cases. Eubanks v. F.D.I.C., 977 F.2d 166, 169 (5th Cir. 1992).  It is clear from decisions addressing the issue that res judicata does apply to bar non-debtor plaintiffs.  Parties also subject to the res judicata effect of a Chapter 11 plan include creditors, equity holders, principals of the debtor and parties in privity or successors in interest. See Eubanks v. F.D.I.C., 977 F.2d 166, 170 (5th Cir. 1992) (Debtor's wife); Sure-Snap Corp. v. State Street Bank and Trust Co., 948 F.2d 869, 877 (2nd Cir. 1991) (president and CEO); Sanders Confectionery Products Inc. v. Heller Financial, Inc., 973 F.2d 474, 480-81 (6th Cir. 1992), cert. denied, U.S., 113 S. Ct. 1046, 122 L. Ed. 2d 355 (1993) (parent company, parent company president, lender and successors in interest).  As one court stated:  To release creditors and equity

security holders from the bonds of res judicata would allow them to launch collateral attacks on confirmed plans, undermining the necessary ability of bankruptcy courts to settle all of the claims against the debtor. To interpret the term "party" narrowly would also run counter to the provisions of the Code which outline the effect of plans and offer methods for challenging the bankruptcy orders. <u>Sanders Confectionery</u>, 973 F.2d at 481. Section 1141(a) provides that all parties to a confirmed plan are bound by its terms:

> (a)… the provisions of a confirmed plan bind the debtor… and any creditor,… whether or not the claim or interest of such creditor… is impaired under the plan and whether or not such creditor… has accepted the plan.

11 U.S.C. § 1141(a).

Confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings. <u>Stoll v. Gottlieb</u>, 305 U.S. 165, 83 L. Ed. 104, 59 S. Ct. 134 (1938). As one commentator noted: Subject to compliance with the requirements of due process under the Fifth Amendment, a confirmed plan of reorganization is binding upon every entity that holds a claim or interest even though a holder of a claim or interest is not scheduled, has not filed a claim, does not receive a distribution under the plan, or is not entitled to retain an interest under such plan. <u>See</u> Collier on Bankruptcy, P 1141.01[1], at 1141-6 (15th ed. 1993). "Like final judgments, confirmed plans of reorganization are binding on all parties, and issues that could have been raised pertaining to such plans are barred by res judicata." J.S. Gilbert, Substantive Consolidation in Bankruptcy: A Primer, 43 Vand. L. Rev. 207, 239 (1990).

It is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of the case, such as typical lender liability causes of action. <u>Eubanks</u>, 997 F.2d at 171 ("There is little doubt that the bankruptcy court's confirmation order is binding and final, and we accord it the weight of a final judgment for res judicata purposes."); <u>In re Chattanooga Wholesale Antiques, Inc.</u>, 930 F.2d 458, 463 (6th Cir. 1991) ("Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in

1  the confirmation proceedings."); <u>Sure-Snap Corp. v. State Street Bank and Trust Co.</u>, 948 F.2d

2  869, 877 (2nd Cir. 1991) ("We rule today, that in the context of lender liability claims that could

3  have been brought before a final plan for reorganization was confirmed, but weren't, the prior

4  bankruptcy order was res judicata to the later action."); <u>Sanders Confectionery Products Inc.</u>, 973

5  F.2d at 485 ("These claims should have been brought during the bankruptcy proceeding, and res

6  judicata prevents them from being raised now.").

7        Here, DACA seeks through a post-confirmation motion to change the distribution scheme

8  of the Plan by asking the Court to withhold payments due certain identified creditors when

9  DACA has not even established the validity of its own claim.  The time for DACA to have

10  challenged the proposed relief to the Direct Lenders was by opposition to the Plan.  The Plan

11  provides for the distribution without any withholding and the Debtor does not oppose the claims

12  and has not taken any action through its Plan or otherwise to be a collection agent for DACA for

13  a claim that does not legitimately exist as discussed below.  In fact, the Debtor's settlement with

14  DACA, as discussed below, is to the contrary—DACA is on its own.  DACA was the target of a

15  claim objection proceeding brought by the Debtor which was resolved by settlement that on its

16  face, admits that the right of DACA to file this Motion was questionable at best.  Specifically,

17  the settlement agreement approved by this Court on July 19, 2011 (Docket Entry No. 230),

18  which agreement was attached to the Declaration of C. Jay Won (Docket Entry No. 212),

19  paragraph 6 of the settlement provides:

20          DACA acknowledges and understands that parties other than Mesa Verde
     may object to the DACA Direct Lender PPI Claim, oppose the DACA PPI

21       Motion, or object to DACA's recovery of alleged Prepaid Interest against the
     proceeds of the Calimesa Loan (whether by a Loan Sale or Property Sale, as

22       defined in the Plan), including on the grounds that the DACA PPI Motion is not
     an adequate procedure to determine DACA's right to recover Prepaid Interest. . . .

23       DACA acknowledges and agrees that Bankruptcy Court approval of this
     Agreement shall not constitute the approval or allowance  of DACA's PPI Claim,

24       and that all defenses and objections of the Direct Lenders to the withholding of
     Prepaid Interest are reserved and may be asserted in opposition to the DACA PPI

25       Motion or otherwise.

26        Based upon the above, DACA knows that this motion is improper, that it has not

27  established the validity of its claim and that it cannot seek to pursue its claims by changing the

28  terms of a confirmed Plan.

In addition to res judicata, the doctrine of equitable estoppel also operates to bar the relief sought. Generally, four elements must be present in order to establish the defense of equitable estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury. United States v. Ruby Co., 588 F.2d 697, 703 (9th Cir. 1978) cert. denied 442 U.S. 917, 61 L. Ed. 2d 284, 99 S. Ct. 2838 (1979); United States v. Georgia-Pacific Co., 421 F.2d 92, 96 (9th Cir. 1970). The Ninth Circuit has ruled that a party is equitably estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statement. Hay v. First Interstate Bank of Kalispell, N.A., 978 F.2d 555, 557 (9th Cir. 1992). Accord, Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3rd Cir. 1988), cert. denied, 488 U.S. 967, 102 L. Ed. 2d 532, 109 S. Ct. 495 (1988).

Here, DACA filed a proof of claim in the case which remains subject to objection, as noted above. However, DACA did not file an objection to the Plan seeking that distributions to Direct Lenders be withheld. DACA's motion seeks to withhold distributions that the creditors relied upon in voting on the Plan. By not objecting to the distribution at the plan confirmation stage, creditors have relied on DACA's non-opposition and now rely on a confirmed Plan that provides for the immediate distribution. DACA is thus estopped from the relief it now seeks, and moreover, the relief is nonsensical—if the funds are withheld, then what? This question cannot be answered by reviewing the Plan, which is further evidence of the impropriety of DACA's request. The Plan governs the rights and the Plan mandates distribution to the creditors. DACA cannot use its motion as a debt collection vehicle on a claim that is not a legitimate claim for the reasons discussed below and the Court should estopp these improper efforts as a matter of law.

**B.    DACA's Motion Seeks  Injunctive Relief Which Must Be Sought Through An Adversary Proceeding**

The relief sought in the motion is an effort to enjoin the Debtor from complying with the terms of its confirmed plan, which, among other things, requires distribution to the Direct

5

Lenders as provided for in the Plan without any withholding. Federal Rule of Bankruptcy

Procedure 7001 requires that actions for injunctive relief be asserted in an adversary proceeding.

See FRBP 7001(7), which provides that an adversary proceeding includes "a proceeding to

obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or

chapter 13 plan provides for the relief."  Here, the Plan does not provide for withholding of any

claims for Prepaid Interest. Therefore, DACA cannot proceed to seek this relief through a

motion, and DACA knows this, as described above, the settlement agreement with the Debtor,

DACA anticipated an opposition based upon the grounds that the DACA PPI Motion is not an

adequate procedure to determine DACA's right to recover Prepaid Interest. See Settlement

Agreement at p. 6, paragraph 6.

## II.
## DACA'S MOTION ADMITS THAT IT HAS NO RIGHT TO PREPAID INTEREST.

Perhaps more egregious then a defective procedural vehicle, DACA files this motion

knowing, and admitting in the motion itself, that the Direct Lenders identified on Exhibit A to

the Motion will never be subject to suit to recover the prepaid interest. Specifically, at Debtor's

Motion at page 5, paragraph 14 describes on the orders it is relying on to assert its claim, the San

Fernando Partners Order and DACA quotes paragraph 6 of that Order as follows:

> 6.    The Court partially grants and partially denies the Motion as to the
> Prepaid Interest alleged to be owing by those Direct Lenders who voted against
> the USACM Plan, or who did not vote. As to those Direct Lenders, Prepaid
> Interest may only be paid as computed on a "loan by loan" basis, and only after
> such Direct Lenders have received back distributions equal to their original
> principal investment. . .

In addition to the San Fernando Partners Order, the OCC has previously pointed out to

this Court in its Reply to the motion to approve the DACA Settlement filed with this Court on

July 6, 2011 (see Docket Entry No. 224) that DACA has no right to recover from any Direct

Lender any prepaid interest unless the aggregate amount exceeds $200,000. Specifically the

OCC noted in its Reply as follows:

> DACA shall not sue any Lender to recover Prepaid Interest, unless such
> Lender received Prepaid Interest in an aggregate amount of at least $200,000."
> (Emphasis added) Nevada Order at paragraph 4. The DACA Direct Lender PPI

1  Claim in the aggregate is less than $200,000, and the Prepaid Interest is far less
   than $200,000 regarding any individual Lender, with the largest claim referenced
2  by DACA in the DACA Direct Lender PPI Claim being a claim for $28,753. By
   the very order that gave life to DACA's assertion of such claim does that claim
3  die before it can be  asserted against the Original Direct Lenders, as Section 6 of
   the Settlement Agreement purports to  permit. Therefore, a DACA claim to
4  recover Prepaid Interest against the Original Direct Lenders  would violate the
   Nevada Order barring DACA from suing to recover Prepaid Interest from any
5  Lender who received less than $200,000 in Prepaid Interest. Any attempt to
   pursue such a claim  could subject DACA to sanctions, as the issue is res judicata
6  as to the Original Direct Lenders.

7  Finally, the Plan at pp. 27-28, specifically confirms that DACA shall not receive

8  payments from sales proceeds on its allowed PPI claim unless creditors receive 100% of their

9  principal.  In light of the above, it would be completely improper to withhold any distributions

10  since DACA can never seek to recovery any prepaid interest from these Direct Lenders

11                                   **III.**
    **DACA's PERSISTENT EFFORTS TO PERSECUTE THE DIRECT LENDERS IN THIS**
12  **CASE MUST NO LONGER BE TOLERATED.**

13

14  The OCC's final comment on DACA's procedurally and substantively improper motion is

15  that the motion itself is equitably outrageous in light of the occurrences in this case and the

16  OCC's ultimate support of the Debtor's now confirmed Plan. DACA, having now received a

17  large profit on its investment in acquiring the claims that were resolved with the Debtor, seeks a

18  final blow to the unsophisticated victims that DACA has identified on Exhibit A to its Motion.

19  The $136,713 that DACA seeks to obtain by windfall in filing a procedurally defective Motion

20  pales in comparison to the claims that the Direct Lenders listed on Exhibit A hold against

21  DACA.  As the DACA settlement confirms, these claims revert back to these Direct Lenders

22  pursuant to the terms of the confirmed Plan in the event DACA seeks to purchase its PPI claim.

23  See DACA Settlement at paragraph 6.  DACA's bad faith in filing a motion it knows is defective

24  and is in violation of the prior court orders in related cases it relies on for its claim, as well as the

25  setoff/recoupment rights of the Direct Lenders further warrants that the Motion be denied, with

26  prejudice, and include a finding that confirms that DACA has no claim against any of the Direct

27  Lenders in light of the fact that none of the Direct Lenders have been paid more than $200,000 in

28  prepaid interest and it is unlikely that they will receive 100% of their principal investment back

1   as evidenced by the amount of the expected distribution under the Plan, and if they do through a

2   sale then the Plan protects any allowed claim DACA may eventually prove.

3        Wherefore, the OCC respectfully requests that the Court deny the Motion in its entirety

4   and find that DACA's claim for Prepaid Interest is disallowed in its entirety for the reasons set

5   forth above, and grant such further and other relief as is just and proper.

6

7   DATED: _____        **FOLEY & LARDNER LLP**

8

9                                                    BY:_____

10                                                       KATHRYN M.S. CATHERWOOD
                                                         Proposed Counsel for Official
11                                                       Committee of Unsecured Creditors

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8