RECEIVED & FILED

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

12 JAN -9  12:58

In re:

USA COMMERCIAL MORTGAGE COMPANY, et al )   Case No. BK-S-06-10725 LBR

## NOTICE OF TRANSFER OF CLAIM PURSUANT TO F.R.B.P.3OO(E)(2) OR (4)

To (Transferor)

TERRY MELVIN
C/O Christine Brunner, Esq.
1999 South Coast Highway, Suite 4
Laguna Beach, CA 92651

Your claim, for investments known as Corona "aka" Temescal Canyon/Dos Lagos/Harbor Georgetown and Roam/Windemere has been transferred, unless previously objected by court, stipulated and order to:

WES CORRELL
646 Glomstad Lane A
Laguna Beach, CA 92651

No action is required if you do not object to the transfer of your claim. However, IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE YOU MUST FILE A WRITTEN OBJECTION WITH:

UNITED STATES BANKRUPTCY COURTS
Foley Federal Building
300 Las Vegas Blvd S.
Las Vegas, NV 81901

--SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE

Refer to Internal Control NO. _____ in your objection.
If you file an objection, a hearing will be scheduled.
IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED ON OUR RECORDS AS THE CLAIMANT.

_____
CLERK

FOR CLERK USE ONLY. THIS NOTICE WAS MAILED TO THE FIRST NAME PARTY BY FIRST CLASS MAIL.
POSTAGE PAID ON _____, 2011
INTERNAL CONTROL NO. _____
Claims Agent Noticed: (Name of outside Agent) _____
Copy to Transferee _____
Deputy Clerk

TERI MELVIN ("MELVIN") hereby transfers to WES CORRELL ("CORRELL"), PARTIAL interest in MELVIN'S claim no. 10725-0241 against the Debtor, USA Capital et al, as per attached settlement and release agreement dated October 27, 2011, page 3, paragraph 2, in the matter of In re USA COMMERCIAL MORTGAGE, District of Nevada case number BK-s-06-10725.   The signature of MELVIN on this document is evidence of the transfer of only a portion of the claims and rights under claim no. 10725-0241. Transferor hereby agrees to waive notice as described by Bankruptcy Rule 3001 (3)(1).

I, the undersigned transferor hereby assign and transfer my interest in any portion of the claim included in claim no. 10725-0241 that relate to Corona aka Temescal Canyon/Dos Lagos/Harbor Georgetown and Roam/Windermere and all rights related to Corona aka Temescal Canyon/Dos Lagos/Harbor Georgetown and Roam/Windermere to CORRELL upon terms as set forth in the settlement agreement dated October 27, 2011, page 3, paragraph 2, Orange County case number 30-2010-00419151. CORRELL assumes all risks associated with the debtor's ability to distribute funds. I agree to deliver to CORRELL any correspondence or payments received subsequent to the date of this agreement that relate to Corona aka Temescal Canyon/Dos Lagos/Harbor Georgetown and Roam/Windermere and authorize CORRELL to take the steps necessary to transfer the portion of the claim assigned to him into his name.

TRANSFEROR:
TERI MELVIN
address

Print Name _Teri Melvin_  Title _____

Signature _[signed]_  Date _12/15/11_

Updated Address if needed _____

Phone _702-810-1433_  Fax _____  E-mail _teri22laguna@yahoo.com_

TRANSFEREE:
WES CORRELL
646 Glomstad Lane A
Laguna Beach, CA 92651

Signature:  _[signed] Wes C__

1  **LAW OFFICES OF SUE SAHAMI**
   **SUE SAHAMI, SBN 193610**
2  **1851 EAST FIRST STREET**
   **Suite 900**
3  **SANTA ANA, CA 92705**
   **(714) 619-9349**
4  **(714)389-3455**

5  Attorney for Plaintiff, Wes Correll

SUPERIOR COURT OF STATE OF CALIFORNIA

COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

| Wes Correll, | ) |
| | ) |
| | ) Case No. :30-2010-00419151 |
| Plaintiff, | ) |
| v. | ) |
| Teri Lyn Melvin, Inclusive, | ) |
| Defendants. | ) |
| AND ALL RELATED ACTIONS | ) |

1

## SETTLEMENT AND RELEASE AGREEMENT

This SETTLEMENT AND RELEASE AGREEMENT is entered into as of the 27 day of October, 2011, by and between Wes Correll aka Richard Wesley Correll ("CORRELL"), on the one hand, and Teri Lyn Melvin ("MELVIN"), on the other hand. CORRELL and Parties are collectively referred to herein as the "Parties."

### RECITALS

A. In or about 2001, Melvin met Correll. They became a couple. In late 2001 or 2002, Correll moved into a Laguna Beach home that has, at all times before and since Correll and Melvin first met, been owned by Melvin. Correll agreed to contribute to household expenses.

B. Prior to meeting Correll, Melvin had invested in excess of $300,000 in related Nevada real estate development companies, including but not necessarily limited to USA Commercial Mortgage Company and USA Capital Diversified Trust Deed Fund (hereinafter collectively "USA Capital"). Investors were required to be Nevada residents. Melvin maintained a residence in Nevada in addition to her Laguna Beach home. In 2002, Melvin was receiving a monthly return on her USA Capital investments/ "dividends" of approximately $1200 per month.

C. In 2002 Correll's father died, and during 2002-2003, Correll received inheritance moneys of no less than $180,000.00 from his father's father estate.

D. In 2002 Correll and Melvin maintained a joint bank account into which Correll deposited all or at least a portion of his inheritance money and his salary. At Correll's request and with Correll's knowledge, Melvin transferred in excess of $150,000 to her bank account, and invested such money in/with USA Commercial Mortgage Investors Trust, purchasing interests in various real estate developments/investments.

E. In 2006, USA Commercial Mortgage Company, USA Capital Diversified Trust Deed Fund and related/affiliated entities, filed bankruptcy proceedings in Nevada, at which time both Melvin and Correll learned of the fraud committed by USA Capital–a Ponzi Scheme. As of the date of this

-1-

X _____
X _____

agreement, it appears highly likely that both Correll and Melvin have lost substantial amounts of the moneys that had been invested in USA Capital. At all times while Correll lived in Melvin's home, Correll had access to all bank statements on the joint account.

F. ~~At all times during the period between January, 2002 and December, 2009, while Correll lived in Melvin's home, Correll had access to all statements received from USA Capital regarding investments made by both Melvin and Correll during the period between January, 2002 and December, 2009.~~ *Stricken* ← *MC*

G. By late 2009 the Parties' personal relationship fell apart. In December 2009, Correll moved out of Melvin's home.

H. In October, 2010 Correll filed an action in the Orange County Superior Court, Case No. 30-2010-00419151, entitled *Correll v. Melvin* (the "Action"). The operative complaint in the Action states causes of action for Conversion, Injunctive Relief and Accounting. On May 31, 2011, Melvin filed a Cross-complaint stating causes of action for Stalking and Harassment/Injunctive Relief. Trial is set in the Action for November 7, 2011.

I. On or about September 23, 2011, Melvin provided to Correll copies of checks and other documents relating to investments made in Melvin's name with Correll's inheritance monies.

J. In order to terminate the Action and avoid continuing costs and expenses of litigation, and without admitting any liability, the Parties have agreed to compromise and settle fully and completely the Action as between themselves, and all claims, demands, and causes of action asserted therein, or which could have been so asserted therein, whether in the Parties' pleadings or otherwise, and desire to document their settlement by this Agreement.

/// See: K, L + M, attached

X *MC*        X *JM*

///

-2-

NOW THEREFORE, in consideration of the foregoing facts, and the mutual promises set forth herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties mutually agree and covenant as follows:

## AGREEMENT

1. Incorporation by Reference  The Recitals set forth above in Paragraph A through Paragraph J are integral to this Agreement, are true and correct, and are incorporated herein by this reference.

2. Within business ~~5~~ 30 days of execution of this agreement, counsel for Correll shall prepare and forward to counsel for Melvin documents assigning from Melvin to Correll all interests in Melvin's name in investment interests in USA Capital purchased with Correll's inheritance money, i.e. investments known as Corona "aka" Temescal Canyon/Dos Lagos/Harbor Georgetown and Roam/Windermere. Should the parties be unable to agree on the wording/terms of the assignment documents, the dispute as to the terms of/wording of the assignments may be brought before the Court for enforcement of this agreement pursuant to CCP sec. 664.6. See ¶ 2a, attached

3. Correll shall not contact Melvin ~~and shall not contact any family member of Melvin~~ for five years after the date of execution of this agreement. Any communications that might be necessary shall be made through the attorneys for the parties only.

4. Promptly upon Melvin's execution of the documents assigning to Correll investment interests in USA Capital purchased with Correll's inheritance money, Correll shall file a dismissal, with prejudice of the currently operative complaint in the Action and Melvin shall file a dismissal, with prejudice the cross-complaint in the Action.

5. The Parties stipulate and acknowledge that they have entered into this Agreement solely to avoid the burden and expense of further litigation, and for the mutual covenants, releases, agreements contained herein and such other consideration as recited herein, execution and/or performance of this Agreement, or any of the terms hereof, shall not be construed to be an admission of liability by any Party, or an admission of any fact alleged or claim asserted in the Action.

-3-

6. <u>Releases:</u>

A) Except as otherwise provided in this Agreement and upon execution of this Agreement, MELVIN for herself and her successors and assigns, her predecessors-in-interest, successors, agents, attorneys, advisors, consultants, professionals, and assigns, hereby waives any and all claims and rights against CORRELL and hereby releases CORRELL, and, as applicable, his predecessors-in-interest, successors, agents, attorneys, advisors, consultants, professionals, and assigns, from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist, based on any facts, events or omissions occurring from the beginning of time to the effective date of this Agreement.

B) Except as otherwise provided in this Agreement and upon execution of this Agreement, CORRELL for himself and his successors and assigns, his predecessors-in-interest, successors, agents, attorneys, advisors, consultants, professionals, and assigns, hereby waives any and all claims and rights against MELVIN and hereby releases MELVIN, and, as applicable, her predecessors-in-interest, successors, agents, attorneys, advisors, consultants, professionals, and assigns, from any and all claims, demands, liens, actions, suits, causes of action, obligations, controversies, debts, costs, attorneys' fees, expenses, damages, judgments, orders, and liabilities of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, and whether or not concealed or hidden, which have existed or may have existed, or which do exist or which hereafter can, shall or may exist, based on any facts, events or omissions occurring from the beginning of time to the effective date of this Agreement.

C) In making the releases set forth in this Agreement, the Parties acknowledge that there is a possibility that, subsequent to the execution of this Agreement, they will discover facts or incur or

-4-

suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by them at that time may have materially affected their decision to execute this Agreement. The Parties have been advised of the existence of *Section 1542 of the California Civil Code*, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Notwithstanding the provisions of *Section 1542*, the Parties agree that the releases set forth in this Agreement shall constitute full releases in accordance with their terms. The Parties hereto knowingly and voluntarily waive the provisions of Section 1542, as well as any other federal or state statute, rule, or common law principle of similar effect, and acknowledge and agree that this waiver is an essential and material inducement to and consideration for each party's execution of this Agreement.

7. The Parties to this Agreement acknowledge that they have been advised by legal counsel of their choice regarding the meaning and consequences of this Agreement, including, but not limited to, the releases and the waiver of unknown and unsuspected claims set forth above.

8. Representations, Acknowledgments and Declarations. The Parties to this Agreement represent and acknowledge that, in executing this Agreement, they do not rely and have not relied on any representation or statement made by any other party or any other party's agents, advisors, representatives or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement. The Parties further declare that, in making this Agreement, they rely entirely upon their own judgment, beliefs and interest and the advice of their counsel, and that they have had a reasonable period of time to consider this Agreement and, if so desired, consult with counsel.

-5-

9. **Transfer of Interests.** Each person who signs this Agreement represents and warrants that he or she owns and has not assigned or otherwise transferred, encumbered or hypothecated or purported to transfer, transfer or hypothecate, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement to any other person or entity.

10. **No Admission of Liability.** The Parties acknowledge that this Agreement represents a compromise of disputed claims and that neither the payments provided for in this Agreement nor anything contained in this Agreement shall be construed as an admission by any party to this Agreement of any liability of any kind on behalf of such party to this Agreement or any other party to this Agreement.

11. **Successors and Assigns.** This Agreement shall be binding upon the Parties and their successors in interest and assigns.

12. **Governing Law and Enforcement Provisions** This Agreement is to be governed by and construed in accordance with the laws of the State of California. By its execution and delivery of this Agreement, the Parties hereby irrevocably and unconditionally agree that any legal action, suit or proceeding against any of them with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may and shall be brought solely and exclusively before the Superior Court of the State California, County of Orange.

13. **Drafting Ambiguities.** The Parties agree that each party and its counsel have reviewed this Agreement, and that each fully understands and voluntarily accepts all the provisions contained in this Agreement. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties. The Parties further agree that this Agreement was the product of negotiations between the Parties and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or in any addenda, amendments or exhibits to this

-6-   

Agreement.

14. <u>Counterparts</u> This Agreement may be executed in counterparts and copies and/or facsimile or e-mail transmittal signature pages may be used instead of originals. The executed counterparts shall be construed as and constitute one and the same instrument that will be binding on the Parties hereto.

Dated: _____  
Teri Lyn Melvin

Dated: 10-27-2011  
Wes Correll, aka Richard Wesley Correll

**APPROVED AS TO FORM AND CONTENT.**

_____  
Sue Sahmai, Attorney for Wes Correll, aka Richard Wesley Correll

_____  
Christine Brunner, Attorney for Teri Lyn Melvin

-7-

ofConelles inheritance money
invested in ~loan/debenture~.

III. Melisa payments and payants
That the total amount of
Conelles inheritance money plus
Melisa's personal funds
invested by USA Capital,
exclusive of loan/debenture
~payment~ during the period
between September 2003
and June 2006 does not
exceed ~the total of ~~deduction~~~
the amounts set forth in
USA Commercial Mortgage
Company ~claims the amount~.
proofs of claim filed by Melisa.

X ___wr___

X ___tm___

pg 8

ix. Melvin will deliver to Cindee Capital physical items:

1 wood utensil

Norwegian green glass fish

Blue glass painting

No video camera —

Refundable Maint. K for $1,500

Cordless drill

And

Melvin will pay $2,500.00 to Correl's attorney of record within 5 days of the signing of the assignments referred to in ¶2 of this agreement

X _____

X _____

Pg 9

K. Prior to Correll investing any of inheritance with Melan/and/a in Melan's name, Melan had invested in excess of $20,000 in USA Capital Diversified Trust Fund. ~~Melan has received~~ In or about 2009 Melan received a payment with respect to that investment.

L. In or about January 2007 Melan filed Proof of Claim #61354 totalling approximately $6~~31~~ with respect to investments made in USA Capital, including $200,000 attributable to Melan's sole investment in USA Capital Diversified (but not including $100,000

X /s/ ___    X /s/ ___

Pg 10