**LEWIS AND ROCA LLP — LAWYERS**

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

**Robert M. Charles, Jr.** NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No. BK-S-06-10725-LBR |
| USA Commercial Mortgage Company, | Chapter 11 |
| Debtor. | **USACM Liquidating Trust Quarterly Post Confirmation Report for Period Ending June 30, 2013** |

The USACM Liquidating Trust Quarterly Post Confirmation Report by Geoffrey Berman, Trustee for period ending June 30, 2013, is attached hereto. For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

DATED: August 2, 2013.

**LEWIS AND ROCA LLP**

By: /s/ *Robert M. Charles, Jr.* (#6593)
Robert M. Charles, Jr. NV 6593
*Counsel for USACM Liquidating Trust*

3192786.3

# QUARTERLY POST-CONFIRMATION REPORT OF
# GEOFFREY L. BERMAN, TRUSTEE
# USACM LIQUIDATING TRUST

## July 2013





**USACM Liquidating Trust**
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
**Development Specialists, Inc.**
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

**Lewis and Roca LLP**
Robert M. Charles, Jr.
John Hinderaker
Email: RCharles@LRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating Trust

3485690.4

# TABLE OF CONTENTS

<u>Page</u>

I. TRUST ADMINISTRATION ................................................................................... 1

    A. Website ......................................................................................................... 1

    B. Trust Extension ............................................................................................ 1

    C. Trust Committee .......................................................................................... 1

    D. Trust Staff and Counsel ............................................................................... 2

    E. BMC Access to Court Docket ..................................................................... 2

    F. Creditor Inquiries ......................................................................................... 3

II. USACM ISSUES ..................................................................................................... 3

III. INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS ................................................................ 3

    A. Diamond McCarthy ..................................................................................... 3

    B. Actions ......................................................................................................... 3

IV. PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS ........................................................ 4

    A. Thomas Hantges .......................................................................................... 4

    B. Salvatore Reale ............................................................................................ 4

    C. JMK Investments ......................................................................................... 5

    D. Tree Moss Partners, LLC ............................................................................ 6

    E. Judgments .................................................................................................... 6

V. COLLECTION OF TRUST ASSETS ..................................................................... 6

    A. Colt Loan ..................................................................................................... 6

VI. PROOFS OF CLAIM AND CLAIMS OBJECTIONS ........................................... 7

    A. Overview ...................................................................................................... 7

**USACM Liquidating Trust**
**July 2013**

|   |   |   |
|---|---|---|
| | B. Change of Address/Change of Ownership | 7 |
| | C. Contact Information | 8 |
| | D. General Inquiries | 8 |
| VII. | LOAN SERVICING ISSUES | 8 |
| | A. Placer Vineyards | 8 |
| VIII. | TRUST FINANCIAL STATEMENT | 10 |

3485690.4

**QUARTERLY POST-CONFIRMATION REPORT OF
GEOFFREY L. BERMAN, TRUSTEE
USACM LIQUIDATING TRUST**

**July 2013**

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during the period April 1, 2013 through June 30, 2013 on:

- administration of the Trust;

- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate;

- the Ninth Circuit appeal in the Deloitte litigation; and

- Placer receivership issues.

These and other topics are briefly described in this report, along with comments on the financial statement of the Trust.[1]

### I. TRUST ADMINISTRATION

#### A. Website

The Trust continues to use the following website address: http://usacmcucc.bmcgroup.com. We invite suggestions for content on the Trust's website.

#### B. Trust Extension

On an unopposed motion, the Court entered an order after a hearing on December 19, 2012, providing that the USACM Liquidating Trust termination date is extended from March 12, 2013 to March 12, 2014.

#### C. Trust Committee

The Trust functions with a Trust Committee created by the Debtors' Third Amended Plan of Reorganization as modified and the Trust Agreement. The current members of the Trust Committee are Donald Walker, James Bonfiglio, Michael Tucker (in his capacity as Administrator of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF")), Suzanne Nounna, and Janet Chubb and Ken Bonnet, a client representative from the Kehl family (jointly). The Trust Committee meets by telephone conference call in regularly

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Committee.

1

3485690.4

USACM Liquidating Trust
July 2013

scheduled meetings to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues. Regular communication between the Trust and the Trust Committee members is maintained by telephone calls and e-mails.

### D. Trust Staff and Counsel

The Trustee is employed by Development Specialists, Inc. ("DSI").[2] The Trustee uses DSI staff to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.

In addition, and as has previously been reported, the Trustee selected Robert M. Charles, Jr.[3] and Susan M. Freeman[4] of Lewis and Roca LLP, prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel. Other attorneys at that firm assist the Trust as well, including John Hinderaker, who directs claims and other Trust specific litigation.[5]

Separate litigation counsel, Allan Diamond[6] and Eric Madden[7] of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

### E. BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases since the Effective Date of the confirmed Plan. While those dockets, and the associated claim information, are available to the public for a fee through PACER, the Trust continues to believe that the

---

[2] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[3] Information about Mr. Charles is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=165.

[4] Information about Ms. Freeman is available from the Lewis and Roca LLP website at http://www.lrlaw.com/professional_bio.asp?ProfessionalID=92.

[5] Information about Mr. Hinderaker is available from the Lewis and Roca LLP website at http://www.lewisandroca.com/professional_bio.asp?ProfessionalID=369.

[6] Information about Mr. Diamond is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/adiamond.html.

[7] Information about Mr. Madden is available from the Diamond McCarthy website at http://www.diamondmccarthy.com/emadden.html.

3485690.4

USACM Liquidating Trust
July 2013

Court and creditors are better served by the Trust bearing that expense, particularly as the Trust addresses the large number of direct lender proof of claim objections.

### F. Creditor Inquiries

Both the Trustee and the Trust's counsel receive frequent inquiries from direct lenders concerning servicing, tax issues, pre-paid interest and other questions related to their interests in the Trust. Both the Trustee and the counsel have made every effort to respond to each such inquiry, although often the Trust is not in a position to provide a specific answer, since the Trust cannot provide lenders with legal or tax advice. The Trustee and counsel also make every effort to respond on a timely basis to direct lenders and other creditors with questions related to objections to loans and claims as those objections are being processed. The Trust has also been addressing questions from direct lenders who have received checks for their recently allowed claims, as a result of the continuing process of addressing the remaining disputed direct lender proofs of claim.

## II. USACM ISSUES

As of its most recent report, USACM in liquidation was holding no assets. The Trust has been paying the expenses of keeping the USACM bankruptcy case open pending disposition of the remaining material assets of the Trust, which might have been negatively impacted by the closing of the USACM bankruptcy estate.

## III. INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

### A. Diamond McCarthy

Diamond McCarthy as special litigation counsel to the Trust actively conducted formal and informal discovery of files, witnesses and transactions since its informal engagement in January 2007, which was formalized once the Plan went effective in March 2007. The goals were to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors. In addition, special litigation counsel identified assets diverted by insiders and their affiliates so that the assets can be recovered to generate payment for creditors. Diamond McCarthy is lead counsel on the Trust's litigation described below.

### B. Actions

The sole remaining action, other than actions reduced to judgment, was as follows:

| Case No. | Plaintiffs | Defendants |
|---|---|---|
| 2:08-CV-461 | Trust and DTDF | Deloitte & Touche, LLP |

3485690.4

These actions were prosecuted in order to recover funds for the Trust beneficiaries and DTDF. The district court granted Deloitte's summary judgment motions in a decision dated February 16, 2011. That ruling was appealed by the Trust to the Ninth Circuit Court of Appeals. The Ninth Circuit issued its decision affirming the district court on April 22, 2013, after oral argument was conducted on March 5, 2013, thus ending the litigation for all practical purposes. Neither party sought review from the panel's decision.

## IV. PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

### A. Thomas Hantges

The remaining open issue in the Hantges estate is the Trust's ownership of certain life insurance policies.

| Thomas Hantges Life Insurance Policies as of May 1, 2013 | | | |
|---|---|---|---|
| Insured: | Thomas A. Hantges | Thomas A. Hantges | Thomas A. Hantges |
| Policy Issued by: | Lincoln Benefit Life Insurance Co. | West Coast Life Insurance Company | Lincoln Benefit Life Insurance Co. |
| Policy Number: | 01T1048572 | Z01221131 | 01T1048572 |
| Premium: | $2,230.20 | $12,490.40 | $8,260.00 |
| Frequency: | Quarterly | Semi-Annual | Annual |
| Coverage Amount: | $5,000,000 | $8,500,000 | $2,500,000 |

### B. Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust in the Bankruptcy Court. The adversary proceeding is Adv. No. 06-01251.

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Mr. Reale for $4 million, plus an award of the Trust's taxable costs. The Trust filed a motion seeking pre- and post-judgment interest, which motion was granted by the Bankruptcy Court after a hearing on May 8, 2008. The Trust obtained judgment on May 13, 2008.

The Trust continues to work on collection of the $4 million judgment against Salvatore Reale, including seeking post-judgment discovery, filing a motion to compel compliance with the discovery requests, and negotiating with Mr. Reale on a possible settlement.

USACM Liquidating Trust
July 2013

Efforts to recover on the judgment are complicated by a temporary restraining order against Mr. Reale in another matter, as well as an obligation to the Internal Revenue Service and the fact that one of the borrowers to whom Mr. Reale made a loan has subsequently filed their own chapter 7 bankruptcy. Mr. Reale has cooperated with the Trust in efforts to recover from this borrower's bankruptcy estate and thereby reduce the outstanding judgment due the Trust however Mr. Reale still has made no payments in partial or full satisfaction of the judgment and has continuously advised that he has no ability to repay any portion of the judgment.

### C. JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).

The Trust worked through its special litigation counsel at Diamond McCarthy LLP and accomplished, through settlement, several significant payments for the Trust. In connection with the adversary proceeding against JMK Investments, Ltd. et al, the Trust entered into a settlement agreement, subject to court approval, with JMK, Simon Family Trust, Steven Portnoff, JWB Investments, Inc., Brouwers Family LP, Larry C. Johns, Mary L. Johns, Paul Bolch Living Trust, Roni Amid, Robert M. Portnoff, Sarah Portnoff, Morningside Homes, Inc., Aurora Investments LP, Steven Janovitch, Linda Janovitch, First Savings Bank FBO Valliera McGuire, Marvin and Valliera Myers Trust, Larry J. Middleton, Jennifer Middleton, Alabruj Limited Partnership, and Francis Family Trust. Under the agreement, approved by the bankruptcy court after notice and an opportunity for hearing, Defendants will pay $2,750,000 to the Trust. Payment by June 30, 2009 reduced the payment requirement to $2,250,000. The JMK settlement was approved by the court's November 24, 2008 order.

In the adversary proceeding concerning J.M.K. Investments, Ltd., counsel for several of the defendants sought leave to withdraw and the matter was scheduled for hearing on February 20, 2009, and a status hearing was scheduled on March 20, 2009 at which the defendant Roni Amid was directed to appear personally. Counsel was allowed to withdraw and the status hearing was conducted on April 10, 2009 as to Roni Amid. Mr. Amid subsequently retained new counsel and after review of the settlement, has paid his pro-rate obligation under the settlement.

A small number of the defendants chose not to pay the discounted amount and therefore had until September 30, 2009 to pay their respective obligations. None of those defendants made the required payments. The Trust obtained default judgments against each of the JMK Defendants that did not pay the discounted or full amount of the stipulated settlement payments. Those judgments have been recorded and efforts are underway to enforce collection of the judgment amounts. As noted above, the Trust

5

3485690.4

recently completed judgment debtor examinations for the non-paying settlement parties and further actions to collect outstanding monies is ongoing.

Efforts continue to collect the judgment.[8]  Defendants' counsel were granted leave to withdraw as counsel.

### D. Tree Moss Partners, LLC

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin has been appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.  Ms. Poulin filed a motion to approve a sale of the Tree Moss assets, however the proposed sale fell through.  Ms. Poulin has tried to sell the project on numerous occasions so far without success.  The Trust filed a proof of unsecured claim for $1,075,799.91 in the case, and continues to monitor progress of the case under Ms. Poulin's supervision as trustee.  Pursuant to the operating report filed for the period ending December 2012, the Trustee for Tree Moss held $372,592 in its bank account and scheduled $2,566,327 in post-petition liabilities.

### E. Judgments

The Trust owns interests in certain judgments, the collection status of which is described above.  The Trustee is seeking alternatives for disposition of the remaining judgments in order to return cash for distribution to creditors.

## V. COLLECTION OF TRUST ASSETS

### A. Colt Loan

USACM held a $1 million second lien on property known as the Colt Gateway Property in Hartford, Connecticut, subject to a first lien held by DTDF, Fertitta Enterprises, Inc. and the estate of Daniel Tabas, and USACM held claims for servicing and other fees on

---

[8] It should be noted that the principal of Mountain West Mortgage, Thomas Jurbala, is a judgment debtor to the Trust as well and monies due from Mr. Jurbala, as well as Mountain West Mortgage, have gone unpaid.  As noted above, Mr. Jurbala initiated a bankruptcy case in Las Vegas, NV in which the chapter 7 trustee recently filed a no asset report.  Therefore no recovery of monies due the Trust from Mr. Jurbala is considered will be seen.  The Trust has also initiated suit against Randy Edwards in conjunction with the judgment against Aurora Investments in the Nevada State Courts, as well as Marvin and Valleria Myers.  A settlement was reached with the Myers on their judgment; the settlement has been paid.  The discovery cut-off in the Edwards litigation is mid-September 2013.

that loan. The Trust continued to work with Michael A. Tucker, the administrator of DTDF, on collection of sums owed on the Colt loans. Proposals were received from Homes for America Holding, the developer of the project, for refinancing the project and addressing the outstanding debts, but those efforts failed. A successor developer also sought to resolve the issues prohibiting completion of the development, however that developer has not had any greater success in completing the project than Homes for America Holding had.

The Trust continues to monitor collection of certain loans involving Colt in the Colt Gateway Campus Urban Revitalization Project in Hartford, Connecticut. To date, those efforts have not resulted in resolution of the Trust's claims. The Trust filed an objection to Colt Gateway, LLC's proof of claim.

Recently with the assistance of the administrator of DTDF, a tentative agreement was reached providing for a nominal ($10,000) payment to the Trust on account of the USACM junior lien with the parties to exchange releases. That transaction was reduced to writing and finally closed, with the Trust receiving the $10,000 payment as agreed. The Trust has no further sources of collection of the Colt Loan.

## VI.  PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A.  Overview

The deadline set pursuant to the Plan for the Trust to object to claims has expired.

The final allowed amount of creditor claims in the Trust is approximately $203.8 million; $789.8 million in claims have been disallowed.

### B.  Change of Address/Change of Ownership

The Trust periodically receives requests for change of address and makes every reasonable attempt to accommodate those requests. In addition, beneficiaries often request to change legal title or ownership of their interests in the Trust. The Trust has generally requested some form of documentation for such requests, but makes no representation or warranty that such transfers are legally effective or otherwise appropriate. The beneficiaries need to discuss such matters with their counsel.

USACM Liquidating Trust
July 2013

### C. Contact Information

For an inquiry on your proof of claim, or a change of address for an allowed claim, please contact:

Marilyn Schoenike
Lewis and Roca, LLP
(602) 262-5314
Email: MSchoeni@LRLaw.com

For additional information, please refer to the website of the USACM Liquidating Trust: http://usacmcucc.bmcgroup.com.

### D. General Inquiries

The Trust periodically receives inquiry from lien creditors, borrowers or lenders on loans to be serviced by Compass or its successors. The Trust, as a courtesy, makes every effort to direct the inquiry to the appropriate person handling servicing of the loan. Similarly, the Trust periodically receives subpoenas, requests for production and other formal and informal discovery requests for review of the business records of USACM, some of which the Trust holds as successor to USACM. Again, the Trust cooperates with those discovery requests, at the requesting party's reasonable expense.

## VII. LOAN SERVICING ISSUES

### A. Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust were as follows as of December 22, 2008 (the foreclosure date):

|   | **Placer 1** | **Placer 2** |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | 15,183,487.95 | 4,134,138.22 |
| Default Interest | 9,111,393.85 | 1,035,761.89 |
| Late Fees | 2,334,174.40 | 531,706.91 |
| **Total** | $58,129,056.20 | $12,201,607.02 |

The Trust filed a complaint and a motion for appointment of a receiver for the Placer 1 Loan in the United States District Court for the District of Nevada on September 24, 2008 and assigned case no. 2:08-cv-1276. The case was assigned to United States District Judge Kent J. Dawson.

8

3485690.4

**USACM Liquidating Trust**
**July 2013**

The receivership motion was heard by the Honorable Kent J. Dawson on December 3, 2008. At the hearing, Judge Dawson directed the appointment of Elli Mills as Receiver. The Trust thereafter worked with counsel for interested parties and Mr. Mills on entry of an appropriate order directing the appointment of a receiver. The District Court's order appointing the receiver was entered on December 16, 2008.

The Receiver subsequently investigated and made the decision to conclude the foreclosure sale, which had been continued to December 22, 2008. The Receiver directed a credit bid of $8,404,030 at the December 22, 2008 foreclosure sale.

Prior to the appointment of a receiver, the Trust continued to work with interested Direct Lenders on issues concerning the Loan and the Property, including whether to take an appeal of the valuation of the Property for real estate tax purposes.

The Trust continues to work with the Placer 1 Receiver both with respect to the Trust's claims as servicer as well as in attempting to assist the Receiver in the performance of his duties.

One effect of the foreclosure was to extinguish the lien on the Property securing repayment of the Placer 2 Note. Accordingly, the sole potential source of recovery for the Placer 2 Lenders, in addition to any proofs of claim they may filed in the USACM bankruptcy case, is the proof of claim filed by the Trust as servicer on the personal guaranties of Thomas Hantges and Joseph Milanowski. The Trust recently filed a Motion to allow the Placer II direct lender proofs of claim as allowed beneficial interests in the USACM Trust.

The litigation filed by the Trust concerning the Placer loan, in which the Receiver was obtained, remains pending before the District Court. The deadline to serve unserved defendants was continued to May 22, 2009. Because of the foreclosure, the Trust sought consent to dismissal of the Placer 2 Lenders as parties to the litigation. The Receiver became responsible to deal with the Placer Vineyards Development Group, LLC with respect to development of the Property. The Trust ceased reporting to the Lenders with respect to the Placer 1 and Placer 2 Loans after December, 2008, because the Placer 2 Loan no longer had collateral and the Placer 1 Loan was in the control of the Receiver, who is providing periodic reports. The Receiver's periodic reports are posted by the Trust on the Trust's website and therefore available to all of the Placer 1 (and Placer 2) Lenders.

The Receiver sought authority from the receivership court to enter into interim financing to cover the expenses of the receivership. The Trust is monitoring those proceedings to protect the status of the servicer advance in 2007 described above and a claim for sums advanced as servicer for legal fees and foreclosure expenses, as well as a servicing fee. The Receiver has advised the supervising court of what it believes may be potential claims against the Trust related to the servicing fees and servicer advance. The Trust,

through its counsel, has been discussing the purported claims; and as of release of this report, no claims have in fact been asserted against the Trust related to the servicing fees and/or servicer advance nor is there any agreement as to the amounts to be repaid to the Trust.

The Trust has provided copies of the Receiver's monthly reports on the Trust's website as a courtesy to the Receiver and a convenience to the Placer lenders. There is a separate link to the Placer filings on the Trust's website.

The Receiver's periodic report indicates that significant developments on the settlement of litigation have been achieved. The Receiver is seeking to reduce the assessed value of the Placer property. The Receiver is trying to close $2.6 million bridge loan to continue to hold the property, pay real estate taxes and the expenses of the receivership pending improvement in market value. The bridge loan would not provide proceeds to repay any sums to the Trust on account of servicer advances or the servicing fees and other claims. The Trust has had initial discussions with the Receiver as to paying the monies due the Trust on its servicer advance in the near term.

## VIII.  TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of April 30, 2013, has been provided to the Trust Committee. Additional financial statements will be prepared and forwarded to the Trust Committee as they become available.