**LEWIS AND ROCA LLP**
LAWYERS

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169-5996
Facsimile (702) 949-8321
Telephone (702) 949-8320

**Robert M. Charles, Jr.**  NV State Bar No. 006593
Email: rcharles@lrlaw.com

Attorneys for USACM Liquidating Trust

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>USA Commercial Mortgage Company,<br><br>Debtor. | Case No. BK-S-06-10725-LBR<br><br>Chapter 11<br><br>**USACM Liquidating Trust Quarterly Post Confirmation Report for Period Ending December 31, 2013** |

The USACM Liquidating Trust Quarterly Post Confirmation Report by Geoffrey Berman, Trustee for period ending December 31, 2013, is attached hereto. For ease of reference, a copy of the report has been posted on the USACM Liquidating Trust's website: http://usacmcucc.bmcgroup.com.

DATED: January 30, 2014.

**LEWIS AND ROCA LLP**

By: /s/ *Robert M. Charles, Jr.* (#6593)
Robert M. Charles, Jr. NV 6593
*Counsel for USACM Liquidating Trust*

3192786_4

# QUARTERLY POST-CONFIRMATION REPORT OF
# GEOFFREY L. BERMAN, TRUSTEE
# USACM LIQUIDATING TRUST

## January 2014





**USACM Liquidating Trust**
Geoffrey L. Berman, Trustee
Matthew P. Sorenson
Email: gberman@dsi.biz
msorenson@dsi.biz
**Development Specialists, Inc.**
333 South Grand Avenue, Suite 4070
Los Angeles, CA  90071-1544
Facsimile: (213) 617-2718
Telephone: (213) 617-2717

**Lewis Roca Rothgerber LLP**
Robert M. Charles, Jr.
Email: RCharles@LRRLaw.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169-5996
Facsimile: (702) 949-8321
Telephone: (702) 949-8320
Attorneys for the USACM Liquidating Trust

4239683.1

# TABLE OF CONTENTS

<u>**Page**</u>

I. TRUST ADMINISTRATION .................................................................................................. 1

    A. Website ............................................................................................................................ 1

    B. Trust Extension ............................................................................................................... 1

    C. Trust Committee ............................................................................................................. 2

    D. Trust Staff and Counsel .................................................................................................. 2

    E. BMC Access to Court Docket ........................................................................................ 2

    F. Creditor Inquiries ............................................................................................................ 3

II. USACM ISSUES ....................................................................................................................... 3

III. INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS ..................................................................................... 3

    A. Diamond McCarthy ........................................................................................................ 3

    B. Actions ............................................................................................................................ 3

IV. PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS ............................................................................... 4

    A. Thomas Hantges ............................................................................................................. 4

    B. Salvatore Reale ............................................................................................................... 4

    C. JMK Investments ............................................................................................................ 5

    D. Tree Moss Partners, LLC ............................................................................................... 6

    E. Judgments ....................................................................................................................... 6

V. COLLECTION OF TRUST ASSETS .......... **ERROR! BOOKMARK NOT DEFINED.**

    A. Colt Loan ............................................................**Error! Bookmark not defined.**

VI. PROOFS OF CLAIM AND CLAIMS OBJECTIONS ............................................................. 7

    A. Overview ......................................................................................................................... 7

|  |  |  |
|---|---|---|
|  | B. | Change of Address/Change of Ownership ................................................................ 7 |
|  | C. | Contact Information ................................................................................................. 7 |
|  | D. | General Inquiries ...................................................................................................... 7 |
| VII. | LOAN SERVICING ISSUES ............................................................................................... 7 |  |
|  | A. | Placer Vineyards ....................................................................................................... 7 |
| VIII. | TRUST FINANCIAL STATEMENT .................................................................................. 9 |  |

**QUARTERLY POST-CONFIRMATION REPORT OF
GEOFFREY L. BERMAN, TRUSTEE
USACM LIQUIDATING TRUST**

**January 2014**

As Trustee, I have continued to focus the efforts of the USACM Liquidating Trust (the "Trust") during the period October 1, 2013 through December 31, 2013 on:

- administration of the Trust, bringing it to an acceptable conclusion;
- efficient conclusion of the USA Commercial Mortgage Company ("USACM") estate; and
- Placer receivership issues.

These and other topics are briefly described in this report, along with comments on the financial statement of the Trust.[1]

## I.    TRUST ADMINISTRATION

### A.    Website

The Trust continues to use the following website address: http://usacmcucc.bmcgroup.com. We invite suggestions for content on the Trust's website.

One of the themes of this report is the Trustee's intention, at the direction of the Trust Oversight Committee, to reduce expenses. The Trustee intends to discontinue the website, and in particular access to the BMC database for court filings and claims, at the Committee's direction.

### B.    Trust Extension

On an unopposed motion, the Court entered an order after a hearing on December 19, 2012, providing that the USACM Liquidating Trust termination date is extended from March 12, 2013 to March 12, 2014.

At a meeting of the Trust Committee, the Trustee was authorized to seek an additional extension of the expiration of the Trust, subject to the Trust Committee's earlier direction to conclude the Trust. That motion has been filed with the bankruptcy court and is set for hearing on February 4, 2014.

---

[1] The Trust's financial statement is provided only to the Office of the United States Trustee and the Trust Committee.

USACM Liquidating Trust
January 2014

### C. Trust Committee

The Trust functions with a Trust Committee created by the Debtors' Third Amended Plan of Reorganization as modified and the Trust Agreement. The current members of the Trust Committee are Donald Walker, James Bonfiglio, Michael Tucker (in his capacity as Administrator of the USA Capital Diversified Trust Deed Fund, LLC ("DTDF")), Suzanne Nounna, and Janet Chubb and Ken Bonnet, a client representative from the Kehl family (jointly). The Trust Committee meets by telephone conference call in regularly scheduled meetings to discuss the status of the Trust, the Trustee's prior quarterly reports, and other issues. Regular communication between the Trust and the Trust Committee members is maintained by telephone calls and e-mails.

### D. Trust Staff and Counsel

The Trustee is employed by Development Specialists, Inc. ("DSI").[2] The Trustee uses DSI staff to administer the Trust, investigate the assets and liabilities of the Trust, and to support the litigation described below.

In addition, and as has previously been reported, the Trustee selected Robert M. Charles, Jr. and Susan M. Freeman of Lewis Roca Rothgerber LLP[3], prior counsel to the USACM Official Committee of Unsecured Creditors, as its counsel. Other attorneys at that firm assist the Trust as well, including John Hinderaker, who directed claims and other Trust specific litigation.

Separate litigation counsel, Allan Diamond of Diamond McCarthy LLP, Houston, TX, was selected by the Official Committee of Unsecured Creditors and approved by the Court in January 2007, whose retention was assumed by the Trust upon the Effective Date of the Plan and the Trust.

### E. BMC Access to Court Docket

The Trust has paid the monthly expense charged by BMC to maintain public access to the docket of the USACM jointly administered bankruptcy cases since the Effective Date of the confirmed Plan. Those dockets, and the associated claim information, are available to the public for a fee through PACER. As indicated above, the Trustee intends to terminate this expense by the end of March 2014.

---

[2] Information about Mr. Berman is available from the DSI website at http://www.dsi.biz/onestaff.asp?id=39.

[3] Lewis and Roca LLP changed its name to Lewis Roca Rothgerber LLP effective September 1, 2013.

USACM Liquidating Trust
January 2014

### F.  Creditor Inquiries

Both the Trustee and the Trust's counsel receive frequent inquiries from direct lenders concerning servicing, tax issues, pre-paid interest and other questions related to their interests in the Trust.  Both the Trustee and the counsel have made every effort to respond to each such inquiry, although often the Trust is not in a position to provide a specific answer, since the Trust cannot provide lenders with legal or tax advice.  The Trustee and counsel also make every effort to respond on a timely basis to direct lenders and other creditors with questions related to objections to loans and claims as those objections are being processed.  The Trust has also been addressing questions from direct lenders who have received checks for their recently allowed claims, as a result of the continuing process of addressing the remaining disputed direct lender proofs of claim.

## II.  USACM ISSUES

As of its most recent report, USACM in liquidation was holding no assets.  The Trust has been paying the expenses of keeping the USACM bankruptcy case open pending disposition of the remaining material assets of the Trust, which might have been negatively impacted by the closing of the USACM bankruptcy estate.  The Trustee has now made the decision to seek the closing of the USACM bankruptcy case.  The Trust's motion for entry of a final decree and closing the bankruptcy case is filed and set for hearing on February 4, 2014.

## III.  INVESTIGATING AND PROSECUTING CAUSES OF ACTION AGAINST POTENTIAL TARGET DEFENDANTS

### A.  Diamond McCarthy

Diamond McCarthy as special litigation counsel to the Trust actively conducted formal and informal discovery of files, witnesses and transactions since its informal engagement in January 2007, which was formalized once the Plan went effective in March 2007.  The goals were to develop and then prosecute causes of action against insiders and third parties to recover damages for the benefit of creditors.  In addition, special litigation counsel identified assets diverted by insiders and their affiliates so that the assets can be recovered to generate payment for creditors.  Diamond McCarthy is lead counsel on the Trust's litigation.

### B.  Actions

The last remaining action, other than actions reduced to judgment, was as follows:

| Case No. | Plaintiffs | Defendants |
| --- | --- | --- |
| 2:08-CV-461 | Trust and DTDF | Deloitte & Touche, LLP |

USACM Liquidating Trust
January 2014

These actions were prosecuted in order to recover funds for the Trust beneficiaries and DTDF.  The district court granted Deloitte's summary judgment motions in a decision dated February 16, 2011.  That ruling was appealed by the Trust to the Ninth Circuit Court of Appeals.  The Ninth Circuit issued its decision affirming the district court on April 22, 2013, after oral argument was conducted on March 5, 2013, thus ending the litigation for all practical purposes.  Neither party sought review from the panel's decision.

### IV. PRESERVING INSIDER ASSETS AND ADVOCATING TRUST INTERESTS IN OTHER BANKRUPTCY PROCEEDINGS

#### A. Thomas Hantges

The remaining open issue in the Hantges estate is the Trust's ownership of certain term life insurance policies.

| Thomas Hantges Life Insurance Policies as of May 1, 2013 | | | |
|---|---|---|---|
| Insured: | Thomas A. Hantges | Thomas A. Hantges | Thomas A. Hantges |
| Policy Issued by: | Lincoln Benefit Life Insurance Co. | West Coast Life Insurance Company | Lincoln Benefit Life Insurance Co. |
| Policy Number: | 01T1048572 | Z01221131 | 01T1048572 |
| Premium: | $2,230.20 | $12,490.40 | $8,260.00 |
| Frequency: | Quarterly | Semi-Annual | Annual |
| Coverage Amount: | $5,000,000 | $8,500,000 | $2,500,000 |

The Trust is working with DTDF on monetizing the Trust's interest in the term life insurance policies without continued to make premium payments indefinitely.  The Trust's tentative intention is to enter into an arm's length agreement to sell the Trust's interest in the policies to a third party for compensation after bidding among potential interested parties.

#### B. Salvatore Reale

Prior to the Effective Date, USACM sued Salvatore J. Reale, individually and as trustee of the Salvatore J. Reale Revocable Trust in the Bankruptcy Court.  The adversary proceeding is Adv. No. 06-01251.

USACM Liquidating Trust
January 2014

After a trial on January 31, 2008, the Bankruptcy Court determined on March 28, 2008 that judgment should be entered in favor of the Trust and against Mr. Reale for $4 million, plus an award of the Trust's taxable costs. The Trust filed a motion seeking pre- and post-judgment interest, which motion was granted by the Bankruptcy Court after a hearing on May 8, 2008. The Trust obtained judgment on May 13, 2008.

The Trust continues to work on collection of the $4 million judgment against Salvatore Reale, including seeking post-judgment discovery, filing a motion to compel compliance with the discovery requests, and negotiating with Mr. Reale on a possible settlement. Efforts to recover on the judgment are complicated by a temporary restraining order against Mr. Reale in another matter, as well as an obligation to the Internal Revenue Service and the fact that one of the borrowers to whom Mr. Reale made a loan has subsequently filed their own chapter 7 bankruptcy. Mr. Reale has cooperated with the Trust in efforts to recover from this borrower's bankruptcy estate and thereby reduce the outstanding judgment due the Trust however Mr. Reale still has made no payments in partial or full satisfaction of the judgment and has continuously advised that he has no ability to repay any portion of the judgment.

### C. JMK Investments

On September 12, 2007, the Trust sued JMK Investments, Ltd. and a number of individual defendants seeking to avoid certain pre-petition transfers that aggregate to over $4 million (Adv. No. 07-01154).

The Trust worked through its special litigation counsel at Diamond McCarthy LLP and accomplished, through settlement, several significant payments for the Trust. In connection with the adversary proceeding against JMK Investments, Ltd. et al, the Trust entered into a settlement agreement, subject to court approval, with JMK, Simon Family Trust, Steven Portnoff, JWB Investments, Inc., Brouwers Family LP, Larry C. Johns, Mary L. Johns, Paul Bolch Living Trust, Roni Amid, Robert M. Portnoff, Sarah Portnoff, Morningside Homes, Inc., Aurora Investments LP, Steven Janovitch, Linda Janovitch, First Savings Bank FBO Valliera McGuire, Marvin and Valliera Myers Trust, Larry J. Middleton, Jennifer Middleton, Alabruj Limited Partnership, and Francis Family Trust. Under the agreement, approved by the bankruptcy court after notice and an opportunity for hearing, Defendants will pay $2,750,000 to the Trust. Payment by June 30, 2009 reduced the payment requirement to $2,250,000. The JMK settlement was approved by the court's November 24, 2008 order.

In the adversary proceeding concerning J.M.K. Investments, Ltd., counsel for several of the defendants sought leave to withdraw and the matter was scheduled for hearing on February 20, 2009, and a status hearing was scheduled on March 20, 2009 at which the defendant Roni Amid was directed to appear personally. Counsel was allowed to withdraw and the status hearing was conducted on April 10, 2009 as to Roni Amid. Mr.

Amid subsequently retained new counsel and after review of the settlement, has paid his pro-rate obligation under the settlement.

> **D.   A small number of the defendants chose not to pay the discounted amount and therefore had until September 30, 2009 to pay their respective obligations.  None of those defendants made the required payments.  The Trust obtained default judgments against each of the JMK Defendants that did not pay the discounted or full amount of the stipulated settlement payments.  Those judgments have been recorded and efforts were undertaken to enforce collection of the judgment amounts.  All of those default judgments have now been collected and no additional activity on these matters is expected. Tree Moss Partners, LLC**

The Trust does not have a direct interest in Tree Moss Partners, LLC, which is also a debtor in bankruptcy due to an involuntary bankruptcy petition (Case No. 06-13758-LBR).  Ms. Poulin was appointed trustee for Tree Moss.  Tree Moss owns the condominium project adjacent to the Hotel Zoso.  USAIP's equity in this entity is not pledged as collateral for the $58 million Note.  Ms. Poulin filed a motion to approve a sale of the Tree Moss assets, however the proposed sale fell through.  Ms. Poulin has tried to sell the project on numerous occasions so far without success.  The Trust filed a proof of unsecured claim for $1,075,799.91 in the case, and continues to monitor progress of the case under Ms. Poulin's supervision as trustee.  Pursuant to the operating report filed for the period ending December 2012, the Trustee for Tree Moss held $372,592 in its bank account and scheduled $2,566,327 in post-petition liabilities.

The Tree Moss bankruptcy case has been dismissed.  The remaining assets of the estate will be distributed to professionals and the Trust will obtain no recovery.

> **E.   Anthony and Susan Monaco**

The Trust has a judgment against the Monaco's for $5.5 million, of which a small portion has been recovered.  The Trust sought and obtained the appointment of a receiver in Federal District court to aid in collection of this judgment.  The Receiver's efforts to date have brought in some small additional recoveries and his efforts continue.

> **F.   Judgments**

The Trust owns interests in certain judgments, the collection status of which is described above.  The Trustee is seeking alternatives for disposition of the remaining judgments in order to return cash for distribution to creditors.

USACM Liquidating Trust
January 2014

## V. PROOFS OF CLAIM AND CLAIMS OBJECTIONS

### A. Overview

The deadline set pursuant to the Plan for the Trust to object to claims has expired.

The final allowed amount of creditor claims in the Trust is approximately $203.8 million; $789.8 million in claims have been disallowed.

### B. Change of Address/Change of Ownership

The Trust periodically receives requests for change of address and makes every reasonable attempt to accommodate those requests.  In addition, beneficiaries often request to change legal title or ownership of their interests in the Trust.  The Trust has generally requested some form of documentation for such requests, but makes no representation or warranty that such transfers are legally effective or otherwise appropriate.  The beneficiaries need to discuss such matters with their counsel.

### C. Contact Information

For an inquiry on your proof of claim, or a change of address for an allowed claim, please contact:

Marilyn Schoenike
Lewis Roca Rothgerber, LLP
(602) 262-5314
Email: MSchoeni@LRRLaw.com

### D. General Inquiries

The Trust periodically receives inquiry from lien creditors, borrowers or lenders on loans to be serviced by Compass or its successors.  The Trust, as a courtesy, makes every effort to direct the inquiry to the appropriate person handling servicing of the loan.  Similarly, the Trust periodically receives subpoenas, requests for production and other formal and informal discovery requests for review of the business records of USACM, some of which the Trust holds as successor to USACM.  Again, the Trust cooperates with those discovery requests, at the requesting party's reasonable expense.

## VI. LOAN SERVICING ISSUES

### A. Placer Vineyards

The balances of the Notes by Placer County Land Speculators, LLC as Borrower to Direct Lenders on loans serviced by the Trust were as follows as of December 22, 2008 (the foreclosure date):

**USACM Liquidating Trust**
**January 2014**

|  | Placer 1 | Placer 2 |
|---|---|---|
| Principal | $31,500,000.00 | $6,500,000.00 |
| Interest | 15,183,487.95 | 4,134,138.22 |
| Default Interest | 9,111,393.85 | 1,035,761.89 |
| Late Fees | 2,334,174.40 | 531,706.91 |
| **Total** | **$58,129,056.20** | **$12,201,607.02** |

The Trust filed a complaint and a motion for appointment of a receiver for the Placer 1 Loan in the United States District Court for the District of Nevada on September 24, 2008 and assigned case no. 2:08-cv-1276. The case was assigned to United States District Judge Kent J. Dawson.

The receivership motion was heard by the Honorable Kent J. Dawson on December 3, 2008. At the hearing, Judge Dawson directed the appointment of Elli Mills as Receiver. The Trust thereafter worked with counsel for interested parties and Mr. Mills on entry of an appropriate order directing the appointment of a receiver. The District Court's order appointing the receiver was entered on December 16, 2008.

The Receiver subsequently investigated and made the decision to conclude the foreclosure sale, which had been continued to December 22, 2008. The Receiver directed a credit bid of $8,404,030 at the December 22, 2008 foreclosure sale.

Prior to the appointment of a receiver, the Trust continued to work with interested Direct Lenders on issues concerning the Loan and the Property, including whether to take an appeal of the valuation of the Property for real estate tax purposes.

The Trust continues to work with the Placer 1 Receiver both with respect to the Trust's claims as servicer as well as in attempting to assist the Receiver in the performance of his duties.

One effect of the foreclosure was to extinguish the lien on the Property securing repayment of the Placer 2 Note. Accordingly, the sole potential source of recovery for the Placer 2 Lenders, in addition to any proofs of claim they may filed in the USACM bankruptcy case, is the proof of claim filed by the Trust as servicer on the personal guaranties of Thomas Hantges and Joseph Milanowski. The Trust recently filed a Motion to allow the Placer II direct lender proofs of claim as allowed beneficial interests in the USACM Trust.

The litigation filed by the Trust concerning the Placer loan, in which the Receiver was obtained, remains pending before the District Court. The deadline to serve unserved defendants was continued to May 22, 2009. Because of the foreclosure, the Trust sought consent to dismissal of the Placer 2 Lenders as parties to the litigation. The Receiver became responsible to deal with the Placer Vineyards Development Group, LLC with respect to development of the Property. The Trust ceased reporting to the Lenders with

**USACM Liquidating Trust**
**January 2014**

respect to the Placer 1 and Placer 2 Loans after December, 2008, because the Placer 2 Loan no longer had collateral and the Placer 1 Loan was in the control of the Receiver, who is providing periodic reports. The Receiver's periodic reports are posted by the Trust on the Trust's website and therefore available to all of the Placer 1 (and Placer 2) Lenders.

The Receiver sought authority from the receivership court to enter into interim financing to cover the expenses of the receivership. The Trust is monitoring those proceedings to protect the status of the servicer advance in 2007 described above and a claim for sums advanced as servicer for legal fees and foreclosure expenses, as well as a servicing fee. The Receiver has advised the supervising court of what it believes may be potential claims against the Trust related to the servicing fees and servicer advance. The Trust, through its counsel, has been discussing the purported claims; and as of release of this report, no claims have in fact been asserted against the Trust related to the servicing fees and/or servicer advance nor is there any agreement as to the amounts to be repaid to the Trust.

The Trust has provided copies of the Receiver's monthly reports on the Trust's website as a courtesy to the Receiver and a convenience to the Placer lenders. There is a separate link to the Placer filings on the Trust's website. As noted above, the Trust intends to close its website and therefore access to the Receiver's reports through the Trust's website will be discontinued.

The Receiver's periodic report indicates that significant developments on the settlement of litigation have been achieved. The Receiver is seeking to reduce the assessed value of the Placer property. The Receiver has closed a $2.6 million bridge loan to continue to hold the property, pay real estate taxes and the expenses of the receivership pending improvement in market value. The bridge loan would not provide proceeds to repay any sums to the Trust on account of servicer advances or the servicing fees and other claims. The Trust has had initial discussions with the Receiver as to paying the monies due the Trust on its servicer advance in the near term. The Receiver is actively marketing the property. No further progress has been made towards resolving the Trust's servicer advances and the Trust awaits further word from the Receiver as to his ability to fund and settlement of those advances.

## VII.   TRUST FINANCIAL STATEMENT

A Trust financial statement showing the status of the Trust's finances as of December 31, 2013, has been provided to the Trust Committee. Additional financial statements will be prepared and forwarded to the Trust Committee as they become available.